UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA DESIMONE et al., on behalf of themselves and all others similarly situated,<br><br>                           Plaintiffs,<br><br>     v.<br><br>SELECT PORTFOLIO SERVICING, INC.,<br><br>                    Defendant. | Case No. 1:20-cv-03837-PKC-TAM |

**DEFENDANT SELECT PORTFOLIO SERVICING, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS
THE CONSOLIDATED CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 4

   I.   PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THEY EACH GAVE SPS THE REQUIRED PRE-SUIT NOTICE AND OPPORTUNITY TO CURE. ........................... 4

   II.   THE COURT SHOULD DISMISS SNOWDEN AND HER CLAIMS. ......................... 6

   III.   THE CAC SHOULD BE DISMISSED BECAUSE THE SOLE FEDERAL CAUSE OF ACTION, UNDER THE FDCPA, FAILS TO STATE A CLAIM. .................................. 6

      A.   The FDCPA Claim (First Cause of Action) Should Be Dismissed With Prejudice. ..... 7

         1.   The FDCPA does not apply to the EZ Pay fee. ................................................. 7

            a.   The EZ Pay fee is not a "debt" regulated by the FDCPA. ............................... 7

            b.   SPS is not a "debt collector" under the FDCPA with respect to the EZ Pay fees. ................................................................................................................. 8

         2.   DeSimone and Washington Fail to Adequately Allege Any Substantive Violation of Section 1692f or Section 1692e........................................................................ 8

            a.   DeSimone and Washington have not plausibly alleged a violation of Section 1692f. ......................................................................................................... 9

            b.   DeSimone and Washington have not plausibly alleged a violation of Section 1692e........................................................................................................... 14

   IV.   THE STATE LAW CLAIMS SHOULD BE DISMISSED ON THE MERITS. ............. 15

      A.   Plaintiffs' Claims For Breach of Contract (Second Cause of Action) and Violation of the Covenant of Good Faith and Fair Dealing (Third Cause of Action) Should Be Dismissed With Prejudice. ...........................................................................................15

         1.   The Breach of Contract Claim Should Be Dismissed Because Plaintiffs Have Not Plausibly Alleged Any Breach. ................................................................... 15

         2.   The Breach of Contract Claim Should Be Dismissed Because Plaintiffs Agreed to Pay the EZ Pay Fees In Exchange for the Service of Paying By Phone or Website. ............................................................................................................ 17

         3.   The Tagalong Good Faith And Fair Dealing Claim Should Be Dismissed. ......... 18

      B.   DeSimone's Claim for Violation of New York General Business Law § 349 (Fourth Cause of Action) Should Be Dismissed With Prejudice.............................................19

      C.   Snowden's Claims For Violations of the MCDCA and MCPA Should Be Dismissed With Prejudice. ........................................................................................................20

         1.   Snowden's MCDCA Claim Fails........................................................................ 20

         2.   Snowden's Derivative MCPA Claim Fails Too.................................................. 21

i

D.  Washington's Claims For Violations of the Rosenthal Act and UCL Should Be Dismissed With Prejudice..............................................................................................23

V.  IF THE CAC IS NOT DISMISSED, THE COURT SHOULD DISMISS OR STRIKE THE FEE-PROHIBITING STATE CLASS. .................................................................. 24

CONCLUSION...................................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*2138747 Ontario, Inc. v. Samsung C & T Corp.*,
103 N.E.3d 774 (N.Y. 2018).................................................................17

*Aguirre v. Wells Fargo Bank, N.A.*,
2015 WL 4065245 (C.D. Cal. July 2, 2015)...........................................24

*Alexander v. Carrington Mortg. Servs., LLC*,
23 F.4th 370 (4th Cir. 2022) .............................................................20, 21

*Allen v. JPMorgan Chase Bank, N.A.*,
2016 WL 1029334 (S.D. Miss. Mar. 14, 2016) .......................................5

*Anne Arundel Cnty. v. Hartford Accident & Indem. Co.*,
621 A.2d 427 (Md. 1993) ....................................................................17

*Araujo v. PennyMac Loan Servs., LLC*,
2015 WL 5664259 (E.D.N.Y. Sept. 23, 2015) .......................................18

*Bardak v. Ocwen Loan Servicing, LLC*,
2020 WL 5104523 (M.D. Fla. Aug. 12, 2020) ...........................7, 8, 15, 18

*Beer v. Nationstar Mortg. Holdings, Inc.*,
2015 WL 13037309 (E.D. Mich. July 15, 2015) ...................................16

*Blackman v. Lincoln Nat'l Corp.*,
2012 WL 6151732 (E.D. Pa. Dec. 10, 2012)........................................25

*Borgese v. Baby Brezza Enters. LLC*,
2021 WL 634722 (S.D.N.Y. Feb. 18, 2021)..........................................24

*Bourgeois v. Live Nation Ent., Inc.*,
3 F. Supp. 3d 423 (D. Md. 2014)........................................................22

*Brien v. J.P. Morgan Chase Bank, N.A.*,
2010 WL 11597806 (C.D. Cal. July 9, 2010).......................................17

*BVR Dev., LLC v. CalAtlantic Grp., Inc.*,
2019 WL 919560 (D. Md. Feb. 25, 2019) ............................................17

*Camacho v. City of New York*,
2020 WL 4014902 (S.D.N.Y. July 16, 2020) .......................................25

*Cappellini v. Mellon Mortg. Co.*,
    991 F. Supp. 31 (D. Mass. 1997) ........................................................11

*Cassese v. Washington Mut., Inc.*,
    2008 WL 8652499 (E.D.N.Y. June 27, 2008) ........................................11

*Chatman v. Fairbanks Capital Corp.*,
    2002 WL 1338492, at *3 (N.D. Ill. June 18, 2002) .......................12, 17

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
    364 F. Supp. 3d 253 (S.D.N.Y. 2019), *aff'd*, 788 F. App'x 85 (2d Cir. 2019) .......................13

*Currie v. Wells Fargo Bank, N.A.*,
    950 F. Supp. 2d 788 (D. Md. 2013) ........................................................22

*Davis v. Homecomings Fin.*,
    2006 WL 2927701 (W.D. Wash. Oct. 10, 2006) ........................................11

*Davis v. Wilmington Fin., Inc.*,
    2010 WL 1375363 (D. Md. Mar. 26, 2010) ........................................18

*Diaz v. NBC Universal, Inc.*,
    536 F. Supp. 2d 337 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 94 (2d Cir. 2009) .......................18

*Eades v. Kennedy, PC Law Offices*,
    799 F.3d 161 (2d Cir. 2015) ........................................................14

*El-Nahal v. FA Mgmt., Inc.*,
    5 N.Y.S.3d 201 (N.Y. App. Div. 2015) .......................................10, 16

*Elbert v. RoundPoint Mortg. Servicing Corp.*,
    2020 WL 4818605 (N.D. Cal. Aug. 19, 2020) ........................................24

*Ensor v. Wells Fargo Bank Nat'l Ass'n*,
    2022 WL 345513 (D. Md. Feb. 4, 2022) .......................................21, 22

*Estate of Campbell v. Ocwen Loan Servicing, LLC*,
    467 F. Supp. 3d 1262 (S.D. Fla. 2020) ...............................2, 7, 11, 18

*Estep v. Fed. Home Loan Mortg. Corp.*,
    2014 WL 1276495 (S.D. W. Va. Mar. 27, 2014) ........................................5

*Flores v. Collection Consultants of California*,
    2015 WL 4254032 (C.D. Cal. Mar. 20, 2015).......................................10, 11, 16

*Flowers v. Baltax 2017, LLC*,
    2019 WL 3501584 (D. Md. Aug. 1, 2019) ........................................21

iv

*Gallego v. Northland Grp. Inc.*,
   814 F.3d 123 (2d Cir. 2016)...............................................................................3, 14

*Garbutt v. Ocwen Loan Servicing*,
   2020 WL 5641999 (M.D. Fla. Sept. 22, 2020) ...........................................................8

*Giotta v. Ocwen Fin. Corp.*,
   2016 WL 4447150 (N.D. Cal. Aug. 24, 2016) ............................................................2

*Giotta v. Ocwen Loan Servicing*,
   706 F. App'x 421 (9th Cir. 2017) ...........................................................................2, 5

*Great Lakes Reinsurance (UK) SE v. Herzig*,
   413 F. Supp. 3d 177 (S.D.N.Y. 2019)......................................................................19

*Heald v. Ocwen Loan Servicing, LLC*,
   2014 WL 4639410 (M.D. Fla. Sept. 16, 2014).........................................................16

*Hill v. Nationstar Mortg. LLC*,
   2015 WL 4478061 (S.D. Fla. July 6, 2015)................................................................5

*Horowitz v. Stryker Corp.*,
   613 F. Supp. 2d 271 (E.D.N.Y. 2009) .....................................................................20

*Horsetail Techs., LLC v. Delaware State Police Fed. Credit Union*,
   2020 WL 3402302 (D. Md. June 19, 2020)..............................................................16

