## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA DeSIMONE, DEBORAH R. SNOWDEN, and INEZ CLARA WASHINGTON, on behalf of themselves and all others similarly situated, | Case No. 20-cv-03837 |
| Plaintiffs, | Hon. Pamela K. Chen, U.S.D.J.<br>Hon. Taryn A. Merkl, U.S.M.J. |
| v. | |
| SELECT PORTFOLIO SERVICING, INC., | |
| Defendant. | |

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT

Rachel Geman
Catherine P. Humphreville
**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
250 Hudson Street, 8th Fl.
New York, NY 10013
(212) 355-9500
rgeman@lchb.com
chumphreville@lchb.com

Ross E. Shanberg
**SHANBERG, STAFFORD & BARTZ LLP**
5031 Birch Street
Newport Beach, CA 92660
(800) 519-9810
rshanberg@ssbfirm.com

Hassan A. Zavareei
Kristen G. Simplicio
**TYCKO & ZAVAREEI LLP**
1828 L Street NW, Ste. 1000
Washington, DC 20036
(202) 973-0900
hzavareei@tzlegal.com
ksimplicio@tzlegal.com

Catherine E. Anderson
**GISKAN SOLOTAROFF & ANDERSON LLP**
90 Broad Street, 2nd Floor
New York, NY 10004
(212) 847-8315
canderson@gslawny.com

James Lawrence Kauffman
**BAILEY & GLASSER**
1055 Thomas Jefferson Street NW, Suite 450
Washington, DC 20007
(202) 463-2101
jkauffman@baileyglasser.com

Joseph S. Tusa
**TUSA P.C.**
55000 Main Road, 2nd Fl.
P.O. Box 566
Southold, NY 11971
(631) 407-5100
joseph.tuspc@gmail.com

*Counsel for Plaintiffs and Proposed Counsel for the Classes and Subclasses*

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 1

II.     SUMMARY OF PLEADING AND STATEMENT OF FACTS....................................... 2

III.    PROCEDURAL HISTORY........................................................................... 3

IV.     ARGUMENT .......................................................................................... 4

        A.      This Court Possesses Federal Question and Diversity Jurisdiction. ...................... 4

        B.      Plaintiffs Pled a Valid Claim Under the FDCPA Section 1692f(1)....................... 5

                1.      SPS is a "debt collector" and the FDCPA regulates the Collection of
                        Mortgage Debts and Related Fees, including Pay to Pay Fees.................. 5

                2.      Section 1692f(1) and Related State Statutes Prohibits Servicers from
                        Collecting Pay to Pay Fees. ....................................................... 7

                3.      SPS's Pay to Pay Fees Are Not Authorized By Its 2003 Consent Order;
                        They Violate It. ................................................................... 10

                4.      SPS's Pay to Pay Fees are Not Otherwise Permitted by Law.................. 11

        C.      Plaintiffs Plead Violations of FDCPA Section 1692e. ......................................... 13

        D.      Snowden States A Claim Under The Maryland Consumer Debt Collections
                Act........................................................................................................ 14

        E.      Snowden States a Claim Under the Maryland Consumer Protection Act ........... 16

        F.      Washington States a Claim Under the Rosenthal Act and California's  Unfair
                Competition Law. ................................................................................... 18

        G.      DeSimone States a Claim Under N.Y. General Business Law § 349.................. 19

        H.      Plaintiffs Plead Valid Claims for Breach of Their Mortgage Agreements........... 20

                1.      Plaintiffs Plead an Express Breach of Contract ...................................... 20

                2.      Plaintiffs Provided Pre-Filing Notice and an Opportunity to Cure Even
                        Though None was Required....................................................... 20

        I.      Plaintiffs Plead Violations of the Duties of Good Faith and Fair Dealing ........... 22

        J.      There is No Basis to Strike the Fee-Prohibiting State Class................................ 24

V.      CONCLUSION............................................................................................ 24

## TABLE OF AUTHORITIES

**Cases**

*Abercrombie v. Wells Fargo Bank, N.A.*,
   417 F. Supp. 2d 1006 (N.D. Ill. 2006) .................................................................................. 22

*Alexander v. Carrington Mortg. Servs.*, LLC,
   23 F.4th 370 (4th Cir. 2022)......................................................................................... passim

*Arashteh v. Mount Vernon Fire Ins. Co.*,
   2014 WL 3974172 (D. Md. Aug. 12, 2014)....................................................................... 24

*Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*,
   822 F. Supp. 2d 505 (D. Md. 2011) ................................................................................... 17

*Belcher v. Ocwen Loan Servicing, LLC*,
   2016 WL 7243100 (M.D. Fla. Dec. 15, 2016) .................................................................. 22

*Blockbuster, Inc. v. Galeno*,
   472 F.3d 53 (2d Cir. 2006) .................................................................................................. 4

*Boule v. Hutton*,
   328 F.3d 84 (2d Cir. 2003) ................................................................................................ 19

*Bourgeois v. Live Nation Entertainment, Inc.*,
   3 F. Supp. 3d 423 (D. Md. 2014) ...................................................................................... 17

*Brooks v. Cama Self Directed IRA, LLC*,
   2019 WL 418412 (D. Md. Jan. 31, 2019) .......................................................................... 15

*Campbell v. MBI Assocs., Inc.*,
   98 F. Supp. 3d 568 (E.D.N.Y. 2015)............................................................................ passim

*Cappellini v. Mellon Mortg. Co.*,
   991 F. Supp. 31 (D. Mass. 1997) ...................................................................................... 12

*Casey v. Citibank, N.A.*,
   915 F. Supp. 2d 255 (N.D.N.Y. 2013) .............................................................................. 23

*Chatman v. Fairbanks Cap. Corp.*,
   2002 WL 1338492 (N.D. Ill. June 18, 2002) .................................................................... 12

*Chavis v. Blibaum & Assocs., P.A.*,
   264 A.3d 1254 (Md. 2021)................................................................................................. 15

*City of New York v. Tavern on the Green Int'l, LLC*,
   351 F. Supp. 3d 680 (S.D.N.Y. 2018)............................................................................... 22

*Clark v. Bank of Am., N.A.*,
   2020 WL 902457 (D. Md. Feb. 24, 2020).......................................................................... 20

*Cohen v. JP Morgan Chase & Co.*,
   498 F.3d 111 (2d Cir. 2007).............................................................................................. 20

*Cole v. Fed. Nat'l Mortgage Ass'n*,
   2017 WL 623465 (D. Md. Feb. 14, 2017).......................................................................... 16

*Colon v. Nationstar Mortg., LLC*,
   2015 WL7422598 (S.D. Fla. Nov. 17, 2015) ..................................................................... 22

*Conteh v. Shamrock Cmty. Ass'n, Inc.*,
   648 F. App'x 377 (4th Cir. 2016), *aff'd*, 126 A.3d 40 (Md. 2015)........................................ 15

*Cooke v. Carrington Mortg. Servs.*,
  2019 WL 3241128 (D. Md. July 18, 2019) ................................................................ 15

*Cooke v. Carrington Mortgage Servs.*,
  2018 WL 6323116 (D. Md. Dec. 3, 2018) ................................................................. 15

*Dalton v. Educ. Testing Serv.*,
  663 N.E.2d 289 (N.Y. 1995) ............................................................................ 22, 23

*Davis v. Homecomings Fin.*,
  2006 WL 2927701 (W.D. Wash. Oct. 10, 2006) ........................................................ 12

*DiFlauro v. Bank of Am., N.A.*,
  2020 WL 10111966 (C.D. Cal. Dec. 2, 2020) ........................................................... 18

*DiMatteo v. Sweeney, Gallo, Reich & Bolz, L.L.P.*,
  619 F. App'x 7 (2d Cir. 2015) ......................................................................... 8, 12

*Dumont v. Litton Loan Servicing, LP*,
  2014 WL 815234 (S.D.N.Y. Mar. 3, 2014) .............................................................. 19

*Elbert v. Roundpoint Mortg. Serv. Corp.*,
  2020 WL 6940941 (N.D. Cal. Nov. 25, 2020) ............................................................ 6

*Ensor v. Wells Fargo Bank Nat'l Ass'n*,
  2022 WL 345513 (D. Md. Feb. 4, 2022) ................................................................. 16

*Evans v. Select Portfolio Servicing, Inc.*,
  2020 WL 5848619 (E.D.N.Y. Sep. 30, 2020) ....................................................... 19, 23

*Fannie Mae v. Obradovich*,
  2016 WL 1213920 (N.D. Ill. Mar. 29, 2016) ........................................................... 20

*Flournoy v. Rushmore Loan Mgmt. Servs., LLC*,
  2020 WL 1285504 (D. Md. Mar. 17, 2020) .............................................................. 17

*Flowers v. Baltax 2017, LLC*,
  2019 WL 3501584 (D. Md. Aug. 1, 2019) ............................................................... 15

*Foster v. Green Tree Servicing, LLC*,
  2017 WL 5151354 (M.D. Fla. Nov. 2, 2017) ............................................................ 22

*Fusco v. Ocwen Loan Servicing LLC*,
  2020 WL 2519978 (S.D. Fla. Mar. 2, 2020) ....................................................... 6, 8, 13

*Garay v. Select Portfolio Servicing Inc.*,
  2020 WL 10823745 (S.D. Fla. Aug. 7, 2020) ........................................................... 22

*Gillis v. Household Fin. Corp. III*,
  2019 WL 3412621 (D. Md. July 29, 2019) .......................................................... 14, 17

