UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
LISA DeSIMONE, DEBORAH SNOWDEN, and INEZ CLARA WASHINGTON, on behalf of themselves and all others similarly situated,

                    Plaintiffs,

    - against -

SELECT PORTFOLIO SERVICING, INC.,[1]

                    Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-3837 (PKC) (TAM)

PAMELA K. CHEN, United States District Judge:

Plaintiffs Lisa DeSimone, Deborah R. Snowden, and Inez Clara Washington (collectively, "Plaintiffs") bring this putative consolidated class action individually and on behalf of all similarly situated class members against Defendant Select Portfolio Servicing, Inc. ("SPS"), the mortgage loan-servicing company that serviced Plaintiffs' mortgage loans on behalf of non-party lenders. Plaintiffs principally allege that SPS violated two provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e and 1692f, by charging "EZ Pay" fees, "convenience fees," or "processing fees" (collectively, "pay-to-pay fees") of up to $15 each time Plaintiffs sought to make mortgage payments over the phone or online. Plaintiffs also raise seven state statutory and common-law claims, alleging (1) violation of New York General Business Law Section 349, N.Y. Gen. Bus. Law § 349, (2) violation of the Maryland Consumer Debt Collection Act, Md. Com. Law. Code Ann. §§ 14-201, *et seq.*, (3) violation of the Maryland Consumer Protection Act, Md. Com. Law. Code Ann. §§ 13-101, *et seq.*, (4) violation of the Rosenthal Fair Debt Collection

---

[1] Defendant's name is Select Portfolio Servicing, Inc., not Select Portfolio Services, Inc. The Clerk of Court is respectfully directed to amend the case caption accordingly.

1

Practices Act, Cal. Civ. Code §§ 1788.13(e); 1788.14; 1788.17, (5) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, (6) breach of contract, and (7) violation of the covenant of good faith and fair dealing.

Before the Court is SPS's motion to dismiss Plaintiffs' Consolidated Class Action Complaint ("CCAC"), which is the operative pleading, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), for failure to state a claim. For the reasons stated below, the Court grants in part and denies in part SPS's motion.

## BACKGROUND

### I. Factual Allegations[2]

Plaintiffs Lisa DeSimone, Deborah R. Snowden, and Inez Clara Washington own homes located in New York, Maryland, and California, respectively, each of which is subject to a mortgage loan. (CCAC, Dkt. 59, ¶¶ 6–8.) SPS is a residential loan servicing company headquartered in Salt Lake City, Utah, and "is authorized to do business by the New York Secretary of State and is licensed by the State of New York as a Mortgage Servicer and Mortgage Servicer Branch." (*Id.* ¶ 9.) SPS "enters into service agreements with lenders, note holders, and

---

[2] The facts recited in this section are based on the non-conclusory factual allegations in the CCAC, which the Court accepts as true for the purpose of this motion. *See Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012). The Court also considers, as incorporated into and integral to the CCAC, certain documents submitted with the CCAC and provided by the Parties in their briefing, including mortgage agreements, deeds of trust, notes, monthly mortgage statements, and court filings. *See Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410 (MKB) (RER), 2016 WL 3647687, at *2 n.2 (E.D.N.Y. July 1, 2016) ("Although a court's review on a motion to dismiss is typically limited to the four corners of the complaint, a court may also review, among certain other categories, documents incorporated into the complaint by reference and documents integral to the complaint." (citations omitted)). Finally, the Court takes judicial notice of information about state regulations on official governmental websites. *See Leger v. Kalitta*, No. 16-CV-6545 (PKC) (PK), 2018 WL 2057142, at *3 (E.D.N.Y. Jan. 26, 2018) ("[T]he Court may take judicial notice of documents retrieved from official government websites or other government records from such websites." (citation and quotation marks omitted)).

trustees pursuant to which SPS provides servicing, subservicing[,] and agency activities for loan portfolios." (*Id.* ¶ 10.) It "acts as the agent to the lenders, note holders, and trustees," and "exercises the rights and responsibilities of those lenders and/or note holders pursuant to their approval." (*Id.*) SPS "generally services distressed loans." (*Id.* ¶ 9.)

