UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LISA DeSIMONE, DEBORAH R. SNOWDEN, AND
INEZ CLARA WASHINGTON, on behalf of themselves
and all others similarly situated,

    Plaintiffs,

        v.

SELECT PORTFOLIO SERVICING, INC.,

        Defendant.

Case No. 1:20-cv-03837-PKC-TAM

**DEFENDANT SELECT PORTFOLIO SERVICING, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE
<u>FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT</u>**

**<u>TABLE OF CONTENTS</u>**

**Page**

INTRODUCTION ................................................................................................. 1

ARGUMENT ......................................................................................................... 3

I.   PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THEY EACH GAVE SPS
     THE REQUIRED PRE-SUIT NOTICE AND OPPORTUNITY TO CURE. ..................... 3

II.  THE FACC SHOULD BE DISMISSED BECAUSE THE SOLE FEDERAL CAUSE
     OF ACTION, UNDER THE FDCPA, FAILS TO STATE A CLAIM. ............................ 7

     A.   The FDCPA Claim (First Cause of Action) Should Be Dismissed With Prejudice. ..... 7

          1.   The FDCPA does not apply to the EZ Pay fee. .................................... 7

               a.   The EZ Pay fee is not a "debt" regulated by the FDCPA. ................. 7

               b.   SPS is not a "debt collector" under the FDCPA with respect to the EZ Pay
                    fees. ........................................................................... 8

          2.   DeSimone and Washington Fail to Adequately Allege Any Substantive
               Violation of Section 1692f or Section 1692e. .................................. 9

               a.   DeSimone and Washington have not plausibly alleged a violation of
                    Section 1692f. ................................................................ 9

               b.   DeSimone and Washington have not plausibly alleged a violation of
                    Section 1692e. ................................................................ 14

III. THE STATE LAW CLAIMS SHOULD BE DISMISSED ON THE MERITS. .............. 14

     A.   Plaintiffs' Claims For Breach of Contract (Second Cause of Action) and
          Violation of the Covenant of Good Faith and Fair Dealing
          (Third Cause of Action) Should Be Dismissed With Prejudice. ............................... 15

          1.   The Breach of Contract Claim Should Be Dismissed Because Plaintiffs
               Have Not Plausibly Alleged Any Breach. ........................................ 15

          2.   The Breach of Contract Claim Should Be Dismissed Because Plaintiffs
               Agreed to Pay the EZ Pay Fees In Exchange for the Service of Paying
               By Phone or Website. ............................................................. 17

          3.   The Tagalong Good Faith And Fair Dealing Claim Should Be Dismissed. ......... 18

     B.   DeSimone's Claim for Violation of New York General Business Law § 349
          (Fourth Cause of Action) Should Be Dismissed With Prejudice. ............................... 19

     C.   Snowden's Claims For Violations of the MCDCA and MCPA Should Be
          Dismissed With Prejudice. ......................................................................... 19

          1.   Snowden's MCDCA Claim Fails. ................................................ 19

          2.   Snowden's Derivative MCPA Claim Fails Too. .................................. 20

     D.   Washington's Claims For Violations of the Rosenthal Act and UCL Should Be
          Dismissed With Prejudice. ......................................................................... 22

IV. THE COURT SHOULD DISMISS OR STRIKE THE CLASS ALLEGATIONS...........23

    A.  The Court Should Dismiss Or Strike The Class Allegations Because There Are Predominant Individualized Issues As To Pre-Suit Notice.........................................23

    B.  The Court Should Dismiss Or Strike The Fee-Prohibiting State Class. .....................25

CONCLUSION...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguirre v. Wells Fargo Bank, N.A.*,
  2015 WL 4065245 (C.D. Cal. July 2, 2015) ..........................................................................23

*Alexander v. Carrington Mortg. Servs., LLC*,
  23 F.4th 370 (4th Cir. 2022) ...............................................................................................20

*Araujo v. PennyMac Loan Servs., LLC*,
  2015 WL 5664259 (E.D.N.Y. Sept. 23, 2015) .....................................................................17

*Bardak v. Ocwen Loan Servicing*,
  2020 WL 5104523 (M.D. Fla. Aug. 12, 2020) .........................................................8, 9, 14, 17

*Beer v. Nationstar Mortg. Holdings, Inc.*,
  2015 WL 13037309 (E.D. Mich. July 15, 2015) ...................................................................16

*Blackman v. Lincoln Nat'l Corp.*,
  2012 WL 6151732 (E.D. Pa. Dec. 10, 2012) ........................................................................25

*Borgese v. Baby Brezza Enters. LLC*,
  2021 WL 634722 (S.D.N.Y. Feb. 18, 2021) ....................................................................23, 25

*Bourgeois v. Live Nation Ent., Inc.*,
  3 F. Supp. 3d 423 (D. Md. 2014) .........................................................................................21

*Brien v. J.P. Morgan Chase Bank, N.A.*,
  2010 WL 11597806 (C.D. Cal. July 9, 2010) .......................................................................17

*BVR Dev., LLC v. CalAtlantic Grp., Inc.*,
  2019 WL 919560 (D. Md. Feb. 25, 2019) ............................................................................17

*Estate of Campbell v. Ocwen Loan Servicing*,
  467 F. Supp. 3d 1262 (S.D. Fla. 2020) ..................................................................2, 8, 11, 17

*Cappellini v. Mellon Mortg. Co.*,
  991 F. Supp. 31 (D. Mass. 1997) .........................................................................................12

*Cassese v. Washington Mut., Inc.*,
  2008 WL 8652499 (E.D.N.Y. June 27, 2008) ......................................................................12

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
  364 F. Supp. 3d 253 (S.D.N.Y. 2019), *aff'd,* 788 F. App'x 85 (2d Cir. 2019) ......................13

*Currie v. Wells Fargo Bank, N.A.*,
  950 F. Supp. 2d 788 (D. Md. 2013) ...................................................................21

*Davis v. Homecomings Fin.*,
  2006 WL 2927701 (W.D. Wash. Oct. 10, 2006) ...............................................12

*Davis v. Wilmington Fin., Inc.*,
  2010 WL 1375363 (D. Md. Mar. 26, 2010) .......................................................18

*Diaz v. NBC Universal, Inc.*,
  536 F. Supp. 2d 337 (S.D.N.Y. 2008), *aff'd*, 337 F. App'x 94 (2d Cir. 2009) ........................17

*Eades v. Kennedy, PC Law Offices*,
  799 F.3d 161 (2d Cir. 2015) ..............................................................................14

*El-Nahal v. FA Mgmt., Inc.*,
  5 N.Y.S.3d 201 (N.Y. App. Div. 2015) ..........................................................10, 16

*Elbert v. RoundPoint Mortg. Servicing Corp.*,
  2020 WL 4818605 (N.D. Cal. Aug. 19, 2020) ...................................................23

*Ensor v. Wells Fargo Bank Nat'l Ass'n*,
  2022 WL 345513 (D. Md. Feb. 4, 2022) .......................................................20, 21

*Flores v. Collection Consultants of California*,
  2015 WL 4254032 (C.D. Cal. Mar. 20, 2015) ...........................................10, 11, 16

*Flowers v. Baltax 2017, LLC*,
  2019 WL 3501584 (D. Md. Aug. 1, 2019) .........................................................20

*Gallego v. Northland Grp. Inc.*,
  814 F.3d 123 (2d Cir. 2016) .............................................................................3, 14

*Garbutt v. Ocwen Loan Servicing, LLC*,
  2020 WL 5641999 (M.D. Fla. Sept. 22, 2020) .................................................9, 11

*Giotta v. Ocwen Fin. Corp.*,
  2016 WL 4447150 (N.D. Cal. Aug. 24, 2016), *aff'd sub nom.*, 706 F. App'x
  421 (9th Cir. 2017) ..........................................................................................2, 6

*Great Lakes Reinsurance (UK) SE v. Herzig*,
  413 F. Supp. 3d 177 (S.D.N.Y. 2019) ...............................................................18

*Heald v. Ocwen Loan Servicing, LLC*,
  2014 WL 4639410 (M.D. Fla. Sept. 16, 2014) ..................................................16

*Hill v. Nationstar Mortg. LLC*,
  2015 WL 4478061 (S.D. Fla. July 6, 2015) .........................................................6

*Horowitz v. Stryker Corp.*,
  613 F. Supp. 2d 271 (E.D.N.Y. 2009) ...............................................................19

*Horsetail Techs., LLC v. Delaware State Police Fed. Credit Union*,
  2020 WL 3402302 (D. Md. June 19, 2020)........................................................16

*Jahnke v. Deere & Co.*,
  912 N.W.2d 136 (Iowa 2018) .............................................................................25

*Jerik v. Columbia Nat'l, Inc.*,
  1999 WL 1267702 (N.D. Ill. Sept. 30, 1999) .....................................................12

*Johnson v. Countrywide Home Loans, Inc.*,
  2010 WL 5138392 (E.D. Va. Dec. 10, 2010) .......................................................6

*Johnson v. Wheeler*,
  492 F. Supp. 2d 492 (D. Md. 2007) ....................................................................21

*Kelly v. Ocwen Loan Servicing*,
  2020 WL 4428470 (M.D. Fla. July 31, 2020) ........................................8, 9, 11, 17

*Kier v. Ocwen Loan Servicing, LLC*,
  122 F. Supp. 3d 786 (N.D. Ill. 2015) ..................................................................11

