**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LISA DeSIMONE, DEBORAH R. SNOWDEN, and INEZ CLARA WASHINGTON, on behalf of themselves and all others similarly situated, | Case No. 20-cv-03837 |
| Plaintiffs, | Hon. Pamela K. Chen, U.S.D.J. Hon. Taryn A. Merkl, U.S.M.J. |
| v. | |
| SELECT PORTFOLIO SERVICING, INC., | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................... 1

II.     FACTUAL BACKGROUND ....................................................................... 2

        A.      Overview.................................................................................... 2

        B.      Facts Relevant to Notice. ........................................................... 2

III.    ARGUMENT ......................................................................................... 3

        A.      Plaintiffs' Notice Allegations Are Sufficient.............................. 3

                1.      Washington Provided Pre-Suit Notice and a Reasonable Opportunity
                        to Respond. ..................................................................... 3

                2.      Despite Notice from All Three Plaintiffs, Government Regulators, and
                        Other Lawsuits, SPS Refused to Stop Its Misconduct, Such That Any
                        Additional Notice Would Be Futile. .................................... 4

                3.      Notice is not required for Plaintiffs' statutory claims................ 7

        B.      Plaintiffs Pled a Valid Claim Under the FDCPA Section 1692f(1)....................... 8

                1.      SPS is a "debt collector" and the FDCPA regulates the Collection of
                        Mortgage Debts and Related Fees, including Pay-to-Pay Fees. ................ 8

                2.      Section 1692f(1) and Related State Statutes Prohibits Servicers from
                        Collecting Pay-to-Pay Fees........................................................... 9

                3.      SPS's Pay-to-Pay Fees Are Not Authorized By Its 2003 Consent
                        Order; They Violate It. ........................................................... 12

                4.      SPS's Pay-to-Pay Fees are Not Otherwise Permitted by Law. .................. 14

                5.      Plaintiffs Plead Violations of FDCPA Section 1692e. ..................... 15

        C.      Snowden States a Claim Under Two Maryland Statutes. ...................................... 15

        D.      Washington States a Claim Under the Rosenthal Act and California's
                Unfair Competition Law. ............................................................... 19

        E.      Ms. DeSimone States a Claim Under N.Y. General Business Law § 349............ 20

        F.      Plaintiffs Plead Valid Claims for Breach of Their Mortgage Agreements.......... 22

        G.      Plaintiffs Plead Violations of the Duties of Good Faith and Fair Dealing. .......... 23

        H.      There is No Basis to Strike the Class Claims. ...................................... 24

IV.     CONCLUSION....................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Abercrombie v. Wells Fargo Bank, N.A.*,
  417 F. Supp. 2d 1006 (N.D. Ill. 2006) .................................................................................... 7

*Amenu-El v. Select Portfolio Servs.*,
  2017 WL 4404428 (D. Md. Oct. 4, 2017) ............................................................................. 16

*Arashteh v. Mount Vernon Fire Ins. Co.*,
  2014 WL 3974172 (D. Md. Aug. 12, 2014) .......................................................................... 24

*Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*,
  822 F. Supp. 2d 505 (D. Md. 2011) ...................................................................................... 18

*Barr v. Flagstar Bank, FSB*,
  303 F. Supp. 3d 400 (D. Md. 2018) ...................................................................................... 18

*Boule v. Hutton*,
  328 F.3d 84 (2d Cir. 2003) .................................................................................................... 21

*Bourgeois v. Live Nation Entertainment, Inc.*,
  3 F. Supp. 3d 423 (D. Md. 2014) .......................................................................................... 18

*Cappellini v. Mellon Mortg. Co.*,
  991 F. Supp. 31 (D. Mass. 1997) .......................................................................................... 15

*Casey v. Citibank, N.A.*,
  915 F. Supp. 2d 255 (N.D.N.Y. 2013) .................................................................................. 24

*Chatman v. Fairbanks Cap. Corp.*,
  2002 WL 1338492 (N.D. Ill. June 18, 2002) ........................................................................ 15

*City of New York v. Tavern on the Green Int'l LLC*,
  351 F. Supp. 3d 680 (S.D.N.Y. 2018) .................................................................................... 5

*Cohen v. JP Morgan Chase & Co.*,
  498 F.3d 111 (2d Cir. 2007) .................................................................................................. 21

*Cole v. Federal National Mortgage Association*,
  2017 WL 623465 (D. Md. Feb. 14, 2017) ............................................................................. 17

*Collings v. MGC Mortg., Inc.*,
  2016 WL 9724969 (D. Md. Jan. 28, 2016) ........................................................................... 23

*Colon v. Nationstar Mortg., LLC*,
  2015 WL7422598 (S.D. Fla. Nov. 17, 2015) ......................................................................... 7

*Cooke v. Carrington Mortg. Servs.*,
  2018 WL 6323116, (D. Md. Dec. 3, 2018) ........................................................................... 17

*Cooke v. Carrington Mortg. Servs.*,
  2019 WL 3241128 (D. Md. July 18, 2019) ........................................................................... 16

*Dalton v. Educ. Testing Serv.*,
 663 N.E.2d 289 (N.Y. 1995) ............................................................................... 23, 24

*Davis v. Homecomings Fin.*,
 2006 WL 2927701 (W.D. Wash. Oct. 10, 2006) .................................................. 15

*DiFlauro v. Bank of Am., N.A.*,
 2020 WL 10111966 (C.D. Cal. Dec. 2, 2020) ...................................................... 19

*DiMatteo v. Sweeney, Gallo, Reich & Bolz, L.L.P.*,
 619 F. App'x 7 (2d Cir. 2015) ........................................................................ 10, 14

*Dumont v. Litton Loan Servicing, LP*,
 2014 WL 815234 (S.D.N.Y. Mar. 3, 2014) .......................................................... 21

*Elbert v. Roundpoint Mortg. Serv. Corp.*,
 2020 WL 6940941 (N.D. Cal. Nov. 25, 2020) ........................................................ 9

*Ensor v. Wells Fargo Bank Nat'l Ass'n*,
 2022 WL 345513 (D. Md. Feb. 4, 2022) ............................................................... 17

*Flournoy v. Rushmore Loan Mgmt. Servs., LLC*,
 2020 WL 1285504 (D. Md. Mar. 17, 2020) .......................................................... 18

*Flowers v. Baltax 2017, LLC*,
 2019 WL 3501584 (D. Md. Aug. 1, 2019) ............................................................ 17

*Foster v. Green Tree Servicing, LLC*,
 2017 WL 5151354 (M.D. Fla. Nov. 2, 2017) .......................................................... 7

*Freedom Mortg. Corp. v. Heirs*,
 2020 WL 3639989 (S.D.N.Y. July 6, 2020) .......................................................... 23

*Fusco v. Ocwen Loan Servicing LLC*,
 2020 WL 2519978 (S.D. Fla. Mar. 2, 2020) ...................................................... 9, 11

*Garay v. Select Portfolio Servicing Inc.*,
 2020 WL 10823745 (S.D. Fla. Aug. 7, 2020) ......................................................... 7

*Gibson v. Bartlett Dairy, Inc.*,
 2022 WL 784746 (E.D.N.Y. Mar. 15, 2022) ........................................................ 25

*Gill v. Nat'l Football League*,
 No. 21 Civ. 1032 (PAE), 2021 WL 5087900 (S.D.N.Y. Nov. 2, 2021) ................ 25

*Gillis v. Household Fin. Corp. III*,
 2019 WL 3412621 (D. Md. July 29, 2019) ...................................................... 16, 18

*Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*,
 756 F.3d 204 (2d Cir. 2014) ................................................................................... 5

*Gomez-Jimenez v. New York Law Sch.*,
 103 A.D.3d 13 (1st Dep't 2012) ........................................................................... 21

*Greene v. Gerber Prods. Co.*,
 262 F. Supp. 3d 38 (E.D.N.Y. 2017) .................................................................... 25

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
   440 F. Supp. 3d 447 (D. Md. 2020) ...................................................................... 18

*Jerik v. Columbia Nat., Inc.*,
   1999 WL 1267702 (N.D. Ill. Sept. 30, 1999) ....................................................... 15

*Kelly v. Beliv LLC*,
   640 F. Supp. 3d 286 (S.D.N.Y. 2022) ................................................................... 25

*Koch v. Acker, Merrall & Condit Co.*,
   967 N.E.2d 675 (N.Y. 2012) .................................................................................. 21

*L.K. Comstock & Co. v. United Eng'rs & Constructors Inc.*,
   880 F.2d 219 (9th Cir. 1989) .................................................................................... 5

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
   897 F.3d 88 (2d Cir. 2018) ...................................................................................... 25

*Lembeck v. Arvest Cent. Mortg. Co.*,
   498 F. Supp. 3d 1134 (N.D. Cal. 2020) ............................................................ 19, 20

*Levin v. HSBC Bank USA, N.A.*,
   2012 WL 7964121 (N.Y. Sup. Ct. June 26, 2012) ................................................ 24

*Lindblom v. Santander Consumer USA, Inc.*,
   2016 WL 2841495 (E.D. Cal. May 9, 2016) ........................................................... 9

*Lussoro v. Ocean Fin. Fed. Credit Union*,
   456 F. Supp. 3d 474 (E.D.N.Y. 2020) .................................................................... 5

*Martindale v. Megastar Fin. Corp.*,
   2021 WL 5331464 (E.D. Cal. Nov. 15, 2021) ...................................................... 23

*MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Est. Sec. Inc.*,
   2015 WL 764665 (S.D.N.Y. Jan. 9, 2015) .............................................................. 6