*Ivie v. AstraZeneca Pharms., LP*,
   2021 WL 5167283 (D. Or. Nov. 5, 2021).................................................................25

*Jahnke v. Deere & Co.*,
   912 N.W.2d 136 (Iowa 2018) .................................................................................25

*Jerik v. Columbia Nat'l, Inc.*,
   1999 WL 1267702 (N.D. Ill. Sept. 30, 1999)...........................................................11

*Johnson v. Countrywide Home Loans, Inc.*,
   2010 WL 5138392 (E.D. Va. Dec. 10, 2010) .............................................................5

*Johnson v. Wheeler*,
   492 F. Supp. 2d 492 (D. Md. 2007).........................................................................22

*Kelly v. Ocwen Loan Servicing, LLC*,
   2020 WL 4428470 (M.D. Fla. July 31, 2020) ..............................................8, 11, 18

*Kier v. Ocwen Loan Servicing, LLC*,
   122 F. Supp. 3d 786 (N.D. Ill. 2015) .......................................................................11

*Kurzban v. Specialized Loan Servicing, LLC*,
   2018 WL 1570370 (S.D. Fla. Mar. 30, 2018) .......................................................................5

*Lang v. Ocwen Loan Servicing, LLC*,
   2020 WL 5104522 (M.D. Fla. July 17, 2020) ..............................................................8, 11, 18

*Leger v. Kalitta*,
   2018 WL 2057142 (E.D.N.Y. Jan. 26, 2018) ......................................................................13

*Ligon v. Doherty*,
   208 F. Supp. 2d 384 (E.D.N.Y. 2002) .................................................................................13

*Lish v. Amerihome Mortg. Co.*,
   2020 WL 6688597 (C.D. Cal. Nov. 10, 2020)................................................................. *passim*

*Manos v. MTC Fin., Inc.*,
   2018 WL 6220051 (C.D. Cal. Apr. 2, 2018), *aff'd,* 773 F. App'x 452 (9th Cir.
   2019) ....................................................................................................................................16

*Mariscal v. Flagstar Bank, FSB*,
   2020 WL 4804983 (C.D. Cal. Aug. 4, 2020)................................................................. *passim*

*Meintzinger v. Sortis Holdings, Inc.*,
   2019 WL 1471338 (E.D.N.Y. Apr. 3, 2019) .........................................................3, 10, 11, 16

*Mitchell v. U.S. Bank Nat'l Ass'n*,
   2018 WL 4679949 (D. Md. Sept. 28, 2018) ........................................................................21

*Net2Globe Int'l, Inc. v. Time Warner Telecom of New York*,
   273 F. Supp. 2d 436 (S.D.N.Y. 2003)..................................................................................17

*New Hampshire Gas & Elec. Co. v. Morse*,
   42 F.2d 490 (D.N.H. 1930);).................................................................................................25

*Oneida Indian Nation of N.Y. v. Madison Cnty.*,
   665 F.3d 408 (2d Cir. 2011)...................................................................................................6

*Palmiotto v. Am.'s Servicing Co.*,
   2012 WL 12868482 (S.D. Cal. Sept. 26, 2012) ...................................................................19

*Perks v. TD Bank, N.A.*,
   444 F. Supp. 3d 635 (S.D.N.Y. 2020)..................................................................................19

*Pettaway v. Nat'l Recovery Sols., LLC*,
   955 F.3d 299 (2d Cir. 2020)..................................................................................................14

*PG-USA, Inc. v. St. Andrews Prods. Co.*,
   2009 WL 10700241 (C.D. Cal. July 2, 2009) ................................................................10, 16

*Pugh v. Corelogic Credco, LLC*,
  2013 WL 5655705 (D. Md. Oct. 16, 2013) ....................................................20, 21

*Qader v. Rushmore Recovery*,
  667 F. Supp. 2d 304 (S.D.N.Y. 2009)....................................................................14

*Redhead v. Winston & Winston, P.C.*,
  2002 WL 31106934 (S.D.N.Y. Sept. 20, 2002)......................................................14

*Reid v. Ocwen Loan Servicing, LLC*,
  2020 WL 5104539 (S.D. Fla. May 4, 2020) .................................................8, 11, 18

*Reyes v. N.A.R. Inc.*,
  546 F. Supp. 3d 1031 (D. Utah 2021)......................................................................9

*Rodriguez v. Rushmore Loan Mgmt. Servs. LLC*,
  2019 WL 423375 (N.D. Ill Feb. 4, 2019) ...............................................................5

*Schuh v. Druckman & Sinel, L.L.P.*,
  602 F. Supp. 2d 454 (S.D.N.Y. 2009).....................................................................8

*Sheehan v. Atlanta Int'l Ins. Co.*,
  812 F.2d 465 (9th Cir. 1987) ................................................................................17

*Sindermann v. Wells Fargo Bank, N.A.*,
  2014 WL 7369812 (D. Md. Dec. 23, 2014)...........................................................23

*Singh v. NYCTL 2009-A Trust*,
  2016 WL 3962009 (S.D.N.Y. July 20, 2016), *aff'd*, 683 F. App'x 76 (2d Cir.
  2017) ....................................................................................................................20

*Spagnola v. Chubb Corp.*,
  574 F.3d 64 (2d Cir. 2009).....................................................................................20

*State ex rel. Haught v. Donnahoe*,
  174 W. Va. 27 (1984) ............................................................................................25

*Thomas-Lawson v. Carrington Mortg. Servs., LLC*,
  2021 WL 1253578 (C.D. Cal. Apr. 5, 2021) .................................................. *passim*

*Thompson v. Glob. Contact Servs., LLC*,
  2021 WL 3425378 (E.D.N.Y. Aug. 4, 2021).........................................................12

*Titan Custom Cabinets, Inc. v. Trust Bank*,
  2020 WL 7230589 (D. Md. Dec. 8, 2020)..............................................................18

*Torliatt v. Ocwen Loan Servicing, LLC*,
  2020 WL 1904596 (N.D. Cal. Apr. 17, 2020).............................................12, 16, 17

*Trinity Hotel Invs., LLC v. Sunstone OP Properties, LLC*,
2009 WL 303330 (C.D. Cal. Feb. 6, 2009)..............................................................................19

*Turner v. PHH Mortg. Corp.*,
467 F. Supp. 3d 1244 (M.D. Fla. 2020)..................................................................2, 8, 11, 18

*TV-3, Inc. v. Royal Ins. Co. of Am.*,
28 F. Supp. 2d 407 (E.D. Tex. 1998)....................................................................................25

*Weller v. JP Morgan Chase Bank, N.A.*,
2017 WL 3581099 (N.D. W. Va. Aug. 18, 2017)..................................................................16

## INTRODUCTION

Plaintiffs Lisa DeSimone ("DeSimone"), Deborah Snowden ("Snowden"), and Inez Washington ("Washington") (together, "Plaintiffs") filed this case—a nationwide putative class action—claiming that Select Portfolio Servicing, Inc. ("SPS"), their mortgage servicer, violated the federal Fair Debt Collection Practices Act ("FDCPA") and various state laws and breached their mortgage contracts, when SPS charged them a nominal fee they agreed to pay for special payment services they had requested.  The "EZ Pay" fee arose when Plaintiffs asked to submit their mortgage payments via phone or website, rather than by mail for free as their written mortgage agreements provide, and SPS agreed to this extracontractual arrangement conditioned on their agreement to pay that small convenience fee (alleged to be between $5.00 and $15.00).[1]

This Court already dismissed DeSimone's and Snowden's first amended complaint (Dkt. 55, "Order"), and Plaintiffs have used the opportunity of consolidating to amend Washington's claims too.  In its Order, after finding that the sole federal claim under the FDCPA was deficient because Plaintiffs had not plausibly alleged that SPS is a "debt collector" under the FDCPA, the Court "decline[d] to exercise jurisdiction over Plaintiffs' state law claims."  *Id.* at 6, 8.  For the reasons explained below, the Consolidated Amended Complaint ("CAC") should be dismissed for failure to state a claim and leave to amend (again) should be denied.

---

[1] Plaintiffs assert eight causes of action seeking a return of all the fees, statutory damages, and a range of other relief based on the charging of the EZ Pay fee.  On behalf of a nationwide class, DeSimone and Washington assert a claim for violation of the federal FDCPA (First Cause of Action).  Snowden does not assert an FDCPA claim, or any other federal cause of action.  Plaintiffs also assert the following state law claims.  On behalf of a nationwide class, Plaintiffs assert claims for breach of contract (Second Cause of Action) and violation of the covenant of good faith and fair dealing (Third Cause of Action).  On behalf of a New York Class, DeSimone asserts a claim for violation of New York General Business Law § 349 ("GBL") (Fourth Cause of Action).  On behalf of a Maryland Class, Snowden asserts claims for violations of the Maryland Consumer Debt Collection Act ("MCDCA") (Fifth Cause of Action) and the Maryland Consumer Protection Act ("MCPA") (Sixth Cause of Action).  On behalf of a California Class, Washington asserts claims for violations of California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") (Seventh Cause of Action) and Unfair Competition Law ("UCL") (Eighth Cause of Action).