*Giotta v. Ocwen Fin. Corp.*
  706 F. App'x 421 (9th Cir. 2017) ...................................................................... 21

*Giotta v. Ocwen Fin. Corp.*,
  2015 WL 8527520 (N.D. Cal. Dec. 11, 2015) .......................................................... 21

*Hart v. Rick's NY Cabaret Int'l, Inc.*,
  967 F. Supp. 2d 955 (S.D.N.Y. 2014) ................................................................... 4

*Hymes v. Bank of Am., N.A.*,
  408 F. Supp. 3d 171 (E.D.N.Y. 2019) ................................................................. 20

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
   2022 WL 1396522 (D. Md. May 3, 2022) ............................................................ 17

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
   440 F. Supp. 3d 447 (D. Md. 2020) .................................................................... 17

*Jerik v. Columbia Nat., Inc.*,
   1999 WL 1267702 (N.D. Ill. Sept. 30, 1999)..................................................... 12

*Koch v. Acker, Merrall & Condit Co.*,
   967 N.E.2d 675 (N.Y. 2012) ............................................................................. 20

*Langston v. Gateway Mortg. Grp., LLC*,
   2021 WL 234358 (C.D. Cal. Jan. 15, 2021)...................................................... 18

*Lembeck v. Arvest Cent. Mortg. Co.*,
   498 F. Supp. 3d 1134 (N.D. Cal. 2020) ................................................. 13, 18, 19

*Levin v. HSBC Bank USA, N.A.*,
   2012 WL 7964121 (N.Y. Sup. Ct. June 26, 2012)............................................ 23

*Lindblom v. Santander Consumer USA, Inc.*,
   2016 WL 2841495 (E.D. Cal. May 9, 2016) ....................................................... 6

*Lindsay v. Rushmore Loan Mgmt.*,
   2016 WL 1169957 (D. Md. Mar. 25, 2016) ...................................................... 15

*McFadden v. Nationstar Mortg. LLC*,
   2021 WL 3284794 (D.D.C. July 30, 2021), *report and recommendation adopted*,
   2022 WL 1001253 (D.D.C. Apr. 4, 2022) ............................................... 8, 9, 13

*McKell v. Washington Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006) .......................................................................... 19

*McShannock v. JP Morgan Chase Bank N.A.*,
   354 F. Supp. 3d 1063 (N.D. Cal. 2018) ............................................................ 22

*Meintzinger v. Sortis Holdings, Inc.*,
   2019 WL 1471338 (E.D.N.Y. Apr. 3, 2019)..................................................... 12

*Mills v. Select Portfolio Servicing, Inc.*,
   2018 WL 5113001 (S.D. Fla. Oct. 19, 2018) .................................................... 22

*Mitchell v. U.S. Bank Nat'l Ass'n*,
   2018 WL 4679949 (D. Md. Sept. 28, 2018) ..................................................... 16

*Nick's Garage, Inc. v. Progressive Cas. Ins.*,
   875 F.3d 107 (2d Cir. 2017)............................................................................... 20

*Patriarch Partners, LLC v. Axis Ins. Co.*,
   758 F. App'x 14 (2d Cir. 2018).......................................................................... 21

*Questar Builders, Inc. v. CB Flooring, LLC*,
   978 A.2d 651 (Md. Ct. App. 2009) ................................................................... 23

*Quinteros v. MBI Assocs., Inc.*,
   999 F. Supp. 2d 434 (E.D.N.Y. 2014).................................................... 5, 8, 12

*Schmidt v. Wells Fargo Home Mortg.*,
   2011 WL 1597658 (E.D. Va. Apr. 26, 2011) ................................................... 21

*Schwartz v. I.C. Sys., Inc.*,
   2018 WL 1582224 (E.D.N.Y. Mar. 30, 2018) ................................................... 5

*Secured Asset Mgmt., LLC v. Dushinsky,*
    2019 WL 4861411 (E.D.N.Y. Sep. 30, 2019) ........................................................ 21

*Shakespeare v. Compu-Link Corp.,*
    848 F. App'x 474 (2d Cir. 2021) .......................................................................... 20

*Shami v. Nat'l Enter. Sys.,*
    2010 WL 3824151 (E.D.N.Y. Sept. 23, 2010) ............................................... passim

*Sher v. SAF Fin., Inc.,*
    2011 WL 4835700 (D. Md. Oct. 11, 2011) .......................................................... 23

*Simmet v. Collection Consultants of Calif.,*
    2016 WL 11002359 (C.D. Cal. Jul. 7, 2016) .............................................. 6, 8, 14

*Simmons v. Md. Mgmt. Co.,*
    269 A.3d 369 (Md. Ct. Special App. 2022) ................................................... 15, 16

*Smith v. State Farm Mut. Auto. Ins. Co.,*
    93 Cal. App. 4th 700 (2001) ................................................................................. 19

*Spagnola v. Chubb Corp.,*
    574 F.3d 64 (2d Cir. 2009) ................................................................................... 19

*St. Breux v. U.S. Bank,*
    919 F. Supp. 2d 1371 (S.D. Fla. 2013) ................................................................ 22

*Thomas-Lawson v. Carrington Mort. Servs.,*
    9th Cir. No. 21-55459, Dkt. 22 .............................................................................. 7

*Torliatt v. Ocwen Loan Serv., LLC,*
    2020 WL 1904596 (N.D. Cal. Apr. 17, 2020) ....................................................... 8

*Tuttle v. Equifax Check,*
    190 F.3d 9 (2d Cir. 1999) ........................................................................... 5, 8, 12

*Tysenn v. Select Portfolio Serv., Inc.,*
    2015 U.S. Dist. LEXIS 97696 (S.D. Fla. May 14, 2015) ..................................... 14

*Un Boon Kim v. Shellpoint Partners, LLC,*
    2016 WL 1241541 (S.D. Cal. Mar. 30, 2016) ..................................................... 22

*Watson v. HomeBridge Fin. Servs., Inc.,*
    2022 WL 125278 (D. Md. Jan. 13, 2022) ............................................................ 16

*West v. Costen,*
    558 F. Supp. 564 (W.D. Va. 1983) ...................................................................... 12

*Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.,*
    946 F.2d 1003 (2d Cir. 1991) .............................................................................. 22

## Statutes

15 U.S.C. § 1692a ....................................................................................................... 5

15 U.S.C. § 1692e .................................................................................................. 6, 13

15 U.S.C. § 1692f ................................................................................................ passim

15 U.S.C. § 1692k ....................................................................................................... 4

15 U.S.C. § 1692n ..................................................................................................... 10

28 U.S.C. § 1331 ........................................................................................................ 4

28 U.S.C. § 1332(d) ............................................................................................. 1

28 U.S.C. § 1367 ................................................................................................. 4

Cal. Bus. & Prof. Code § 17200 ......................................................................... 19

Cal. Civ. Code § 1788.13(e) ............................................................................... 18

Cal. Civ. Code § 1788.14(b) ............................................................................... 18

Cal. Civ. Code § 1788.17 ............................................................................... 7, 24

Md. Code Ann., Com. Law § 13-301(9) ............................................................. 17

Md. Code Ann., Com. Law § 13-301(14) ........................................................... 16

Md. Code Ann., Com. Law § 14-202(8) ............................................................. 14

Md. Code Ann., Com. Law § 14-202(11) ..................................................... 7, 14, 24

Md. Code, Com. Law § 13-301(1) ...................................................................... 16

Md. Code, Com. Law § 13-301(3) ...................................................................... 16

Md. Code, Com. Law § 13-303(5) ...................................................................... 16

N.Y. GBL § 349 .................................................................................................. 19

## Regulations

Md. Code Regs. 09.03.06.10 ............................................................................... 17

Md. Code Regs. 09.03.06.20(a) .......................................................................... 23

## I.   INTRODUCTION

Defendant Select Portfolio Servicing, Inc. ("SPS") is one of a few mortgage servicers in the United States still charging borrowers extra "Pay to Pay" or "EZ Pay" fees  (the "Fees") when they pay their mortgage online or over the phone, a practice the Consumer Financial Protection Bureau ("CFPB"), dozens of attorneys general, and most courts have concluded is unlawful and unfair. Plaintiffs Lisa DeSimone of New York, Deborah Snowden of Maryland, and Inez Washington of California (collectively, "Plaintiffs") bring this class action to hold SPS accountable for its violations of federal and state law for imposing the Fees.

Since SPS's last motion to dismiss, even more courts have weighed in and agree with Plaintiffs on the illegality of these Fees. In particular, on January 19, 2022, the Fourth Circuit issued a unanimous decision in *Alexander v. Carrington Mortg. Servs.*, LLC, 23 F.4th 370 (4th Cir. 2022), reversing a decision SPS relied on in prior motions and holding these Fees violate section 1692f(1) of the Fair Debt Collection Practices Act ("FDCPA") and a parallel Maryland law. In so doing, *Alexander* joined the majority of district courts in rejecting the sorts of arguments raised by SPS in this case. Nevertheless, SPS relegates *Alexander* to a footnote, while also ignoring relevant Second Circuit law. Instead, it hinges its defenses to a few poorly reasoned outlier cases. Its arguments must be rejected.