At least since 2017, SPS has serviced Plaintiffs' mortgage loans on behalf of its lender principals. (*Id.* ¶¶ 40, 45, 53.) From 2017 to 2020, on many occasions SPS charged Plaintiffs pay-to-pay fees ranging from $5 to $15 each time they paid their mortgages via phone or online.[3] (*Id.* ¶¶ 6–8.) Plaintiffs allege that the "costs associated with processing [their] online or telephonic mortgage payments were much lower than" the pay-to-pay fee SPS imposed, and therefore SPS kept the remainder as profit. (*Id.* ¶¶ 43, 48.) Plaintiffs allege that this pay-to-pay fee is impermissible in violation of federal and state debt collection law and bring this action against SPS to challenge the legality of the fee. (*Id.* ¶ 1.)

### A.     Plaintiff DeSimone

Plaintiff Lisa DeSimone ("DeSimone") is a citizen and resident of New York. (*Id.* ¶ 6.) When SPS assumed servicing DeSimone's loan in September 2014, she "was in arrears on her mortgage." (*Id.* ¶ 41.) DeSimone alleges that "[o]n six occasions in 2019 and four occasions in 2017, SPS imposed [p]ay-to-[p]ay [f]ees . . . for requesting payments by phone[,]" and "[o]n each occasion, the amount of the fee imposed by SPS was $7.50, reduced from a total charge of $15.00

---

[3] The monthly mortgage statements that SPS sent to Plaintiffs, copies of which are attached as exhibits to Declaration of Alyssa A. Sussman in support of SPS's Motion to Dismiss, include a text box with the heading "SPECIAL REQUEST AND ADDITIONAL FEES" that lists two methods of payment— "Check by Phone or Website (EZPay)[:] Up to $15.00." (Dkt. 71-3, at ECF 3; Dkt. 71-4, at ECF 3; Dkt. 71-5, at ECF 3; Dkt. 71-6, at ECF 3; Dkt. 71-7, at ECF 3; Dkt. 71-8, at ECF 3; Dkt.71-9, at ECF 3.) The Court notes that citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

as a result of . . . DeSimone's complaints about" the fees.  (*Id.* ¶ 42.)  DeSimone "approved the payments of her mortgage from her bank account but objected to" the pay-to-pay fees.  (*Id.*)

### B. Plaintiff Snowden

Plaintiff Deborah R. Snowden ("Snowden") is a citizen and resident of Maryland.  (*Id.* ¶ 7.) "On nine occasions in 2020, five occasions in 2019, and six occasions in 2018," SPS, as a collector, charged Snowden pay-to-pay fees for making payments online and over the phone.  (*Id.* ¶ 46.) Like DeSimone, Snowden "approved the payments of her mortgage . . . but objected to" the pay-to-pay fees.  (*Id.* ¶ 46.)

### C. Plaintiff Washington

Plaintiff Inez Clara Washington ("Washington")[4] is a citizen and resident of California. (*Id.* ¶ 8.)  When SPS acquired the servicing rights to collect Washington's mortgage payments, her loan was 45 days delinquent.  (*Id.* ¶ 58.)  On each of the five occasions from 2019 to 2020 when Washington made her past-due mortgage payments after the grace period over the phone, she was charged with a pay-to-pay fee in the amount of $15.  (*Id.* ¶¶ 59–63.)