*Kurzban v. Specialized Loan Servicing, LLC*,
  2018 WL 1570370 (S.D. Fla. Mar. 30, 2018).......................................................6

*Lang v. Ocwen Loan Servicing*,
  2020 WL 5104522 (M.D. Fla. July 17, 2020) ........................................8, 9, 11, 17

*Leger v. Kalitta*,
  2018 WL 2057142 (E.D.N.Y. Jan. 26, 2018) ......................................................13

*Ligon v. Doherty*,
  208 F. Supp. 2d 384 (E.D.N.Y. 2002) .................................................................13

*Lish v. Amerihome Mortg. Co.*,
  2020 WL 6688597 (C.D. Cal. Nov. 10, 2020).......................................8, 16, 22, 23

*Manos v. MTC Fin., Inc.*,
  2018 WL 6220051 (C.D. Cal. Apr. 2, 2018), *aff'd,* 773 F. App'x 452 (9th Cir.
  2019) ...................................................................................................................16

*Mariscal v. Flagstar Bank, FSB*,
  2020 WL 4804983 (C.D. Cal. Aug. 4, 2020).........................................12, 16, 17, 23

*Mariscal v. Flagstar Bank, FSB*,
  2021 WL 4260879 (C.D. Cal. Sept. 9, 2021) ......................................................22

*Matchett v. BSI Fin. Servs.*,
   2023 WL 4678683 (10th Cir. July 21, 2023)............................................................15, 16, 22

*Meintzinger v. Sortis Holdings, Inc.*,
   2019 WL 1471338 (E.D.N.Y. Apr. 3, 2019) ............................................................3, 10, 11, 16

*Mitchell v. U.S. Bank Nat'l Ass'n*,
   2018 WL 4679949 (D. Md. Sept. 28, 2018) ........................................................................20

*Net2Globe Int'l, Inc. v. Time Warner Telecom of New York*,
   273 F. Supp. 2d 436 (S.D.N.Y. 2003).................................................................................17

*New Hampshire Gas & Elec. Co. v. Morse*,
   42 F.2d 490 (D.N.H. 1930) .............................................................................................25

*Perks v. TD Bank, N.A.*,
   444 F. Supp. 3d 635 (S.D.N.Y. 2020) .................................................................................18

*Pettaway v. Nat'l Recovery Sols., LLC*,
   955 F.3d 299 (2d Cir. 2020).............................................................................................14

*PG-USA, Inc. v. St. Andrews Prods. Co.*,
   2009 WL 10700241 (C.D. Cal. July 2, 2009)...................................................................10, 16

*Pugh v. Corelogic Credco, LLC*,
   2013 WL 5655705 (D. Md. Oct. 16, 2013) ......................................................................19, 20

*Qader v. Rushmore Recovery*,
   667 F. Supp. 2d 304 (S.D.N.Y. 2009)..................................................................................14

*Redhead v. Winston & Winston, P.C.*,
   2002 WL 31106934 (S.D.N.Y. Sept. 20, 2002).......................................................................14

*Reid v. Ocwen Loan Servicing*,
   2020 WL 5104539 (S.D. Fla. May 4, 2020) ............................................................8, 9, 11, 17

*Reyes v. N.A.R. Inc.*,
   546 F. Supp. 3d 1031 (D. Utah 2021)....................................................................................9

*Rodriguez v. Rushmore Loan Mgmt. Servs. LLC*,
   2019 WL 423375 (N.D. Ill Feb. 4, 2019) ...............................................................................6

*Sanchez-Knutson v. Ford Motor Co.*,
   2016 WL 11783302 (S.D. Fla. July 25, 2016).......................................................................25

*Schuh v. Druckman & Sinel, L.L.P.*,
   602 F. Supp. 2d 454 (S.D.N.Y. 2009)....................................................................................9

*Sindermann v. Wells Fargo Bank, N.A.*,
    2014 WL 7369812 (D. Md. Dec. 23, 2014) ....................................................21

*Singh v. NYCTL 2009-A Trust*,
    2016 WL 3962009 (S.D.N.Y. July 20, 2016), *aff'd*, 683 F. App'x 76 (2d Cir.
    2017) ................................................................................................................19

*Singleton v. Fifth Generation, Inc.*,
    2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ......................................................7

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009) ..............................................................................19

*Thomas-Lawson v. Carrington Mortg. Servs., LLC*,
    2021 WL 1253578 (C.D. Cal. Apr. 5, 2021) ............................................ *passim*

*Thompson v. Glob. Contact Servs., LLC*,
    2021 WL 3425378 (E.D.N.Y. Aug. 4, 2021) ....................................................12

*Titan Custom Cabinets, Inc. v. Trust Bank*,
    2020 WL 7230589 (D. Md. Dec. 8, 2020) ........................................................18

*Torliatt v. Ocwen Loan Servicing, LLC*,
    2020 WL 1904596 (N.D. Cal. Apr. 17, 2020) ............................................12, 16

*Trinity Hotel Invs., LLC v. Sunstone OP Properties, LLC*,
    2009 WL 303330 (C.D. Cal. Feb. 6, 2009) ......................................................18

*In re Turquoise Hill Res. Ltd. Securities Litig.*,
    2021 WL 2201388 (S.D.N.Y. June 1, 2021) ......................................................5

*TV-3, Inc. v. Royal Ins. Co. of Am.*,
    28 F. Supp. 2d 407 (E.D. Tex. 1998) ...............................................................25

*United States v. Fairbanks Capital Corp.*,
    No. 1:03-cv-12219 (D. Mass.), ECF 6................................................................12

*Weller v. JP Morgan Chase Bank, N.A.*,
    2017 WL 3581099 (N.D. W. Va. Aug. 18, 2017) ..............................................16

## INTRODUCTION

In their *third* attempt to avoid dismissal of this putative class action lawsuit, Plaintiffs Lisa DeSimone ("DeSimone"), Deborah Snowden ("Snowden"), and Inez Washington ("Washington") (together, "Plaintiffs") contend that Select Portfolio Servicing, Inc. ("SPS"), their mortgage servicer, violated the federal Fair Debt Collection Practices Act ("FDCPA") and various state laws and breached their mortgage contracts, when SPS charged them a nominal fee they agreed to pay for special payment services they had requested. The "EZ Pay" fee arose when Plaintiffs asked to submit their mortgage payments via phone or website, rather than by mail for free as their written mortgage agreements provide, and SPS agreed to this extracontractual arrangement conditioned on their agreement to pay that small convenience fee (alleged to be between $5.00 and $15.00).[1]

This Court has already twice dismissed the complaints filed in this action. In its "First Dismissal Order," entered January 4, 2022 (Dkt. 55), this Court dismissed the FDCPA claim and declined to exercise jurisdiction over the state claims.

In its "Second Dismissal Order," entered September 30, 2023 (Dkt. 86), this Court dismissed Plaintiffs' "Consolidated Class Action Complaint" (Dkt. 59, "CCAC") because Plaintiffs failed to "plausibly allege[] that they gave SPS pre-suit notice and an opportunity to cure, as required by each Plaintiff's mortgage agreement." Second Dismissal Order at 16. This Court granted Plaintiffs leave to amend only "if they can sufficiently plead facts to show they have

---

[1] Plaintiffs assert eight causes of action seeking a return of all the fees, statutory damages, and a range of other relief based on the charging of the EZ Pay fee. On behalf of a nationwide class, DeSimone and Washington assert a claim for violation of the federal FDCPA (First Cause of Action). Plaintiffs also assert the following state law claims: On behalf of a nationwide class, Plaintiffs assert claims for breach of contract (Second Cause of Action) and violation of the covenant of good faith and fair dealing (Third Cause of Action). On behalf of a New York Class, DeSimone asserts a claim for violation of New York General Business Law § 349 ("GBL") (Fourth Cause of Action). On behalf of a Maryland Class, Snowden asserts claims for violations of the Maryland Consumer Debt Collection Act ("MCDCA") (Fifth Cause of Action) and the Maryland Consumer Protection Act ("MCPA") (Sixth Cause of Action). On behalf of a California Class, Washington asserts claims for violations of California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") (Seventh Cause of Action) and Unfair Competition Law ("UCL") (Eighth Cause of Action).

complied with the Notice of Grievance provisions and given Defendant reasonable time to cure." *Id.* at 16-17.

Notwithstanding this Court's directive, Plaintiffs filed a "First Amended Consolidated Class Action Complaint" (Dkt. 87, "FACC")[2] in which they *still* have not shown they each provided SPS with pre-suit notice and an opportunity to cure. Instead, in their FACC, Plaintiffs repeat much of the same argument as to pre-suit notice made in their CCAC that the Court found deficient, and absurdly assert that because SPS was "represented by counsel"—in a separate case not involving Plaintiffs—they "arguably could not communicate directly with SPS to provide pre-suit notice of this action." FACC ¶ 115. For this reason alone, this Court should dismiss the FACC with prejudice as leave to amend a fourth time would be futile. *Giotta v. Ocwen Fin. Corp.*, 2016 WL 4447150, at *4 (N.D. Cal. Aug. 24, 2016), *aff'd sub nom.*, 706 F. App'x 421 (9th Cir. 2017).

Even if the Court considers the merits of the claims, the FACC should be dismissed because the federal cause of action, under the FDCPA, fails to state a claim, and the Court should again decline to exercise jurisdiction over the state law claims (*see* First Dismissal Order).