*Matchett v. BSI Financial Services*,
   No. 21-4142, 2023 WL 4678683 (10th Cir. July 21, 2023) ................................... 23

*McFadden v. Nationstar Mortg. LLC*,
   2021 WL 3284794 (D.D.C. July 30, 2021), *report and recommendation adopted*,
   2022 WL 1001253 (D.D.C. Apr. 4, 2022) ............................................. 11, 12, 15, 23

*McKell v. Washington Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006) .............................................................................. 20

*McNeil v. Capital One Bank, N.A.*,
   2020 UWL 5802363 (E.D.N.Y. September 29, 2020) ........................................... 22

*McShannock v. JP Morgan Chase Bank N.A.*,
   354 F. Supp. 3d 1063 (N.D. Cal. 2018) ................................................................... 7

*Meintzinger v. Sortis Holdings, Inc.*,
   2019 WL 1471338 (E.D.N.Y. Apr. 3, 2019) ......................................................... 14

*Miller v. Wells Fargo Bank, N.A.*,
   994 F. Supp. 2d 542 (S.D.N.Y. 2014) ..................................................................... 5

*Mills v. Select Portfolio Servicing, Inc.*,
   2018 WL 5113001 (S.D. Fla. Oct. 19, 2018) .......................................................... 7

*Mitchell v. U.S. Bank Nat'l Ass'n*,
   2018 WL 4679949 (D. Md. Sept. 28, 2018) .......................................................... 17

*Negrin v Norwest Mortg., Inc.*,
   263 A.D.2d 39 (2d Dep't 1999) .......................................................... 20

*Nick's Garage, Inc. v. Progressive Cas. Ins.*,
   875 F.3d 107 (2d Cir. 2017) .......................................................... 21

*Olson v. Midland Funding*
   *LLC*, 578 F. App'x 248, 251 (4th Cir. 2014) .......................................................... 17

*Peoria Partners, LLC v. Mill Grp., Inc.*,
   2015 WL 8989675 (N.D. Ill. Dec. 16, 2015) .......................................................... 5

*PNC Bank, N.A. v. Davis*,
   631 F. Supp. 3d 253 (D. Md. 2022) .......................................................... 16, 17

*Questar Builders, Inc. v. CB Flooring, LLC*,
   978 A.2d 651 (Md. Ct. App. 2009) .......................................................... 24

*Relativity Travel, Ltd. v. JP Morgan Chase Bank*,
   2006 WL 2918081 (Sup. Ct. N.Y. Cty. Feb. 14, 2006) .......................................................... 21

*Richards v. NewRez LLC*,
   2021 WL 1060286 (D. Md. Mar. 18, 2021) .......................................................... 7

*Shakespeare v. Compu-Link Corp.*,
   848 F. App'x 474 (2d Cir. 2021) .......................................................... 21

*Sher v. SAF Fin., Inc.*,
   2011 WL 4835700 (D. Md. Oct. 11, 2011) .......................................................... 24

*Sigwart v. U.S. Bank*,
   713 F. App'x 535 (9th Cir. 2017) .......................................................... 5

*Simmet v. Collection Consultants of Calif.*,
   2016 WL 11002359 (C.D. Cal. Jul. 7, 2016) .......................................................... 9, 11

*Simmons v. Md. Mgmt. Co.*,
   269 A.3d 369 (Md. Ct. Spec. App. 2022) .......................................................... 16, 17

*Sims v. First Consumers Nat'l Bank*,
   303 A.D.2d 288 (1st Dept 2003) .......................................................... 22

*Spagnola v. Chubb Corp.*,
   574 F.3d 64 (2d Cir. 2009) .......................................................... 20

*Spencer v. Hendersen-Webb, Inc.*,
   81 F. Supp. 2d 582 (D. Md. 1999) .......................................................... 16

*Taub v. World Fin. Network Bank*,
   950 F. Supp. 2d 698 (S.D.N.Y. 2013) .......................................................... 7

*Thomas-Lawson v. Carrington Mort. Servs.*,
    9th Cir. No. 21-55459, Dkt. 22 .................................................................... 9

*Torliatt v. Ocwen Loan Serv., LLC*,
    2020 WL 1904596 (N.D. Cal. Apr. 17, 2020) ........................................... 11

*Un Boon Kim v. Shellpoint Partners, LLC*,
    2016 WL 1241541 (S.D. Cal. Mar. 30, 2016)............................................. 7

*Watson v. HomeBridge Fin. Servs., Inc.*,
    2022 WL 125278 (D. Md. Jan. 13, 2022) ................................................. 17

*West v. Costen*,
    558 F. Supp. 564 (W.D. Va. 1983) ........................................................... 14

*Willis v. Bank of Am. Corp.*,
    2014 WL 3829520 (D. Md. Aug. 1, 2014)................................................ 18

*Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*,
    946 F.2d 1003 (2d Cir. 1991) ........................................................... 4, 5, 6

**Statutes**

15 U.S.C. § 1962a(5) .................................................................................. 8

15 U.S.C. §§ 1692 ......................................................................... 8, 10, 12

Cal. Bus. & Prof. Code § 17200 .............................................................. 20

Cal. Civ. Code § 1788............................................................................... 19

Conn. Gen. Stat. Ann. § 42-110g............................................................. 25

Iowa Code Ann. § 537.7103(5)(d)............................................................ 25

Md. Code Ann. Com. Law § 13-105 ........................................................ 18

Md. Code Ann., Com. Law § 13-301 ....................................................... 18

N.H. Rev. Stat. Ann. § 358-C:3(X)........................................................... 25

N.Y. GBL §349(g) .................................................................................... 21

Pa. Stat. Ann. § 2270.4(b)(6)(i) ............................................................... 25

Tex. Fin. Code Ann. § 392.303(2) ........................................................... 25

**Regulations**

Debt Collection Practices (Regulation F); Pay-to-Pay Fees, 87 FR 39733 (July 2, 2022)........... 11

Md. Code Regs. 09.03.06.10..................................................................... 18

Md. Code Regs. 09.03.06.20(a) ................................................................ 24

## I.        INTRODUCTION

Defendant Select Portfolio Servicing, Inc. ("SPS") is one of a few mortgage servicers in the United States still charging borrowers extra "Pay-to-Pay" or "EZ Pay" fees  (the "Fees") when they pay their mortgage online or over the phone, a practice the Consumer Financial Protection Bureau ("CFPB"), dozens of attorneys general, and most courts have concluded is unlawful and unfair. Plaintiffs Lisa DeSimone of New York, Deborah Snowden of Maryland, and Inez Washington of California (collectively, "Plaintiffs") bring this class action to hold SPS accountable for its violations of federal and state law for imposing the Fees.  SPS's motion to dismiss fails.

First, SPS's notice-based arguments ignore the far more robust notice allegations in the First Amended Consolidated Complaint ("FACC"), which contain extensive new allegations about the myriad ways SPS was notified. What's more is that the FACC includes actual copies of the written notice Washington provided via first-class mail three months pre-suit and SPS's response two months pre-suit, in which SPS stated that *it had conducted an investigation and declined to cure.* In addition, the law does not even require notice in light of the well-established futility exception (which makes all forms of notice relevant) and the fact that Plaintiffs are asserting statutory violations.

SPS's other arguments are unsupported. SPS's Fair Debt Collection Practices Act ("FDCPA") arguments are based on a few outdated, out of circuit district courts. Plaintiffs' arguments have support from the plain language of the statute, numerous courts in this District, the majority of district courts around the country, the Consumer Financial Protection Bureau, and the Fourth Circuit Court of Appeals. Plaintiffs' other state statutory claims are each validly pled, the same reasons the Fees violate the FDCPA, and other reasons specific to those laws. Plaintiffs have sufficiently pled their claims for express breach of standard mortgage agreements, and breach of the duties of good faith and fair dealing. Finally, SPS's motion to strike certain class claims contravenes clear Second Circuit Authority and is otherwise unfounded.

1

## II.     FACTUAL BACKGROUND

### A.     Overview

SPS is a nationwide mortgage loan servicer. FACC ¶ 23.  Each time a borrower whose loan is serviced by SPS makes a loan payment online or over the phone, SPS charges the borrower a Fee of up to $15.00. *Id.* ¶ 40. Plaintiffs each have a mortgage loan serviced by SPS, and two of those loans were in default when SPS acquired servicing rights. *Id.* ¶¶ 132, 134, 135, 137, 139, 142-148, 151-153, Exs. A–C.[1] Plaintiffs each made payments by phone and when they did so SPS charged them multiple Fees of either $7.50 or $15.00. *Id.* ¶¶ 135, 139, 152-153. Snowden sometimes also makes mortgage payments online, for which SPS charged her either $15.00 or $5.00. *Id.* ¶ 139. The cost for SPS to process these payments is well below the amounts it charged borrowers, and SPS pockets the difference as profit. *Id.* ¶ 41, 44.

Numerous regulators agree that Pay-to-Pay Fees are illegal and unfair. *Id.* ¶¶ 93-101. Thirty-three state attorneys general, including those of New York, Maryland and California, have decried these fees. *Id.* ¶ 100. Likewise, the CFPB, which has the authority to interpret the FDCPA, has taken issue with these Fees "given that consumers have no ability to shop around for a better deal," and has observed that "it is generally cheaper for collectors to accept payment by phone or online than to accept payment by mail." *Id.* ¶ 97.