As a threshold matter, the CAC should be dismissed in its entirety because there is no plausible allegation that Plaintiffs provided SPS with proper pre-suit notice and an opportunity to cure their concerns, as required by Paragraph 20 of each mortgage agreement.  The Court should enforce the contract and dismiss all of Plaintiffs' claims for this reason alone.  *See Giotta v. Ocwen Fin. Corp.*, 2016 WL 4447150, at *4 (N.D. Cal. Aug. 24, 2016), *aff'd sub nom. Giotta v. Ocwen Loan Servicing*, 706 F. App'x 421 (9th Cir. 2017).

In the event the CAC is not dismissed based on the notice and cure provision, the Court should dismiss Snowden and her Maryland claims out of the gate.  Snowden's FDCPA claim was dismissed in this Court's prior Order (Order at 8) and Snowden does not assert an FDCPA claim or any other federal claim in the CAC.  The Court thus does not have jurisdiction over Snowden or her claims, and her MCDCA and MCPA claims again should be dismissed on this basis.  *Id.*  ("[I]f a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well.").

Even if the Court considers the merits of the claims, the CAC should be dismissed because the sole federal cause of action, under the FDCPA, fails to state a claim, and the Court should decline to exercise jurisdiction over the state law claims, as it did before.

The federal FDCPA claim, brought by DeSimone and Washington, is deficient, as an initial matter, because the Act does not apply to the EZ Pay fees, which were not an existing "debt" that SPS tried to collect as a "debt collector" for someone else.  Instead, they were: (1) the fully-disclosed charge for an extra service (accepting payment electronically), assessed at the time the service was requested and rendered; and (2) paid directly to SPS and not owed to a third party.  *Estate of Campbell v. Ocwen Loan Servicing, LLC*, 467 F. Supp. 3d 1262, 1264-65 (S.D. Fla. 2020); *Turner v. PHH Mortg. Corp.*, 467 F. Supp. 3d 1244, 1247-48 (M.D. Fla. 2020).

2

The FDCPA claim would fail even if the statute applied.  There is no plausible allegation that SPS violated Section 1692(f), which prohibits collection of certain amounts that are not either "expressly authorized by the agreement creating the debt" or "permitted by law."  The fees are permitted by law because, among other reasons, a federal court consent order, which the Federal Trade Commission entered into with SPS in 2003, expressly allows fees—like the EZ Pay fees—so long as the fee is not prohibited by law or the loan instruments, is for a specific service requested by the borrower, and is assessed only after the fee is disclosed to the borrower and the borrower consents to pay it in exchange for the service.  The fees also are permitted by the common law of contract and the caselaw confirming that borrowers and mortgage servicers can enter into extracontractual agreements for the provision of extra services in exchange for a fee in these circumstances.  *See, e.g., Meintzinger v. Sortis Holdings, Inc*., 2019 WL 1471338, at *2 (E.D.N.Y. Apr. 3, 2019); *Thomas-Lawson v. Carrington Mortg. Servs*., *LLC*, 2021 WL 1253578, at *5-6 (C.D. Cal. Apr. 5, 2021).  In addition, Plaintiffs agreed, in the "Loan Charges" section of their mortgage contracts, that the absence of express authority in the Security Instrument to charge a specific fee is not a prohibition on charging the fee.  The CAC also alleges no plausible violation of Section 1692(e) as it identifies no "false, deceptive, or misleading representation" by SPS.  *Gallego v. Northland Grp. Inc*., 814 F.3d 123, 127-28 (2d Cir. 2016).

Even if the Court exercises jurisdiction over the state laws claims, Plaintiffs fail to state a claim—under New York law (DeSimone), Maryland law (Snowden), and California law (Washington)—as discussed below.

## <u>ARGUMENT</u>

**I.** **PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THEY EACH GAVE SPS THE REQUIRED PRE-SUIT NOTICE AND OPPORTUNITY TO CURE**.

Plaintiffs' lawsuit is barred because they do not adequately allege that they each provided SPS with pre-suit notice and an opportunity to cure their concerns.  Although Plaintiffs claim that their counsel informed SPS or the attorneys representing SPS (in a separate lawsuit) that they intended to file a class action based on fees charged for using certain payment methods (Dkt. 40, p. 22), Plaintiffs do not allege that they each provided notice to SPS that identified Plaintiffs or gave SPS a chance to cure their individual concerns.  Plaintiffs' contractual duty to avoid litigation, if possible, is an important protection for SPS—especially where, as here, the issue concerns a total of (at most) $75 each for DeSimone and Washington and $230 for Snowden.

This lawsuit squarely implicates Plaintiffs' contractual duty to provide pre-suit notice. Plaintiffs' mortgage agreements each similarly require pre-suit notice to SPS before any court action "that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument" (DeSimone) or "that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument" (Snowden and Washington).[2]

Plaintiffs' claims in this lawsuit are alleged to "arise[] from [SPS'] actions pursuant to [the mortgage agreements]"—one of which is, of course, the right SPS has to collect the payments secured by the mortgage—and they "allege[] that [SPS] has not fulfilled [its]

---

[2] *See* CAC Ex. A (Dkt. 59-1, "DeSimone Mortgage") ¶ 20; CAC Ex. B (Dkt. 59-2, "Snowden DOT") ¶ 20; CAC Ex. C (Dkt. 59-3) at Exhibit A ("Washington DOT") ¶ 20.

obligations [or duty] under [the mortgage agreement]"—allegedly by breaching the terms of the mortgage agreements.  CAC ¶¶ 142, 144.

Numerous courts have enforced notice and cure provisions substantively identical to these and dismissed claims concerning loan fees and charges, when the requisite notice has not been given.  *See, e.g., Giotta*, 706 F. App'x at 422; *Hill v. Nationstar Mortg. LLC*, 2015 WL 4478061, at *3 (S.D. Fla. July 6, 2015); *Johnson v. Countrywide Home Loans, Inc.*, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010); *Kurzban v. Specialized Loan Servicing, LLC*, 2018 WL 1570370, at *3 (S.D. Fla. Mar. 30, 2018); *Rodriguez v. Rushmore Loan Mgmt. Servs. LLC*, 2019 WL 423375, at *3-6 (N.D. Ill Feb. 4, 2019).[3]  Plaintiffs' failure to follow the contract requires dismissal of the entire CAC.

Plaintiffs' conclusory allegation that they "provided notice of this action to SPS or legal counsel for SPS and an opportunity to cure SPS' unlawful conduct" is legally insufficient to show compliance with the notice requirement.  Plaintiffs do not allege when and how notice was given or facts showing the notice complied with the requirements that it be written and sent to SPS' corporate address (as stipulated by the mortgage agreements) or that the notice actually identified each one of the Plaintiffs as the persons who were raising the concern.[4]  Plaintiffs' attempt to evade the notice requirement by contending notice would have been futile is wholly

---

[3] To the extent Plaintiffs may argue that the notice and cure provision only applies to the lender, and not to SPS as servicer, that simply is incorrect.  *See Giotta*, 706 F. App'x at 422 (under the "explicit[]" provisions of the Deed of Trust, "the Notice Provision requires notice to [the loan servicer]" as "an assign of the Lender"); *Rodriguez*, 2019 WL 423375, at *5 ("The Mortgage gives Defendant, as the loan servicer, an 'identifiable interest' in the Mortgage—*i.e.* 'an assignment'"); *Kurzban*, 2018 WL 1570370, at *3 ("a notice-and-cure provision in a mortgage applies to actions against a servicer").

[4] Plaintiffs' allegation that they provided notice of their claims via the complaints that they filed in the lawsuit, of course, does not satisfy the requirement that they provide *pre-suit* notice—the very purpose of the notice is to give SPS a chance to cure before filing suit.  *Estep v. Fed. Home Loan Mortg. Corp.*, 2014 WL 1276495, at *4 (S.D. W. Va. Mar. 27, 2014); *Allen v. JPMorgan Chase Bank, N.A.*, 2016 WL 1029334, at *2 (S.D. Miss. Mar. 14, 2016).

speculative.  The case should be dismissed and Plaintiffs can then give notice and provide SPS the opportunity to cure their individual concerns by making a full and complete refund of their EZ Pay fees.

**II.      THE COURT SHOULD DISMISS SNOWDEN AND HER CLAIMS.**

If the CAC is not dismissed under the notice and cure provision, the Court should dismiss Snowden and her claims, under the MCDCA and MCPA (Fifth and Sixth Causes of Action), at the outset.  In its Order, this Court instructed that if any of the Plaintiffs' "loans were not in default when [SPS] began servicing them, any amendment would be futile and the amended complaint would have to be dismissed" as to those Plaintiffs' claims.  Order at 9.  The Court found that "the [First] Amended Complaint fails to allege that [SPS] acted as a debt collector" under the FDCPA because Plaintiffs had "fail[ed] to specify . . . whether Plaintiffs' loans were in default [when SPS began servicing them]." *Id.* at 6.  Having dismissed the sole federal claim, under the FDCPA, the Court then "decline[d] to exercise jurisdiction over Plaintiffs' state law claims." *Id.* at 8.  Snowden's federal FDCPA claim was dismissed in the Court's prior Order (*id.*), and she did not assert any federal claim in the CAC.  The Court should decline to exercise jurisdiction over Snowden and her state law claims under the MCDCA and MCPA on this basis. *Id.* ("[I]f a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well.") (citing *Oneida Indian Nation of N.Y. v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir. 2011)).