SPS's non-FDCPA arguments are equally without merit. *First*, this Court possesses both federal question and diversity subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). *Second*, Plaintiffs have more than sufficiently pled their claims for express breach of standard mortgage agreements, and breach of the duties of good faith and fair dealing. *Third*, despite the fact that it previously admitted that Plaintiff Washington provided pre-filing notice, SPS errantly contends both she, along with Plaintiffs DeSimone and Snowden did not. But they too provided notice multiple times, even though under no obligation to do so. *Fourth*, Plaintiffs' state statutory claims are each validly pled, for many of the same reasons the Fees violate the FDCPA, and other reasons specific to those laws. Lastly, SPS's motion to strike one of Plaintiffs' class claims is premature and unfounded. SPS's motion should be denied.

## II.   SUMMARY OF PLEADING AND STATEMENT OF FACTS

SPS is a mortgage loan servicer that operates nationwide. ¶ 30.[1]  Each time a mortgage borrower whose loan is serviced by SPS makes a loan payment online or over the phone, SPS charges the borrower a Pay-to-Pay Fee of up to $15.00. ¶ 33. Plaintiffs each have a mortgage loan serviced by SPS. ¶¶ 6–8, 39, 44, 49–5, Exs. A–C. When SPS commenced servicing Plaintiffs DeSimone and Washington's loans, both were in default. ¶¶ 41, 55, 58.[2]  Plaintiffs each made payments by phone and when they did so SPS charged them multiple Pay to Pay Fees  of either $7.50 or $15.00. ¶¶ 42, 46, 59–60. Snowden sometimes also makes mortgage payments online, for which SPS charged her either $15.00 or $5.00. ¶ 46.

The cost for SPS to process these payments is well below the amounts it charged borrowers. SPS pockets the difference as profit. ¶34. Not only is that practice illegal and in breach of standardized mortgage agreements, but SPS is already paid by the lender a negotiated fees for its services. ¶ 24. It costs SPS between $0.37 and $0.75 per internet or phone payment, much less than the $7.50 - $15 its charges borrowers in Pay to Pay Fees . *Id.* ¶ 34. The cost to SPS is even less since SPS admittedly does not use a third party to process online or phone payments. *Id.* When SPS agreed to receive its negotiated servicing fee, it did so regardless of how the borrower elects to pay the mortgage. ¶ 35.

Mortgage lending in this country is largely standardized, and the uniform covenants in form mortgage and deed of trust agreements <u>do not</u> allow SPS to charge the Fees. *Id.* ¶¶ 3–4, 20–22, 95–103, Exs. A–C. Plaintiffs' mortgage agreements, like other mortgage agreements incorporating model language from Fannie Mae, contain language barring the Lender from charging Fees "prohibited by this Security Instrument or by Applicable law." *Id.* ¶¶ 96–102. Plaintiffs' mortgage

---

[1]  Cites to "¶" are to the operative Consolidated Class Action Complaint, Dkt. 59 ("CCAC").

[2]  In its prior dismissal order, Dkt. 55, the Court *sua sponte* raised the issue of whether of whether Plaintiffs' loans were in default with SPS assumed servicing, a requirement to plead a FDCPA claim. SPS does not dispute that Plaintiffs DeSimone's and Washington's loans were in default. ¶¶ 41, 55, 58. Ms. Snowden does not plead a FDCPA claim.

agreements also expressly permitted them to make payments (without penalty) by electronic payment methods. ¶¶ 26, 29.

Plaintiffs each gave SPS notice of their intent to file suit regarding the Fees and a reasonable opportunity to cure these breaches, but SPS failed to do so. ¶¶ 132–33.

Finally, there is broad agreement that Pay to Pay fees are illegal as numerous regulators and attorneys general have taken issue with them. ¶¶ 68-70. 33 state attorneys general, including those of New York, Maryland and California, have decried these fees, ¶ 68, and the New York Attorney General has sued a number of lenders for the practice. ¶ 69. Likewise, the CFPB, which has the authority to interpret the FDCPA, has taken issue with these Fees "given that consumers have no ability to shop around for a better deal," and has observed that "it is generally cheaper for collectors to accept payment by phone or online than to accept payment by mail." ¶ 70.

## III.   PROCEDURAL HISTORY

DeSimone filed this action on August 20, 2020.[3] Snowden joined an amended complaint on February 5, 2021. Dkts. 1, 24. They alleged violations of the FDCPA, New York and Maryland statutes and breach of contract. SPS moved to dismiss. Dkts. 35-41. On January 4, 2022, the Court granted dismissal on a few narrow bases without prejudice. Dkt. 55.

Washington filed her original action alleging violations of the FDCPA and California law in the Central District of California on August 24, 2020. SPS answered the complaint on October 19, 2020, then filed a motion to stay or transfer.[4] After the court stayed the case, on May 24, 2021, the parties agreed to transfer the action to this District, where it was related to this action. *See* E.D.N.Y. Case No. 21-cv-02991 Dkts. 1, 19, 33, 38-42.

---

[3] Another plaintiff was named in that complaint, who has since voluntarily dismissed her claim.

[4] That complaint made all the same claims Washington makes in the operative CCAC, but SPS appears to believe it has a better chance of success in this Court and filed an improper motion to dismiss. It should be denied as to Washington for that reason. *See, e.g., Wyles v. Sussman*, 2019 WL 6899069 (C.D. Cal. Aug. 6, 2019) (motion to dismiss barred by prior answer); *Waddle v. Unum Grp.*, 2017 WL 11610732 (E.D. Tenn. Oct. 25, 2017) ("A 12(b)(6) motion to dismiss is improper here because Defendant previously answered Plaintiff's complaint, and Plaintiff's amended complaint adds little to its original complaint."

Thereafter, all Plaintiffs filed a consent motion to consolidate the two cases and filed the operative CCAC on February 10, 2022. Dkt. 59, 60.

**IV.    ARGUMENT**

> **A.    This Court Possesses Federal Question and Diversity Jurisdiction.**

This Court possesses federal question subject matter jurisdiction as a result of the Plaintiffs' FDCPA claims, and supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1331, 1367; 15 U.S.C. § 1692k(d); ¶12. The Court independently has diversity jurisdiction over all claims pled in this putative class action under CAFA. ¶¶ 13-15. SPS argues that the Court should dismiss Snowden's state law claims, and further argues that if the Court dismisses DeSimone and Washington's FDCPA claims, it should decline to exercise jurisdiction over their state law claims. But "CAFA provides the federal district courts with original jurisdiction to hear a class action if [1] the class has more than 100 members, [2] the parties are minimally diverse, and [3] the matter in controversy exceeds the sum or value of $5,000,000." *Hart v. Rick's NY Cabaret Int'l, Inc.*, 967 F. Supp. 2d 955, 960 (S.D.N.Y. 2014) (quoting *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013)) (alternation in original).

Plaintiffs have alleged, and SPS does not challenge, all three elements for CAFA jurisdiction. ¶¶ 6-9, 13-15; *see also Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006) (confirming minimal diversity exists where at least one plaintiff and one defendant are citizens of different states); *Hart*, 967 F. Supp. 2d at 961 ("[T]here is 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.") (citations omitted). Instead, SPS relies on this Court's prior order declining to exercise jurisdiction over Plaintiffs' state law claims, while eliding that SPS did not previously contest CAFA.[5]

---

[5] Even apart from CAFA jurisdiction, Ms. Snowden, like Ms. Washington, has a state law claim identical to the FDCPA claims advanced here. *See infra* § b. 2. SPS admits that this Court has CAFA jurisdiction over Washington's claims. *See* Dkt. 59, Ex. D at ¶ 64.

**B.     Plaintiffs Pled a Valid Claim Under the FDCPA Section 1692f(1)**

**1.     SPS is a "debt collector" and the FDCPA regulates the Collection of Mortgage Debts and Related Fees, including Pay to Pay Fees.**

SPS argues that the FDCPA does not apply to Pay to Pay Fees because such fees are not "debt," and that SPS is not acting as a "debt collector" in charging the fees. Mot. at 7-8. But there can be no serious argument that the FDCPA regulates "debt collectors" when they collect "fees" from people who owe "debt." The Second Circuit has applied the FDCPA to a dispute over a "service charge" for a dishonored check, *Tuttle v. Equifax Check*, 190 F.3d 9, 11 (2d Cir. 1999), and courts in this district routinely apply the FDCPA to Pay to Pay Fees. *See, e.g., Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 435 (E.D.N.Y. 2014) (plaintiffs sufficiently alleged that Pay to Pay Fees  violated the FDCPA); *Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568, 582 (E.D.N.Y. 2015) (same); *Schwartz v. I.C. Sys., Inc.*, 2018 WL 1582224, at *3 (E.D.N.Y. Mar. 30, 2018) (same); *Shami v. Nat'l Enter. Sys.*, 2010 WL 3824151, at *2 (E.D.N.Y. Sept. 23, 2010) (same).

SPS contends it cannot be a "debt collector" because it is not collecting "debts" regulated by the FDCPA. The FDCPA defines "debt collectors" as those who collect on "debt" that is originated by and owed to a third party. 15 U.S.C. §§ 1692a(5), a(6)(F)). The CCAC pleads that SPS is in the business of collecting on debt originated by and owed to others, and that it collected from Plaintiffs' mortgage debt that was both originated by and owed to another. ¶¶ 30-32, 41-43, 53-61.[6] Accordingly, SPS is a "debt collector" within the meaning of the statute.