\*     \*     \*

Plaintiffs join their claims by seeking a class action under Rule 23.  (*Id.* ¶¶ 108–15.) Plaintiffs' action seeks to certify the following classes of persons allegedly harmed by SPS's practices of collecting pay-to-pay fees: (1) DeSimone, Snowden, and Washington and a nationwide class; (2) DeSimone and Washington and a nationwide default subclass; (3) Snowden

---

[4] Washington originally filed suit against SPS in the U.S. District Court for the Central District of California ("C.D. Cal.") on August 24, 2020 ("Washington action"), four days after the initiation of the action in this District.  (CCAC, Dkt. 59, ¶ 19; Dkt 59-3.)  Pursuant to a stipulation endorsed by the then-presiding judge in C.D. Cal., Washington and SPS agreed to transfer the Washington action to this District.  (*Id.*)  On February 14, 2022, the Court consolidated the two actions upon a consent motion for consolidation by the Parties.  (Dkt. 60; 2/14/2022 Dkt. Order).

and Washington and a fee-prohibiting state class; (4) DeSimone and a New York class; (5) Snowden and a Maryland class; and (6) Washington and a California class. (*Id.*)

## II.   Procedural History

On August 20, 2020, Plaintiff DeSimone and Gabriel Rogers[5] sued SPS in this case on behalf of a putative class alleging, among other causes of action, violations of the FDCPA. (*See* Dkt. 1, ¶¶ 1, 46–121.) On November 9, 2020, SPS moved for a pre-motion conference seeking to dismiss the complaint. (*See* Dkt. 15.) On February 5, 2021, Plaintiffs DeSimone and Snowden filed the Amended Complaint on behalf of themselves and putative classes, alleging that SPS had violated the FDCPA, breached certain contracts, violated the covenant of good faith and fair dealing, and violated other state law. (*See* Amended Complaint, Dkt. 24, ¶¶ 55–110.) On May 7, 2021, SPS filed a motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6). (*See* Dkts. 36–39, 41.) On January 4, 2022, the Court granted SPS's motion to dismiss on a limited basis and permitted Plaintiffs DeSimone and Snowden to file a Second Amended Complaint. (Dkt. 55.)

On January 19, 2022, a status conference was held before Magistrate Judge Taryn A. Merkl discussing, *inter alia*, the possibility of consolidating the original action filed in this District with a related case that was originally filed in C.D. Cal. (1/19/2022 Min. Entry & Order.) On February 10, 2022, the Parties filed a consent motion to consolidate the two related actions (Dkt. 58), which the Court subsequently granted on February 14, 2022 (Dkt. 60; 2/14/2022 Dkt. Order). On the same day, Plaintiffs filed the CCAC, adding Washington as an additional named plaintiff as a result of the consolidation of the two actions. (CCAC, Dkt. 59.)

---

[5] Rogers was one of the original plaintiffs in this case, but the Parties stipulated to her dismissal as a plaintiff on January 14, 2021. (*See* Dkt. 21.)

On March 3, 2022, SPS filed a letter indicating its intent to move to dismiss the CCAC for failure to state a claim. (*See* Dkt. 61.) The Court directed the Parties to brief the proposed motion to dismiss. (*See* 3/28/2022 Dkt. Order.) On June 8, 2022, the motion was fully briefed. (*See* Dkts. 69–73.)

After the motion was fully briefed, on June 30, 2022, Plaintiffs filed a notice of supplemental authority in support of their opposition to SPS's motion to dismiss. (Dkt. 75.) SPS then moved to strike Plaintiffs' notice of supplemental authority. (Dkt. 77.) Plaintiffs subsequently filed a response in opposition to SPS's motion to strike, to which SPS filed a reply. (Dkts. 79–80.) As indicated by an order dated October 18, 2022, the Court considers SPS's motion to strike, as well as Plaintiffs' response and SPS's reply, in deciding this motion.[6]