The federal FDCPA claim, brought by DeSimone and Washington, is deficient, as an initial matter, because the Act does not apply to the EZ Pay fees, which were not an existing "debt" that SPS tried to collect as a "debt collector" for someone else. Instead, they were: (1) the fully-disclosed charge for an extra service (accepting payment electronically), assessed at the time the service was requested and rendered; and (2) paid directly to SPS and not owed to a third party. *Estate of Campbell v. Ocwen Loan Servicing,* 467 F. Supp. 3d 1262, 1264-65 (S.D. Fla. 2020).

The FDCPA claims (asserted separately under Sections 1692f and 1692e) would fail even if the statute applied. First, there is no plausible allegation that SPS violated Section 1692f, which

---

[2] For the Court's convenience, SPS uses Plaintiffs' styling of the FACC; however, this is the *fourth* complaint filed in this action. *See* Dkts. 1, 24, 59, 87.

prohibits collection of certain amounts that are not either "expressly authorized by the agreement creating the debt" or "permitted by law." The fees are permitted by law because, among other reasons, a federal court consent order, which the Federal Trade Commission entered into with SPS in 2003, expressly allows fees—like the EZ Pay fees—so long as the fee is not prohibited by law or the loan instruments, is for a specific service requested by the borrower, and is assessed only after the fee is disclosed to the borrower and the borrower consents to pay it in exchange for the service. That criteria is met here. The fees also are "permitted by law" because the common law of contract confirms that borrowers and mortgage servicers can enter into extracontractual agreements for the provision of extra services in exchange for a fee in these circumstances. *See, e.g., Meintzinger v. Sortis Holdings, Inc*., 2019 WL 1471338, at *2 (E.D.N.Y. Apr. 3, 2019); *Thomas-Lawson v. Carrington Mortg. Servs*., *LLC*, 2021 WL 1253578, at *5-6 (C.D. Cal. Apr. 5, 2021). This is supported by the parties' express agreement in the "Loan Charges" section of the mortgage contracts that the absence of express authority in the Security Instrument to charge a specific fee is not a prohibition on charging the fee. Second, the FACC also alleges no plausible violation of Section 1692e, as Plaintiffs have identified no "false, deceptive, or misleading representation" by SPS. *Gallego v. Northland Grp. Inc*., 814 F.3d 123, 127-28 (2d Cir. 2016).

Even if the Court exercises jurisdiction over the state laws claims, Plaintiffs fail to state a claim—under New York law (DeSimone), Maryland law (Snowden), and California law (Washington)—as discussed below.

## ARGUMENT

## I.   PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THEY EACH GAVE SPS THE REQUIRED PRE-SUIT NOTICE AND OPPORTUNITY TO CURE.

Plaintiffs' lawsuit is barred because they still have not met their pleading burden—under Fed. R. Civ. P. 8 and as articulated in the Court's Second Dismissal Order—to "plausibly allege[]

that they gave SPS pre-suit notice and an opportunity to cure, as required by each Plaintiff's mortgage agreement." Second Dismissal Order at 16-17 (citing *Anderson v. Unilever U.S., Inc.*, 607 F. Supp. 3d 441, 457 (S.D.N.Y. 2022) ("[T]o adequately plead the pre-suit notice requirement, plaintiff[s] must provide factual allegations—such as the date and method plaintiff[s] sent a pre-suit notice—supporting the contention that [they] notified [the] defendant of the alleged breach within a reasonable time.")). Plaintiffs' contractual duty to avoid burdening the parties and courts with litigation, if possible, is an important protection—especially where, as here, the issue concerns a total of (at most) $75 each for DeSimone and Washington and $230 for Snowden.

Buried in the middle of their 68-page FACC (¶¶ 103-131), Plaintiffs try to explain (for a second time) how they met the notice requirement or that it was inapplicable. Mostly, though, Plaintiffs rest on allegations and arguments that this Court has already rejected (*id.* ¶¶ 107, 120-131). To the extent they allege anything different or new, the attempts are futile and dismissal is required.

First, this Court already rejected Plaintiffs' allegation (FACC ¶ 108)—raised earlier in their opposition (Dkt. 73) to SPS' Motion to Dismiss Plaintiffs' CCAC (Dkt. 70)—that SPS' Answer in the C.D. Cal. action waived any argument that Washington did not provide sufficient pre-suit notice. *See* Second Dismissal Order at 14. In its Order, this Court earlier stated: "[I]n the C.D. Cal. action SPS expressly 'denied' that Washington's pre-suit letter constituted proper notice." *Id.* The Court found that Washington's allegations regarding pre-suit notice "substantively fail." *Id.* The FACC gives no reason to revisit this conclusion.

Second, as Plaintiffs admit (FACC ¶ 115), this Court already found insufficient their allegations that the requisite notice was somehow provided through an unspecified communication their counsel sent to counsel for SPS in another lawsuit that referenced a potential new suit (FACC

¶ 114). Second Dismissal Order at 15-16. As this Court recognized, that was a different action, with a different law firm representing SPS, involving a different business practice. Tellingly, Plaintiffs do not allege that the communication identified them or gave SPS a chance to cure their individual concerns. To blunt this Court's prior dismissal, they newly assert that because SPS was represented by counsel in the other matter, "counsel for Plaintiffs DeSimone and Snowden *arguably* could not communicate directly with SPS to provide pre-suit notice of this action." FACC ¶ 115 (emphasis added). But there is no rule preventing Plaintiffs from providing notice, or communicating, with their mortgage servicer directly. *In re Turquoise Hill Res. Ltd. Securities Litig.*, 2021 WL 2201388, at *4 (S.D.N.Y. June 1, 2021) (rules of professional conduct do not "prohibit a represented party from reaching out directly to another represented party about ongoing business"); ABA Model Rule of Professional Conduct 4.2, cmt. 4 ("Parties to a matter may communicate directly with each other."). And, of course, consumers involved in litigation nevertheless can and do communicate with their mortgage servicer every day. Further, and fatally, the FACC does not allege that any Plaintiff actually intended to give notice but decided not to because of this 'arguable' impediment. The Court should not countenance this nonsensical, lawyer-invented argument.

Third, as this Court already held, Plaintiffs' contention that pre-suit notice is not required to plead statutory violations (FACC ¶ 120) is wrong. Plaintiffs' mortgage agreements each require pre-suit notice to SPS before any court action "that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument" (DeSimone) or "that arises from the other party's actions pursuant to this

Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument" (Snowden and Washington).[3]

This Court already rejected Plaintiffs' argument, holding that "the 'Notice of Grievance' provisions in Plaintiffs' mortgage agreements apply to lawsuits [] that arise from SPS's alleged actions pursuant to the agreements or based on alleged breaches of the agreements." Second Dismissal Order at 12-13. This conclusion remains correct, as Plaintiffs' claims are alleged to "arise[] from [SPS'] actions pursuant to [the mortgage agreements]"—one of which is, of course, the right SPS has to collect the payments secured by the mortgage—and they "allege[] that [SPS] has not fulfilled [its] obligations [or duty] under [the mortgage agreement]"—allegedly by breaching the mortgage agreements (FACC ¶¶ 189, 191). As this Court held, "it would be nonsensical and self-defeating for Plaintiff[s] to argue that Defendant is not bound by the Notice of Grievance provision in contracts they claim Defendant has breached." Dismissal Order at 13.[4]

<u>Fourth</u>, the Court should disregard as irrelevant (even if true) Plaintiffs' allegations that pre-suit notice would have been futile because SPS "was aware" of controversies about fees like SPS' EZ Pay fee, including lawsuits and settlements involving other mortgage servicers and regulatory statements (FACC ¶¶ 122-131). None of these satisfies the mortgage agreements— which obligated these individual customers to speak up and to provide notice of their specific claims to SPS and allow SPS the opportunity to cure their concerns. *See* Second Dismissal Order

---

[3] *See* FACC Ex. A (Dkt. 87-1, "DeSimone Mortgage") ¶ 20; FACC Ex. B (Dkt. 87-2, "Snowden DOT") ¶ 20; FACC Ex. C (Dkt. 87-3, "Washington DOT") ¶ 20.

[4] Citing Dkt. 72 at 7 ("Plaintiffs' own theory defeats this argument: they allege SPS 'breached' the security instruments (*id.* ¶ 151)—a proposition that is nonsensical if SPS cannot invoke another clause in those same security instruments."). Indeed, like this Court, numerous other courts have enforced notice and cure provisions substantively identical to these and dismissed claims, including statutory claims, concerning loan fees and charges, when the requisite notice has not been given. *See Giotta*, 706 F. App'x at 422; *Hill v. Nationstar Mortg. LLC*, 2015 WL 4478061, at *3 (S.D. Fla. July 6, 2015); *Johnson v. Countrywide Home Loans, Inc.*, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010); *Kurzban v. Specialized Loan Servicing, LLC*, 2018 WL 1570370, at *3 (S.D. Fla. Mar. 30, 2018); *Rodriguez v. Rushmore Loan Mgmt. Servs. LLC*, 2019 WL 423375, at *3-6 (N.D. Ill Feb. 4, 2019).

at 15.[5] There is no exception to the notice provision for disputes that others may have raised or even for "futility" generally.

Plaintiffs' failure to follow the contract requires dismissal of the entire FACC. The case should be dismissed.

## II.     THE FACC SHOULD BE DISMISSED BECAUSE THE SOLE FEDERAL CAUSE OF ACTION, UNDER THE FDCPA, FAILS TO STATE A CLAIM.