### B.     Facts Relevant to Notice.

While a longer discussion of the procedural history can be found at ECF No. 73, § III, the instant motion concerns the FACC filed on October 30, 2023, ECF No. 87. In this Court's September 30, 2023 order, it granted SPS's motion to dismiss the first Consolidated Amended Complaint ("CAC") on narrow grounds. ECF No. 86. Specifically, it found that Plaintiffs had failed to adequately allege compliance with the pre-suit notice requirements in their mortgage agreements. ECF No. 86 at 11–16. The Court provided leave to amend.

---

[1] SPS does not dispute that Plaintiffs DeSimone's and Washington's loans were in default. FACC ¶¶ 41, 55, 58. Ms. Snowden does not plead a FDCPA claim.

The FACC details the ways in which SPS was notified of the violations at issue here – by Plaintiffs and in a variety of other ways. *See* FACC ¶¶ 103-31, Exs. G, H, I. Examples of the ways in which SPS was notified of its legal violations prior DeSimone and Snowden filing suit on August 20, 2020, and Washington filing suit on August 24, 2020 include:

- On **May 21, 2020,** when Washington sent a written letter to SPS via first class mail demanding SPS cure the violations. *Id.* ¶ 103 & Ex. G. SPS responded to that notice twice, ultimately representing on June 22, 2020 that a full inquiry into federal and state law had been undertaken. *Id.* ¶¶ 103-07, Exs. G-I.

- On **July 13 and July 20, 2020,** when counsel for DeSimone and Snowden wrote to counsel for SPS via email to provide pre-suit notice of their clients' intention to file a lawsuit over Pay-to-Pay fees. SPS's representative responded that SPS was aware that servicers were being sued for this conduct and stated that SPS would not resolve these claims, rendering the need for further notice futile. Examples of these lawsuits that put SPS on notice of its legal violations are set forth in the FACC and including those filed **as early as 2015**. *Id.* ¶¶ 125-26.

- At **other points in 2020,** such as when Snowden complained to SPS about the fees over the phone. *Id.* ¶ 119.

- In **2017,** when a CFBP bulletin put SPS on notice that the Fees were illegal. *Id.* ¶ 123.

- In **2003**, when SPS became bound by a Federal Trade Commission order, requiring it to adhere to certain restrictions on the fees it could charge. *Id.* ¶¶ 77-81, 124.

## III.   ARGUMENT

### A.   Plaintiffs' Notice Allegations Are Sufficient.

SPS moves again to dismiss on pre-suit notice grounds, ignoring the extensive new allegations on notice discussed in the preceding section that supplement the allegations this Court previously found insufficient. *Compare* ECF No. 59 (CAC) ¶¶ 132–33 *with* FACC ¶¶ 102–3. Moreover, there are several reasons why notice was not even required here.

### 1.   Washington Provided Pre-Suit Notice and a Reasonable Opportunity to Respond.

SPS ignores the fact that in this FACC, Washington satisfies all the concerns raised by the Court. ECF No. 86 at 13-14 (suggesting that plaintiff must "indicate whether the notices were provided in writing, whether they were delivered or mailed through first class mail, or what the time period was between notice receipt and the filing of the lawsuit" and "provide[] the Court with the contents of that letter"). Specifically, Washington pleads that on May 21, 2020, her counsel

3

"sent via first class mail a letter to SPS at the address designated for service," and included a true copy of that letter. FACC ¶ 103, Ex. G. As to the Court's concerns about whether reasonable time was provided for SPS to cure, Washington further pleads that SPS responded twice, and in the second response on June 22, 2020, it stated that it conducted an investigation, and that it was "confident that the servicing of the account by SPS has been compliant with all applicable state and federal regulations." *Id.* ¶¶ 104-105, Ex. H and I. She filed suit two months later, on August 24, 2020.

SPS identifies no problems with these new allegations. It instead highlights its self-serving October 2020 answer partially denying a notice allegation,[2] but that does not affect, let alone defeat, the other allegations and evidence. At this stage, without the benefit of discovery, the Court must resolve ambiguities in favor of Washington.[3]

In any event, should her notice be deemed insufficient, Washington pleads in the alternative that under California's Unfair Competition Law, it would be inequitable and unjust to permit SPS to avoid liability on pre-suit notice grounds. *See id.* ¶¶ 287-291. SPS does not move to dismiss this claim, conceding notice is not required. *See* Mot. at 23 (challenging only unfairness theories pled at FACC ¶¶ 283-84).

> **2.**     **Despite Notice from All Three Plaintiffs, Government Regulators, and Other Lawsuits, SPS Refused to Stop Its Misconduct, Such That Any Additional Notice Would Be Futile.**

The Second Circuit and courts around the country agree that compliance with a pre-suit notice provision in a contract "is not required where it would amount to a 'useless gesture.'" *Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991) (quoting *L.K. Comstock & Co. v. United Eng'rs & Constructors Inc.,* 880 F.2d 219, 232 (9th Cir.

---

[2] SPS's prior answer was not an express denial, but simply careful legalese, and stated, "To the extent a response is required, SPS states that prior to filing the Complaint, Plaintiff's attorney sent SPS a letter, states that the letter speaks for itself and is the best evidence of its contents, and denies the allegations to the extent they are inconsistent with the letter." Ex. D, ¶ 64.

[3] Should SPS make new arguments on reply as to the insufficiency of the contents of the notice, those arguments should be disregarded. SPS has had more than three years to identify why the notice as not adequate.

1989) and collecting cases); *Giuffre Hyundai, Ltd. v. Hyundai Motor Am.,* 756 F.3d 204, 209 (2d Cir. 2014) ("New York common law will not require strict compliance with a contractual notice-and-cure provision if providing an opportunity to cure would be useless"); *Sigwart v. U.S. Bank,* 713 F. App'x 535, 537 (9th Cir. 2017) (applying the futility exception where the "notice would serve no corrective purpose"); *Peoria Partners, LLC v. Mill Grp., Inc.,* 2015 WL 8989675, at *7 (N.D. Ill. Dec. 16, 2015) (collecting cases from multiple states). Courts routinely apply the exception in cases involving residential mortgage agreements. *See, e.g., Miller v. Wells Fargo Bank, N.A.,* 994 F. Supp. 2d 542, 552, n.6 (S.D.N.Y. 2014); *Sigwart,* 713 F. App'x at 537.

Moreover, as the case law make clear, the relevant touchpoint for determining whether compliance with a pre-suit notice provision may be excused is the defendant's conduct, not the presence of a written term in the contract permitting a futility defense. *See, e.g., Wolff & Munier,* 946 F.2d 1003, 1009 (strict pre-suit notice excused where defendant's conduct worsened after being notified); *City of New York v. Tavern on the Green Int'l LLC,* 351 F. Supp. 3d 680, 693 (S.D.N.Y. 2018) (applying the futility exception where the defendant's decision to continue to engage in the challenged misconduct "even *after* the suit was commenced makes clear that [defendant] never would have availed itself of the opportunity to cure" provided by the contract). And where a plaintiff pleads that a defendant responded to information about its violations by stating that it complied with the law, courts routinely waive the obligation to comply with the pre-suit notice provision.  *See, e.g., id.* (finding pre-filing notice was futile "in light of [defendant's] insistence that" its conduct was "in full conformity" with the parties' agreement permitting it to continue the disputed acts); *Lussoro v. Ocean Fin. Fed. Credit Union,* 456 F. Supp. 3d 474, 482 (E.D.N.Y. 2020) (similar) (Chen, J.).

This case is akin to *Lussoro,* in which the defendant argued that the plaintiff failed to comply with the contract's requirement to report the fees. *Id.* In response, this Court found that "enforcing strict compliance with the notice-and-cure provision would be useless with respect to the alleged error in this case, given that [d]efendant was aware of the charges and insists that the overdraft fees are not, in fact, errors." *Id.* Likewise here, Plaintiffs plead extensive allegations

5

showing that long before this suit was brought, SPS knew it was charging the fees, knew regulators viewed those Fees as illegal, knew servicers were being sued for charging the Fees, and yet, maintained that doing so was legal. *See* § II.B.2, *supra.* Indeed, when counsel for Snowden and DeSimone e-mailed SPS's counsel in July 2020 about their intention to bring an FDCPA lawsuit over the Pay-to-Pay Fees, they were informed by SPS's legal representative that SPS was aware that servicers were being sued for this conduct, would not resolve these claims due to other pending cases alleging such violations, and if filed, SPS would transfer their lawsuit to a jurisdiction where it was litigating a similar suit. FACC ¶¶ 113-14, 125-126.

There is further evidence that any pre-notice via first-class mail that Snowden and DeSimone would have sent would be simply a "useless gesture." *Wolff & Munier,* 946 F.2d at 1009. For example, when Washington did exactly that, SPS did not cure, but insisted the charges were legal. FACC ¶ 105, Ex. I (stating it was "confident that the servicing of the account by SPS has been compliant with all applicable state and federal regulations"). Just as in *Lussoro,* this insistence that the continued insistence that charges are legal is evidence of the futility of further notice. Likewise, it has been nearly four years since receiving Washington's notice (and seven since the CFBP bulletin), and SPS still charges these Fees, and does so at rates higher than the few remaining mortgage servicers so doing. FACC ¶ 79 (detailing rates across the industry). And just as in *Tavern on the Green,* its ongoing insistence of the legal nature of its misconduct further evidences how futile any further notice from any Plaintiff would have been.[4]

Finally, it bears noting that while the futility defense does not require any express contractual provision to invoke, a different defense to pre-suit notice, the independent notice exception, does. *See, e.g., MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Est. Sec. Inc.,* 2015 WL 764665, at *9 (S.D.N.Y. Jan. 9, 2015) (excusing compliance with pre-suit notice where servicer independently learned of the breach) (collecting cases). And that exception to

---

[4] At a minimum, Plaintiffs have plausibly alleged that the futility exception applies, and Plaintiffs should be entitled to discovery to prove it.

notice applies here as well. Notably, the contractual language obligates SPS to refund sums collected where the law "is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits." Ex. A at ¶ 14. Here, when SPS learned in 2017 that the CFPB interpreted the FDCPA to bar the collection of these fees, ¶¶ 98, 125, it acquired notice and was obligated to cure at that point.