**III.     THE CAC SHOULD BE DISMISSED BECAUSE THE SOLE FEDERAL CAUSE OF ACTION, UNDER THE FDCPA, FAILS TO STATE A CLAIM.**

If the Court does not dismiss for the reasons explained in Sections I and II above, the CAC should be dismissed in its entirety because the federal FDCPA claim fails on the merits,

and the Court should again decline to exercise jurisdiction over the state law claims and should dismiss those claims.

> **A.      The FDCPA Claim (First Cause of Action) Should Be Dismissed With Prejudice.**

> **1.      The FDCPA does not apply to the EZ Pay fee.**

The FDCPA does not apply to the EZ Pay fee for two separate and independent reasons: (1) the fee is not a "debt" and (2) SPS is not a "debt collector" with respect to the fee.  Dismissal of the First Cause of Action, by DeSimone and Washington, is required on this basis alone.

> a.    *The EZ Pay fee is not a "debt" regulated by the FDCPA.*

The EZ Pay fee was not an existing debt obligation owed by DeSimone and Washington, but rather a voluntary charge that they chose to incur to use SPS' pay-by-phone or pay-by-web service and that was assessed at the time the service was requested and rendered.  The FDCPA only applies to the collection of "debt," which the Act defines as an existing "obligation . . . to pay money arising out of a transaction . . . ." 15 U.S.C. § 1692a(5).  As the allegations in the CAC show, however, the EZ Pay fee was charged simultaneous with the services SPS provided when DeSimone and Washington requested to make their mortgage payments by phone or online.  CAC ¶¶ 6-8, 42, 46, 59-61.  The fees therefore were new service charges, not existing "debts" arising out of a prior transaction.  Other courts facing FDCPA claims similar to this one have found that the FDCPA does not apply to a convenience fee like the EZ Pay fee—charged at the time the optional service is provided—because the fee is not a statutorily-covered debt obligation.  *See Estate of Campbell*, 467 F. Supp. 3d at 1264-65 ("Logically, it is difficult to define as a debt something that isn't yet owed. . . . The debt portion of the payment is the overdue mortgage payment."); *Bardak v. Ocwen Loan Servicing, LLC*, 2020 WL 5104523, at *4

7

(M.D. Fla. Aug. 12, 2020) (convenience fee was not "debt" under the FDCPA when the charge

was incurred to use "entirely optional, expedited online and telephonic payment methods").[5]

        b.   *SPS is not a "debt collector" under the FDCPA with respect to the EZ Pay fees.*

DeSimone's and Washington's claims fall outside the purview of the FDCPA for the

additional reason that SPS is not a "debt collector" with respect to the EZ Pay fees.  The FDCPA

defines a "debt collector" as "any person who . . . regularly collects or attempts to collect,

directly or indirectly, debts owed or due or asserted to be *owed or due another*."  15 U.S.C. §

1692a(6) (emphasis added).  Specifically excluded from the definition of "debt collector" is a

person engaged in conduct that "concerns a debt which was originated by such person."  *Id.* §

1692a(6)(F)(ii).  Since the EZ Pay fee was charged by and retained by SPS (CAC ¶¶ 209, 227)[6],

it was not a fee collected for "another" and so the FDCPA does not apply.  *Turner*, 467 F. Supp.

3d at 1247 ("the convenience fee" charged by PHH "is not a debt owed another, and, therefore, is

not actionable under" the FDCPA); *accord Garbutt v. Ocwen Loan Servicing,* 2020 WL

5641999, at *3 (M.D. Fla. Sept. 22, 2020); *Bardak*, 2020 WL 5104523, at *3-4; *Kelly*, 2020 WL

4428470, at *2-3; *Lang*, 2020 WL 5104522, at *2-3; *Reid*, 2020 WL 5104539, at *1.

      **2.**   **DeSimone and Washington Fail to Adequately Allege Any Substantive
Violation of Section 1692f or Section 1692e.**

Even if the FDCPA applied to the EZ Pay fees (and it does not), the First Cause of Action

must be dismissed because it fails to state a substantive claim.[7]

---

[5] *See also Kelly v. Ocwen Loan Servicing, LLC*, 2020 WL 4428470, at *2-3 (M.D. Fla. July 31, 2020);
*Reid v. Ocwen Loan Servicing, LLC*, 2020 WL 5104539, at *1 (S.D. Fla. May 4, 2020); *Lang v. Ocwen
Loan Servicing, LLC*, 2020 WL 5104522, at *2-3 (M.D. Fla. July 17, 2020).

[6] *See also id.* ¶¶ 42, 43, 46-48, 59-61.

[7] To the extent the FDCPA allegations concern fees charged prior to August 20, 2019—one year before
the initial complaint was filed—those allegations are time-barred.  *See Schuh v. Druckman & Sinel,
L.L.P.,* 602 F. Supp. 2d 454, 466 (S.D.N.Y. 2009) ("Under the FDCPA, a claim for a violation must be
brought 'within one year from the date on which the violation occurs.'") (citing 15 U.S.C. § 1692k(d)).

DeSimone and Washington allege that by charging EZ Pay fees, SPS violated Section 1692f(1), which prohibits collection of an amount not either "expressly authorized by the agreement creating the debt" or "permitted by law."  They also allege that by representing that it was entitled to collect EZ Pay fees, SPS violated Section 1692e(2) and (10) which prohibit, respectively, "[t]he false representation of the character, amount, or legal status of any debt," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt."  CAC ¶¶ 140, 143, 144.

a.   *DeSimone and Washington have not plausibly alleged a violation of Section 1692f.*

To state a claim under Section 1692f, DeSimone and Washington must show both a credible claim the fee is not authorized in the contract and that it is not permitted by law.  *See, e.g., Reyes v. N.A.R. Inc.*, 546 F. Supp. 3d 1031, 1041 (D. Utah 2021).  The EZ Pay fees do not trigger either part of this test, never mind both of them.

i.   The EZ Pay fee is authorized by the Mortgage Agreements.

DeSimone and Washington are wrong in contending that their mortgage agreements do not allow for the EZ Pay fee.  Instead, their mortgage agreements each recognize that extracontractual agreements are expressly permitted through both the "Loan Charges" provision in Paragraph 14 and the "Governing Law" provision in Paragraph 16.  The "Loan Charges" section of each agreement states that "the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee" (DeSimone) and "the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee" (Washington).[8]  The mortgage agreements further underscore the parties' ability to contract for a

---

[8] DeSimone Mortgage ¶ 14; Washington DOT ¶ 14.

service fee outside of the original writing, each noting in the "Governing Law" section that local or federal law may permit such additional agreements or may be silent on the right of the parties to contract but "such silence does not mean that Lender and I cannot agree by contract" (DeSimone) and "such silence shall not be construed as a prohibition against agreement by contract" (Washington).[9]

Under these terms, the mortgage agreements authorize the parties to make extracontractual agreements, at least as to matters not otherwise prohibited by the contract or by law.  New York and California law, which govern DeSimone's and Washington's mortgage agreements (*id.*; CAC ¶ 94), allow parties to a written contract to make subsequent agreements to govern their relationship.  *El-Nahal v. FA Mgmt., Inc*., 5 N.Y.S.3d 201, 202 (N.Y. App. Div. 2015); *PG-USA, Inc. v. St. Andrews Prods. Co.*, 2009 WL 10700241, at *3 (C.D. Cal. July 2, 2009); *see also Meintzinger,* 2019 WL 1471338, at *2 ("new contract" for pay-by-phone service permissible); *Thomas-Lawson*, 2021 WL 1253578, at *6 (same); *Flores v. Collection Consultants of California*, 2015 WL 4254032, at *10 (C.D. Cal. Mar. 20, 2015) (fee charged as a result of a "separate[]" agreement for alternative payment method permissible).  And, as noted above, both the "Loan Charges" and "Governing Law" provisions of the mortgage agreements preserve the state law right of the parties to enter into such agreements.

In circumstances like the one at bar, the charge is permitted because it is the product of a "separate agreement between the parties to ensure same-day posting and processing of [the borrower's] mortgage payments—an optional service [the borrower] voluntarily incurred."

---

[9] DeSimone Mortgage ¶ 16; Washington DOT ¶ 16.