The fact that Pay to Pay Fees are not *themselves* "debt" is irrelevant to SPS's status, because the FDCPA was passed "to eliminate abusive debt collection practices," 15 U.S.C. § 1692a, *which includes regulating the fees charged by debt collectors when collecting on debt. See Alexander,* 23 F.4th at 375 ("[I]t is plain that, by collecting borrowers' monthly mortgage payments, [the mortgage servicer] is collecting a debt."); *Campbell,* 98 F. Supp. 3d at 579-80 (collecting cases finding FDCPA liability for fees); *Fusco v. Ocwen Loan Servicing LLC*, 2020 WL 2519978, at *4

---

[6] SPS admitted in the SPS Answer that it "collects mortgage payments, charges fees, and initiates foreclosures . . . where there is a valid assignment." ¶¶ 31 and Ex. D at ¶ 34.

(S.D. Fla. Mar. 2, 2020) (servicer did not need to be a debt collector *as to the Fee*, it "need only be a debt collector as to the underlying debt"). In other words, because SPS acted as a "debt collector" in collecting mortgage debt, the FDCPA regulates *all of its conduct in connection with that debt collection activity*, including when it engages in specific activities that involve money not otherwise meeting the definition of "debt." *See, e.g.,* 15 U.S.C. § 1692f(1) (prohibiting "debt collectors" from collecting "any amount," such as a "fee" that is not "expressly authorized by the agreement creating the debt or prohibited by law"); *id.* § 1692e(2) (prohibiting "debt collectors" from making false representations, about "any services rendered or compensation which may be lawfully received"). As this district has observed, "if a court finds that a defendant's conduct fits within one of the eight categories, there is no need to also find a violation of the general proscription." *Campbell,* 98 F. Supp. 3d at 582.

SPS argues that Pay to Pay Fees are not "debt" within the meaning of Section 1692a(5) because the Fees are a "voluntary charge" for using SPS's service of online and telephonic payment methods. But nothing in the FDCPA limits its coverage to amounts incurred involuntarily —in fact, most debt is incurred voluntarily. *See id.* at 580-82 (analyzing statute and finding no support for excluding optional payments).  What matters is whether the fees were charged by a "debt collector" when Plaintiffs were paying their debt. *See, e.g.*, *id., Alexander*, 23 F.4th at 379-80 (holding that the statute covers Pay to Pay Fees, and explaining that "the district court's dismissal, predicated as it was on its view of the . . . plaintiffs' voluntary assent, was in error"); *Shami*, 2010 WL 3824151, at *2-4 (rejecting claim that the FDCPA was inapplicable to Pay to Pay Fees because their optional nature). While SPS relies on a few decisions in Florida that pre-date the Fourth Circuit's decision in *Alexander*, *see* Mot. at 7-8 & n. 5, those decisions are in conflict with *Campbell* and *Shami*, and are outliers as compared to courts everywhere. [7] *See, e.g., Elbert v. Roundpoint Mortg. Serv. Corp.*, 2020 WL 6940941, at *2 (N.D. Cal. Nov. 25, 2020). And these

---

[7] Most district courts hold that the FDCPA applies to "voluntary" Pay-to-Pay fees. *See, e.g., Simmet v. Collection Consultants of Calif.*, 2016 WL 11002359, at *6 (C.D. Cal. Jul. 7, 2016); *Lindblom v. Santander Consumer USA, Inc.*, 2016 WL 2841495, at *6 (E.D. Cal. May 9, 2016).

Florida opinions conflict with the CFPB's interpretation. Brief of Amicus Curiae CFBP in Support of Plaintiffs-Appellants at 26, *Thomas-Lawson v. Carrington Mort. Servs.*, 9th Cir. No. 21-55459, Dkt. 22 ("The statute does not make an exception for optional amounts.").

### 2. Section 1692f(1) and Related State Statutes Prohibits Servicers from Collecting Pay to Pay Fees.

Relying on the same errant analysis, SPS moves to dismiss the overlapping claims arising under (i) Section 1692f(1) of the FDCPA (DeSimone and Washington); (ii) Section 14-202(11) of the Maryland Consumer Debt Collection Act ("MCDCA") (Snowden);  and (iii) Section 1788.17 of California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") (Washington). These "1692f(1) Statutes" prohibit "collect[ing] *any amount* (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1) (emphasis added); Md. Code Ann., Com. Law § 14-202(11) (prohibiting conduct that violates the FDCPA); Cal. Civ. Code § 1788.17 (requiring compliance "with the provisions of Sections 1692b to 1692j, inclusive"). [8] While SPS argues that Pay to Pay fees are both authorized by the mortgage agreement and permitted by law, its arguments rely on outlier cases from Florida that ignore relevant Second Circuit authority, the CFPB's statements, and the majority of decisions nationwide.

The Second Circuit has issued two opinions on the question of what constitutes "expressly authorized" or "permitted by law" under 1692f(1) and SPS cites neither. In an earlier decision, the court reviewed FTC staff commentary, and summarized the relevant test used by that agency regarding whether a fee was prohibited by 1692f(1) as follows:

> If state law *expressly permits* service charges, a service charge may be imposed even if the contract is silent on the matter; If state law *expressly prohibits* service charges, a service charge cannot be imposed even if the contract allows it; If state law *neither affirmatively permits nor expressly prohibits service charges*, a service charge can be imposed only if the customer expressly agrees to it in the contract.

---

[8] Maryland and California, like many other states, make actionable under state law violations of the FDCPA and many of the decisions discussed herein refer to 1692f(1) of the FDCPA and the similar state laws (collectively "1692f(1) Statutes") interchangeably.

*Tuttle*, 190 F.3d at 13 (emphasis modified from original) (discussing FDCPA Staff Commentary, 53 Fed. Reg. 50,097, 50,108 (Dec. 13, 1988)). While *Tuttle* was resolved without deciding whether to formally adopt the FTC's test, courts in this district later would apply it to 1692f(1) claims. *See, e.g., Quinteros*, 999 F. Supp. 2d at 437; *Campbell*, 98 F. Supp. 3d at 578; *Shami*, 2010 WL 3824151, at *2.  And in *DiMatteo v. Sweeney, Gallo, Reich & Bolz, L.L.P.*, 619 F. App'x 7 (2d Cir. 2015), the Second Circuit found a plaintiff pled a plausible claim for a violation of section 1692f(1) where the defendant could not identify either the agreement authorizing the fee at issue or a state statute that did so. *Id.* at 9-10.

More recently, the Fourth Circuit considered whether mortgage borrowers who sued over Pay to Pay Fees stated a claim for a violation of Maryland's 1692f(1) Statute. *See Alexander*, 23 F.4th at 376. Like the FTC and the majority of district courts,[9] it agreed that the FDCPA, and by extension, the MCDCA, required any such fees to be either *affirmatively permitted* by some law or expressly authorized by the agreement creating the debt. *Id*. As set forth below, SPS fails to show that Plaintiffs have not stated a claim for a violation of the 1692f(1) Statutes.

SPS relies on a much-rejected defense that the Pay to Pay Fees are "authorized" by Plaintiffs' mortgage agreements, Mot. at 9-11, ignoring that permitted fees must be "*expressly* authorized by the agreement creating the debt*.*" SPS first points to the "Loan Charges" section in the Plaintiffs' mortgage agreements,[10] which only expressly authorizes fees for "default related services," such as property valuation and inspection, "for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument." But SPS does not argue that it

---

[9] *See, e.g.*, *Simmet,* 2016 WL 11002359, at *5; *Torliatt v. Ocwen Loan Serv.*, *LLC*, 2020 WL 1904596, at *2 (N.D. Cal. Apr. 17, 2020); *Fusco*, 2020 WL 2519978, at *3; *McFadden v. Nationstar Mortg. LLC*, 2021 WL 3284794, at *2-5 (D.D.C. July 30, 2021), *report and recommendation adopted*, 2022 WL 1001253 (D.D.C. Apr. 4, 2022).

[10] SPS does not identify the language in Ms. Snowden's mortgage agreement it contends "expressly authorizes" the fees here, but in a footnote refers to the arguments it made as to the other Plaintiffs. *See* Mot. at 20-21, n. 27. In an attempt to distinguish *Alexander* as to Snowden, SPS argues that there, the defendant conceded that there was no express authorization contained in the mortgage agreements. SPS states that it is making "no such concession" here.

imposed the Pay to Pay Fees to protect its interests and rights with respect to any default.[11] More importantly, while the "Loan Charges" provision expressly authorizes attorneys' fees and property inspection and valuation fees, it provides no such express authorization for Pay to Pay Fees .

SPS relied on language in the Loan Charges section that it interprets to mean (1) the contract's failure to identify any specific fee should not be read to be a prohibition on the charging of such a fee; and (2) the borrower shall not be charged fees "prohibited by this Security Instrument or by Applicable Law." *Cpt*., Ex. A at ¶ 14; Ex. C-1 at ¶ 14. But again, this language falls far short of giving SPS the *express* authorization required by 1692f(1) Statutes. Nor does the language providing the "absence of express authority . . . shall not be construed as a prohibition" help SPS, because the absence of a prohibition is not "express" permission. *See, e.g.*, *McFadden*, 2021 WL 3284794, at *4 (finding that the "interpretation reads the term 'expressly' out from § 1692f(1)"). Adopting the contractual interpretation urged by SPS would, "create[] a race to the bottom as future agreements would all contain a similar two-sentence catchall provision without expressly naming any particular fees," ending all such lawsuits and "running afoul of Congress' intent to 'eliminat[e] abusive practices in the debt collection industry." *Id.*at *4 (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008)). SPS does not provide any reason to reach a different conclusion here.