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability

---

[6] After the filings of SPS's letter motion to strike as well as Plaintiffs' response and SPS's reply, both SPS and Plaintiffs submitted additional notices of supplemental authority alerting the Court to three recently issued court opinions from other circuits in support of their respective positions. (*See* Dkts. 84, 85.) SPS's notice of supplemental authority drew the Court's attention to the Tenth Circuit's recent decision in *Matchett v. BSI Fin. Servs*. (*See* Dkt. 84, at 1 (citing No. 21-4142, 2023 WL 4678683 (10th Cir. July 21, 2023)).) Plaintiffs' notice of supplemental authority directed the Court's attention to two recent opinions issued by the U.S. District Court for the Southern District of Florida, namely *Booze v. Ocwen Loan Servicing, LLC*, No. 20-80135-CV, 2023 WL 5026984 (S.D. Fla. Aug. 1, 2023) and *Glover v. Ocwen Loan Servicing, LLC*, No. 20-80053-CV, 2023 WL 5026826 (S.D. Fla. Aug. 2, 2023). (*See* Dkt. 85.) The second round of the submissions are unopposed and the Court has considered them as part of this decision.

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In addressing the sufficiency of a complaint, a court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [it is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90–91 (2d Cir. 2021) (citation omitted).

## DISCUSSION

### I. Motion to Strike Notice of Supplemental Authority

Before turning to the merits of the motion to dismiss, the Court addresses SPS's motion to strike Plaintiffs' June 30, 2022 notice of supplemental authority. (Dkts. 75, 77, 79–80.) Plaintiffs' notice directed the Court's attention to a June 29, 2022 advisory opinion on debt collectors' collection of pay-to-pay fees that was published by the Consumer Financial Protection Bureau ("CFPB"). (*See* Dkt. 75-1.) SPS objects to this filing on the grounds that (1) Plaintiffs failed to request this Court's permission to file the supplemental authority, in contravention of this Court's Individual Rules of Practice; (2) the supplemental authority is a non-controlling advisory opinion from a federal agency; (3) the notice constitutes an impermissible sur-reply in opposition to SPS's dismissal motion; and (4) Plaintiffs improperly "inject[ed] [CFPB] into the case'" by filing the supplemental authority. (*See* Dkts. 77, 80.) For the following reasons, the Court denies SPS's motion to strike.

First, while this Court's Individual Rules require parties to file motion papers in accordance with a court-approved briefing schedule, there is no such requirement for the filing of supplemental authority. (*See* Judge Pamela K. Chen, Individual Practices & Rules.) "While it would be ideal

7

for parties to discover and submit all relevant [authority] before a motion is fully briefed, '[i]t is fairly standard practice for parties to send letters or to otherwise file supplemental authority after briefing is complete.'" *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 (NGG) (ST), 2016 WL 4617159, at *7 (E.D.N.Y. Sept. 2, 2016). Furthermore, although a federal agency's advisory opinion is not binding legal authority,[7] here, the Court finds the CFPB advisory opinion helpful in understanding the issues regarding pay-to-pay fees to the extent it is relevant to the issues pending before it. *See id.* (noting that non-controlling legal authority from other circuits can be useful in determining the appropriate legal standards to apply). Moreover, the Court finds that "the supplemental authority [offered by Plaintiffs] provides further support without adding new arguments or prejudicing [Defendant]." *Thompson v. Mun. Credit Union*, No. 21-CV-7600 (LJL), 2022 WL 2717303, at *7 n.7 (S.D.N.Y. July 13, 2022). Accordingly, SPS's motion to strike is denied.

---

[7] *See, e.g.*, *Nat'l Nutritional Foods Ass'n v. Weinberger*, 512 F.2d 688, 696 (2d. Cir. 1975) ("Agency interpretations of substantive statutory law have been viewed as 'not controlling upon the courts by reason of their authority,' but merely as 'a body of experience and informed judgment to which courts and litigants may properly resort for guidance[.]'") (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *Pfizer Inc. v. U.S. Dep't of Health & Human Servs.*, No. 20-CV-4920 (MKV), 2021 WL 4523676, at *6 (S.D.N.Y. Sept. 30, 2021) ("Formal deference either to [federal agency] Advisory Opinion or to other [federal agency] guidance is not appropriate here. Interpretations of law contained in guidance and advisory documents are entitled to respect to the extent that those interpretations have the power to persuade. This deference . . . only means that the Court must consider the administrative decision for its persuasive value, and not necessarily with any more respect than the Court considers non-binding precedent.") (internal citations and quotation marks omitted).