Although Plaintiffs' failure to provide notice and an opportunity to cure requires dismissal of all their claims, if the Court does not dismiss on this basis, the FACC should be dismissed in its entirety because the federal FDCPA claim fails on the merits, and the Court should again decline to exercise jurisdiction over the state law claims and dismiss those claims.

### A.     The FDCPA Claim (First Cause of Action) Should Be Dismissed With Prejudice.

#### 1.     The FDCPA does not apply to the EZ Pay fee.

The FDCPA does not apply to the EZ Pay fee for two separate and independent reasons: (1) the fee is not a "debt" and (2) SPS is not a "debt collector" with respect to the fee. Dismissal of the First Cause of Action, by DeSimone and Washington, is required on this basis alone.

##### a.     *The EZ Pay fee is not a "debt" regulated by the FDCPA.*

The EZ Pay fee was not an existing debt obligation owed by DeSimone and Washington, but rather a voluntary charge that they chose to incur to use SPS' pay-by-phone or pay-by-web service and that was assessed at the time the service was requested and rendered. The FDCPA only applies to the collection of "debt," which the Act defines as an existing "obligation . . . to pay money arising out of a transaction . . . ." 15 U.S.C. § 1692a(5). As the allegations in the FACC show, however, the EZ Pay fee was charged simultaneous with the services SPS provided when

---

[5] Citing *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 590 (S.D.N.Y. 2021); *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016).

DeSimone and Washington requested to make their mortgage payments by phone or online. FACC ¶¶ 135, 139, 152-53. The fees therefore were new service charges, not existing "debts" arising out of a prior transaction. Other courts facing similar FDCPA claims have found that the FDCPA does not apply to a convenience fee like the EZ Pay fee—charged at the time the optional service is provided—because the fee is not a statutorily-covered debt obligation. *See Campbell*, 467 F. Supp. 3d at 1264-65 ("Logically, it is difficult to define as a debt something that isn't yet owed. . . . The debt portion of the payment is the overdue mortgage payment."); *Bardak v. Ocwen Loan Servicing*, 2020 WL 5104523, at *4 (M.D. Fla. Aug. 12, 2020) (convenience fee was not "debt" under the FDCPA when the charge was incurred to use "entirely optional, expedited online and telephonic payment methods").[6]

> b.   *SPS is not a "debt collector" under the FDCPA with respect to the EZ Pay fees.*

DeSimone's and Washington's claims fall outside the purview of the FDCPA for the additional reason that SPS is not a "debt collector" with respect to the EZ Pay fees. The FDCPA defines a "debt collector" as "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be *owed or due another*." 15 U.S.C. § 1692a(6) (emphasis added). Specifically excluded from the definition of "debt collector" is a person engaged in conduct that "concerns a debt which was originated by such person." *Id.* § 1692a(6)(F)(ii). Since the EZ Pay fee was charged by and retained by SPS (FACC ¶¶ 9, 136)[7], it was not a fee collected for "another" and so the FDCPA does not apply. *Turner*, 467 F. Supp. 3d at 1247 ("the convenience fee" charged by PHH "is not a debt owed another, and, therefore, is not actionable under" the

---

[6] *See also Kelly v. Ocwen Loan Servicing,* 2020 WL 4428470, at *2-3 (M.D. Fla. July 31, 2020); *Reid v. Ocwen Loan Servicing,* 2020 WL 5104539, at *1 (S.D. Fla. May 4, 2020); *Lang v. Ocwen Loan Servicing,* 2020 WL 5104522, at *2-3 (M.D. Fla. July 17, 2020); *Lish v. Amerihome Mortg. Co.,* 2020 WL 6688597, at *5 (C.D. Cal. Nov. 10, 2020).

[7] *See also id.* ¶¶ 43-44.

FDCPA); *accord Garbutt v. Ocwen Loan Servicing, LLC,* 2020 WL 5641999, at *3 (M.D. Fla. Sept. 22, 2020); *Bardak*, 2020 WL 5104523, at *3-4; *Kelly*, 2020 WL 4428470, at *2-3; *Lang*, 2020 WL 5104522, at *2-3; *Reid*, 2020 WL 5104539, at *1.

### 2. DeSimone and Washington Fail to Adequately Allege Any Substantive Violation of Section 1692f or Section 1692e.

Even if the FDCPA applied to the EZ Pay fees (and it does not), the First Cause of Action must be dismissed because it fails to state a substantive claim.[8]

DeSimone and Washington allege that by charging EZ Pay fees, SPS violated Section 1692f(1), which prohibits collection of an amount not either "expressly authorized by the agreement creating the debt" or "permitted by law." They also allege that by representing that it was entitled to collect EZ Pay fees, SPS violated Section 1692e(2) and (10) which prohibit, respectively, "[t]he false representation of the character, amount, or legal status of any debt," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt."

### a. *DeSimone and Washington have not plausibly alleged a violation of Section 1692f.*

To state a claim under Section 1692f, DeSimone and Washington must show both a credible claim the fee is not authorized in the contract and that it is not permitted by law. *See, e.g., Reyes v. N.A.R. Inc.*, 546 F. Supp. 3d 1031, 1041 (D. Utah 2021). The EZ Pay fees do not trigger either part of this test, never mind both of them.

### i.  The EZ Pay fee is authorized by the Mortgage Agreements.

DeSimone and Washington are wrong in contending that their mortgage agreements do not allow for the EZ Pay fee. Instead, their mortgage agreements each recognize that extracontractual

---

[8] To the extent the FDCPA allegations concern fees charged prior to August 20, 2019—one year before the initial complaint was filed—those allegations are time-barred. *See Schuh v. Druckman & Sinel, L.L.P.,* 602 F. Supp. 2d 454, 466 (S.D.N.Y. 2009) ("Under the FDCPA, a claim for a violation must be brought 'within one year from the date on which the violation occurs.'") (citing 15 U.S.C. § 1692k(d)).

agreements are expressly permitted through both the "Loan Charges" provision in Paragraph 14 and the "Governing Law" provision in Paragraph 16. The "Loan Charges" section of each agreement anticipates that additional fees not stated in the written document may be incurred over the life of the loan, stating "the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee" (DeSimone) and "the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee" (Washington).[9] The mortgage agreements further underscore the parties' ability to contract for a service fee outside of the original writing, each noting in the "Governing Law" section that local or federal law may permit such additional agreements or may be silent on the right of the parties to contract but "such silence does not mean that Lender and I cannot agree by contract" (DeSimone) and "such silence shall not be construed as a prohibition against agreement by contract" (Washington).[10]

Under these terms, the mortgage agreements authorize the parties to make extracontractual agreements, at least as to matters not otherwise prohibited by the contract or by law. New York and California law, which govern DeSimone's and Washington's mortgage agreements (*id.*; FACC ¶¶ 66-67, 69), allow parties to a written contract to make subsequent agreements to govern their relationship. *El-Nahal v. FA Mgmt., Inc.*, 5 N.Y.S.3d 201, 202 (N.Y. App. Div. 2015); *PG-USA, Inc. v. St. Andrews Prods. Co.*, 2009 WL 10700241, at *3 (C.D. Cal. July 2, 2009); *see also Meintzinger,* 2019 WL 1471338, at *2 ("new contract" for pay-by-phone service permissible); *Thomas-Lawson*, 2021 WL 1253578, at *6 (same); *Flores v. Collection Consultants of California*, 2015 WL 4254032, at *10 (C.D. Cal. Mar. 20, 2015) (fee charged as a result of a "separate[]"

---

[9] DeSimone Mortgage ¶ 14; Washington DOT ¶ 14.

[10] DeSimone Mortgage ¶ 16; Washington DOT ¶ 16.

agreement for alternative payment method permissible). And, as noted above, both the "Loan Charges" and "Governing Law" provisions of the mortgage agreements preserve the state law right of the parties to enter into such agreements. Given the often decades-long mortgage loan servicing relationship, it is not surprising that Plaintiffs' mortgage agreements permit borrowers and servicers to enter into extracontractual agreements for additional services that borrowers request.

In circumstances like the one at bar, the charge is permitted because it is the product of a "separate agreement between the parties to ensure same-day posting and processing of [the borrower's] mortgage payments—an optional service [the borrower] voluntarily incurred." *Turner*, 467 F. Supp. 3d at 1247.[11] As Judge Cogan observed in considering a collector's offer of a convenience service like SPS' EZ Pay options, "[n]othing in the FDCPA requires the collection company to accept payments by telephone, and thus nothing prohibits it from offering to enter into a new contract with the debtor, *i.e.*, 'for $6, I will give you the added convenience of paying by phone.'" *Meintzinger,* 2019 WL 1471338, at *2; *accord Thomas-Lawson*, 2021 WL 1253578, at *6 ("nothing in the FDCPA . . . prohibits [defendant] from offering to enter into a new contract with the debtor, *i.e.*, for the added convenience of paying by phone").[12]

Many courts have recognized that fees charged when a borrower voluntarily chooses to use a preferred payment method (such as pay-by-phone or pay-by-web), instead of paying their mortgage by mail for free, are allowed under a written mortgage agreement even if the fee is not

---

[11] *See also Campbell*, 467 F. Supp. 3d at 1265 (convenience fee permissible "separate transaction"); *Kelly*, 2020 WL 4428470, at *2-3 (same); *Reid*, 2020 WL 5104539, at *1 (same); *Lang*, 2020 WL 5104522, at *2-3 (same).