### 3.    Notice is not required for Plaintiffs' statutory claims.

Finally, the pre-suit notice provision only applies to breach of contract claims, not Plaintiffs' statutory claims under the FDCPA and state laws. *See, e.g., Taub v. World Fin. Network Bank*, 950 F. Supp. 2d 698, 702 (S.D.N.Y. 2013) (finding no pre-suit notice required for violation of federal statute); *Richards v. NewRez LLC*, 2021 WL 1060286, at *21 (D. Md. Mar. 18, 2021) (finding that FDCPA and deceptive trade practices claims "exist independent of a contractual agreement between the parties . . .[and] . . . are not subject to the notice and cure provisions that might otherwise apply" to a dispute with a mortgage servicer); *Garay v. Select Portfolio Servicing Inc.*, 2020 WL 10823745, at *3 (S.D. Fla. Aug. 7, 2020), *report and recommendation adopted,* 2020 WL 10823759 (S.D. Fla. Aug 31, 2020) (finding pre-suit notice not required because statutory claim based on EZ Pay fees was "not a fairly direct result of the performance of contractual duties"); *Mills v. Select Portfolio Servicing, Inc.,* 2018 WL 5113001, at *4 (S.D. Fla. Oct. 19, 2018) ("Other courts have similarly concluded that notice and cure provisions identical to Paragraph 20 did not apply to [FDCPA and state] statutory claims.").[5] The very terms of Plaintiffs' mortgage agreements acknowledge as much, stating the provision applies only to claims that "aris[e] from the other party's actions pursuant to this Security

---

[5] *See also McShannock v. JP Morgan Chase Bank N.A.*, 354 F. Supp. 3d 1063, 1072 (N.D. Cal. 2018) (notice and cure provision did not require dismissal of state statutory claims), *rev'd on other grounds* 976 F.3d 881 (9th Cir. 2020); *Foster v. Green Tree Servicing, LLC,* 2017 WL 5151354, at *3 (M.D. Fla. Nov. 2, 2017) (state statutory consumer protection claims not subject to notice and cure); *Un Boon Kim v. Shellpoint Partners, LLC*, 2016 WL 1241541, at *6 (S.D. Cal. Mar. 30, 2016) (notice-and-cure defense did not apply to TILA claim); *Colon v. Nationstar Mortg., LLC*, 2015 WL 7422598, at *2 (S.D. Fla. Nov. 17, 2015) (same); *Abercrombie v. Wells Fargo Bank, N.A.*, 417 F. Supp. 2d 1006, 1008 (N.D. Ill. 2006) (same).

Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument." *See e.g.*, Ex. B, 10. The agreements therefore do not require such notice for statutory claims, which are based upon independent theories of liability.[6]

**B.       Plaintiffs Pled a Valid Claim Under the FDCPA Section 1692f(1).**

**1.       SPS is a "debt collector" and the FDCPA regulates the Collection of Mortgage Debts and Related Fees, including Pay-to-Pay Fees.**

SPS makes the frivolous argument that the FDCPA does not apply to Pay-to-Pay Fees because fees are not "debt," and SPS is not a "debt collector." Mot. at 7-8.

The FDCPA regulates the relationship between "debt collectors" and consumers owing a "debt." The "debt" here is the mortgage loans, which are plainly an "obligation… to pay money." 15 U.S.C. § 1962a(5). And SPS is a "debt collector," as it is "in any business the principal purpose of which is the collection of any debts." 15 U.S.C. §§ 1692a (5). SPS is in the business of collecting on debt originated by and owed to others, FACC ¶¶ 32-35, and collected on Plaintiffs' mortgage debt owed to another. *id.* ¶¶ 133-34, 144-47. Thus, the FDCPA applies.

The fact that the Fees are not *themselves* "debt" does not give a "debt collector" who charges them a free pass. The purportedly "voluntary" nature of the Fees does not alter the character of the underlying mortgage debt it collected when it was charging those Fees. Rather, the FDCPA was passed "to eliminate abusive debt collection practices," 15 U.S.C. § 1692a, *which includes regulating the fees charged by debt collectors when collecting on that debt. See Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568, 580 (E.D.N.Y. 2015) (rejecting argument that an "optional" phone pay fee fell outside the ambit of the FDCPA); *Alexander v. Carrington Mortg. Servs.,* 23 F.4th 370, 375 (4th Cir. 2021) (finding statute applied to phone payment fees because "it is plain that, by collecting borrowers' monthly mortgage payments, [the mortgage servicer] is collecting a debt"); *Fusco v. Ocwen Loan Servicing LLC*, 2020 WL 2519978, at *4

---

[6] SPS misrepresents the Court's prior determination that the "Notice of Grievance" provision applied to Plaintiffs' statutory claims. Mot. at 5-6. The Court did not explicitly assess which claims are subject to that provision.

(S.D. Fla. Mar. 2, 2020) (servicer did not need to be a debt collector *as to the fee*, it "need only be a debt collector as to the underlying debt"). *See also Shami v. Nat'l Enter. Sys.*, 2010 WL 3824151, at *2-4 (E.D.N.Y. Sept. 23, 2010) (rejecting claim that the FDCPA was inapplicable to Pay-to-Pay Fees because their optional nature).

SPS's Florida cases are in conflict with courts in this district, such as *Shami*, and are outliers as compared to courts everywhere. [7] *See, e.g., Elbert v. Roundpoint Mortg. Serv. Corp.*, 2020 WL 6940941, at *2 (N.D. Cal. Nov. 25, 2020). And its Florida opinions conflict with the CFPB's interpretation. Brief of Amicus Curiae CFBP in Support of Plaintiffs-Appellants at 26, *Thomas-Lawson v. Carrington Mort. Servs.*, 9th Cir. No. 21-55459, ECF No. 22 ("The statute does not make an exception for optional amounts."). *Shami*, the CFPB, and the Fourth Circuit are correct; SPS's alternative interpretation would render 1692f(1) superfluous; if debt collectors are only debt collectors when the sum in dispute is labeled a "debt," then 1692f(1) prohibition on collecting other fees and amounts could never be violated. And it would render the entire statute unworkable, as debt collectors would be free to demand whatever money they want from a borrower provided they do not label it "debt."

### 2. Section 1692f(1) and Related State Statutes Prohibits Servicers from Collecting Pay-to-Pay Fees.

SPS next moves to dismiss the overlapping claims arising under (i) Section 1692f (1) of the FDCPA (DeSimone and Washington); (ii) Section 14-202(11) of the Maryland Consumer Debt Collection Act ("MCDCA") (Snowden); and (iii) Section 1788.17 of California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") (Washington). These "1692f(1) Statutes" prohibit "collect[ing] *any amount* (including any interest, fee, charge, or expense incidental to

---

[7] Most district courts hold that the FDCPA applies to "voluntary" Pay-to-Pay fees. *See, e.g., Simmet v. Collection Consultants of Calif.*, 2016 WL 11002359, at *6 (C.D. Cal. Jul. 7, 2016); *Lindblom v. Santander Consumer USA, Inc.*, 2016 WL 2841495, at *6 (E.D. Cal. May 9, 2016).

the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1) (emphasis added). [8]

The Second Circuit has issued two opinions on the question of what constitutes "expressly authorized" or "permitted by law" under 1692f(1), and SPS cites neither. In an earlier decision, the court reviewed FTC staff commentary, and summarized the relevant test used by that agency regarding whether a fee was prohibited by 1692f(1) as follows:

> If state law *expressly permits* service charges, a service charge may be imposed even if the contract is silent on the matter; If state law *expressly prohibits* service charges, a service charge cannot be imposed even if the contract allows it; If state law *neither affirmatively permits nor expressly prohibits service charges, a service charge can be imposed only if the customer expressly agrees to it in the contract.*

*Tuttle v. Equifax Check*, 190 F.3d 9,13 (2d Cir. 1999) (emphasis modified from original) (discussing FDCPA Staff Commentary, 53 Fed. Reg. 50,097, 50,108 (Dec. 13, 1988)). While *Tuttle* was resolved without deciding whether to formally adopt the FTC's test, courts in this district later would apply it to 1692f(1) claims. *See, e.g., Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 437 (E.D.N.Y. 2014); *Campbell*, 98 F. Supp. 3d at 578; *Shami*, 2010 WL 3824151, at *2. And in *DiMatteo v. Sweeney, Gallo, Reich & Bolz, L.L.P.*, 619 F. App'x 7 (2d Cir. 2015), the Second Circuit found a plaintiff pled a plausible claim for a violation of section 1692f(1) where the defendant could not identify either the agreement authorizing the fee at issue or a state statute that did so. *Id.* at 9-10.

While SPS contends that 1692f(1) permits these Fees, its arguments ignore not only these Second Circuit decisions, but other more recent persuasive authority. First, the Consumer Financial Protection Bureau, which has the authority to interpret the FDCPA, interpreted section 1692f(1) to mean that "an amount is impermissible if both the agreement creating the debt and other law are silent." *See* Debt Collection Practices (Regulation F); Pay-to-Pay Fees, 87 FR

---

[8] Maryland and California, like many other states, make actionable under state law violations of the FDCPA and many of the decisions discussed herein refer to 1692f(1) of the FDCPA and the similar state laws (collectively "1692f(1) Statutes") interchangeably.