*Turner*, 467 F. Supp. 3d at 1247.[10]  As Judge Cogan observed in considering a collector's offer of a convenience service like SPS' EZ Pay options, "[n]othing in the FDCPA requires the collection company to accept payments by telephone, and thus nothing prohibits it from offering to enter into a new contract with the debtor, *i.e.*, 'for $6, I will give you the added convenience of paying by phone.'"  *Meintzinger,* 2019 WL 1471338, at *2; *accord Thomas-Lawson*, 2021 WL 1253578, at *6 ("nothing in the FDCPA . . . prohibits [defendant] from offering to enter into a new contract with the debtor, *i.e.*, for the added convenience of paying by phone") (quoting *Lish v. Amerihome Mortg. Co.,* 2020 WL 6688597, at *8 (C.D. Cal. Nov. 10, 2020)) ("convenience fees . . . are an entirely separate charge incurred for providing an entirely separate service").[11]

Many courts have recognized that fees charged when a borrower voluntarily chooses to use a preferred payment method (such as pay-by-phone or pay-by-web), instead of paying their mortgage by mail for free, are allowed under a written mortgage agreement even if the fee is not stated in the written document.  *See, e.g., Cassese v. Washington Mut., Inc*., 2008 WL 8652499, at *1-3, *12 (E.D.N.Y. June 27, 2008).[12]

Indeed, SPS prevailed on the issue of the legality of charging the fee many years ago.  In *Chatman v. Fairbanks Capital Corp.*, the court held that SPS' predecessor Fairbanks could enter into extracontractual agreements to offer services for payment by phone or internet in exchange

---

[10] *See also Estate of Campbell*, 467 F. Supp. 3d at 1265 (convenience fee was a permissible "separate transaction"); *Kelly*, 2020 WL 4428470, at *2-3 (same); *Reid*, 2020 WL 5104539, at *1 (same); *Lang*, 2020 WL 5104522, at *2-3 (same).

[11] *See also Flores*, 2015 WL 4254032, at *10 (dismissing claim that defendant charged an unlawful transaction fee to accept credit card payments where the "consumer must choose to affirmatively and separately opt-in to this alternative method"); *Kier v. Ocwen Loan Servicing, LLC*, 122 F. Supp. 3d 786, 789 (N.D. Ill. 2015) (dismissing claim that "rush processing fee" was unlawful because "servicers and consumers can agree to the manner in which payments are to be made").

[12] *Accord Davis v. Homecomings Fin.,* 2006 WL 2927701, at *2-3 (W.D. Wash. Oct. 10, 2006); *Cappellini v. Mellon Mortg. Co.,* 991 F. Supp. 31, 33, 39-40 (D. Mass. 1997); *Jerik v. Columbia Nat'l, Inc.*, 1999 WL 1267702, at *3 (N.D. Ill. Sept. 30, 1999).

for the fee and was "not required to specifically state every service-related fee in [p]laintiffs' note or mortgage."  2002 WL 1338492, at *3 (N.D. Ill. June 18, 2002).[13]

          ii.    <u>The EZ Pay fee is permitted by law.</u>

DeSimone and Washington baldly allege that the EZ Pay fee is not "permitted by law." This is wrong for at least two reasons.  First, as discussed immediately above, courts recognize that borrowers and loan servicers in a home mortgage servicing relationship are legally permitted to agree that the mortgage company will provide an extra service for the convenience of the borrower so long as the borrower agrees to pay a fee for that service.  That is what is alleged to have happened here.

Second, independent of that legal permission, federal law—an order of a United States district court—permitted *SPS in particular* to charge service fees such as the EZ Pay fees.  A Consent Order entered by the federal district court in Massachusetts, in a case brought against SPS by the Federal Trade Commission, set forth fee standards that, if met, permit customer charges.  *See* Declaration of Alyssa A. Sussman ("Sussman Decl.") Ex. 1, *United States v. Fairbanks Capital Corp.*, No. 1:03-cv-12219 (D. Mass.), ECF 6 ("2003 Order").[14]  Specifically, the FTC Orders allow SPS to collect reasonable servicing-related fees, like the EZ Pay fees, "for a specific service requested by a consumer that is assessed and/or collected only after clear and

---

[13] *See also Mariscal v. Flagstar Bank, FSB*, 2020 WL 4804983, at *1, *4 (C.D. Cal. Aug. 4, 2020) (dismissing claim that processing fees for phone-based mortgage payments were unlawful where plaintiffs "preferred the convenience of paying by phone"); *Torliatt v. Ocwen Loan Servicing, LLC*, 2020 WL 1904596, at *5 (N.D. Cal. Apr. 17, 2020) (dismissing claim that processing fees for mortgage payments made online were prohibited because the fees were consistent with the mortgage agreement).

[14] SPS is the successor by name change to the defendant Fairbanks, as reflected in a modification of the Order that did not alter the relevant provision.  *See* Sussman Decl. Ex. 2, Modified Stipulated Final Judgment and Order, *United States v. Select Portfolio Servicing, Inc. (formerly Fairbanks Capital Corp.)*, No. 1:03-cv-12219 (D. Mass.), ECF 96 ("2007 Modified Order").  The 2003 Order and the 2007 Modified Order are referred to collectively herein as the "FTC Orders."  The Court may take judicial notice of the FTC Orders because they are public court records.  *Thompson v. Glob. Contact Servs., LLC*, 2021 WL 3425378, at *5 (E.D.N.Y. Aug. 4, 2021).

conspicuous disclosure of the fee is provided to the consumer and explicit consent is obtained

from the consumer to pay the fee in exchange for the service, and such fee is not otherwise

prohibited by law or the loan instruments."  Sussman Decl. Ex. 1 at 10, Ex. 2 at 10.  Plaintiffs do

not allege any facts that would plausibly suggest the EZ Pay fees were not permitted by these

federal court orders.

DeSimone, a New York plaintiff, alleges that the EZ Pay fees were illegal because they

violated a regulation of the state Department of Financial Services ("DFS"), as the fee is "not

reasonably related to the cost of rendering the service."  CAC ¶ 154 (citing 3 N.Y.C.R.R. §

419.5(b)) (previously codified as 3 N.Y.C.R.R. § 419.10(b)).  The regulation is irrelevant

because it was enacted effective December 18, 2019, which was after the dates (CAC ¶ 42)

DeSimone was charged the subject fees.  *See* N.Y. Comp. Codes R. & Regs. tit. 3, § 419.5.  In

any event, the DFS specifically includes "pay by phone fee[s]" in its list of "permissible standard

fees and charges" that mortgage servicers may assess as long as they are disclosed and consented

to.[15]

Washington, a California plaintiff, alleges in circular fashion that the EZ Pay fees were

illegal because they violated the Rosenthal Act.  CAC ¶ 154.  But, as explained in Section IV.D.

below, the Rosenthal Act claim is based on the alleged FDCPA violation as well as,

independently, the Rosenthal Act's requirement that the fee is "permitted by law."  The

Rosenthal Act claim thus fails because, as explained above with respect to the FDCPA and in

---

[15] *See Mortgage Loan Servicer Registration Frequently Asked Questions*, NEW YORK STATE
DEPARTMENT OF FINANCIAL SERVICES, *available at* https://www.dfs.ny.gov/apps_and_licensing/
mortgage_companies/Mortgage_Loan_Servicers_Frequently_Asked_Questions (last visited Apr. 14,
2022).  The Court may take judicial notice of information on a government website.  *Leger v. Kalitta*,
2018 WL 2057142, at *3 (E.D.N.Y. Jan. 26, 2018); *Ligon v. Doherty*, 208 F. Supp. 2d 384, 386
(E.D.N.Y. 2002); *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 262
(S.D.N.Y. 2019), *aff'd,* 788 F. App'x 85 (2d Cir. 2019).

Section IV.D below with respect to the Rosenthal Act specifically, the EZ Pay fee is legally permissible.  Washington has failed to state a claim under the Rosenthal Act, and so that cannot be the basis of her FDCPA claim.

In light of the authorities above, the EZ Pay fees were, indeed, permitted by law.

      b.  *DeSimone and Washington have not plausibly alleged a violation of Section 1692e.*

The Court can put aside the theory that a violation of Section 1692f here can trigger a violation of Section 1692e, because SPS has demonstrated Section 1692f was not violated.

The allegation that Section 1692e was violated because SPS made misrepresentations to DeSimone and Washington fares no better.  A plaintiff alleging a violation of Section 1692e must identify a specific actionable representation.  The CAC tries to meet that requirement by asserting SPS made "false representations that it was entitled to collect Pay-to-Pay Fees."  CAC ¶ 144.  But there is no detail provided in the CAC of when, how, and to whom that representation was made.  Because many of the communications about the EZ Pay fee are alleged to have taken place orally, over numerous telephone calls (*e.g.*, CAC ¶¶ 42, 46, 47, 59, 60), the lack of detail is particularly troubling.  The vague and conclusory allegation that there was a misrepresentation is insufficient to plausibly show that SPS made any actionable statement at all.  *See Gallego,* 814 F.3d at 127-28; *Redhead v. Winston & Winston, P.C.,* 2002 WL 31106934, at *3 (S.D.N.Y. Sept. 20, 2002).[16]

*     \*     \*     \**

Because the sole federal claim under the FDCPA must be dismissed, as set forth above, the Court should again decline to exercise jurisdiction over the state law claims.  Order at 8.

---

[16] *Accord Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 172-73 (2d Cir. 2015); *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 304-5 (2d Cir. 2020); *Qader v. Rushmore Recovery*, 667 F. Supp. 2d 304, 306 (S.D.N.Y. 2009).