Finally, SPS relies on that the "Governing Law" section of the Plaintiffs' agreements arguing that "Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract." *See Cpt*., Ex. A at ¶ 16; Ex. C-1 at ¶ 16. But a general allowance to enter into other contractual agreements is not an "express" authorization for Pay to Pay Fees. SPS ignores the fact that this authorization must be

---

[11] Even if it impermissibly raised this argument for the first time on reply, because this is Rule 12(b)(6) motion, discovery into whether Pay to Pay Fees are default-related fees is needed.

in the agreement creating the debt.[12] Moreover, this argument fails for the additional reasons discussed in section II.B.4, *infra*.

**3.     SPS's Pay to Pay Fees Are Not Authorized By Its 2003 Consent Order; They Violate It.**

SPS disingenuously argues that Pay to Pay Fees are permitted by a consent order it entered into in 2003, in which it agreed to pay $40 million to resolve claims brought against it by the FTC and HUD, which had alleged that SPS's servicing practices violated the FDCPA. *See* Mot. at 12 and Sussman Decl., Ex. 1 (2003 Consent Order); Ex. 2 (2007 Modified Order) (collectively "Consent Order"). But rather than permitting the fees, the Consent Order actually "*permanently restrained and enjoined*" SPS from collecting fees for services rendered unless certain criteria are met. The Consent Order also *permanently enjoined* SPS from "[u]sing any unfair means to collect or attempt to collect a debt, including, but not limited to, collecting amounts (including any interest, fee, charge, or expense incidental to the principal obligation) not *authorized by the agreement creating the debt or permitted by law*, in violation of Section 808(1) of the FDCPA, 15 U.S.C. § 1692f(l)." Sussman Decl., Ex. 1 at 13); Ex. 2 at 14. (emphasis added). Thus, the Consent Order does not serve as the "law" that permits SPS to avoid complying with section 1692f(1).

SPS focuses on the fact that the Consent Order prohibits SPS from charging any fee for a service rendered, unless the fee is either:

a)   *expressly authorized*, and *clearly and conspicuously disclosed, by the loan instruments* and not prohibited by law;

b)   *expressly permitted by law* and not prohibited by the loan instruments; or

c)    a *reasonable fee* for a specific service requested by a consumer that is assessed and/or collected only after clear and conspicuous disclosure of the fee is provided to the consumer and explicit consent is obtained from the consumer to pay the fee in exchange for the service, *and such fee is not otherwise prohibited by law* or the loan instruments.

---

[12] SPS cites a few cases that endorse this theory, but all disregard the language in the statute requiring authorization to be in the agreement creating the debt. Moreover, the FDCPA preempts state law that does not afford consumers more protection than it provides. 15 U.S.C. § 1692n.

Sussman Decl., Ex. 1 at 10; Ex. 2 at 9-10 (emphasis added). But even if SPS had some credible argument that compliance with these criteria establish compliance with Section 1692f(1), Pay to Pay Fees do meet the requirements set out in the Consent Order.

*First,* the Pay to Pay Fees are not "clearly and conspicuously disclosed, by the loan instruments," as they are not even mentioned. *Second*, they are not "expressly permitted" by any law. *Third*, SPS cannot seek refuge under the final criteria, as the fees are not "reasonable." The CCAC contains extensive allegations about how Pay to Pay fees are not "reasonable" fees in exchange for a service because they grossly exceed any costs to SPS; indeed, SPS saves a significant sum of money from not having to accept payment by mail and is already receiving payment from Plaintiffs via a percentage of the interest they pay on their mortgage for doing servicing work. ¶¶ 3-4, 23-29, 33-37; *see also, Alexander*, 23 F.4th at 379 (4th Cir. 2022) ("[H]ere's the inconvenient truth: [the mortgage servicer's] alternative payment options are likely more cost-effective and less time-consuming for [it]."). Moreover, many mortgage servicers offer consumers the option to make payments online or by phone without imposing any charge. ¶ 29. These facts are more than sufficient at the Rule 12(b)(6) stage to establish that the Consent Order does not immunize SPS from liability.

Finally, even if the Consent Order does not itself prohibit the Fees, a lack of prohibition is not affirmative permission. As the Consent Order makes clear, "nothing in this Order shall permit the Defendants to impose any fee or take any other action that is prohibited by any state or federal law or regulation and/or prohibited by the loan instruments and/or other contractual agreement with the consumer." Sussman Decl., Ex. 1 at 12; Ex. 2 at 13.

### 4.    SPS's Pay to Pay Fees are Not Otherwise Permitted by Law.

SPS does not point to any specific law permitting Pay to Pay Fees. Instead, it argues that the fees are allowed pursuant to general principles of contract law because Plaintiffs entered into separate, subsequent agreements to pay the fees. Mot. at 10-11.[13]   SPS is mistaken.

---

[13] SPS also argues that the fees are not prohibited by New York regulations or the Rosenthal Act. Mot. at 13. But even if SPS is correct, a lack of a prohibition does not "permit" the imposition of

*First*, SPS ignores the two Second Circuit cases providing that for a fee to be "permitted by law," there must be a statute expressly authorizing the fee. In *Tuttle,* the Court reviewed FTC staff commentary determining that in the absence of an express authorization in the contract creating the debt, the FDCPA requires that a fee be "*affirmatively permit[ted]*" by state law. 190 F.3d at 13.[14] While the Second Circuit did not decide this question, it noted that "[t]here is some force to this argument." *Id.* (citing authority on statutory interpretation). In the years that followed, several courts in this district quoted *Tuttle*'s interpretation that if the state law does not "affirmatively permit[]" a fee, such fee "can be imposed only if the customer expressly agrees to it in the contract" in finding that plaintiffs had stated a claim that Pay to Pay Fees  violated the FDCPA. *See, e.g.*, *Quinteros*, 999 F. Supp. 2d at 437; *Campbell*, 98 F. Supp. 3d at 578; *Shami*, 2010 WL 3824151, at *2. And, in *DiMatteo*, the Second Circuit held that plaintiffs had sufficiently alleged fees violated the FDCPA where the fees were not authorized in the agreement creating the debt and the defendant *"*could point to no authority under New York law" for the fees. 619 F. App'x at 10. SPS does not explain why this authority is not persuasive.

*Second*, SPS's argument that the fees are "permitted by law"—because the Plaintiffs entered into separate, subsequent agreements to pay the fees—ignores the text and purpose of the FDCPA.[15] As the Fourth Circuit explained, for a fee to be "permitted by law" pursuant to 15 U.S.C.

---

Pay-to-Pay Fees. *See West v. Costen*, 558 F. Supp. 564, 582 (W.D. Va. 1983) ("Simply stated, 'permitted by law' is different from 'not prohibited by law.' Permission requires an affirmative authorization, not just indulgent silence.").

[14] The *Tuttle* court ultimately held that the defendant's service charge for collecting a dishonored check was permitted by state law. 190 F.3d at 15. And it held that the plaintiff had consented to the potential imposition of the service charge, which the jury found to be expressly disclosed at the time when he tendered the dishonored check (*i.e.*, the agreement creating the debt). *Id.* at 16.

[15] Although some cases, like *Meintzinger v. Sortis Holdings, Inc.*, 2019 WL 1471338, at *2 (E.D.N.Y. Apr. 3, 2019), have agreed with SPS's interpretation, these cases did not perform a close analysis of the FDCPA's text. And some of the cases to which SPS cites did not involve the FDCPA or analogous state statutes at all. *See, e.g.*, *Chatman v. Fairbanks Cap. Corp.*, 2002 WL 1338492, at *1 (N.D. Ill. June 18, 2002); *Davis v. Homecomings Fin.*, 2006 WL 2927701 (W.D. Wash. Oct. 10, 2006); *Cappellini v. Mellon Mortg. Co.*, 991 F. Supp. 31, 41 (D. Mass. 1997); *Jerik v. Columbia Nat., Inc.*, 1999 WL 1267702, at *5 (N.D. Ill. Sept. 30, 1999).

§ 1692f(1), there must be "some form of affirmative sanction (that is, some 'law'), rather than mere lack of prohibition." *Alexander*, 23 F.4th at 377.[16]

As *Alexander* explained, interpreting "permitted by law" to require affirmative permission comports with the linguistic context of the Section 1692f(1), which "sets a 'no collection' default, subject to two narrow exceptions. *Id.* at 377-78. And these two exceptions mirror one another. Each lays out a particular source of authority (either the agreement creating the debt or law), and each requires that the source of authority affirmatively speaks to the amount's collection (either through express authorization or through permission)." *Id.* at 378. SPS's contrary position that a fee is "permitted by law" merely because general contract principles allow borrowers to enter into separate agreements would render the statute's prong permitting amounts "expressly authorized by the agreement creating the debt" superfluous. *Id.* at 379. "There would be no need to say this if [SPS] is right, for an 'agreement creating the debt' is by definition a valid contract." *Id.*

Because Pay to Pay Fees are not authorized by Plaintiffs' or the class members' mortgage agreements, and because they are not affirmatively permitted by any law, SPS's collection of such fees violates the FDCPA.