## II. Jurisdiction Under the Class Action Fairness Act

SPS moves to dismiss Plaintiff Snowden's state law claims, contending that because she asserts no federal FDCPA claim this Court has no supplemental jurisdiction over her state law claims. (Dkt. 70, at ECF 15.) Plaintiffs take the position that the Court independently has diversity jurisdiction over all of their state law claims, including Snowden's state law claims brought under Maryland law, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (CCAC, Dkt. 59, ¶ 13.) The Court agrees.

Enacted in 2005, CAFA expanded the availability of diversity jurisdiction to "any class action involving (1) 100 or more class members, (2) an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (3) minimal diversity, i.e., where at least one plaintiff and one defendant are citizens of different states." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006) (citing 28 U.S.C. §§ 1332(d)(2), (d)(5)(b), (d)(6)); *see also Richins v. Hofstra Univ.*, 908 F. Supp. 2d 358, 360 (E.D.N.Y. 2012) ("By legislating the expansion of diversity jurisdiction, Congress intended to allow federal courts to keep cases of national importance in Federal court, and to restore the intent of the framers of the Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction.") (internal citation and quotation marks omitted). The party asserting federal jurisdiction must present facts sufficient to establish a "reasonable probability" that each of these elements is satisfied. *See Cutrone v. Mortg. Elec. Registration Sys.*, 749 F.3d 137, 148 (2d Cir. 2014); *Bigsby v. Barclays Capital Real Estate, Inc.*, 170 F. Supp. 3d 568, 579 (S.D.N.Y. 2016). "In satisfying the 'reasonable probability' burden, there is 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" *Hart v. Rick's NY Cabaret Int'l, Inc.*, 967 F. Supp. 2d 955, 961 (S.D.N.Y. 2014) (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006)).

"However, 'the diversity jurisdiction authorized in [CAFA's] provisions is not absolute.'" *Lucker v. Bayside Cemetery*, 262 F.R.D. 185, 187 (E.D.N.Y. 2009) (citation omitted). CAFA provides for certain enumerated exceptions to the exercise of federal jurisdiction. 28 U.S.C. § 1332(d)(3)–(4). Under the mandatory "local controversy" exception, a "district court shall decline to exercise jurisdiction" over class actions that are local controversies. *See* 28 U.S.C. § 1332(d)(4)(A). Similarly, under the mandatory "home state" exception, "[a] district court shall decline to exercise jurisdiction . . . over a class action in which . . . two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B); *see also Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 140 (2d Cir. 2013). Finally, under the "discretionary exception," a district court "may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction . . . over a class action in which greater than one-third but less than two-thirds" of the putative class members, and the primary defendants, are citizens of the State in which the action was originally filed, based on consideration of several factors. 28 U.S.C. § 1332(d)(3); *see also Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F. Supp. 2d 350, 357–58 (E.D.N.Y. 2008). Once CAFA jurisdiction is established, "[t]he party seeking to avail itself of an exception to CAFA jurisdiction has the burden of proving, by a preponderance of the evidence, that the exception applies." *Int'l House v. Consol. Edison Co.*, No. 22-CV-8705 (VEC), 2023 WL 2898623, at *3 (S.D.N.Y. Apr. 11, 2023) (citations omitted).

Here, Plaintiffs allege that they meet their burden as to CAFA's jurisdiction requirements. They allege that they are citizens of New York, Maryland, and California, and Defendant is a citizen of Utah who is "authorized to do business by the New York Secretary of State and is licensed by the State of New York," therefore establishing the requisite minimal diversity.

10

(CCAC, Dkt. 59, ¶¶ 14, 16.)  Furthermore, Plaintiffs allege that there are at least one hundred members in each of the proposed classes, and that the amount in controversy exceeds $5,000,000. (*Id.* ¶ 15.)  Because Plaintiffs have "met their initial jurisdictional burden" under CAFA on the face of the CCAC and SPS has not sought to invoke any of CAFA's exceptions, the Court finds that Plaintiffs have sufficiently pled diversity jurisdiction with respect to the Maryland state law claims and will therefore address whether each of those claims satisfies the pleading standard under Rule 12(b)(6).  *Lucker*, 262 F.R.D. at 188.