[12] Quoting *Lish,* 2020 WL 6688597, at *8 ("convenience fees . . . are an entirely separate charge incurred for providing an entirely separate service"); *see also Flores*, 2015 WL 4254032, at *10 (dismissing claim that defendant charged an unlawful transaction fee to accept credit card payments where the "consumer must choose to affirmatively and separately opt-in to this alternative method"); *Kier v. Ocwen Loan Servicing, LLC*, 122 F. Supp. 3d 786, 789 (N.D. Ill. 2015) (dismissing claim that "rush processing fee" was unlawful because "servicers and consumers can agree to the manner in which payments are to be made"); *Garbutt*, 2020 WL 5641999, at *4 (convenience fee is "a separate optional fee").

stated in the written document. *See, e.g., Cassese v. Washington Mut., Inc*., 2008 WL 8652499, at *1-3, *12 (E.D.N.Y. June 27, 2008).[13]

           ii.    <u>The EZ Pay fee is permitted by law.</u>

        DeSimone and Washington baldly allege that the EZ Pay fee is not "permitted by law." This is wrong for at least two reasons. First, as discussed immediately above, courts recognize that borrowers and servicers in a mortgage servicing relationship are legally permitted to agree that the mortgage company will provide an extra service for the convenience of the borrower so long as the borrower agrees to pay a fee for that service. That is what is alleged to have happened here.

        Second, independent of that legal permission, federal law—an order of a United States district court—permitted *SPS in particular* to charge service fees such as the EZ Pay fees. A Consent Order entered by the federal district court in Massachusetts, in a case brought against SPS by the Federal Trade Commission, set forth fee standards that, if met, permit customer charges. *See* Declaration of Alyssa A. Sussman ("Sussman Decl.") Ex. 1, *United States v. Fairbanks Capital Corp.*, No. 1:03-cv-12219 (D. Mass.), ECF 6 ("2003 Order").[14] Specifically, the FTC Orders allow SPS to collect reasonable servicing-related fees, like the EZ Pay fees, "for a specific

---

[13] *Accord Davis v. Homecomings Fin.,* 2006 WL 2927701, at *2-3 (W.D. Wash. Oct. 10, 2006); *Cappellini v. Mellon Mortg. Co.,* 991 F. Supp. 31, 33, 39-40 (D. Mass. 1997); *Jerik v. Columbia Nat'l, Inc.*, 1999 WL 1267702, at *3 (N.D. Ill. Sept. 30, 1999). Indeed, SPS prevailed on the issue of the legality of charging the fee many years ago. In *Chatman v. Fairbanks Capital Corp.*, the court held that SPS' predecessor Fairbanks could enter into extracontractual agreements to offer services for payment by phone or internet in exchange for the fee and was "not required to specifically state every service-related fee in [p]laintiffs' note or mortgage." 2002 WL 1338492, at *3 (N.D. Ill. June 18, 2002). *See also Mariscal v. Flagstar Bank, FSB*, 2020 WL 4804983, at *1, *4 (C.D. Cal. Aug. 4, 2020) (dismissing claim that processing fees for phone-based mortgage payments were unlawful where plaintiffs "preferred the convenience of paying by phone"); *Torliatt v. Ocwen Loan Servicing, LLC*, 2020 WL 1904596, at *5 (N.D. Cal. Apr. 17, 2020) (dismissing claim that processing fees for mortgage payments made online were prohibited because the fees were consistent with the mortgage agreement).

[14] SPS is the successor by name change to the defendant Fairbanks, as reflected in a modification of the Order that did not alter the relevant provision. *See* Sussman Decl. Ex. 2, Modified Stipulated Final Judgment and Order, *United States v. Select Portfolio Servicing, Inc. (formerly Fairbanks Capital Corp.),* No. 1:03-cv-12219 (D. Mass.), ECF 96 ("2007 Modified Order"). The 2003 Order and the 2007 Modified Order are referred to collectively herein as the "FTC Orders." The Court may take judicial notice of the FTC Orders because they are public court records. *Thompson v. Glob. Contact Servs., LLC*, 2021 WL 3425378, at *5 (E.D.N.Y. Aug. 4, 2021).

service requested by a consumer that is assessed and/or collected only after clear and conspicuous disclosure of the fee is provided to the consumer and explicit consent is obtained from the consumer to pay the fee in exchange for the service, and such fee is not otherwise prohibited by law or the loan instruments." Sussman Decl. Ex. 1 at 10, Ex. 2 at 10. Plaintiffs do not allege any facts that would plausibly suggest the EZ Pay fees were not permitted by these federal court orders.

DeSimone, a New York plaintiff, alleges that the EZ Pay fees were illegal because they violated a regulation of the state Department of Financial Services ("DFS"), as the fee is "not reasonably related to the cost of rendering the service." FACC ¶ 203 (citing 3 N.Y.C.R.R. § 419.5(b)) (previously codified as 3 N.Y.C.R.R. § 419.10(b)). The regulation is irrelevant because it was enacted effective December 18, 2019, which was after the dates (FACC ¶ 135) DeSimone was charged the subject fees. *See* N.Y. Comp. Codes R. & Regs. tit. 3, § 419.5. In any event, the DFS specifically includes "pay by phone fee[s]" in its list of "permissible standard fees and charges" that mortgage servicers may assess as long as they are disclosed and consented to.[15]

Washington, a California plaintiff, alleges in circular fashion that the EZ Pay fees were illegal because they violated the Rosenthal Act. FACC ¶ 203. But, as explained in Section III.D. below, the Rosenthal Act claim is based on the alleged FDCPA violation as well as, independently, the Rosenthal Act's requirement that the fee is "permitted by law." The Rosenthal Act claim thus fails because, as explained above with respect to the FDCPA and in Section III.D below with respect to the Rosenthal Act specifically, the EZ Pay fee is legally permissible. Washington has failed to state a claim under the Rosenthal Act, so that cannot be the basis of her FDCPA claim.

---

[15] *See Mortgage Loan Servicer Registration Frequently Asked Questions*, NEW YORK STATE DEPARTMENT OF FINANCIAL SERVICES, *available at* https://www.dfs.ny.gov/apps_and_licensing/mortgage_companies/Mortgage_Loan_Servicers_Frequently_Asked_Questions (last visited January 18, 2024). The Court may take judicial notice of information on a government website. *Leger v. Kalitta*, 2018 WL 2057142, at *3 (E.D.N.Y. Jan. 26, 2018); *Ligon v. Doherty*, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002); *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 262 (S.D.N.Y. 2019), *aff'd,* 788 F. App'x 85 (2d Cir. 2019).

In light of the authorities above, the EZ Pay fees were, indeed, permitted by law.

   b.   *DeSimone and Washington have not plausibly alleged a violation of Section 1692e.*

The Court can put aside the theory that a violation of Section 1692f here can trigger a violation of Section 1692e, because SPS has demonstrated Section 1692f was not violated.

The allegation that Section 1692e was violated because SPS made misrepresentations to DeSimone and Washington fares no better. A plaintiff alleging a violation of Section 1692e must identify a specific actionable representation. The FACC tries to meet that requirement by asserting SPS made "false representations that it was entitled to collect Pay-to-Pay Fees." FACC ¶ 193. But there is no detail provided in the FACC of when, how, and to whom that representation was made. Because many of the communications about the EZ Pay fee are alleged to have taken place orally, over numerous telephone calls (*e.g.*, FACC ¶¶ 135, 139, 152-53), the lack of detail is particularly troubling. The vague and conclusory allegation that there was a misrepresentation is insufficient to plausibly show that SPS made any actionable statement at all. *See Gallego,* 814 F.3d at 127-28; *Redhead v. Winston & Winston, P.C.,* 2002 WL 31106934, at *3 (S.D.N.Y. Sept. 20, 2002).[16]

Because the sole federal claim under the FDCPA must be dismissed, the Court should again decline to exercise jurisdiction over the state law claims. First Dismissal Order at 8.[17]

## III.   THE STATE LAW CLAIMS SHOULD BE DISMISSED ON THE MERITS.

Even if the Court exercises jurisdiction over the state law claims, those claims should be dismissed with prejudice on the merits.

---

[16] *Accord Eades v. Kennedy, PC Law Offices,* 799 F.3d 161, 172-73 (2d Cir. 2015); *Pettaway v. Nat'l Recovery Sols., LLC,* 955 F.3d 299, 304-5 (2d Cir. 2020); *Qader v. Rushmore Recovery,* 667 F. Supp. 2d 304, 306 (S.D.N.Y. 2009).

[17] *See also Bardak,* 2020 WL 5104523, at *4 n.8 (declining to exercise jurisdiction over state law claim after dismissing the underlying federal FDCPA claim).