39733, 39734 (July 2, 2022). And in 2022, the Fourth Circuit agreed that mortgage borrowers who sued over Pay-to-Pay Fees stated a claim for a violation of Maryland's 1692f(1) Statute. *See Alexander*, 23 F.4th at 376. Like the FTC, CFBP, and the majority of district courts,[9] it agreed that 1692f(1)'s language required that any such fees to be either *affirmatively permitted* by some law or expressly authorized by the agreement creating the debt. *Id*.

SPS relies on a much-rejected defense that the Fees are "authorized" by Plaintiffs' mortgage agreements, Mot. at 9-11, ignoring that permitted fees must be "*expressly* authorized by the agreement creating the debt." SPS first points to the "Loan Charges" section in the Plaintiffs' mortgage agreements,[10] which only expressly authorizes fees for "default related services," such as property valuation and inspection, "for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument." But SPS does not argue that it imposed the Pay-to-Pay Fees to protect its interests and rights with respect to any default. More importantly, while the "Loan Charges" provision expressly authorizes attorneys' fees and property inspection and valuation fees, it provides no such express authorization for these Fees.

SPS also argues that language in the Loan Charges section means (1) the contract's failure to identify any specific fee should not be read to be a prohibition on the charging of such a fee; and (2) the borrower shall not be charged fees "prohibited by this Security Instrument or by Applicable Law." FACC, Ex. A at ¶ 14; Ex. C-1 at ¶ 14. But again, that falls far short of giving SPS the *express* authorization required by 1692f(1) Statutes. Nor does the language providing the "absence of express authority . . . shall not be construed as a prohibition" help SPS,

---

[9] *See, e.g.*, *Simmet*, 2016 WL 11002359, at *5; *Torliatt v. Ocwen Loan Serv.*, *LLC*, 2020 WL 1904596, at *2 (N.D. Cal. Apr. 17, 2020); *Fusco*, 2020 WL 2519978, at *3; *McFadden v. Nationstar Mortg. LLC*, 2021 WL 3284794, at *2-5 (D.D.C. July 30, 2021), *report and recommendation adopted*, 2022 WL 1001253 (D.D.C. Apr. 4, 2022).

[10] SPS does not identify the language in Snowden's mortgage agreement it contends "expressly authorizes" the fees here, but in a footnote refers to the arguments it made as to the other Plaintiffs. *See* Mot. at 20-21, n. 30. In an attempt to distinguish *Alexander* as to Snowden, SPS argues that there, the defendant conceded that there was no express authorization contained in the mortgage agreements. SPS states that it is making "no such concession" here.

because the absence of a prohibition is not "express" permission. *See, e.g.*, *McFadden*, 2021 WL 3284794, at *4 (finding that the "interpretation reads the term 'expressly' out from § 1692f(1)").

Finally, SPS relies on that the "Governing Law" section of the Plaintiffs' agreements arguing that "Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract." *See* FACC, Ex. A at ¶ 16; Ex. C-1 at ¶ 16. But a general allowance to enter into other contractual agreements is not an "express" authorization for Pay-to-Pay Fees. SPS ignores the fact that this authorization must be in the agreement creating the debt.[11] Moreover, this argument fails for the additional reasons discussed in section III.B.4, *infra*.

### 3. SPS's Pay-to-Pay Fees Are Not Authorized By Its 2003 Consent Order; They Violate It.

SPS disingenuously argues that Pay-to-Pay Fees are permitted by a consent order it entered into in 2003, in which it agreed to pay $40 million to resolve claims brought against it by the FTC and HUD over servicing practices that violated the FDCPA. *See* Mot. at 12; Sussman Decl., Ex. 1 (2003 Consent Order); Ex. 2 (2007 Modified Order) (collectively "Consent Order"). But rather than permitting the fees, the Consent Order actually "*permanently restrained and enjoined*" SPS from collecting fees for services rendered unless certain criteria are met. The Consent Order also *permanently enjoined* SPS from "[u]sing any unfair means to collect or attempt to collect a debt, including, but not limited to, collecting amounts (including any interest, fee, charge, or expense incidental to the principal obligation) not *authorized by the agreement creating the debt or permitted by law*, in violation of Section 808(1) of the FDCPA, 15 U.S.C. § 1692f(l)." Sussman Decl., Ex. 1 at 13; Ex. 2 at 14. (emphasis added). Thus, the Consent Order does not serve as the "law" that permits SPS to avoid complying with section 1692f(1).

---

[11] SPS cites a few cases that endorse this theory, but all disregard the language in the statute requiring authorization to be in the agreement creating the debt. Moreover, the FDCPA preempts state law that does not afford consumers more protection than it provides. 15 U.S.C. § 1692n.

SPS focuses on the fact that the Consent Order prohibits SPS from charging any fee for a service rendered, unless the fee is either:

a) expressly authorized, and clearly and conspicuously disclosed, by the loan instruments and not prohibited by law;

b) *expressly permitted by law* and not prohibited by the loan instruments; or

c)  a *reasonable fee* for a specific service requested by a consumer that is assessed and/or collected only after clear and conspicuous disclosure of the fee is provided to the consumer and explicit consent is obtained from the consumer to pay the fee in exchange for the service, *and such fee is not otherwise prohibited by law* or the loan instruments.

Sussman Decl., Ex. 1 at 10; Ex. 2 at 9-10 (emphasis added). But compliance with these criteria does not establish compliance with section 1692f (1), and the Pay-to-Pay Fees still do not meet the Consent Order's requirements. They are not "clearly and conspicuously disclosed, by the loan instruments." They are not "expressly permitted" by any law. And SPS cannot seek refuge under the final criteria, as Plaintiffs plead many ways in which the fees are not "reasonable," particularly given the massive profit SPS makes from them and the fact that few servicers in the industry charge them. *See* FACC ¶¶ 78-82; *see also, Alexander*, 23 F.4th at 379 (4th Cir. 2022) ("[H]ere's the inconvenient truth: [the mortgage servicer's] alternative payment options are likely more cost-effective and less time-consuming for [it].").  At the Rule 12(b)(6) stage, the allegations plausibly show that this Consent Order provides legal authority for these Fees.[12]

---

[12] Finally, even if the Consent Order does not itself prohibit the Fees, a lack of prohibition is not affirmative permission. As the Consent Order makes clear, "nothing in this Order shall permit the Defendants to impose any fee or take any other action that is prohibited by any state or federal law or regulation and/or prohibited by the loan instruments and/or other contractual agreement with the consumer." Sussman Decl., Ex. 1 at 12; Ex. 2 at 13.

13

### 4.      SPS's Pay-to-Pay Fees are Not Otherwise Permitted by Law.

SPS does not point to any specific law permitting Pay to Pay Fees. Instead, it argues that the fees are allowed pursuant to general principles of contract law because Plaintiffs entered into separate, subsequent agreements to pay the fees. Mot. at 10-11.[13]  SPS is mistaken.

*First*, as discussed above, SPS ignores the two Second Circuit cases providing that for a fee to be "permitted by law," there must be a statute expressly authorizing the fee. In *Tuttle,* the Court reviewed FTC staff commentary, finding "some force" to the FTC's determination that in the absence of an express authorization in the contract creating the debt, the FDCPA requires that a fee be "*affirmatively permit[ted]*" by state law. 190 F.3d at 13.[14] In the years that followed, several courts in this district adopted the FTC's interpretation as summarized in *Tuttle. See, e.g.*, *Quinteros*, 999 F. Supp. 2d at 437; *Campbell*, 98 F. Supp. 3d at 578; *Shami*, 2010 WL 3824151, at *2. And, in *DiMatteo*, the Second Circuit held that plaintiffs had sufficiently alleged fees violated the FDCPA where the fees were not authorized in the agreement creating the debt and the defendant *"*could point to no authority under New York law" for the fees. 619 F. App'x at 10. SPS does not explain why this authority is not persuasive.

*Second*, SPS's argument that the fees are "permitted by law"—because the Plaintiffs entered into separate, subsequent agreements to pay the fees—ignores the text and purpose of the FDCPA.[15] As the Fourth Circuit explained, for a fee to be "permitted by law" pursuant to 15

---

[13] SPS also argues that the fees are not prohibited by New York regulations or the Rosenthal Act. Mot. at 13. But even if SPS is correct, a lack of a prohibition does not "permit" the imposition of Pay-to-Pay Fees. *See West v. Costen*, 558 F. Supp. 564, 582 (W.D. Va. 1983) ("Simply stated, 'permitted by law' is different from 'not prohibited by law.' Permission requires an affirmative authorization, not just indulgent silence.").

[14] The *Tuttle* court ultimately held that the defendant's service charge for collecting a dishonored check was permitted by state law. 190 F.3d at 15. And it held that the plaintiff had consented to the potential imposition of the service charge, which the jury found to be expressly disclosed at the time when he tendered the dishonored check (*i.e.*, the agreement creating the debt). *Id.* at 16.

[15] Although some cases, like *Meintzinger v. Sortis Holdings, Inc.*, 2019 WL 1471338, at *2 (E.D.N.Y. Apr. 3, 2019), have agreed with SPS's interpretation, these cases did not perform a close analysis of the FDCPA's text. And some

U.S.C. § 1692f(1), there must be "some form of affirmative sanction (that is, some 'law'), rather than mere lack of prohibition." *Alexander*, 23 F.4th at 377-78 (explaining that requiring affirmative permission better comports with the language of the statute).[16] And as the Fourth Circuit correctly observed, the argument that general contract principles should be enough to satisfy the "permitted by law" exception to section 1692f(1) would render the statute's prong mandating that amounts be "expressly authorized by the agreement creating the debt" superfluous and thus, should be rejected. *Id.* at 379.