Those claims should be dismissed. *Id.* ("[I]f a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well.").[17]

## IV.   THE STATE LAW CLAIMS SHOULD BE DISMISSED ON THE MERITS.

Even if the Court exercises jurisdiction over the state law claims, those claims should be dismissed with prejudice on the merits.

### A.   Plaintiffs' Claims For Breach of Contract (Second Cause of Action) and Violation of the Covenant of Good Faith and Fair Dealing (Third Cause of Action) Should Be Dismissed With Prejudice.

#### 1.   The Breach of Contract Claim Should Be Dismissed Because Plaintiffs Have Not Plausibly Alleged Any Breach.

The Court should dismiss the Second Cause of Action, brought by all three Plaintiffs, because there is no plausible allegation of any breach. As noted above, the express language of Plaintiffs' mortgage agreements precludes their theory that the agreements were breached because the EZ Pay fees were "not authorized or permitted" (CAC ¶ 151). Instead, each agreement states, in the "Loan Charges" section, that "the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee." Snowden DOT ¶ 14; Washington DOT ¶ 14; *accord* DeSimone Mortgage ¶ 14 ("the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee"). And each agreement notes, in the "Governing Law" section, that local or federal law may permit additional agreements or may be silent on the right of the parties to contract but "such silence shall not be construed as a prohibition against agreement by contract." Snowden DOT ¶ 16; Washington

---

[17] *See also Bardak,* 2020 WL 5104523, at *4 n.8 (declining to exercise jurisdiction over state law claim after dismissing the underlying federal FDCPA claim).

DOT ¶ 16; *accord* DeSimone Mortgage ¶ 16 ("such silence does not mean that Lender and I cannot agree by contract").

Numerous court have rejected plaintiffs' arguments that charging certain fees in a mortgage servicing relationship—including convenience fees for making mortgage payments over the phone or online—breached mortgage agreements, relying on "Loan Charges" provisions substantively identical to the provision in Plaintiffs' mortgage agreements. *See, e.g., Torliatt*, 2020 WL 1904596, at *5 (dismissing breach of contract claim because fee for mortgage payments made online was consistent with "Loan Charges" provision of mortgage); *Beer v. Nationstar Mortg. Holdings, Inc*., 2015 WL 13037309, at *3-4 (E.D. Mich. July 15, 2015) (finding no breach as to challenged fees based on "Loan Charges" provision in mortgage); *Weller v. JP Morgan Chase Bank, N.A.*, 2017 WL 3581099, at *7 (N.D. W. Va. Aug. 18, 2017) (same); *Lish*, 2020 WL 6688597, at *8 (same).[18]

In addition, as referenced above, the state law governing each Plaintiff's mortgage agreement allows parties to a written contract to make subsequent agreements to govern their relationship. *El-Nahal*, 5 N.Y.S.3d at 202; *Horsetail Techs., LLC v. Delaware State Police Fed. Credit Union*, 2020 WL 3402302, at *21 (D. Md. June 19, 2020); *PG-USA, Inc.*, 2009 WL 10700241, at *3.[19]  Here, each Plaintiff affirmatively entered into contracts with SPS, giving them the legal right under state law to make a payment via their preferred payment method and SPS the legal right under state law to charge a convenience fee for use of the special payment

---

[18]*See also Heald v. Ocwen Loan Servicing, LLC*, 2014 WL 4639410, at *4-6 (M.D. Fla. Sept. 16, 2014) (dismissing FDCPA claim based on challenged fees because mortgage contained "Loan Charges" provision); *Manos v. MTC Fin*., *Inc*., 2018 WL 6220051, at *6 (C.D. Cal. Apr. 2, 2018), *aff'd,* 773 F. App'x 452 (9th Cir. 2019) (same as to RICO claim).

[19] *See also Meintzinger,* 2019 WL 1471338, at *2; *Thomas-Lawson*, 2021 WL 1253578, at *6; *Flores*, 2015 WL 4254032, at *10.

service Plaintiffs chose.[20]  And, as noted above, both the "Loan Charges" and "Governing Law"

provisions preserve the state law right of the parties to enter into such agreements.

Plaintiffs' theory that the EZ Pay fee cannot be charged to them unless specifically

named in the written mortgage agreement is untenable given the express language of the

mortgage agreements, clear state law, and the authorities cited in this Section and Section

III.A.2.a. above.  *See Chatman,* 2002 WL 1338492, at *3 (dismissing breach of contract claim

based on similar convenience fee); *Mariscal*, 2020 WL 4804983, at *1, *4  (same); *Torliatt,*

2020 WL 1904596, at *5 (same); *Thomas-Lawson*, 2021 WL 1253578, at *6 (same); *Lish*, 2020

WL 6688597, at *8 (same).[21]

> **2.   The Breach of Contract Claim Should Be Dismissed Because Plaintiffs
>       Agreed to Pay the EZ Pay Fees In Exchange for the Service of Paying By
>       Phone or Website***.*

The contract claim also cannot stand in light of Plaintiffs' agreement with SPS to pay the

EZ Pay charge.  Plaintiffs admit that they each requested that SPS provide them with the service

of making a payment by telephone or online where SPS withdrew the funds and the fee from

each of their accounts.  CAC ¶¶ 42, 46, 59-61.  And they acknowledge that they knew an EZ Pay

fee charge would be imposed for that service.  *Id*.  Indeed, DeSimone talked about the fee with

---

[20] *See Sheehan v. Atlanta Int'l Ins. Co*., 812 F.2d 465, 469 (9th Cir. 1987) (recognizing the "importance of
the notion of freedom of contract and the desirability of finality of private dispute resolutions"); *2138747
Ontario, Inc. v. Samsung C & T Corp*., 103 N.E.3d 774, 777 (N.Y. 2018) ("[I]t is a deeply rooted
principle of New York contract law that parties may contract as they wish in the absence of some
violation of law or transgression of a strong public policy."); *Anne Arundel Cnty. v. Hartford Accident &
Indem. C*o., 621 A.2d 427, 433 (Md. 1993) (refusing to invalidate clause where doing so "would
improperly infringe on the public interest in having individuals exercise broad powers to structure their
own affairs by making legally enforceable promises, a concept which lies at the heart of the freedom of
contract principle").

[21] *See also Net2Globe Int'l, Inc. v. Time Warner Telecom of New York*, 273 F. Supp. 2d 436, 456
(S.D.N.Y. 2003) (dismissing breach of contract claim where challenged conduct was authorized under the
contract); *BVR Dev., LLC v. CalAtlantic Grp., Inc.,* 2019 WL 919560, at *6 (D. Md. Feb. 25, 2019)
(same); *Brien v. J.P. Morgan Chase Bank, N.A.*, 2010 WL 11597806, at *5 (C.D. Cal. July 9, 2010)
(same).

SPS' representatives each time she incurred and paid it, always negotiating the charge down in amount from $15 to $7.50.  *Id.* ¶ 42.  Snowden and Washington, too, recount having discussed the fee with SPS every time.  *Id.* ¶¶ 46, 47, 59, 60.[22]  It would be illogical to permit Plaintiffs to make a claim for breach of contract where they actually agreed to the conduct that forms the basis for their claim.  As discussed above, many courts recognize, including in lawsuits just like this one which challenge convenience fees for paying a loan by phone or online, that such agreements and related fees are permissible and required dismissal of similar lawsuits.  *See, e.g., Turner*, 467 F. Supp. 3d 1244; *Bardak*, 2020 WL 5104523; *Estate of Campbell*, 467 F. Supp. 3d 1262; *Kelly*, 2020 WL 4428470; *Reid*, 2020 WL 5104539; *Lang*, 2020 WL 5104522; *Mariscal*, 2020 WL 4804983.  Plaintiffs' extracontractual agreements are fully consistent with federal and state law, as outlined above.  The Second Cause of Action should be dismissed for this further reason.

### 3.  The Tagalong Good Faith And Fair Dealing Claim Should Be Dismissed.

As to Snowden, the Third Cause of Action must be dismissed because "[i]n Maryland, there is no separate or independent cause of action for breach of good faith and fair dealing" apart from a claim for breach of the contract.  *Davis v. Wilmington Fin., Inc.*, 2010 WL 1375363, at *8 (D. Md. Mar. 26, 2010).[23]

---

[22] The mortgage statements that Plaintiffs received from SPS, which Plaintiffs refer to in paragraphs 43, 48, 58, 61, 62, plainly disclose that if they wished to make their mortgage payment by phone or website, a fee of "up to $15.00" would be charged and then showed those charges after they had been paid.  *See* Sussman Decl. Exs. 3-9 at pp. 1-2.  The Court may consider Plaintiffs' monthly mortgage statements showing the EZ Pay fees they paid because Plaintiffs reference them in the CAC.  *Araujo v. PennyMac Loan Servs., LLC*, 2015 WL 5664259, at *5 n.4 (E.D.N.Y. Sept. 23, 2015) (considering mortgage servicing letter on motion to dismiss because complaint incorporates it by reference); *Diaz v. NBC Universal, Inc.*, 536 F. Supp. 2d 337, 342 (S.D.N.Y. 2008) (on motion to dismiss, the court "may consider the full text of documents that are quoted in the complaint"), *aff'd*, 337 F. App'x 94 (2d Cir. 2009).