**C.   Plaintiffs Plead Violations of FDCPA Section 1692e.**

Section 1692e proscribes the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." This includes false representations of (1) "the character, amount, or legal status of any debt" or "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt" and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer . . . ."15 U.S.C. §§ 1692e(2) and (10). Where a fee is

---

[16] *See also, e.g., Fusco*, 2020 WL 2519978, at *3 ("[L]egal permission must be affirmatively given."); *McFadden*, 2021 WL 3284794, at *5 ("'[T]he word "permitted" requires that [the mortgage servicer] identify some state statute which "permits," i.e. authorizes or allows, in however general a fashion, the fees or charges in question.'" (quoting *McWhorter v. Ocwen Loan Servicing, LLC*, 2017 WL 3315375, at *7 (N.D. Ala. Aug. 3, 2017))); *Lembeck v. Arvest Cent. Mortg. Co.*, 498 F. Supp. 3d 1134, 1136-37 (N.D. Cal. 2020) ("Any separate contract to pay an incidental fee is prohibited unless 'permitted by law'—that is, by some state or federal statute or regulation. Because no such law exists, the contract and the IVR fee remain unlawful.").

impermissible under Section 1692f, any representation that such a fee is permissible violates Section 1692e. *See* ¶¶ 143-44; *Campbell*, 98 F. Supp. 3d at 583 ("As explained above, collection of the $5.00 processing fee would be prohibited by §1692f(1). Therefore, a representation that the fee could be lawfully collected would violate § 1692e(2)(B)."); *Shami*, 2010 WL 3824151, at *4 (same); *Simmet*, 2016 WL 11002359, at *6 (same). Further, demanding a fee that has been inflated above its cost constitutes a violation of Sections 1692e(2) and (10). *Tysenn v. Select Portfolio Serv.*, *Inc.*, 2015 U.S. Dist. LEXIS 97696, at *8-9 (S.D. Fla. May 14, 2015). Plaintiffs allege that SPS represented that it could lawfully charge the EZ Pay fees, ¶¶ 42, 46, 59, 60, and that those fees were inflated above the SPS's actual cost, *id.* ¶¶ 34, 37, 43, 48, thereby stating a claim for violation of FDCPA Sections 1692e(2) and (10).

### D. Snowden States A Claim Under The Maryland Consumer Debt Collections Act

SPS violated Md. Code Ann., Com. Law § 14-202(11) based on its violation of the FDCPA, *supra* at § II.B.2, as well as MCDCA's proscription against collectors "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8); ¶¶ 86-89. SPS does not dispute that it is a "collector" under the MCDCA, but challenges the other elements. Mot. at 20-21 n.27; *see Alexander*, 23 F.4th at 375 (mortgage servicer charging pay-to-pay fee was a "collector" under the MCDCA).

To establish a violation of Md. Code Ann., Com. Law § 14-202(8), a plaintiff must prove: "(1) that [the] Defendant[] did not possess the right to collect the amount of debt sought; and (2) that [the] Defendant[] attempted to collect the debt knowing that they lacked the right to do so." *Gillis v. Household Fin. Corp. III*, 2019 WL 3412621, at *7 (D. Md. July 29, 2019) (quoting *Amenu-El v. Select Portfolio Servs.*, 2017 WL 4404428, at *4 (D. Md. Oct. 4, 2017)). SPS had no right to collect the amount of debt sought for the same reason it had no right to collect the Pay to Pay Fees under the FDCPA. *Supra* at § II.B.2. The Fourth Circuit relied on a violation of the

FDCPA in finding that a servicer collecting Pay to Pay Fees had no right to do so. *See Alexander*, 23 F.4th at 379.[17]

Furthermore, SPS knew it did not have the right to collect the amount of debt it sought, and its arguments to the contrary are unavailing.[18]  "The 'knowledge' requirement of the MCDCA refers to 'actual knowledge or reckless disregard as to the falsity of the information or the existence of the right.'" *Cooke v. Carrington Mortg. Servs.*, 2019 WL 3241128, at *6 (D. Md. July 18, 2019) ("*Cooke II*") (quoting *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 595 (D. Md. 1999)). As a licensed mortgage servicer, SPS is responsible for understanding the terms of the mortgages and applicable law, and any ignorance or mistake of law does not immunize it from liability based on lack of knowledge. *Simmons v. Md. Mgmt. Co.*, 269 A.3d 369, 683 (Md. Ct. Special App. 2022) ("Professional debt collectors and their lawyers must be held to be aware of laws relating to the validity of their collection efforts."); *Cooke II*, 2019 WL 3241128, at *6 (plaintiff adequately alleged knowledge in part based on her challenge to the legality of the defendant-servicer's actions). Similarly, in questioning whether SPS could properly charge the Fees, Snowden further alerted SPS. ¶47.[19]  SPS does not address its recklessness in charging the Fees, and its argument

---

[17] The Fourth Circuit has also held that a collector has no right to collect the amount of the debt sought "if the amount sought exceeds the amount owed as a result of the debt collector's inclusion of an unauthorized type of charge." *Conteh v. Shamrock Cmty. Ass'n, Inc.*, 648 F. App'x 377, 381 (4th Cir. 2016) (citing *Allstate Lien & Recovery Corp. v. Stansbury*, 101 A.3d 520, 529-30 (Md. Ct. Spec. App. 2014), *aff'd*, 126 A.3d 40 (Md. 2015)); *see also Chavis v. Blibaum & Assocs., P.A.*, 264 A.3d 1254, 1269 (Md. 2021) (inflated interest rate); *Brooks v. Cama Self Directed IRA, LLC*, 2019 WL 418412, at *11 (D. Md. Jan. 31, 2019) (inflated amount of debt owed based on improper interest rate and late fees); *Lindsay v. Rushmore Loan Mgmt.*, 2016 WL 1169957, at *3 (D. Md. Mar. 25, 2016) ("These claims are sufficient to survive Rushmore's motion to dismiss as Rushmore would have no right to collect sums in excess of what is owed.").

[18] While § 14-202(8) requires scienter, § 14-202(11) does not. *Alexander*, 23 F.4th at 373.

[19] By contrast, in *Cooke v. Carrington Mortgage Servs.*, 2018 WL 6323116, (D. Md. Dec. 3, 2018), the court held that plaintiff had not plausibly alleged that the mortgage servicer acted with knowledge or reckless disregard of the validity of the charges where the servicer removed some fees and provided an explanation as to other fees, including that they were authorized by the mortgage. *Id.* at *7. In *Flowers v. Baltax 2017, LLC*, 2019 WL 3501584, at *9 (D. Md. Aug. 1, 2019), cited by SPS, the court held that the plaintiff's allegations of knowledge were conclusory, but here, Snowden put SPS on notice.

that Snowden just recites a "formulaic statement" ignores the fact that knowledge may be averred generally at the motion to dismiss stage. *Watson v. HomeBridge Fin. Servs., Inc.*, 2022 WL 125278, at *9 (D. Md. Jan. 13, 2022). SPS's scienter is an issue of fact inappropriate for decision at dismissal. *Simmons*, 269 A.3d at 683-84.

In *Cole v. Fed. Nat'l Mortgage Ass'n*, 2017 WL 623465 (D. Md. Feb. 14, 2017), a plaintiff who pleaded that the defendant artificially inflated costs associated with foreclosure, by comparing the costs she was charged to the customary charges for the associated fees, was held to have sufficiently alleged knowledge to survive a Rule 12(b)(6) motion. *Id.* at *8. Here, the Fees were similarly not related to the actual cost associated with processing mortgage payments. ¶48.[20] Thus, Plaintiff has met the pleading standard with regard to SPS's knowledge that it improperly assessed the EZ Pay fees.

### E.     Snowden States a Claim Under the Maryland Consumer Protection Act

Snowden alleges violations of the MCPA based on SPS's violation of the MCDCA[21] and SPS's failure to disclose material facts. It is unlawful for SPS to make "[f]alse . . . or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" or to "[f]ail[] to state a material fact if the failure deceives or tends to deceive" in "[t]he collection of consumer debts." Md. Code, Com. Law §§ 13-301(1), 13-301(3), 13-303(5). "To state a claim under the MCPA, a plaintiff must adequately plead that:   (1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the misrepresentation, and (3) doing so caused the

---

[20] SPS's cited cases are distinguishable. In *Mitchell v. U.S. Bank Nat'l Ass'n*, 2018 WL 4679949, at *7 (D. Md. Sept. 28, 2018), the court held that the defendants did not have knowledge where the fraudulent conduct predated defendants' involvement with the loan at issue, whereas SPS imposed the Fees at issue in this case. *Ensor v. Wells Fargo Bank Nat'l Ass'n*, 2022 WL 345513, at *5, n.3 (D. Md. Feb. 4, 2022), did not substantively address the knowledge requirement.

[21] The MCPA defines "unfair, abusive, or deceptive trade practices" to include violations of the MCDCA. Md. Code Ann., Com. Law § 13-301(14)(iii).

plaintiff actual injury." *Gillis*, 2019 WL 3412621, at *9 (quoting *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 416 (D. Md. 2018)).[22]

Snowden has identified SPS's misrepresentations and omissions: the Fees were not related to any charges SPS incurred in processing telephone and online payments, SPS was using the fees to improperly profit, and SPS failed to disclose these facts. ¶¶ 46-48, 198.[23]   Nothing more is required. Disguising the true nature of fees associated with mortgage servicing constitutes an unfair or deceptive practice or misrepresentation. *See Flournoy v. Rushmore Loan Mgmt. Servs., LLC*, 2020 WL 1285504, at *8 (D. Md. Mar. 17, 2020) ("Because the Complaint plausibly avers that Defendants disguised attorneys' fees as generic 'corporate advances,' the MCPA claim survives.").[24]

Under Maryland law, "[a] consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice. . . . Whether a misrepresentation substantially induces a consumer's choice is ordinarily a question of fact for the trier of fact." *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 532 (D. Md. 2011) (whether fee

---

[22] The MCPA applies to omissions as well as affirmative misrepresentations. Md. Code Ann., Com. Law § 13-301(9); *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 535 (D. Md. 2011) (failure to disclose true nature of fee constituted material omission). It is counterintuitive to require a plaintiff to pinpoint a particular omission. *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 489 (D. Md. 2020) "[A]n omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation." (quoting *Willis v. Bank of Am. Corp.*, 2014 WL 3829520, at *8 (D. Md. Aug. 1, 2014))); *see also In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 2022 WL 1396522, at *20-22 (D. Md. May 3, 2022) (certifying classes based on N.Y. GBL, MCPA, and Cal. UCL claims). By definition, an omission is the information that the defendant has withheld. Snowden has identified this—the true nature of the fee—with specificity. ¶¶ 46-48.