### III.  Pre-Suit Notice

SPS moves to dismiss the CCAC on the basis that Plaintiffs failed to sufficiently allege that they provided pre-suit notice to SPS as required by their mortgage agreements.  (Dkt. 70, at ECF 13–15.)  Each of Plaintiffs' mortgages or deed of trust agreements include a "Notice of Grievance" provision, which obligates both the lender and borrower to notify the other party before commencing legal action and to allow that party a "reasonable period" of time to take corrective action.  (*See* CCAC, Dkt. 59-1, at ECF 15; Dkt. 59-2, at ECF 10; Dkt. 59-3, at ECF 35.)[8]  SPS

---

[8] DeSimone's mortgage agreement in pertinent part provides as follows:

> Lender's and Borrower's Right to Notice of Grievance. Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified . . . of the unfulfilled obligation and given a reasonable time period to take corrective action.

(CCAC, Dkt. 59-1, at ECF 15, ¶ 20.)  Snowden and Washington's deeds of trust in pertinent part provide:

> Notice of Grievance. . . . Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified

11

argues that Plaintiffs failed to adequately plead "when and how notice was given" or when or how Plaintiffs each provided SPS an opportunity to cure. (Dkt. 70, at ECF 13–14.) The Court agrees.

### A. Notice of Grievance Provision Applies

First, the Parties dispute whether the "Notice of Grievance" provisions in Plaintiffs' mortgage agreements apply to SPS as a mortgage loan servicer. (*Compare* Dkt. 70, at ECF 14 n.3 *and* Dkt. 72, at ECF 6–7 *with* Dkt. 73, at ECF 28). Courts have held that "Notice of Grievance" provisions are applicable to assignees of mortgage agreements. *See, e.g.*, *Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421, 422 (9th Cir. 2017) ("[A]s an assign of the Lender, the Notice Provision is a 'benefit' of the 'covenants and agreements' in the Deed of Trust, inuring to [the mortgage loan servicer]."); *Kurzban v. Specialized Loan Servicing, LLC*, No. 17-CV-20713 (DPG), 2018 WL 1570370, at *3 (S.D. Fla. Mar. 30, 2018) ("[A] notice-and-cure provision in a mortgage applies to actions against a servicer."). Here, the CCAC clearly alleges the following:

> Pursuant to its agreements with lenders, note holders, and trustees, SPS (a) acts as the agent to the lenders, note holders, and trustees, and (b) exercises the rights and responsibilities of those lenders and/or note holders pursuant to their approval. In this manner, *SPS either takes assignment of the servicing obligations in borrowers' loan agreements, and/or is in functional privity and near privity of contract with Plaintiffs and Class members, tasked with performing many of the obligations assumed by the lenders to Plaintiffs' and Class members' loan agreements*.

(CCAC, Dkt. 59, ¶ 10 (emphasis added); *see also id.* ¶ 54 ("SPS became bound as an assignee to [Washington's] Deed of Trust at the time it acquired the servicing rights.").) Thus, the "Notice of Grievance" provisions in Plaintiffs' mortgage agreements apply to lawsuits against SPS that arise

---

> the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(CCAC, Dkt. 59-2, at ECF 10, ¶ 20; CCAC, Dkt. 59-3, at ECF 35, ¶ 20.)

from SPS's alleged actions pursuant to the agreements or based on alleged breaches of the agreements.[9]

### B. Plaintiffs Have Failed to Comply with Notice of Grievance Provision

Plaintiffs' security instruments include the following requirements regarding the "Notice of Grievance" provision:

> All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. . . . Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

(Dkt. 59-2, at ECF 9; Dkt. 59-3, at ECF 34; *see also* Dkt. 59-1, at ECF 14 (substantively same).)