A.   **Plaintiffs' Claims For Breach of Contract (Second Cause of Action) and Violation of the Covenant of Good Faith and Fair Dealing (Third Cause of Action) Should Be Dismissed With Prejudice.**

1.   **The Breach of Contract Claim Should Be Dismissed Because Plaintiffs Have Not Plausibly Alleged Any Breach.**

The Court should dismiss the Second Cause of Action, brought by all Plaintiffs, because there is no plausible allegation of breach. As noted, the express language of Plaintiffs' mortgage agreements precludes their theory that the agreements were breached because the EZ Pay fees were "not authorized or permitted" (FACC ¶ 200). Instead, each agreement states, in the "Loan Charges" section, that the absence of express authority to charge a specific fee is not a prohibition on charging the fee.[18] And each agreement notes, in the "Governing Law" section, that local or federal law may permit additional agreements or may be silent on the right of the parties to contract but "such silence shall not be construed as a prohibition against agreement by contract."[19]

Numerous court have rejected plaintiffs' arguments that charging certain fees in a mortgage servicing relationship—including convenience fees for making mortgage payments over the phone or online—breached mortgage agreements, relying on "Loan Charges" provisions substantively identical to the provision in Plaintiffs' mortgage agreements. Most recently, the Court of Appeals for the Tenth Circuit affirmed dismissal of a breach of contract claim based on convenience fees charged by a mortgage servicer for making telephonic mortgage payments, relying on the Loan Charges term as precluding the cause of action. *Matchett v. BSI Fin. Servs.*, 2023 WL 4678683, at *4 (10th Cir. July 21, 2023). Other courts have reached the same conclusion, finding no breach as

---

[18] *See* Snowden DOT ¶ 14 ("the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee"); Washington DOT ¶ 14 (same); DeSimone Mortgage ¶ 14 ("the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee").

[19] Snowden DOT ¶ 16; Washington DOT ¶ 16; *accord* DeSimone Mortgage ¶ 16 ("such silence does not mean that Lender and I cannot agree by contract").

to fees charged for mortgage payments made by telephone and online because of the authority reserved to the parties under the "Loan Charges" provision. *See Torliatt*, 2020 WL 1904596, at *5 (dismissing breach of contract claim because fee for mortgage payments made online was consistent with "Loan Charges" provision of mortgage); *Beer v. Nationstar Mortg. Holdings, Inc.*, 2015 WL 13037309, at *3-4 (E.D. Mich. July 15, 2015) (finding no breach as to challenged fees based on "Loan Charges" provision in mortgage); *Weller v. JP Morgan Chase Bank, N.A.*, 2017 WL 3581099, at *7 (N.D. W. Va. Aug. 18, 2017) (same); *Lish*, 2020 WL 6688597, at *8 (same).[20]

In addition, as referenced above, the state law governing each Plaintiff's mortgage agreement allows parties to a written contract to make subsequent agreements to govern their relationship. *El-Nahal*, 5 N.Y.S.3d at 202; *Horsetail Techs., LLC v. Delaware State Police Fed. Credit Union*, 2020 WL 3402302, at *21 (D. Md. June 19, 2020); *PG-USA, Inc.*, 2009 WL 10700241, at *3.[21] Here, each Plaintiff affirmatively entered into contracts with SPS, giving them the legal right under state law to make a payment via their preferred payment method and SPS the legal right under state law to charge a convenience fee for use of the special payment service Plaintiffs chose. And, as noted above, both the "Loan Charges" and "Governing Law" provisions preserve the state law right of the parties to enter into such agreements.

Plaintiffs' theory that the EZ Pay fee cannot be charged to them unless specifically named in the written mortgage agreement is untenable given the express language of the mortgage agreements, clear state law, and the authorities cited in this Section and Section II.A.2.a. above.[22]

---

[20] *See also Heald v. Ocwen Loan Servicing, LLC*, 2014 WL 4639410, at *4-6 (M.D. Fla. Sept. 16, 2014) (dismissing FDCPA claim because mortgage contained "Loan Charges" provision); *Manos v. MTC Fin., Inc.*, 2018 WL 6220051, at *6 (C.D. Cal. Apr. 2, 2018), *aff'd*, 773 F. App'x 452 (9th Cir. 2019) (same as to RICO claim).

[21] *See also Meintzinger,* 2019 WL 1471338, at *2; *Thomas-Lawson*, 2021 WL 1253578, at *6; *Flores*, 2015 WL 4254032, at *10.

[22] *See Matchett*, 2023 WL 4678683, at *4 (dismissing breach of contract claim based on similar convenience fee); *Chatman,* 2002 WL 1338492, at *3 (same); *Mariscal*, 2020 WL 4804983, at *1, *4  (same); *Torliatt,* 2020 WL 1904596, at *5 (same); *Thomas-Lawson*, 2021 WL 1253578, at *6 (same); *Lish*, 2020 WL 6688597, at *8 (same); *see*

**2. The Breach of Contract Claim Should Be Dismissed Because Plaintiffs Agreed to Pay the EZ Pay Fees In Exchange for the Service of Paying By Phone or Website.**

The contract claim also cannot stand in light of Plaintiffs' agreement with SPS to pay the EZ Pay charge. Plaintiffs admit they each requested that SPS provide them with the service of making a payment by telephone or online where SPS withdrew the funds and the fee from each of their accounts.[23] And they acknowledge that they knew an EZ Pay fee charge would be imposed for that service. *Id*. Indeed, DeSimone talked about the fee with SPS' representatives each time she paid it, always negotiating the charge down in amount from $15 to $7.50. *Id*. ¶ 135. Snowden and Washington, too, recount having discussed the fee with SPS every time. *Id*. ¶¶ 139, 152-53.[24] It would be illogical to permit Plaintiffs to make a claim for breach where they actually agreed to the conduct that forms the basis for their claim. As discussed, many courts recognize, including in lawsuits just like this one which challenge convenience fees for paying a loan by phone or online, that such agreements and related fees are permissible and required dismissal of similar lawsuits.[25] Plaintiffs' extracontractual agreements are fully consistent with federal and state law, as outlined above. The Second Cause of Action should be dismissed for this further reason.

---

*also Net2Globe Int'l, Inc. v. Time Warner Telecom of New York*, 273 F. Supp. 2d 436, 456 (S.D.N.Y. 2003) (dismissing breach of contract claim where challenged conduct was authorized under the contract); *BVR Dev., LLC v. CalAtlantic Grp., Inc.,* 2019 WL 919560, at *6 (D. Md. Feb. 25, 2019) (same); *Brien v. J.P. Morgan Chase Bank, N.A.*, 2010 WL 11597806, at *5 (C.D. Cal. July 9, 2010) (same).

[23] FACC ¶¶ 135, 139, 152-53.

[24] The mortgage statements that Plaintiffs received from SPS, which Plaintiffs refer to in paragraphs 34, 134, 136, 151, 154, 155, plainly disclose that if they wished to make their mortgage payment by phone or website, a fee of "up to $15.00" would be charged and then showed those charges after they had been paid. *See* Sussman Decl. Exs. 3-9 at pp. 1-2. The Court may consider Plaintiffs' monthly mortgage statements showing the EZ Pay fees they paid because Plaintiffs reference them in the FACC. *Araujo v. PennyMac Loan Servs., LLC*, 2015 WL 5664259, at *5 n.4 (E.D.N.Y. Sept. 23, 2015) (considering mortgage servicing letter on motion to dismiss because complaint incorporates it by reference); *Diaz v. NBC Universal, Inc*., 536 F. Supp. 2d 337, 342 (S.D.N.Y. 2008) (on motion to dismiss, the court "may consider the full text of documents that are quoted in the complaint"), *aff'd*, 337 F. App'x 94 (2d Cir. 2009).

[25] *See, e.g., Turner*, 467 F. Supp. 3d 1244; *Bardak*, 2020 WL 5104523; *Campbell*, 467 F. Supp. 3d 1262; *Kelly*, 2020 WL 4428470; *Reid*, 2020 WL 5104539; *Lang*, 2020 WL 5104522; *Mariscal*, 2020 WL 4804983.

### 3.   The Tagalong Good Faith And Fair Dealing Claim Should Be Dismissed.

As to Snowden, the Third Cause of Action must be dismissed because "[i]n Maryland, there is no separate or independent cause of action for breach of good faith and fair dealing" apart from a claim for breach of contract. *Davis v. Wilmington Fin., Inc*., 2010 WL 1375363, at *8 (D. Md. Mar. 26, 2010).[26]

As to DeSimone (New York) and Washington (California), the Third Cause of Action fails to state a claim for two independent reasons. First, a good faith and fair dealing claim can survive dismissal "only if it is based on allegations different from those underlying the accompanying breach of contract claim." *Great Lakes Reinsurance (UK) SE v. Herzig*, 413 F. Supp. 3d 177, 183-84 (S.D.N.Y. 2019); *accord Trinity Hotel Invs., LLC v. Sunstone OP Properties, LLC*, 2009 WL 303330, at *3 (C.D. Cal. Feb. 6, 2009). Here, the exact conduct Plaintiffs allege for their implied covenant claim forms the basis for the breach of contract claim.[27] Second, trying to evade this rule, the FACC suggests that in supposedly breaching the contract, SPS abused discretion that it had been granted and acted "to contravene [Plaintiffs'] reasonable contractual expectations." FACC ¶ 215. While abuse of granted discretion can in some circumstances animate an implied covenant theory, the FACC does not identify any term in the mortgage agreements where discretion was granted to SPS that SPS then abused. This failing, too, requires dismissal. *Perks v. TD Bank, N.A.,* 444 F. Supp. 3d 635, 641 (S.D.N.Y. 2020) (contract must contemplate the exercise of discretion); *Palmiotto v. Am.'s Servicing Co.*, 2012 WL 12868482, at *4 (S.D. Cal. Sept. 26, 2012) (same).

---

[26] *Accord Titan Custom Cabinets, Inc. v. Trust Bank*, 2020 WL 7230589, at *5 (D. Md. Dec. 8, 2020) (good faith and fair dealing "is simply not a recognized cause of action under Maryland law").