5.     **Plaintiffs Plead Violations of FDCPA Section 1692e.**

Section 1692e proscribes the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Where a fee is impermissible under Section 1692f, any representation that such a fee is permissible violates Section 1692e. *See* FACC ¶¶ 143-44; *Campbell,* 98 F. Supp. 3d at 583 (finding that a violation of § 1692f(1) as to a processing fee to also violate § 1692e(2)(B)."); *Shami*, 2010 WL 3824151, at *4 (same). Further, demanding a fee that has been inflated above its cost constitutes a violation of Sections 1692e(2) and (10). Plaintiffs allege that SPS represented that it could lawfully charge the EZ Pay fees, FACC ¶¶ 42, 46, 59, 60, and that those fees were inflated above the SPS's actual cost, *id.* ¶¶ 34, 37, 43, 48, thereby stating a claim for violation of FDCPA Sections 1692e(2) and (10).

C.     **Snowden States a Claim Under Two Maryland Statutes.**

SPS violated Md. Code Ann., Com. Law § 14-202(11) based on its violation of the FDCPA, *supra* at § III.B.2, as well as MCDCA's proscription against collectors "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist."

---

of the cases to which SPS cites did not involve the FDCPA or analogous state statutes at all. *See, e.g.*, *Chatman v. Fairbanks Cap. Corp.*, 2002 WL 1338492, at *1 (N.D. Ill. June 18, 2002); *Davis v. Homecomings Fin.*, 2006 WL 2927701 (W.D. Wash. Oct. 10, 2006); *Cappellini v. Mellon Mortg. Co.*, 991 F. Supp. 31, 41 (D. Mass. 1997); *Jerik v. Columbia Nat., Inc.*, 1999 WL 1267702, at *5 (N.D. Ill. Sept. 30, 1999).

[16] *See also, e.g.*, *McFadden*, 2021 WL 3284794, at *5 ("[T]he word "permitted" requires that [the mortgage servicer] identify some state statute which "permits," i.e. authorizes or allows, in however general a fashion, the fees or charges in question.") (internal quotations omitted).

Md. Code Ann., Com. Law § 14-202(8); FACC ¶¶ 59-62. SPS does not dispute that it is a "collector" under the MCDCA, but challenges the other elements. Mot. at 19-20 n.30.[17]

To establish a violation of Md. Code Ann., Com. Law § 14-202(8), a plaintiff must prove: "(1) that [the] Defendant[] did not possess the right to collect the amount of debt sought; and (2) that [the] Defendant[] attempted to collect the debt knowing that they lacked the right to do so." *Gillis v. Household Fin. Corp. III*, 2019 WL 3412621, at \*7 (D. Md. July 29, 2019) (quoting *Amenu-El v. Select Portfolio Servs.*, 2017 WL 4404428, at \*4 (D. Md. Oct. 4, 2017)). SPS had no right to collect the amount of debt sought for the same reason it had no right to collect the Fees under the FDCPA. *Supra* at § III.B.5. *See also Alexander*, 23 F.4th at 379.

Furthermore, SPS knew it did not have the right to collect the amount of debt it sought, and its arguments to the contrary are unavailing.[18] "The 'knowledge' requirement of the MCDCA refers to 'actual knowledge or reckless disregard as to the falsity of the information or the existence of the right.'" *Cooke v. Carrington Mortg. Servs.*, 2019 WL 3241128, at \*6 (D. Md. July 18, 2019) ("*Cooke II*") (quoting *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 595 (D. Md. 1999)); *see PNC Bank, N.A. v. Davis*, 631 F. Supp. 3d 253, 273 (D. Md. 2022). As a licensed mortgage servicer, SPS is responsible for understanding the terms of the mortgages and applicable law, and any ignorance or mistake of law does not immunize it from liability based on lack of knowledge. *Simmons v. Md. Mgmt. Co.*, 269 A.3d 369, 683 (Md. Ct. Spec. App. 2022) ("Professional debt collectors and their lawyers must be held to be aware of laws relating to the validity of their collection efforts."); *Cooke II*, 2019 WL 3241128, at \*6 (plaintiff adequately alleged knowledge in part based on her challenge to the legality of the defendant-servicer's sanctions). Similarly, in questioning whether SPS could properly charge the Fees, Snowden

---

[17] The Fourth Circuit has also held that a collector has no right to collect the amount of the debt sought "if the amount sought exceeds the amount owed as a result of the debt collector's inclusion of an unauthorized type of charge." *Conteh v. Shamrock Cmty. Ass'n, Inc.*, 648 F. App'x 377, 381 (4th Cir. 2016); *see also Brooks v. Cama Self Directed IRA, LLC*, 2019 WL 418412, at \*11 (D. Md. Jan. 31, 2019) (inflated amount of debt owed based on improper interest rate and late fees).

[18] While § 14-202(8) requires scienter, § 14-202(11) does not. *Alexander*, 23 F.4th at 373.

further alerted SPS. FACC ¶ 140.[19] SPS does not address its recklessness in charging the Fees, and its argument that Snowden just recites a "formulaic statement" ignores the fact that knowledge may be averred generally at the motion to dismiss stage. *Watson v. HomeBridge Fin. Servs., Inc.*, 2022 WL 125278, at *9 (D. Md. Jan. 13, 2022). SPS's scienter argument is an issue of fact inappropriate for decision at dismissal. *Simmons*, 269 A.3d at 683-84.

In *Cole v. Federal National Mortgage Association*, 2017 WL 623465 (D. Md. Feb. 14, 2017), a plaintiff who pleaded that the defendant artificially inflated costs associated with foreclosure, by comparing the costs she was charged to the customary charges for the associated fees, was held to have sufficiently alleged knowledge to survive a Rule 12(b)(6) motion. *Id.* at *8. Here, the Fees were similarly not related to the actual cost associated with processing mortgage payments. FACC ¶ 140-141.[20] Thus, Snowden has met the pleading standard with regard to SPS's knowledge that it improperly assessed the Fees.

Second, Snowden alleges violations of the MCPA based on SPS's violation of the MCDCA[21] and SPS's failure to disclose material facts. It is unlawful for SPS to make "[f]alse . . . or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" or to "[f]ail[] to state a material fact if the failure deceives or tends to deceive" in "[t]he collection of consumer

---

[19] By contrast, in *Cooke v. Carrington Mortg. Servs.*, 2018 WL 6323116, (D. Md. Dec. 3, 2018), the court held that plaintiff had not plausibly alleged that the mortgage servicer acted with knowledge or reckless disregard of the validity of the charges where the servicer removed some fees and provided an explanation as to other fees, including that they were authorized by the mortgage. *Id.* at *7. In *Flowers v. Baltax 2017, LLC*, 2019 WL 3501584, at *9 (D. Md. Aug. 1, 2019), cited by SPS, the court held that the plaintiff's allegations of knowledge were conclusory, but here, Snowden put SPS on notice.

[20] SPS's cases are distinguishable. In *Mitchell v. U.S. Bank Nat'l Ass'n*, 2018 WL 4679949, at *7 (D. Md. Sept. 28, 2018), the court held that the defendants did not have knowledge where the fraudulent conduct predated defendants' involvement, whereas SPS imposed the Fees at issue in this case. *Ensor v. Wells Fargo Bank Nat'l Ass'n*, 2022 WL 345513, at *5, n.3 (D. Md. Feb. 4, 2022), did not substantively address the knowledge requirement.

[21] The MCPA defines "unfair, abusive, or deceptive trade practices" to include violations of the MCDCA. Md. Code Ann., Com. Law § 13-301(14)(iii). *See PNC Bank, N.A. v. Davis*, 631 F. Supp. 3d 253, 277 (D. Md. 2022) (citing *Olson v. Midland Funding, LLC*, 578 F. App'x 248, 251 (4th Cir. 2014)) (finding a violation of the MCDCA is a per se violation of the MCPA).

debts." Md. Code, Com. Law §§ 13-301(1), 13-301(3), 13-303(5). "To state a claim under the MCPA, a plaintiff must adequately plead that: (1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the misrepresentation, and (3) doing so caused the plaintiff actual injury." *Gillis*, 2019 WL 3412621, at *9 (quoting *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 416 (D. Md. 2018)).[22] The law is to "be construed and applied liberally to promote its purpose." Md. Code Ann. Com. Law § 13-105.

Snowden has identified SPS's misrepresentations and omissions: the Fees were not related to any charges SPS incurred, SPS was improperly profiting from the Fees, and SPS failed to disclose these facts. FACC ¶¶ 139-41, 246-48. Disguising the true nature of fees associated with mortgage servicing constitutes an unfair or deceptive practice. *See Flournoy v. Rushmore Loan Mgmt. Servs., LLC*, 2020 WL 1285504, at *8 (D. Md. Mar. 17, 2020).[23]

Under Maryland law, "[a] consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice. . . Whether a misrepresentation substantially induces a consumer's choice is ordinarily a question of fact for the trier of fact." *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 532 (D. Md. 2011) (whether fee was included in contract and amount of fee created issue of fact with respect to reliance). So too here, given the material omissions. *Id*. (applying the same standard of reliance to misrepresentation and omission claims under the MCPA); FACC ¶¶ 139-41. That Snowden made the online and telephone mortgage payments during which the Fees were falsely

---

[22] The MCPA applies to omissions as well as affirmative misrepresentations. Md. Code Ann., Com. Law § 13-301(9); *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 535 (D. Md. 2011) (failure to disclose true nature of fee constituted material omission). It is counterintuitive to require a plaintiff to pinpoint a particular omission. *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 489 (D. Md. 2020) "[A]n omission cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation." (quoting *Willis v. Bank of Am. Corp.*, 2014 WL 3829520, at *8 (D. Md. Aug. 1, 2014))). By definition, an omission is the information that the defendant has withheld. Snowden has identified this—the true nature of the fee—with specificity. FACC ¶¶ 139-41.