[23] *Accord Titan Custom Cabinets, Inc. v. Trust Bank*, 2020 WL 7230589, at *5 (D. Md. Dec. 8, 2020) (good faith and fair dealing "is simply not a recognized cause of action under Maryland law").

As to DeSimone (New York) and Washington (California), the Third Cause of Action fails to state a claim for two independent reasons.  First, a good faith and fair dealing claim can survive dismissal "only if it is based on allegations different from those underlying the accompanying breach of contract claim."  *Great Lakes Reinsurance (UK) SE v. Herzig*, 413 F. Supp. 3d 177, 183-84 (S.D.N.Y. 2019); *accord Trinity Hotel Invs., LLC v. Sunstone OP Properties, LLC*, 2009 WL 303330, at *3 (C.D. Cal. Feb. 6, 2009).  Here, the exact conduct Plaintiffs allege for their implied covenant claim forms the basis for the breach of contract claim.[24]  Second, trying to evade this rule, the CAC suggests that in supposedly breaching the contract, SPS abused discretion that it had been granted and acted "to contravene [Plaintiffs'] reasonable contractual expectations."  CAC ¶ 166.  While abuse of granted discretion can in some circumstances animate an implied covenant theory, the CAC does not identify any term in the mortgage agreements where discretion was granted to SPS that SPS then abused.  This failing, too, requires dismissal.  *See Perks v. TD Bank, N.A.,* 444 F. Supp. 3d 635, 641 (S.D.N.Y. 2020) (contract must contemplate the exercise of discretion); *Palmiotto v. Am.'s Servicing Co.*, 2012 WL 12868482, at *4 (S.D. Cal. Sept. 26, 2012) (same).

## B.   DeSimone's Claim for Violation of New York General Business Law § 349 (Fourth Cause of Action) Should Be Dismissed With Prejudice.

DeSimone asserts that SPS violated the GBL by engaging in "deceptive acts or practices."  CAC ¶¶ 174-177.  DeSimone does not identify any particular deceptive statements or actions made or taken by SPS, referring only to the "acts, practices, misrepresentations and omissions alleged herein."  *Id.* ¶ 175.  Based on the same reasoning discussed above with respect to the misrepresentation claims in the First Cause of Action, under FDCPA Section 1692e, and

---

[24] *Compare* CAC ¶ 167 (alleging SPS abused its obligations of good faith and fair dealing "by imposing improper Pay-to-Pay Fees") *with id.* ¶ 151 (alleging SPS breached mortgage agreements "by imposing Pay-to-Pay Fees . . . not authorized or permitted by [the Mortgages]").

caselaw under the GBL specifically, conclusory and non-specific assertions of deception are insufficient to state a claim. *See Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287–88 (E.D.N.Y. 2009) ("Plaintiff may not maintain a cause of action under [GBL] § 349 where she has failed to identify any 'material' 'deceptive acts' engaged in by the defendant.").[25]

### C.   Snowden's Claims For Violations of the MCDCA and MCPA Should Be Dismissed With Prejudice.

#### 1.   Snowden's MCDCA Claim Fails.

Snowden's MCDCA claim is based on Section 14-202(8), which provides, "In collecting or attempting to collect an alleged debt[,] a collector may not . . . [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." CAC ¶ 185. Snowden cannot establish either of the required elements of her claim: (1) that SPS did not have a right to charge the fee and (2) that SPS knew it did not have a right to charge the fee. *Pugh v. Corelogic Credco, LLC*, 2013 WL 5655705, at *4 (D. Md. Oct. 16, 2013). First, as explained in Sections III.A. and IV.A.1., 2., Snowden has not plausibly alleged that SPS did not have a right to charge her the EZ Pay fee after she requested the special payment service and discussed the fee with SPS.[26] In addition to the multitude of authorities cited above finding that convenience fees like the EZ Pay fees are legally permissible, it is notable that SPS (perhaps unlike other mortgage servicers) had express permission to charge the fee under the consent orders it had entered into with the FTC.[27]

---

[25] *See also Singh v. NYCTL 2009-A Trust*, 2016 WL 3962009, at *11-12 (S.D.N.Y. July 20, 2016), *aff'd*, 683 F. App'x 76 (2d Cir. 2017) (dismissing GBL claim because plaintiff did not adequately plead any deceptive act); *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (affirming dismissal as plaintiff failed to plead any deceptive act).

[26] For this reason, Snowden cannot base her MCDCA claim on any FDCPA violation.

[27] Although the Fourth Circuit Court of Appeals reversed dismissal of an MCDCA claim in *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370 (4th Cir. 2022), this case presents different circumstances than *Alexander* for at least three reasons. First, the Fourth Circuit's decision to reverse turned, in

Second, and consequently, the CAC contains no plausible factual allegations that SPS somehow knew it had no right to charge EZ Pay fees.  *See* CAC ¶¶ 185-186.  Snowden offers only a formulaic statement that "SPS knew that the mortgage agreements of Plaintiff Snowden and the Maryland Class did not expressly authorize SPS to collect Pay-to-Pay fees."  *Id.* ¶ 186. That is not sufficient to withstand a motion to dismiss.[28]  *See Mitchell v. U.S. Bank Nat'l Ass'n*, 2018 WL 4679949, at \*7 (D. Md. Sept. 28, 2018) (dismissing MCDCA claim where there was no plausible allegation mortgage servicer had actual knowledge of unauthorized conduct); *Flowers v. Baltax 2017, LLC*, 2019 WL 3501584, at \*9 (D. Md. Aug. 1, 2019) (same); *Ensor v. Wells Fargo Bank Nat'l Ass'n*, 2022 WL 345513, at \*5 n.3 (D. Md. Feb. 4, 2022) (same).

## 2.   Snowden's Derivative MCPA Claim Fails Too.

Snowden argues initially that the MCPA was violated because the MCDCA was violated. CAC ¶ 199.  Since Snowden has failed to state a claim for violation of the MCDCA, that forecloses this theory of recovery.  *Pugh*, 2013 WL 5655705, at \*5.  Snowden also posits a standalone violation of the MCPA, because SPS allegedly did not disclose that the fees were not permitted under the contract, that the fees violated the MCDCA, and that the fees were not reasonable.  CAC ¶ 200.  As an initial matter, the first two supposed facts have been shown to

---

substantial part, on the need to overturn the district court's erroneous view that the defendant there was not a "collector" under the MCDCA.  *Id.* at 372.  Here, SPS does not argue it is not a "collector" under the MCDCA.  Second, the defendant in *Alexander* "concede[d] that the [mortgage] agreements creating the debt do not expressly authorize the convenience fees."  *Id.* at 377.  Here, there is no such concession. *See* Sections III.A.2.a.i. and  IV.A.1. above.  Third, unlike in *Alexander*, there is no plausible allegation that SPS did not have a right—or knew it did not have a right—to charge the fees because, as previously explained, SPS was legally permitted to charge them.  Indeed, SPS has a right to charge the fees because, among other reasons, the consent orders it entered into with the FTC gave SPS permission to charge the fees.

[28] It is, of course, not surprising that there is nothing in Snowden's allegations to suggest SPS "knew" it could not charge EZ Pay fees.  The FTC Orders and caselaw, including the *Chatman* case SPS had successfully defended, established that SPS is permitted to charge convenience fees for special services.

not be true: as discussed above, the fees were permitted under the mortgage agreement and the fees assessed on Snowden did not violate the MCDCA.

Snowden's remaining allegation is that SPS failed to disclose that the fees supposedly were not "reasonably related" to SPS' costs for the service she requested. *Id*. This bare statement does not support a plausible claim for deception. Snowden's assertion that the fee was 'too high' is unsupported by any facts and entirely speculative. It fails the plausibility test for that reason alone. Further, even if accurate, there is every reason to reject Snowden's apparent premise that by quoting the amount of the EZ Pay fee and then imposing it upon request, SPS made some kind of implied representation as to how it had been calculated, or that SPS was required to make any disclosure about how it had been calculated. "If [Plaintiffs] have specific active misrepresentations or omissions in mind, fairness requires that they state them with considerably greater particularity than they have done in their Complaint." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007); *accord Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 458 (D. Md. 2014) ("[c]haracterizing the fee as a 'service charge' is not objectively false: It is the fee that customers are charged for the service that [defendant] provides").

With respect to this last theory of deception, Snowden also offers no allegation that she relied on some belief that the fee was "reasonable" (and SPS' supposed failure to correct that belief) when she decided to agree to the EZ Pay fee so she could make payments in a certain way. Nor is there anything to suggest that Snowden would have done anything differently, or what she would have done, or why. *See Ensor*, 2022 WL 345513, at *5 (dismissing MCPA claim where plaintiff "does not direct the court to specific demonstrations of reliance").[29] In the absence of credible allegations of reliance, the MCPA claim must be dismissed.