[23] The Fourth Circuit rejected arguments similar to SPS's here that the pay-to-pay fees are reasonably related to the cost of the service. *Alexander*, 23 F.4th at 379. Plaintiffs' allegations are thus entirely plausible—and will likely be confirmed in discovery.

[24] *Bourgeois v. Live Nation Entertainment, Inc.*, 3 F. Supp. 3d 423 (D. Md. 2014), cited by SPS, pre-dates the Maryland regulation prohibiting the misrepresentation of processing fees. *See* Md. Code Regs. 09.03.06.10 ("A licensee may not retain a fee, or any portion of a fee, collected from the borrower if the fee is represented as a charge to be paid to a third party for services in connection with the loan.").

was included in contract and amount of fee created issue of fact with respect to reliance). So too here, given the material omissions. ¶¶ 46-48. That Snowden made the online and telephone mortgage payments is sufficient to establish reliance on SPS's misrepresentations and non-disclosures at this stage. ¶ 46. Thus, SPS's argument that Snowden has not identified a specific demonstration of reliance is wrong.

### F.   Washington States a Claim Under the Rosenthal Act and California's Unfair Competition Law.

In addition to her claim as to the Rosenthal Act's incorporation of section 1692f(1), discussed above, Washington brings two other causes of action under this state statute, as well as claims under section 17200 of California's Unfair Competition Law ("UCL").

*First*, the Rosenthal Act prohibits "[c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's *fee or charge for services rendered, or other expense incurred* by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14(b) (emphasis added). SPS does not dispute that Pay to Pay Fees constituted a "fee or charge" or an "expense" covered by this provision. Instead, SPS argues that the fees are permitted by law, an argument that fails for the reasons discussed in section II.B.4, *supra.* Moreover, California courts specifically interpreting this section find that it requires "express permission." *See, e.g., DiFlauro v. Bank of Am., N.A.*, 2020 WL 10111966, at \*5 (C.D. Cal. Dec. 2, 2020) (requiring "expressly authorized by some state or federal statute or regulation" for a section 1788.14(b) claim); *Lembeck*, 498 F. Supp. 3d at 1137 (same); *Langston v. Gateway Mortg. Grp., LLC*, 2021 WL 234358, at \*4 (C.D. Cal. Jan. 15, 2021) (same).

*Second*, the Rosenthal Act makes it illegal to represent to a consumer that a debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e). Contrary to SPS's argument, the CCAC does allege that SPS represented to consumers "that the mortgage loan debts of Plaintiff Washington and the California Class members may be increased by the addition of the Pay to Pay Fees." ¶205. This is sufficient at the motion to dismiss stage.

*Third*, the UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Bus. & Prof. Code § 17200. Because she states a claim for multiple violations of the Rosenthal Act and the FDCPA, she also states a claim for violation of the "unlawful" prong. *Lembeck,* 498 F. Supp. 3d at 1137 ("Because the IVR fee is prohibited under the Rosenthal Act, it is 'unlawful' under the UCL.").[25]

### G.     DeSimone States a Claim Under N.Y. General Business Law § 349.

To state a claim under N.Y. GBL § 349, a plaintiff must allege that, "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp*., 574 F.3d 64, 74 (2d Cir. 2009)) (internal quotation marks omitted). "Section 349 on its face applies to virtually all economic activity, and its application has been correspondingly broad." *Evans v. Select Portfolio Servicing, Inc.*, 2020 WL 5848619, at *17 (E.D.N.Y. Sep. 30, 2020) (citation omitted). SPS disputes only that DeSimone alleged misleading conduct. Mot. at 19-20. But, Plaintiffs asserted that "SPS knew, or reasonably should have known, and failed to disclose, that it was not permitted to impose or collect EZ Pay fees or any other Pay to Pay Fees ." ¶177. Moreover, the CCAC is rife with specific allegations of SPS' misrepresentations and omissions. *Id*. ¶¶ 34, 35, 43; *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (statements deceptive if capable of misleading a reasonable borrower); *Dumont v. Litton Loan Servicing, LP*, 2014 WL 815234, at *10  (S.D.N.Y. Mar. 3, 2014) (upholding § 349 claim where plaintiff alleged mortgage servicer charged improper fees).

DeSimone's allegations that the Fees violate the FDCPA and 3 N.Y.C.R.R. §419.5(b) also satisfy the misleading element of Section 349. The statute and case law make clear that violations of other federal and state consumer protection laws is a deceptive practice under GBL §349. *See* GBL §349(g) (unlawful conduct is deceptive under GBL § 349); *Shakespeare v. Compu-Link*

---

[25] Ms. Washington also states a claim under the "unfair" prong, due to the excessive nature of the fees charged. *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1474 (2006) (holding that allegation the defendant led "borrowers to believe it is charging them for the cost of certain services . . . when in reality it is charging them substantially in excess" satisfied the "unfair" prong); *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 719 (2001) (noting that "charging a higher than normal rate for copies" is an unfair practice).

*Corp.,* 848 F. App'x 474, 476 (2d Cir. 2021) (violation of another New York law and federal regulations pled deceptive practice for under GBL § 349); *Nick's Garage, Inc. v. Progressive Cas. Ins.*, 875 F.3d 107, 126-27 (2d Cir. 2017) (violation of another New York law stated GBL §349 claim); *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (collecting a disclosed fee that allegedly violated RESPA stated GBL § 349 claim). The Court should not consider any defense from SPS that it "disclosed" the Fees at the motion to dismiss stage. *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 676 (N.Y. 2012).

### H.   Plaintiffs Plead Valid Claims for Breach of Their Mortgage Agreements.
#### 1.   Plaintiffs Plead an Express Breach of Contract

Plaintiffs plead that SPS's imposition of the Pay to Pay Fees breach express terms of their mortgage agreements, namely Sections 14 (Loan Charges) and 16 (Governing Law) of those agreements. ¶¶ 93-106, 153, 154. Disputing only the element of claim requiring the pleading of a breach, SPS argues the Fees are "expressly permitted" under federal and state laws. Those are the same errant arguments made in response to the FDCPA and state statutory claims.

As discussed above, imposing the Fees is a breach of Section 14 of Plaintiffs' mortgage agreements. And because SPS has violated the FDCPA and the state laws incorporated in Plaintiffs' agreements, it has breached Section 16 as well. Least there be any doubt, violating a federal or state law incorporated into a mortgage agreement pleads a breach of contract claim. *See Hymes v. Bank of Am., N.A.*, 408 F. Supp. 3d 171, 199-201 (E.D.N.Y. 2019) (denying motion to dismiss breach of mortgage agreement where breach was based on violations of New York General Obligation Law § 5-601); *Clark v. Bank of Am., N.A.*, 2020 WL 902457, at *6 (D. Md. Feb. 24, 2020) (same, where breach was premised on violations of Md. Code Ann., Com. Law § 12-109.); *Fannie Mae v. Obradovich*, 2016 WL 1213920, at *3-4 (N.D. Ill. Mar. 29, 2016) (upholding breach of mortgage based on alleged violation of the Illinois Mortgage Foreclosure Law).

#### 2.   Plaintiffs Provided Pre-Filing Notice and an Opportunity to Cure Even Though None was Required

SPS's argues that Plaintiffs did not "plead" pre-filing notice with sufficient particularity. Mot. at 4-6. But SPS's pre-filing notice argument is an affirmative defense and not a part of

Plaintiffs' claims. *See generally Secured Asset Mgmt., LLC v. Dushinsky*, 2019 WL 4861411 (E.D.N.Y. Sep. 30, 2019). Nevertheless, pre-filing notice was provided to SPS three times. SPS has refused to cure.

After Washington filed her class action lawsuit in the Central District of California, SPS answered her complaint, admitting, "that prior to filing the Complaint, Plaintiff's attorney sent SPS a letter" providing pre-filing notice on behalf of a class an opportunity to cure, CCAC, Ex. D, ¶ 64, and it declined to raise in that answer the affirmative defense of a failure to comply with this condition in her mortgage agreement. *See generally id*. Thus, the defense is waived.

The DeSimone actions were filed after SPS refused to cure in response to Washington's notice. In addition, before this action was originally filed, DeSimone and Snowden's counsel provided SPS's counsel of record in a related federal action pending before this Court with notice of these Plaintiffs' intent to file this lawsuit based on SPS's imposition of its Pay to Pay Fees unless it cured the violations. ¶ 132; Geman Decl., DKT. No. 40-1, ¶ 3. *See Patriarch Partners, LLC v. Axis Ins. Co.*, 758 F. App'x 14, 20 (2d Cir. 2018) ("'[U]nder traditional principles of agency [an] attorney's knowledge must be imputed to [her client].'") (quoting *Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994)) (second and third alterations in original). Thus, SPS was provided notice yet again by the prior two complaints in this action. When this Court dismissed Plaintiffs' DeSimone's and Snowden's claims without prejudice, Dkt. 55, SPS thereafter did not cure. SPS cannot claim it was without *actual notice* for the months before Plaintiffs filed the CCAC.