Here, Plaintiffs summarily allege that, "[p]rior to the filing of the original *Class Action Complaints* in this action and the *Washington* action, counsel for Plaintiffs provided notice of this action to SPS or legal counsel for SPS and an opportunity to cure SPS's unlawful conduct. SPS did not cure." (CCAC, Dkt. 59, ¶ 132 (emphasis in original).) This bare assertion does not indicate whether the notices were provided in writing, whether they were delivered or mailed through first class mail, or what the time period was between notice receipt and the filing of the lawsuit (so that the Court can assess whether the period was "reasonable").

Plaintiffs also assert new information in their opposition to SPS's motion to dismiss that purportedly establishes their compliance with the notice requirement. (*See* Dkt. 73, at ECF 27–

---

[9] The Court further agrees with Defendant that it would be nonsensical and self-defeating for Plaintiff to argue that Defendant is not bound by the Notice of Grievance provision in contracts they claim Defendant has breached. (*See* Dkt. 72, at ECF 7 ("Indeed, Plaintiffs' own theory defeats this argument: they allege SPS 'breached' the security instruments (*id.* ¶ 151)—a proposition that is nonsensical if SPS cannot invoke another clause in those same security instruments.").)

29.) This new information is purportedly contained in still other documents that are referenced in Plaintiffs' opposition. However, these new assertions fail both procedurally and substantively.

First, as the Court has observed *supra*, "a court's review on a motion to dismiss is typically limited to the four corners of the complaint" and "other categories, documents incorporated into the complaint by reference and documents integral to the complaint." *See supra* footnote 2. These new allegations do not appear in the CCAC, thus the Court cannot properly consider them on a motion to dismiss.

Second, even if the Court finds that the documents referenced in Plaintiffs' opposition brief are integral to the CCAC and therefore properly considered at this stage, Plaintiffs' new assertions regarding the notice requirements are meritless.

Regarding Washington, Plaintiffs allege in their opposition that SPS's answer in the C.D. Cal. action conceded that "prior to filing the [C.D. Cal.] Complaint, [Washington's] attorney sent SPS a letter." (Dkt. 73, at ECF 28 (citing Dkt. 59-4, ¶ 64 (SPS's answer brief in C.D. Cal. action)).) In fact, SPS's *full* answer in the C.D. Cal. action stated:

> The allegations in Paragraph 64 [which stated, "Prior to the filing of this Complaint, Ms. Washington made a written pre-suit demand upon SPS",] contain conclusions of law to which no response is required. To the extent a response is required, SPS states that prior to filing the Complaint, [Washington]'s attorney sent SPS a letter, states that the letter speaks for itself and is the best evidence of its contents, and denies the allegations to the extent they are inconsistent with the letter. Otherwise denied.

(CCAC, Dkt. 59-4, ¶ 64.) In this action, Plaintiff has not provided the Court with the contents of that letter or asserted facts regarding the timing of the purported notice, i.e., whether it allowed a "reasonable" time for SPS to cure. Moreover, in the C.D. Cal. action SPS expressly "denied" that Washington's pre-suit letter constituted proper notice. (*Id*.) Thus, Washington's additional allegations outside the CCAC regarding pre-suit notice substantively fail.

14

> As to DeSimone and Snowden, Plaintiffs assert:
>
> [B]efore this action was originally filed, DeSimone and Snowden's counsel provided SPS's counsel of record in a related federal action pending before this Court with notice of these Plaintiffs' intent to file this lawsuit based on SPS's imposition of its [pay-to-pay fees] unless it cured the violations.

(*Id.* at ECF 28 (citing Dkt. 40-1 (Geman Decl.)).) However, attorney Rachel Geman's Declaration merely states that in mid-July 2020, she provided email and telephone notice to SPS's counsel, in her role as counsel for the plaintiffs in a different lawsuit, *Evans v. Select Portfolio Servicing, Inc.*, No. 18-CV-5985 (PKC), "of our intention to bring a complaint for SPS' 'pay to pay' practices[,]" and that "[w]e corresponded via email with SPS' counsel in *Evans* about the EZ Pay fees violations between July 13 and July 20, 2020, and discussed the issue via telephone on or around July 17, 2020." (Dkt. 40-1, ¶¶ 2–4.) These allegations do not satisfy the pre-notice requirement in the mortgage agreements.