[27] *Compare* FACC ¶ 216 (alleging SPS abused its obligations of good faith and fair dealing "by imposing improper Pay-to-Pay Fees") *with id.* ¶ 200 (alleging SPS breached mortgage agreements "by imposing Pay-to-Pay Fees . . . not authorized or permitted by [the Mortgages]").

**B.    DeSimone's Claim for Violation of New York General Business Law § 349 (Fourth Cause of Action) Should Be Dismissed With Prejudice.**

DeSimone asserts that SPS violated the GBL by engaging in "deceptive acts or practices." FACC ¶¶ 220-230. DeSimone does not identify any particular deceptive statements or actions made or taken by SPS, referring only to the "acts, practices, misrepresentations and omissions alleged herein." *Id.* ¶ 224. Based on the same reasoning discussed above with respect to the misrepresentation claims in the First Cause of Action, under FDCPA Section 1692e, and caselaw under the GBL specifically, conclusory and non-specific assertions of deception are insufficient to state a claim. *See Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287–88 (E.D.N.Y. 2009) ("Plaintiff may not maintain a cause of action under [GBL] § 349 where she has failed to identify any 'material' 'deceptive acts' engaged in by the defendant.").[28]

**C.    Snowden's Claims For Violations of the MCDCA and MCPA Should Be Dismissed With Prejudice.**

**1.    Snowden's MCDCA Claim Fails.**

Snowden's MCDCA claim is based on Section 14-202(8), which provides, "In collecting or attempting to collect an alleged debt[,] a collector may not . . . [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." FACC ¶¶ 59, 234. Snowden cannot establish either of the required elements of her claim: (1) that SPS did not have a right to charge the fee and (2) that SPS knew it did not have a right to charge the fee. *Pugh v. Corelogic Credco, LLC*, 2013 WL 5655705, at *4 (D. Md. Oct. 16, 2013). First, as explained in Sections II.A. and III.A.1., 2., Snowden has not plausibly alleged that SPS did not have a right to charge her the EZ Pay fee after she requested the special payment service and discussed the fee with SPS.[29] In

---

[28] *See also Singh v. NYCTL 2009-A Trust*, 2016 WL 3962009, at *11-12 (S.D.N.Y. July 20, 2016), *aff'd*, 683 F. App'x 76 (2d Cir. 2017) (dismissing GBL claim because plaintiff did not adequately plead any deceptive act); *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (affirming dismissal as plaintiff failed to plead any deceptive act).

[29] For this reason, Snowden cannot base her MCDCA claim on any FDCPA violation.

addition to the multitude of authorities cited above finding that convenience fees like the EZ Pay fees are legally permissible, it is notable that SPS (perhaps unlike other mortgage servicers) had express permission to charge the fee under the consent orders it had entered into with the FTC.[30]

Second, and consequently, the FACC contains no plausible factual allegations that SPS somehow knew it had no right to charge EZ Pay fees. Snowden offers only a formulaic statement that "SPS knew that the mortgage agreements of Plaintiff Snowden and the Maryland Class did not expressly authorize SPS to collect Pay-to-Pay fees." FACC ¶ 235. That is not sufficient to withstand a motion to dismiss.[31] *See Mitchell v. U.S. Bank Nat'l Ass'n*, 2018 WL 4679949, at *7 (D. Md. Sept. 28, 2018) (dismissing MCDCA claim where there was no plausible allegation mortgage servicer had actual knowledge of unauthorized conduct).[32]

### 2.   Snowden's Derivative MCPA Claim Fails Too.

Snowden argues initially that the MCPA was violated because the MCDCA was violated. FACC ¶ 248. Since Snowden has failed to state a claim for violation of the MCDCA, that forecloses this theory of recovery. *Pugh*, 2013 WL 5655705, at *5. Snowden also posits a standalone violation of the MCPA, because SPS allegedly did not disclose that the fees were not permitted under the contract, that the fees violated the MCDCA, and that the fees were not

---

[30] Although the Fourth Circuit Court of Appeals reversed dismissal of an MCDCA claim in *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370 (4th Cir. 2022), this case presents different circumstances than *Alexander* for at least three reasons. First, the Fourth Circuit's decision to reverse turned, in substantial part, on the need to overturn the district court's erroneous view that the defendant there was not a "collector" under the MCDCA. *Id.* at 372. Here, SPS does not argue it is not a "collector" under the MCDCA. Second, the defendant in *Alexander* "concede[d] that the [mortgage] agreements creating the debt do not expressly authorize the convenience fees." *Id.* at 377. Here, there is no such concession. *See* Sections III.A.1.b. and   III.A.2. above. Third, unlike in *Alexander*, there is no plausible allegation that SPS did not have a right—or knew it did not have a right—to charge the fees because, as previously explained, SPS was legally permitted to charge them. Indeed, SPS has a right to charge the fees because, among other reasons, the consent orders it entered into with the FTC gave SPS permission to charge the fees.

[31] It is, of course, not surprising that there is nothing in Snowden's allegations to suggest SPS "knew" it could not charge EZ Pay fees. The FTC Orders and caselaw, including the *Chatman* case SPS had successfully defended, established that SPS is permitted to charge convenience fees for special services.

[32] *See also Flowers v. Baltax 2017, LLC*, 2019 WL 3501584, at *9 (D. Md. Aug. 1, 2019) (same); *Ensor v. Wells Fargo Bank Nat'l Ass'n*, 2022 WL 345513, at *5 n.3 (D. Md. Feb. 4, 2022) (same).

reasonable. FACC ¶ 249. As an initial matter, the first two supposed facts have been shown to not be true: as discussed above, the fees were permitted under the mortgage agreement and the fees assessed on Snowden did not violate the MCDCA.

Snowden's remaining allegation is that SPS failed to disclose that the fees supposedly were not "reasonably related" to SPS' costs for the service she requested. *Id*. This bare statement does not support a plausible claim for deception. The assertion that the fee was 'too high' is unsupported by facts and entirely speculative. It fails the plausibility test for that reason alone. Further, even if accurate, there is every reason to reject Snowden's apparent premise that by quoting the amount of the fee and then imposing it upon request, SPS made some kind of implied representation as to how it had been calculated, or that SPS was required to make any disclosure about how it had been calculated. "If [Plaintiffs] have specific active misrepresentations or omissions in mind, fairness requires that they state them with considerably greater particularity than they have done in their Complaint." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007).[33]

With respect to this last theory of deception, Snowden also offers no allegation that she relied on some belief that the fee was "reasonable" (and SPS' supposed failure to correct that belief) when she decided to agree to the EZ Pay fee so she could make payments in a certain way. Nor is there anything to suggest that Snowden would have done anything differently, or what she would have done, or why. *See Ensor*, 2022 WL 345513, at *5 (dismissing MCPA claim where plaintiff "does not direct the court to specific demonstrations of reliance").[34] In the absence of credible allegations of reliance, the MCPA claim must be dismissed.

---

[33] *Accord Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 458 (D. Md. 2014) ("[c]haracterizing the fee as a 'service charge' is not objectively false: It is the fee that customers are charged for the service that [defendant] provides").

[34] *See also Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013) ("A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice."); *Sindermann v. Wells*

**D.      Washington's Claims For Violations of the Rosenthal Act and UCL Should Be Dismissed With Prejudice.**

In the Seventh Cause of Action, Washington alleges that the EZ Pay fees violate Section 1788.17 of the Rosenthal Act because the fees violate the FDCPA, and that the fees violate Section 1788.14(b) of the Rosenthal Act because they are not "permitted by law."[35] The Court should dismiss the 1788.17 claim because, as explained in Section II.A., there was no FDCPA violation. Washington's allegation that the fees violated Section 1788.14(b) similarly is predicated on the theory that the fees are not "permitted by law" because they were not "expressly set out in [the] mortgage." FACC ¶¶ 252, 270. The Section 1788.14(b) claim cannot stand because, as shown in Section III.A. above and as case law specific to the Rosenthal Act confirms, the fees were "permitted by law." *Mariscal v. Flagstar Bank, FSB*, 2021 WL 4260879, at *6 (C.D. Cal. Sept. 9, 2021) (dismissing Rosenthal Act claim).[36] Indeed, as noted above, the fees are legally permissible under the common law of contract, by and under SPS' agreements with the FTC, and by the wealth of caselaw confirming that agreements between mortgage servicers and borrowers are enforceable.

Washington's derivative UCL claim (Eighth Cause of Action) should be dismissed because it is predicated on the same faulty theory underlying her Rosenthal Act and FDCPA claims. FACC ¶ 268. That alone is sufficient to dismiss Washington's claim that the fees are "unlawful" under

---

*Fargo Bank, N.A.*, 2014 WL 7369812, at *4-5 (D. Md. Dec. 23, 2014) (dismissing MCPA claim based on conclusory allegations where plaintiff failed to allege reliance).

[35] To the extent Washington alleges that the EZ Pay fees were not legally added to the existing debt obligation under Section 1788.13(e), the Court can dismiss that allegation on its face because, as noted above, the EZ Pay fees were not added to the existing mortgage debt. Instead, they were separate charges incurred and paid at the same time the EZ Pay services were requested and rendered. *See supra,* Section III.A.2.; *see also Matchett*, 2023 WL 4678683, at *4 ("although Plaintiff correctly argues that Defendant cannot unilaterally add fees to her mortgage, Plaintiff admitted to the district court that she could have mailed her payment to Defendant to avoid paying the phone fees").