[23] *Bourgeois v. Live Nation Entertainment, Inc.*, 3 F. Supp. 3d 423 (D. Md. 2014), cited by SPS, pre-dates the Maryland regulation prohibiting the misrepresentation of processing fees. *See* Md. Code Regs. 09.03.06.10 ("A licensee may not retain a fee, or any portion of a fee, collected from the borrower if the fee is represented as a charge to be paid to a third party for services in connection with the loan.").

represented as related to the processing of her mortgage payments is sufficient to establish reasonable reliance on SPS's misrepresentations and non-disclosures at this stage. *Id.* ¶ 118, 139. Thus, SPS's argument that Snowden has not identified a sufficient reliance is incorrect. [24]

### D.   Washington States a Claim Under the Rosenthal Act and California's Unfair Competition Law.

In addition to her claim as to the Rosenthal Act's incorporation of section 1692f(1), discussed above, Washington brings two other causes of action under this state statute, as well as claims under section 17200 of California's Unfair Competition Law ("UCL").

*First*, the Rosenthal Act prohibits "[c]ollecting or attempting to collect from the debtor the whole or any part of the debt collector's *fee or charge for services rendered, or other expense incurred* by the debt collector in the collection of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14(b) (emphasis added). SPS does not dispute that Pay-to-Pay Fees constituted a "fee or charge" or an "expense" covered by this provision. Instead, SPS argues that the Fees are permitted by law, an argument that fails for the reasons discussed in section II.B.4, *supra.* Moreover, California courts specifically interpreting this section find that it requires "express permission." *See, e.g., DiFlauro v. Bank of Am., N.A.*, 2020 WL 10111966, at *5 (C.D. Cal. Dec. 2, 2020) (requiring "expressly authorized by some state or federal statute or regulation" for a section 1788.14(b) claim); *Lembeck v. Arvest Cent. Mortg. Co.*, 498 F. Supp. 3d 1134,1137 (N.D. Cal. 2020) (same).

*Second*, the Rosenthal Act makes it illegal to represent to a consumer that a debt "may be increased by the addition of . . . charges if, in fact, such fees and charges may not be legally added to the existing obligation." Cal. Civ. Code § 1788.13(e). Contrary to SPS's argument, the FACC does allege that SPS represented to consumers "that the mortgage loan debts of Plaintiff

---

[24] While this Court previously held that it has jurisdiction over the state law claims under the Class Action Fairness Act, Second MTD Order at 9-10, SPS still contends the Maryland and California claims should be dismissed. It provides no authority for its contention. Mot. at 7. Indeed, SPS even admitted that this Court has CAFA jurisdiction over Washington's claims. *See* FACC, Ex. D at ¶ 64.

Washington and the California Class members may be increased by the addition of the Pay-to-Pay Fees." FACC ¶ 254. This is sufficient at the motion to dismiss stage.

*Third*, the UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Bus. & Prof. Code § 17200. Because she states a claim for multiple violations of the Rosenthal Act and the FDCPA, she also states a claim for violation of the "unlawful" prong. *Lembeck,* 498 F. Supp. 3d at 1137 ("Because the IVR fee is prohibited under the Rosenthal Act, it is 'unlawful' under the UCL.").[25]

**E.      Ms. DeSimone States a Claim Under N.Y. General Business Law § 349.**

To state a claim under N.Y. GBL § 349, a plaintiff must allege that, "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp*., 574 F.3d 64, 74 (2d Cir. 2009)) (internal quotation marks omitted). "Section 349 on its face applies to virtually all economic activity." *Evans v. Select Portfolio Servicing, Inc.*, 2020 WL 5848619, at *17 (E.D.N.Y. Sep. 30, 2020) (Chen, J.) (citation omitted).

SPS challenges only the second element of the GBL § 349 claim and argues Ms. DeSimone failed to allege deceptive or misleading conduct. Mot. at 19. This is wrong:  Plaintiffs asserted that "SPS knew, or reasonably should have known, and failed to disclose, that it was not permitted to impose or collect Pay-to-Pay Fees." FACC ¶ 226. There is no dispute that "[a]llegations of a bank's [or mortgage servicer's] unilateral imposition of illegal and/or unwarranted fees upon its customers states a valid claim of consumer fraud in violation of General Business Law § 349." *Negrin v Norwest Mortg., Inc*., 263 A.D.2d 39, 50 (2d Dep't 1999). Moreover, the Complaint further alleges SPS's double charging and failure to disclose

---

[25] Ms. Washington also states two claims under the "unfair" prong. First, she alleges SPS's Fees are unfair, due to the excessive nature of the fees charged. *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1474 (2006) (holding that allegation the defendant led "borrowers to believe it is charging them for the cost of certain services . . . when in reality it is charging them substantially in excess" satisfied the "unfair" prong). As discussed in section III. A, her alternative unfairness claim also survives.

that the Pay-to-Pay Fees "materially exceed the costs incurred by SPS to process the phone and online payments." FACC ¶¶ 42-44, 136. This is more than sufficient to state a claim for violation of GBL § 349. See *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (statements deceptive if capable of misleading a reasonable borrower); *Dumont v. Litton Loan Servicing, LP*, 2014 WL 815234, at *10 (S.D.N.Y. Mar. 3, 2014) (upholding § 349 claim where plaintiff alleged mortgage servicer charged improper fees); *Gomez-Jimenez v. New York Law Sch.*, 103 A.D.3d 13, 16-17 (1st Dep't 2012) (omission of "material information that is relevant to the consumer" states a GBL § 349 claim).

DeSimone's allegations that the Fees violate the Uniform Mortgage Agreement, the FDCPA and 3 N.Y.C.R.R. §419.5(b) also satisfy the misleading element. A violation of other federal and state consumer protection laws is a deceptive practice under GBL §349. *See* GBL §349(g) (unlawful conduct is deceptive under GBL § 349); *Shakespeare v. Compu-Link Corp.*, 848 F. App'x 474, 476 (2d Cir. 2021) (violation of another New York law and federal regulations pled deceptive practice for under GBL § 349); *Nick's Garage, Inc. v. Progressive Cas. Ins.*, 875 F.3d 107, 126-27 (2d Cir. 2017) (violation of another New York law stated GBL §349 claim); *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (collecting a disclosed fee that allegedly violated RESPA stated GBL § 349 claim).

SPS argues, without context, that it disclosed the Fees. The New York Court of Appeals has held that a defendant's claim of adequate disclosures does not establish a defense to GBL § 349 as a matter of law. *See Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 676 (N.Y. 2012) (defendant's written disclaimers did not defeat GBL § 349 claim at the motion to dismiss stage). SPS's alleged disclosure of the Fees, moreover, is not dispositive because the Court must consider SPS's overall business practices when determining whether the Fees are deceptive. *See Relativity Travel, Ltd. v. JP Morgan Chase Bank*, 2006 WL 2918081, at *3 (Sup. Ct. N.Y. Cty. Feb. 14, 2006) (allowing claim based on deceptive albeit disclosed fee; "[t]he issue is not simply

whether the []Agreement was deceptive, but whether Chase's overall business practices in connection with the charge were deceptive").[26]

**F.      Plaintiffs Plead Valid Claims for Breach of Their Mortgage Agreements.**

Plaintiffs plead an express breach of their uniform mortgage agreements. Section 1 of their agreements permits them to pay their mortgages electronically. FACC ¶ 39, Exs. A, B, ¶C-1 (annexing agreements). Section 14 prohibits any fee charged in contravention of the mortgage agreement or in violation of "Applicable Law." *Id.* ¶¶ 70, 72, 74 ("Applicable Law" defined as federal law and the laws where the properties are located). Section 16 further requires SPS to comply with the same Applicable Law that is incorporated into the agreements. *Id.* ¶¶ 69, 71, 73.[27] Thus, SPS breached Sections 14 and 16 of the uniform contracts. SPS does not and cannot claim the mortgages authorize the Fees, and it does not dispute that Plaintiffs plead compliance with their mortgage agreements when the Complaint was filed. *See* ¶¶ 64-75, 195-208. These facts alone warrant denial of SPS's arguments to dismiss the breach of contract claim.

SPS argues that: (1) it made separate agreements with Plaintiffs to charge the Fees, and (2) Plaintiffs agreed to pay the Fees. *See* Mot. at 15-17. These arguments are incorrect and improperly contradict the pleadings. SPS's second argument should be easily denied, as Plaintiffs plead they did ***not*** agree to pay the Fees. FACC ¶ 135, 139.  And with respect to its first argument, SPS contends it was permitted to make separate, contradictory agreements with Plaintiffs that allow the Fees, even though the mortgage agreements permit electronic payments and do not permit fees that violate the FDCPA, California, New York or Maryland "Applicable Law."  For the same reasons

---

[26] Whether conduct is deceptive or materially misleading is generally a question of fact inappropriate for resolution on a motion to dismiss. *Sims v. First Consumers Nat'l Bank*, 303 A.D.2d 288, 289-90 (1st Dept 2003) ("[w]hether defendants' conduct was deceptive or misleading is a question of fact"); *see also McNeil v. Capital One Bank, N.A.*, 2020 UWL 5802363, at *2-3 (E.D.N.Y. September 29, 2020) (upholding plaintiff's GBL § 349 based on defendant's charging of allegedly unlawful fees and holding that whether defendants' alleged acts "are actually misleading, [is a] question better suited for the fact-finder in this case").