---

[29] *See also Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013) ("A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice.");

**D.** **Washington's Claims For Violations of the Rosenthal Act and UCL Should Be Dismissed With Prejudice.**

In the Seventh Cause of Action, Washington alleges that the EZ Pay fees violate Section 1788.17 of the Rosenthal Act because the fees violate the FDCPA, and that the fees violate Section 1788.14(b) of the Rosenthal Act because they are not "permitted by law."[30]   The Court should dismiss the 1788.17 claim because, as explained in Section III.A., there was no FDCPA violation.  Washington's allegation that the fees violated Section 1788.14(b) similarly is predicated on the theory that the fees are not "permitted by law" because they were not "expressly set out in [the] mortgage."  CAC ¶¶ 203, 208.  The Section 1788.14(b) claim cannot stand because, as shown in Section III.A. above and as case law specific to the Rosenthal Act confirms, the fees were "permitted by law."  *Mariscal*, 2021 WL 4260879, at *6 (dismissing Rosenthal Act claim).[31]   Indeed, as noted above, the fees are legally permissible under the common law of contract, by and under SPS' agreements with the FTC, and by the wealth of caselaw confirming that agreements between mortgage servicers and borrowers are enforceable.

Washington's derivative UCL claim (Eighth Cause of Action) should be dismissed because it is predicated on the same faulty theory underlying her Rosenthal Act and FDCPA claims.  CAC ¶ 219 ("SPS's conduct violates the Rosenthal Act and the FDCPA [by charging EZ

---

*Sindermann v. Wells Fargo Bank, N.A.*, 2014 WL 7369812, at *4-5 (D. Md. Dec. 23, 2014) (dismissing MCPA claim based on conclusory allegations where plaintiff failed to allege reliance).

[30] To the extent Washington alleges that the EZ Pay fees were not legally added to the existing debt obligation under Section 1788.13(e), the Court can dismiss that allegation on its face because, as noted above, the EZ Pay fees were not added to the existing mortgage debt.  Instead, they were separate charges incurred and paid at the same time the EZ Pay services were requested and rendered (*see supra,* Section III.A.1.a.).

[31] *Accord Thomas-Lawson*, 2021 WL 1253578, at *6 (dismissing Rosenthal Act claim because it "incorrectly presuppose[d] that pay-to-pay fees are prohibited by the [Rosenthal Act], but they are not"); *see also Lish*, 2020 WL 6688597, at *3-4 (dismissing Rosenthal Act claim; "Defendant simply offered Plaintiff the *option* to pay by telephone for a fee and Plaintiff opted to take advantage of the optional convenience and incur the charge for doing so") (emphasis in original).

Pay fees]").  That alone is sufficient to dismiss Washington's claim that the fees are "unlawful"

under the UCL.  *Lish*, 2020 WL 6688597, at *4 (dismissing similar claim based on convenience

fees charged by mortgage servicer; "because Plaintiff has failed to state a claim under either the

Rosenthal Act or the FDCPA, the UCL claim also fails").[32]  To the extent Washington contends

that the charging of the EZ Pay fee is "unfair" under the UCL because the practice is "immoral,

unethical, oppressive, and unscrupulous" and "substantially injurious to consumers" (CAC ¶

235), those conclusory allegations cannot support the claim.  Where, as here, "[plaintiff] has not

identified a public policy implicated by Pay-to-Pay fees, nor has she pleaded facts sufficient to

show the collection of such fees is 'immoral, unethical, oppressive or unscrupulous,'" the claim

necessarily fails.  *Elbert,* 2020 WL 4818605, at *3 (plaintiff's allegation that mortgage servicer

charged convenience fees that are "well above the actual cost of providing phone payments

service" was "insufficient [] to support" claim under "unfair" prong of UCL).[33]

## V.       IF THE CAC IS NOT DISMISSED, THE COURT SHOULD DISMISS OR STRIKE THE FEE-PROHIBITING STATE CLASS.

In the event the CAC survives, the Court should, at minimum, dismiss or strike the "Fee-

Prohibiting State Class" brought by Snowden and Washington.  CAC ¶ 110.  Pursuant to Fed. R.

Civ. P. 12(f), the court may strike from a pleading any "redundant, immaterial, impertinent or

scandalous matter."  Motions to strike under Rule 12(f) are a well-recognized means of weeding

out legally inadequate class claims early in the case.  *See Borgese v. Baby Brezza Enters. LLC,*

---

[32] *See also Mariscal*, 2020 WL 4804983, at *4 (same; "[s]ince [Plaintiffs'] Rosenthal Act claim is deficient . . . , their UCL claim also fails"); *Thomas-Lawson*, 2021 WL 1253578, at *6 (same; dismissing UCL claim that "mimic[ed] or rel[ied] on the alleged FDCPA claim" after dismissing FDCPA claim); *Elbert v. RoundPoint Mortg. Servicing Corp.,* 2020 WL 4818605, at *3 (N.D. Cal. Aug. 19, 2020) (same; dismissing UCL claim that was "wholly derivative" of failed Rosenthal Act claim).

[33] *Accord Aguirre v. Wells Fargo Bank, N.A.*, 2015 WL 4065245, at *13 (C.D. Cal. July 2, 2015) (dismissing UCL claim where plaintiffs failed to identify any recognized public policy implicated by the alleged conduct, "much less . . . such a policy in the context of the unfairness prong of the UCL").

2021 WL 634722, at *4 (S.D.N.Y. Feb. 18, 2021); *Camacho v. City of New York*, 2020 WL 4014902, at *3-4 (S.D.N.Y. July 16, 2020); *see also* Fed. R. Civ. P. 23(d)(1)(D).

The "Fee-Prohibiting State Class" should be dismissed or stricken because it is limited to borrowers who "reside in [a] Fee Prohibiting State" and is based on the enumerated "debt collection statutes" of those states. *See* CAC ¶¶ 92, 110.[34]  Neither Snowden (Maryland resident) nor Washington (California resident), who purport to represent this class, have standing to bring a cause of action under the law of a Fee-Prohibiting State; neither has a mortgage agreement governed by the law of a Fee-Prohibiting State, and neither would be a member (never mind a typical representative) of any "Fee-Prohibiting State Class."[35]  The Court should dismiss or strike the "Fee-Prohibiting State Class" on its face.

## <u>CONCLUSION</u>

For the foregoing reasons, SPS respectfully requests that the Court dismiss Plaintiffs' CAC in its entirety.

---

[34] The CAC defines the "Fee-Prohibiting States" and the "relevant statutes" as: Texas (Tex. Fin. Code Ann. § 392.303(2)); West Virginia (W. Va. Code Ann. § 46A-2-128(d)); Pennsylvania (73 Pa. Stat. Ann. § 2270.4(b)(6)(i)); Oregon (Or. Rev. Stat. Ann. § 646.639(2)(n)); Iowa (Iowa Code Ann. § 537.7103(5)(d)); and New Hampshire (N.H. Rev. Stat. Ann. § 358-C:3(X)).  CAC ¶ 92(a)-(f).

[35] In addition to mortgage agreements' limitation of applicable law to federal law and the law of the state where the property is located, the law is clear that the state statutes Plaintiffs cite do not apply extraterritorially.  *Ivie v. AstraZeneca Pharms., LP*, 2021 WL 5167283, at *3 (D. Or. Nov. 5, 2021); *State ex rel. Haught v. Donnahoe*, 174 W. Va. 27, 32 (1984); *New Hampshire Gas & Elec. Co. v. Morse*, 42 F.2d 490, 493 (D.N.H. 1930); *Blackman v. Lincoln Nat'l Corp.*, 2012 WL 6151732, at *4 (E.D. Pa. Dec. 10, 2012); *Jahnke v. Deere & Co.*, 912 N.W.2d 136, 143 (Iowa 2018); Iowa Code Ann. § 537.1201; *TV-3, Inc. v. Royal Ins. Co. of Am.*, 28 F. Supp. 2d 407, 417 (E.D. Tex. 1998).

Dated: April 22, 2022                    Respectfully submitted,

                                         /s/ Alyssa A. Sussman
                                         Allison J. Schoenthal
                                         Alyssa A. Sussman
                                         Goodwin Procter LLP
                                         The New York Times Building
                                         620 Eighth Avenue
                                         New York, NY 10018
                                         Tel.: 212.459.7284
                                         Fax: 617.801.8854
                                         Email: ASchoenthal@goodwinlaw.com
                                                 ASussman@goodwinlaw.com

                                         Thomas M. Hefferon (*pro hac vice*)
                                         Goodwin Procter LLP
                                         1900 N Street, N.W.
                                         Washington, DC 20036-1612
                                         Tel.: 202.346-.000
                                         Fax: 202.346.4444
                                         Email: thefferon@goodwinlaw.com

                                         *Attorneys for Defendant Select Portfolio Servicing, Inc.*

26

## CERTIFICATE OF SERVICE

I, Alyssa A. Sussman, hereby certify that on April 22, 2022, I caused a true and correct copy of the foregoing to be served by electronic mail to all counsel of record pursuant to prior agreement.


<u>/s/ Alyssa A. Sussman</u>
Alyssa A. Sussman