In any event, SPS is not entitled to notice, because the language in Section 20 of Plaintiffs' *mortgage agreements* is limited to the borrower and the "Lender." A loan servicer is not entitled to pre-filing notice. *See Giotta v. Ocwen Fin. Corp.*, 2015 WL 8527520, at *7-9 (N.D. Cal. Dec. 11, 2015);[26] *Schmidt v. Wells Fargo Home Mortg.*, 2011 WL 1597658, at *3 (E.D. Va. Apr. 26, 2011). SPS had no right to notice.

---

[26] SPS relies on an appellate decision in this case for a different result, 706 F. App'x 421 (9th Cir. 2017). However, that court hinged its decision on the fact that the defendant servicer had proven it was the "assign[ee]" of the lender. *Id*. at 423. No such proof has been made by SPS in this case.

Furthermore, the notice-and-cure language SPS relies on is inapplicable to Plaintiffs' statutory claims under the FDCPA and state laws. *See Garay v. Select Portfolio Servicing Inc.*, 2020 WL 10823745, at *3 (S.D. Fla. Aug. 7, 2020), *report and recommendation adopted,* 2020 WL 10823759 (S.D. Fla. Aug 31, 2020) (pre-suit notice not required because statutory claim based on EZ Pay fees was "not a fairly direct result of the performance of contractual duties"); *Mills v. Select Portfolio Servicing, Inc.,* 2018 WL 5113001, at *4 (S.D. Fla. Oct. 19, 2018) ("Other courts have similarly concluded that notice and cure provisions identical to Paragraph 20 did not apply to [FDCPA and state] statutory claims."); *Belcher v. Ocwen Loan Servicing, LLC*, 2016 WL 7243100, at *4 (M.D. Fla. Dec. 15, 2016) ("Belcher has a statutory right of action [under the FDCPA and state law] that is independent from the requirement under the mortgage agreement to give pre-suit notice.").[27]

Finally, SPS has had actual knowledge of the claims made in this action for years, but has chosen not to cure. Instead, it maintains that its imposition of the Fees is lawful. "[T]he law is clear that providing notice and cure is not required where it would be futile.'" *City of New York v. Tavern on the Green Int'l, LLC*, 351 F. Supp. 3d 680, 692-93 (S.D.N.Y. 2018) (citation omitted); *see also Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991) ("[S]trict adherence to the . . . cure provision would have been a 'useless act' in the face of [continued breach]."). Notice was at all time futile and therefore, not required.

## I.     Plaintiffs Plead Violations of the Duties of Good Faith and Fair Dealing

New York and Maryland both imply a duty of good faith and fair dealing into all contracts. *See Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995); *Questar Builders, Inc. v. CB*

---

[27] *See also McShannock v. JP Morgan Chase Bank N.A.*, 354 F. Supp. 3d 1063, 1072 (N.D. Cal. 2018) (notice and cure provision did not require dismissal of state statutory claims), *rev'd on other grounds* 976 F.3d 881 (9th Cir. 2020); *Foster v. Green Tree Servicing, LLC,* 2017 WL 5151354, at *3 (M.D. Fla. Nov. 2, 2017) (state statutory consumer protection claims not subject to notice and cure); *Un Boon Kim v. Shellpoint Partners, LLC*, 2016 WL 1241541, at *6 (S.D. Cal. Mar. 30, 2016) (notice-and-cure defense did not apply to TILA claim); *Colon v. Nationstar Mortg., LLC*, 2015 WL7422598, at *2 (S.D. Fla. Nov. 17, 2015) (same); *St. Breux v. U.S. Bank*, 919 F. Supp. 2d 1371, 1376 (S.D. Fla. 2013) (same); *Abercrombie v. Wells Fargo Bank, N.A.*, 417 F. Supp. 2d 1006, 1008 (N.D. Ill. 2006) (same).

*Flooring, LLC*, 978 A.2d 651, 670 (Md. Ct. App. 2009).[28] Those obligations encompass a duty "not to act arbitrarily or irrationally" when exercising any discretion contemplated in the contract. *Dalton*, 663 N.E.2d at 291. Indeed, if the Court finds Plaintiffs have not adequately alleged a contract claim, they have alleged bad faith in violation of the covenant of good faith and fair dealing. *Cf. Evans*, 2020 WL 5849619, at *17.

Here, to the extent SPS argues that it has discretion to charge any fees that it wishes, that discretion must be governed by the duty of good faith and fair dealing, which is breached when SPS uses its position to impose fees untethered to its actual costs. Thus, this claim is appropriately pleaded, at minimum, in the alternative. *See Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255, 264 (N.D.N.Y. 2013) (upholding claim for breach of implied covenant of good faith and fair dealing; "plaintiffs sufficiently allege that defendants exhibited bad faith by [charging] unnecessary or excessive flood insurance—either without the contractual authority to require such insurance or as an arbitrary or irrational exercise of their discretion to do so.").

SPS is mistaken that Plaintiffs' claims of breach of the implied contractual covenants cannot be alleged alongside a claim for breach of contact. *See Levin v. HSBC Bank USA, N.A.*, 2012 WL 7964121, at *14 (N.Y. Sup. Ct. June 26, 2012) ("A plaintiff may bring a claim for breach of the covenant of good faith and fair dealing independently of any other claims for breach of contract."); *Sher v. SAF Fin., Inc.*, 2011 WL 4835700, at *4 (D. Md. Oct. 11, 2011) (citing Fed. R. Civ. P. 8(d)(2)) (denying motion to dismiss on basis that plaintiff could plead breach of the covenant of good faith and fair dealing in the alternative to his contract claim). If the Court decides that dismissal of the implied covenants claim is appropriate, Plaintiffs' allegations that SPS breached its obligation to exercise its contractual duties fairly and in good faith should be

---

[28] As a mortgage servicer, SPS is also under a regulatory duty of good faith and fair dealing in its interactions with Ms. Snowden. *See* Md. Code Regs. 09.03.06.20(a) ("A licensee has a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan.").

considered as part of her breach of contract claim. *See Arashteh v. Mount Vernon Fire Ins. Co.*, 2014 WL 3974172, at *3 (D. Md. Aug. 12, 2014).

### J.     There is No Basis to Strike the Fee-Prohibiting State Class

SPS argues that the Court should strike the fee-prohibiting state class because it is limited to borrowers who reside in "fee-prohibiting states" and Maryland and California—the states in which Plaintiffs Snowden and Washington reside respectively—are not in the list of "fee-prohibiting states" in Paragraph 92 of the CCAC. But Plaintiffs Snowden and Washington clearly reside in "fee-prohibiting states," that is states that "have adopted debt collection statutes that contain language mirroring the FDCPA." ¶92. As alleged in ¶¶ 82, 86-89, both California and Maryland have incorporated the federal FDCPA, making it illegal for entities covered by their debt collection statutes to engage in conduct that violates the federal FDCPA. Cal. Civ. Code § 1788.17; Md. Code Ann., Com. Law § 14-202(11). To the extent the Court believes the CCAC is ambiguous on this point, that ambiguity can easily corrected with an errata that replaces the second sentence of paragraph 92 with "In addition to California and Maryland, these Fee-Prohibiting States are . . ." There is no basis to strike.

### V.     CONCLUSION

For the foregoing reasons, SPS's motion to dismiss should be DENIED.

Dated: May 13, 2022                     Respectfully submitted,

*/s/ Kristen G. Simplicio*
**TYCKO & ZAVAREEI, LLP**
Kristen G. Simplicio (*pro hac vice*)
Email: ksimplicio@tzlegal.com
Hassan Zavareei (*pro hac vice*)
Email: hzavareei@tzlegal.com
1828 L Street, Suite 1000
Washington, DC 20036
Tel.: (202) 973-0900
Fax: (202) 973-0950

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
Rachel Geman, Esq.
Email: rgeman@lchb.com
Catherine P. Humphreville, Esq.
Email: chumphreville@lchb.com
250 Hudson Street, 8th Floor
New York, New York 10013
Tel: (212) 355-9500
Fax: (212) 355-9592

**GISKAN SOLOTAROFF &
ANDERSON LLP**
Catherine E. Anderson, Esq.
Email: canderson@gslawny.com
90 Broad Street, 10th Floor
New York, NY 10004
Tel: (212) 847-8315 x 12

**SHANBERG, STAFFORD & BARTZ LLP**
Ross E. Shanberg, Esq. (*pro hac vice*)
Email: rshanberg@ssbfirm.com
5031 Birch Street
Newport Beach, California 92660
Tel: (800) 519-9810
Fax: (949) 205-7144

**TUSA P.C.**
Joseph S. Tusa, Esq.
Email: joseph.tuspc@gmail.com
55000 Main Road, 2nd Fl.
P.O. Box 566
Southold, NY 11971

Tel: (631) 407-5100

**BAILEY & GLASSER**
James Lawrence Kauffman (*pro hac vice*)
Email: jkauffman@baileyglasser.com
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Tel.: (202) 463-2101
Fax: (202) 463-2103

*Counsel for Plaintiffs and Proposed Counsel for
the Classes and Subclasses*

26