First, Geman's notice was deficient because it was not done in writing and delivered or mailed to SPS's address. Second, it is entirely unclear, due to the vague and confusing phrasing of Geman's statements, whether she had provided notice of a "pay-to-pay" complaint or claim being filed on behalf of the plaintiffs in *Evans* or Plaintiffs in the instant action.[10] (*See id.* ¶ 3 ("On July 13, 2020, counsel for the Plaintiffs informed the counsel of record for SPS in *Evans* of our

---

[10] *Cf. Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 590 (S.D.N.Y. 2021) (finding in breach of express warranty suit that allegation that "[the] [d]efendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years" to be "too conclusory and . . . unsupported by any specific factual allegations" to satisfy pre-suit notice requirement); *Singleton v. Fifth Generation, Inc.*, No. 15-CV-474 (BKS) (TWD), 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016) (finding in breach of express warranty suit that plaintiff's allegation that "[d]efendant must have been aware of [p]laintiff's false and misleading advertising claims due to similar suits pending against [d]efendant" to be insufficient to plead pre-suit notice).

15

intention to bring a complaint for SPS' 'pay to pay' practices.").) Thus, DeSimone and Snowden's additional allegations outside the CCAC regarding pre-suit notice also substantively fail.

Furthermore, to the extent Plaintiffs argue that the previously dismissed complaints in *this* lawsuit constituted notice of their intent to file the CCAC, the Court finds that filings in *this* lawsuit do not satisfy the requirement of a *pre-suit* notice. (Dkt. 73, at ECF 28 ("SPS was provided notice . . . by the prior two complaints in this action[,] . . . [w]hen this Court dismissed Plaintiffs' DeSimone's and Snowden's claims without prejudice.").) *See Estep v. Fed. Home Loan Mortg. Corp.*, No. 13-CV-2128 (ICB), 2014 WL 1276495, at *4 (S.D. W. Va. Mar. 27, 2014) (finding that the plaintiffs "never provided any notice to the [d]efendants *before* they commenced their lawsuit" and thus could not have provided defendants with "any reasonable period of time to cure" (emphasis in original)).

Thus, even construing the pleadings in a light most favorable to Plaintiffs, Plaintiffs have not plausibly alleged that they gave SPS pre-suit notice and an opportunity to cure, as required by each Plaintiff's mortgage agreement. *Cf. Anderson v. Unilever U.S., Inc.*, 607 F. Supp. 3d 441, 457 (S.D.N.Y. 2022) (explaining that in breach of express warranty suits "to adequately plead the pre-suit notice requirement, plaintiff[s] must provide factual allegations—such as the date and method plaintiff[s] sent a pre-suit notice—supporting the contention that [they] notified [the] defendant of the alleged breach within a reasonable time[.]").

## CONCLUSION

For the reasons stated above, the Court denies Defendant's motions to strike notice of supplemental authority, but grants Defendant's motion to dismiss. Plaintiffs' CCAC is dismissed without prejudice, and Plaintiffs are granted leave to amend within 30 days if they can sufficiently plead facts to show they have complied with the Notice of Grievance provisions and given

16

Defendant reasonable time to cure.  If Plaintiffs do not so amend, this matter will be terminated.[11]

The Clerk of Court is further directed to amend the case caption to reflect Defendant's name as "Select Portfolio Servicing, Inc."

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated:  September 30, 2023
          Brooklyn, New York

---

[11] In the event that Plaintiffs file a new action, Plaintiffs shall indicate that the new action is related to the instant action and *Evans v. Select Portfolio Servicing, Inc.*, No. 18-CV-5985 (PKC).

17