[36] *Accord Thomas-Lawson*, 2021 WL 1253578, at *6 (dismissing Rosenthal Act claim because it "incorrectly presuppose[d] that pay-to-pay fees are prohibited by the [Rosenthal Act], but they are not"); *see also Lish*, 2020 WL 6688597, at *3-4 ("Defendant simply offered Plaintiff the *option* to pay by telephone for a fee and Plaintiff opted to take advantage of the optional convenience and incur the charge for doing so") (emphasis in original).

the UCL. *Lish*, 2020 WL 6688597, at *4 ("because Plaintiff has failed to state a claim under either

the Rosenthal Act or the FDCPA, the UCL claim also fails").[37] To the extent Washington contends

that the charging of the EZ Pay fee is "unfair" under the UCL because the practice is "immoral,

unethical, oppressive, and unscrupulous" and "substantially injurious to consumers" (FACC ¶¶

283-84), those conclusory allegations cannot support the claim. Where, as here, "[plaintiff] has not

identified a public policy implicated by Pay-to-Pay fees, nor has she pleaded facts sufficient to

show the collection of such fees is 'immoral, unethical, oppressive or unscrupulous,'" the claim

necessarily fails. *Elbert,* 2020 WL 4818605, at *3.[38]

## IV.    THE COURT SHOULD DISMISS OR STRIKE THE CLASS ALLEGATIONS.

In the event the FACC survives, the Court should dismiss or strike the class allegations.

Pursuant to Fed. R. Civ. P. 12(f), the court may strike from a pleading any "redundant, immaterial,

impertinent or scandalous matter." Motions to strike under Rule 12(f) are a well-recognized means

of weeding out legally inadequate class claims early in the case. *See Borgese v. Baby Brezza*

*Enters. LLC*, 2021 WL 634722, at *4 (S.D.N.Y. Feb. 18, 2021); Fed. R. Civ. P. 23(d)(1)(D).

### A.    The Court Should Dismiss Or Strike The Class Allegations Because There Are Predominant Individualized Issues As To Pre-Suit Notice.

The Court should dismiss or strike the class allegations because it is clear from the FACC,

and the Court's Second Dismissal Order, that individualized issues predominate as to each putative

class member's compliance with Notice of Grievance provisions in their mortgage agreements.[39]

---

[37] *See also Mariscal*, 2020 WL 4804983, at *4 ("[s]ince [Plaintiffs'] Rosenthal Act claim is deficient . . . , their UCL claim also fails"); *Thomas-Lawson*, 2021 WL 1253578, at *6 (dismissing UCL claim that "mimic[ed] or rel[ied] on the alleged FDCPA claim" which also failed); *Elbert v. RoundPoint Mortg. Servicing Corp.,* 2020 WL 4818605, at *3 (N.D. Cal. Aug. 19, 2020) (dismissing UCL claim that was "wholly derivative" of failed Rosenthal Act claim).

[38] *Accord Aguirre v. Wells Fargo Bank, N.A.*, 2015 WL 4065245, at *13 (C.D. Cal. July 2, 2015) (dismissing UCL claim where plaintiffs failed to identify any recognized public policy implicated by the alleged conduct).

[39] *See* Second Dismissal Order at 11 ("Each of Plaintiffs' mortgages or deed of trust agreements include a 'Notice of Grievance' provision, which obligates both the lender and borrower to notify the other party before commencing legal action and allow that party a 'reasonable period' of time to take corrective action.").

The FACC shows that individualized inquiries are required as to each putative class member regarding numerous notice and cure issues, including whether notice (1) was provided to SPS; (2) in writing; (3) identifying the particular borrower; (4) identifying the challenged conduct; (5) mailed by first class mail; (5) to SPS' designated address; (6) prior to filing suit; and (7) giving SPS a reasonable opportunity to cure. In addition, individualized inquiries are required to determine: (8) whether SPS took steps to cure any individual borrower's concerns (such as refunding EZ Pay fees and/or waiving future EZ Pay fees for that borrower); (9) what specific actions SPS took to cure; and (10) whether SPS in fact cured the individual borrower's concerns.[40]

The stark contrast between the pre-suit notice allegations of each Plaintiff highlights some of the factors unique to each borrower. Washington alleges she sent a letter to SPS and SPS' responses to the letter and Answer in a prior lawsuit concerning Washington waived SPS' argument that Washington's notice was insufficient. FACC ¶¶ 108-09. DeSimone and Snowden allege that their counsel corresponded—via email and telephone—with SPS' counsel in a different lawsuit that did not involve Plaintiffs or the EZ Pay fees challenged here. FACC ¶ 114; Dkt 40-1 at ¶¶ 3, 4; *see also* Second Dismissal Order at 15. DeSimone and Snowden contend that SPS' response to counsel in the separate matter evidences sufficient notice. *Id.* DeSimone also alleges her notice consisted of unspecified telephone conversations with SPS employees, and Snowden alleges she complained about the EZ Pay fees to SPS over the phone because her prior servicer had not charged such fees. FACC ¶¶ 117, 118. It is clear from the FACC and this Court's prior analysis of each Plaintiff's purported compliance with the pre-suit notice and cure requirement

---

[40] *See* Second Dismissal Order at 13 (Plaintiffs' "bare assertion" in their CCAC "does not indicate whether the notices were provided in writing, whether they were delivered or mailed through first class mail, or what the time period was between notice receipt and the filing of the lawsuit (so that the Court can assess whether the period was 'reasonable'")); *id.* at 14-16 (undertaking individualized analyses as to each Plaintiff's specific notice provided to SPS, including review of prior pleadings in a lawsuit involving only Plaintiff Washington, an attorney declaration as to notice by DeSimone and Snowden, and the contents, timing, and manner of each purported notice).

that "the issues of whether each individual class member gave [] proper notice and the opportunity to cure necessitate the type of individualized proof that defeats the predominance requirement for class certification." *Sanchez-Knutson v. Ford Motor Co.*, 2016 WL 11783302, at *4 (S.D. Fla. July 25, 2016). The Court thus should "require that the pleadings be amended to eliminate allegations about representation of absent persons." Fed. R. Civ. P. 23(d)(1)(D); *accord Borgese*, 2021 WL 634722, at *4 ("it is clear from the pleadings that the certification requirements cannot be met").

### B.      The Court Should Dismiss Or Strike The Fee-Prohibiting State Class.

If the class allegations are not dismissed in their entirety, the Court should, at minimum, dismiss or strike the "Fee-Prohibiting State Class" brought by Snowden and Washington. FACC ¶ 160. The "Fee-Prohibiting State Class" is limited to borrowers who "reside in [a] Fee Prohibiting State" and is based on the enumerated "debt collection statutes" of those states. *See id.* ¶ 63.[41] Neither Snowden (Maryland resident) nor Washington (California resident) have standing to bring a cause of action under the laws of "Fee Prohibiting States" Texas, Pennsylvania, Iowa, or New Hampshire; neither has a mortgage agreement governed by the laws of those states, and neither would be a member (never mind a typical representative) of any class of residents of those states.[42] The Court should dismiss or strike the "Fee-Prohibiting State Class" on its face.[43]

### <u>CONCLUSION</u>

For the foregoing reasons, SPS requests that the Court dismiss Plaintiffs' FACC.

---

[41] The FACC defines the "Fee-Prohibiting States" and the "relevant statutes" as: Texas (Tex. Fin. Code Ann. § 392.303(2)); Pennsylvania (73 Pa. Stat. Ann. § 2270.4(b)(6)(i)); Iowa (Iowa Code Ann. § 537.7103(5)(d)); and New Hampshire (N.H. Rev. Stat. Ann. § 358-C:3(X)). FACC ¶ 63(a)-(d).

[42] In addition to mortgage agreements' limitation of applicable law to federal law and the law of the state where the property is located, the law is clear that the state statutes Plaintiffs cite do not apply extraterritorially. *New Hampshire Gas & Elec. Co. v. Morse*, 42 F.2d 490, 493 (D.N.H. 1930); *Blackman v. Lincoln Nat'l Corp.*, 2012 WL 6151732, at *4 (E.D. Pa. Dec. 10, 2012); *Jahnke v. Deere & Co.*, 912 N.W.2d 136, 143 (Iowa 2018); Iowa Code Ann. § 537.1201; *TV-3, Inc. v. Royal Ins. Co. of Am.*, 28 F. Supp. 2d 407, 417 (E.D. Tex. 1998).

[43] To the extent the "Fee-Prohibiting State Class" includes residents of California and Maryland, it is duplicative of the California Class and the Maryland Class, so cannot be preserved on this basis.

Dated: January 19, 2024

Respectfully submitted,

/s/ Alyssa A. Sussman
Allison J. Schoenthal
Alyssa A. Sussman
Goodwin Procter LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel.: 212.459.7284
Fax: 617.801.8854
Email: ASchoenthal@goodwinlaw.com
           ASussman@goodwinlaw.com

Thomas M. Hefferon (*pro hac vice*)
Goodwin Procter LLP
1900 N Street, N.W.
Washington, DC 20036-1612
Tel.: 202.346-.000
Fax: 202.346.4444
Email: thefferon@goodwinlaw.com

*Attorneys for Defendant Select Portfolio Servicing, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Alyssa A. Sussman, hereby certify that on January 19, 2024, I caused a true and correct copy of the foregoing to be served by electronic mail to all counsel of record pursuant to prior agreement.


<u>/s/ Alyssa A. Sussman</u>
Alyssa A. Sussman

27