[27] Violating a federal or state law incorporated into a mortgage pleads a breach of contract claim. *See McFadden,* 2021 WL 3284794, at *7; *Clark v. Bank of Am.,* 2020 WL 902457, at *8 (D. Md. Feb. 24, 2020); *Hymes v. Bank of Am., N.A.*, 408 F. Supp. 3d 171, 199 (E.D.N.Y. 2019) *rev'd on other grounds* 49 F.4th 121 (2022).

that SPS's "separate agreement" argument fails to dismiss Plaintiffs' FDCPA and state statutory claims, it cannot dismiss Plaintiffs' breach of contract claim. *See supra* at §§ III.A-E.

As is true for the FDCPA and state statutory claims, courts find that pay-to-pay mortgage fee practices also plead valid breach of contract claims. *See McFadden*, 2021 WL 3284794, at *7-8, *10 (rejecting "separate agreement" argument); *Martindale v. Megastar Fin. Corp.*, 2021 WL 5331464, at *5 (E.D. Cal. Nov. 15, 2021) (denying the defendant's motion to dismiss breach of contract claim where plaintiff alleged an "express violation of applicable law").[28]

SPS does not contend that any of its so-called separate agreements with Plaintiffs are in writing. But agreements to modify a mortgage *must* be in writing. *See Freedom Mortg. Corp. v. Heirs*, 2020 WL 3639989, at *4 (S.D.N.Y. July 6, 2020) ("[I]n New York, modification of a mortgage is subject to the statute of frauds and accordingly must be in writing to be enforceable and signed by the party to be charged.") (internal quotations omitted); *Collings v. MGC Mortg., Inc.*, 2016 WL 9724969, at *7 (D. Md. Jan. 28, 2016) ("Maryland law is clear that a contract relating to an interest in land needs to be in writing in order to be enforceable and that both mortgage contracts and agreements modifying mortgage contracts continue to be contracts concerning an interest in land."). The absence of any *written* agreements modifying the mortgages agreements to permit the Fees is fatal to SPS's argument.

### G.    Plaintiffs Plead Violations of the Duties of Good Faith and Fair Dealing.

New York and Maryland both imply a duty of good faith and fair dealing into all contracts. *See Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995); *Questar*

---

[28] SPS relies on *Matchett v. BSI Financial Services*, No. 21-4142, 2023 WL 4678683 (10th Cir. July 21, 2023), where the breach of contract claim was dismissed because the plaintiff did not "point to any provision in the mortgage agreements" that was breached. *Id.*, at *3. Nor did plaintiff plead that the FDCPA prohibited the fees. SPS's other cases were largely decided before a majority of courts, the CFPB, and state regulators resolved that the Fees are prohibited by the FDCPA and state law.

*Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 670 (Md. Ct. App. 2009).[29]  Those

obligations encompass a duty "not to act arbitrarily or irrationally" when exercising any

discretion contemplated in the contract. *Dalton*, 663 N.E.2d at 291. If the Court finds Plaintiffs

have not adequately alleged a contract claim, they have alleged bad faith in violation of the

covenant of good faith and fair dealing in the alternative. *Cf. Evans*, 2020 WL 5849619, at *17;

*see also Levin v. HSBC Bank USA, N.A.*, 2012 WL 7964121, at *14 (N.Y. Sup. Ct. June 26,

2012) ("A plaintiff may bring a claim for breach of the covenant of good faith and fair dealing

independently of any other claims for breach of contract."); *Sher v. SAF Fin., Inc.*, 2011 WL

4835700, at *4 (D. Md. Oct. 11, 2011) (citing Fed. R. Civ. P. 8(d)(2)) (denying motion to

dismiss on basis that plaintiff could plead breach of the covenant of good faith and fair dealing in

the alternative to his contract claim). Here, the duty is breached because SPS uses its position to

impose fees untethered to its actual costs. Thus, this claim is appropriately pleaded, at minimum,

in the alternative. *See Casey v. Citibank, N.A.*, 915 F. Supp. 2d 255, 264 (N.D.N.Y. 2013)

(upholding claim for breach of implied covenant of good faith and fair dealing; "plaintiffs

sufficiently allege that defendants exhibited bad faith by [charging] unnecessary or excessive

flood insurance—either without the contractual authority to require such insurance or as an

arbitrary or irrational exercise of their discretion to do so.").

### H.   There is No Basis to Strike the Class Claims.

SPS moves to strike on two grounds, and both requests contravene well-settled authority.

First, SPS argues that because the mortgage agreements require pre-suit notice,

individualized notice issues will predominate. But as discussed in section III.A, *supra,* notice is

not needed for the statutory claims, and is satisfied on a classwide basis for the others based on

independent notice and futility. Even if SPS were correct that notice is an individual issue as to

---

[29] As a mortgage servicer, SPS is also under a regulatory duty of good faith and fair dealing in its interactions with Ms. Snowden. *See* Md. Code Regs. 09.03.06.20(a) ("A licensee has a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in connection with the advertisement, solicitation, making, servicing, purchase, or sale of any mortgage loan.").

the contract claim, and it is not, this ignores the use of devices such as issue classes. SPS's uniform misconduct is a classic issue suitable for Rule 23 resolution. *See Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 79 (E.D.N.Y. 2017) ("[A determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage[.]"); *Gill v. Nat'l Football League*, No. 21 Civ. 1032 (PAE), 2021 WL 5087900, at *8 (S.D.N.Y. Nov. 2, 2021) ("To the extent individual issues may predominate, that concern . . . is paradigmatically one to be litigated at class certification[.]").

Second, SPS asks to strike the claims of the Fee-Prohibiting State Class because Snowden and Washington, do not have "standing" to represent borrowers in states other than their own. Yet the Second Circuit has said that "whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III." *Langan v. Johnson & Johnson Consumer Cos., Inc.,* 897 F.3d 88, 96 (2d Cir. 2018). In any event, predominance will be readily shown, as this is straightforward multi-state class, covering borrowers in six states that have 1692f(1) Statutes.[30] Further, to o the extent the statutes require a borrower to have resided in the state to recover, that is not a barrier here, as class members will recover only under the laws of the states in which they reside.[31]

## IV.   CONCLUSION

For the foregoing reasons, SPS's motion to dismiss should be DENIED.

---

[30] California, where Washington resides, Maryland, where Snowden resides, and four additional states (Texas, Pennsylvania, Iowa, and New Hampshire) that all similarly prohibit debt collectors from charging fees that are not authorized by the agreement creating the debt or are permitted by law. *See* Tex. Fin. Code Ann. § 392.303(2); Pa. Stat. Ann. § 2270.4(b)(6)(i); Iowa Code Ann. § 537.7103(5)(d); N.H. Rev. Stat. Ann. § 358-C:3(X).

[31] While some courts have found a "statutory standing" exception to *Langan*, they have done so in the narrow situation where New York residents have sought to assert a multi-state class that encompasses claims under a Connecticut law that expressly bars nonresidents "from bringing class action claims." *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 300 (S.D.N.Y. 2022) (dismissing Connecticut claims; leaving other out-of-state claims); *Gibson v. Bartlett Dairy, Inc.,* 2022 WL 784746, at *10 (E.D.N.Y. Mar. 15, 2022) (same). *See also* Conn. Gen. Stat. Ann. § 42-110g (a)-(b) (setting forth requirements for those who may "bring a class action").

Dated: February 8, 2024                Respectfully submitted,

*/s/ Kristen G. Simplicio*
**TYCKO & ZAVAREEI, LLP**
Kristen G. Simplicio (*pro hac vice*)
Email: ksimplicio@tzlegal.com
Hassan Zavareei (*pro hac vice*)
Email: hzavareei@tzlegal.com
2000 Pennsylvania Ave, N.W., Suite 1010
Washington, DC 20006
Tel.: (202) 973-0900
Fax: (202) 973-0950

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
Rachel Geman, Esq.
Email: rgeman@lchb.com
250 Hudson Street, 8th Floor
New York, New York 10013
Tel: (212) 355-9500
Fax: (212) 355-9592

**GISKAN SOLOTAROFF &
ANDERSON LLP**
Catherine E. Anderson, Esq.
Email: canderson@gslawny.com
90 Broad Street, 10th Floor
New York, NY 10004
Tel: (212) 847-8315 x 12

**SHANBERG, STAFFORD & BARTZ
LLP**
Ross E. Shanberg, Esq. (*pro hac vice*)
Email: rshanberg@ssbfirm.com
5031 Birch Street
Newport Beach, California 92660
Tel: (800) 519-9810
Fax: (949) 205-7144

**TUSA P.C.**
Joseph S. Tusa, Esq.
Email: joseph.tuspc@gmail.com
55000 Main Road, 2nd Fl.
P.O. Box 566
Southold, NY 11971
Tel: (631) 407-5100

**BAILEY & GLASSER**
James Lawrence Kauffman (*pro hac vice*)
Email: jkauffman@baileyglasser.com
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Tel.: (202) 463-2101
Fax: (202) 463-2103

*Counsel for Plaintiffs and Proposed
Counsel for the Classes and Subclasses*

27