UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
LISA DeSIMONE, DEBORAH R.
SNOWDEN, and INEZ CLARA
WASHINGTON, on behalf of themselves and
all others similarly situated,

                      Plaintiffs,

           - against -

SELECT PORTFOLIO SERVICING, INC.,

                     Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-3837 (PKC) (TAM)

PAMELA K. CHEN, United States District Judge:

In this putative consolidated class action, Plaintiffs Lisa DeSimone, Deborah R. Snowden, and Inez Clara Washington (collectively, "Plaintiffs") allege that Defendant Select Portfolio Servicing, Inc. ("SPS"), the mortgage loan servicing company that serviced Plaintiffs' mortgage loans on behalf of non-party lenders, engaged in deceptive practices by charging "EZ Pay" fees or "pay-to-pay fees" (hereinafter "pay-to-pay fees") of up to $15 each time Plaintiffs sought to make mortgage payments online or by phone, in violation of the Fair Debt Collection Practices Act ("FDCPA") and various state statutory and common laws.

Presently before the Court is SPS's motion to dismiss Plaintiffs' First Amended Consolidated Class Action Complaint ("FACC") in its entirety, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), for failure to state a claim. SPS also moves to strike class allegations in the FACC. For the reasons stated herein, SPS's motion is granted in part and denied in part.[1]

---

[1] Having reviewed the record, including the pleadings and exhibits submitted by the parties, the Court finds oral argument unnecessary and accordingly denies SPS's request for oral argument. (Dkt. 94.)

**BACKGROUND**

I.     **Claims and Factual Allegations[2]**

Plaintiffs Lisa DeSimone, Deborah R. Snowden, and Inez Clara Washington own homes located in New York, Maryland, and California, respectively, each of which is subject to a mortgage loan.  (FACC, Dkt. 87 (hereinafter "FACC"), ¶¶ 11–13.)  SPS is a national loan servicing company that services residential loans.  (*Id.* ¶¶ 14, 23.)  SPS "enters into service agreements with lenders, primary servicers, note holders, and trustees pursuant to which SPS provides servicing, subservicing[,] and agency activities for loan portfolios."  (*Id.* ¶ 24.)  According to those agreements, SPS "acts as their agent and exercise[s] their rights and responsibilities pursuant to their approval."  (*Id.*)

At least since 2017, SPS has serviced Plaintiffs' mortgage loans on behalf of their lender principals.  (*See id.* ¶ 11.)  From 2017 to 2020, on numerous occasions, SPS charged Plaintiffs pay-to-pay fees ranging from $5 to $15 each time Plaintiffs paid their mortgages via phone or online.[3]  (*Id.* ¶¶ 11–13.)  Plaintiffs allege that the "costs associated with processing [their] online

_____

[2] The facts recited in this section are based on the nonconclusory factual allegations in the FACC, which the Court accepts as true for the purpose of this motion.  *See Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 429 (2d Cir. 2012).  The Court also considers, as incorporated into and integral to the FACC, certain documents submitted with the FACC and provided by the Parties in their briefing, including mortgage agreements, deeds of trust, notes, monthly mortgage statements, and court filings.  *See Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410 (MKB) (RER), 2016 WL 3647687, at *2 n.2 (E.D.N.Y. July 1, 2016) ("Although a court's review on a motion to dismiss is typically limited to the four corners of the complaint, a court may also review, among certain other categories, documents incorporated into the complaint by reference and documents integral to the complaint." (citations omitted)).  Finally, the Court takes judicial notice of relevant state regulations published on official governmental websites.  *See Leger v. Kalitta*, No. 16-CV-6545 (PKC) (PK), 2018 WL 2057142, at *3 (E.D.N.Y. Jan. 26, 2018) ("[T]he Court may take judicial notice of documents retrieved from official government websites or other government records from such websites." (citation omitted)).

[3] The monthly mortgage statements that SPS sent to Plaintiffs, copies of which are attached as exhibits to the Declaration of Alyssa A. Sussman in support of SPS's motion to dismiss, include a text box with the heading "SPECIAL REQUEST AND ADDITIONAL FEES" that lists two

or telephonic mortgage payments were much lower than" the pay-to-pay fees SPS imposed, and therefore SPS kept the remainder as profit. (*Id.* ¶ 136.) Plaintiffs challenge the legality of pay-to-pay fees, alleging that SPS's practice of charging those fees violates federal and various state statutory and common laws. (*See id.* ¶ 1.)

Plaintiffs allege eight causes of action against SPS: (1) violation of the FDCPA, 15 U.S.C. §§ 1692e and 1692f; (2) violation of the New York General Business Law Section 349, N.Y. Gen. Bus. Law § 349; (3) violation of the Maryland Consumer Debt Collection Act, Md. Com. Law. Code Ann. §§ 14-201, *et seq.*; (4) violation of the Maryland Consumer Protection Act, Md. Com. Law. Code Ann. §§ 13-101, *et seq.*; (5) violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788.13(e), 1788.14, 1788.17; (6) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; (7) breach of contract; and (8) breach of the covenant of good faith and fair dealing. (*See id.* ¶¶ 182–291.)

### A.     Plaintiff DeSimone

Plaintiff Lisa DeSimone ("DeSimone") is a citizen and resident of New York. (*Id.* ¶ 11.) In September 2014, SPS began servicing DeSimone's loan. (*Id.* ¶ 134.) DeSimone alleges that "[o]n six occasions in 2019 and four occasions in 2017, SPS imposed [p]ay-to-[p]ay [f]ees . . . for requesting payments by phone[,]" and "[o]n each occasion, the amount of the fee imposed by SPS was $7.50, reduced from a total charge of $15.00 as a result of [] DeSimone's complaints about" the fees. (*Id.* ¶ 135.) "DeSimone approved the payments of her mortgage . . . but objected to the [p]ay-to-[p]ay [f]ees." (*Id.*)

---

methods of payment— "Check by Phone or Website (EZPay)[:] Up to $15.00." (Dkt. 97-3, at ECF 3; Dkt. 97-4, at ECF 3; Dkt. 97-5, at ECF 3; Dkt. 97-6, at ECF 3; Dkt. 97-7, at ECF 3; Dkt. 97-8, at ECF 3; Dkt. 97-9, at ECF 3.) The Court notes that citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

### B.     Plaintiff Snowden

Plaintiff Deborah R. Snowden ("Snowden") is a citizen and resident of Maryland. (*Id.* ¶ 12.)  SPS services Snowden's mortgage loan on behalf of its lender principal.  (*Id.* ¶ 138.) "On nine occasions in 2020, five occasions in 2019, and six occasions in 2018," SPS charged Snowden pay-to-pay fees for making payments online or over the phone.  (*Id.* ¶ 139.)  "On each occasion, the amount of the fee . . . was either $15.00 or $5.00[;]" SPS advised Plaintiff that if she paid the fee early in the month, it was $5.00.  (*Id.* ¶¶ 139, 140.)  Like DeSimone, Snowden "approved the payments of her mortgage . . . but objected to the [p]ay-to-[p]ay [f]ees."  (*Id.* ¶ 139.)

### C.     Plaintiff Washington

Plaintiff Inez Clara Washington ("Washington")  is a citizen and resident of California. (*Id.* ¶ 13.)  In November 2019, SPS acquired the servicing rights to Washington's loan.  (*Id.* ¶ 146.) On each of the five occasions from 2019 to 2020 when Washington made her past-due mortgage payments after the grace period over the phone, she was charged with a pay-to-pay fee in the amount of $15.00.  (*Id.* ¶¶ 152–54, 156.)

## II.     Procedural History

On August 20, 2020, DeSimone and Gabriel Rogers[4] initiated this action against SPS on behalf of a putative class alleging violations of the FDCPA and various state statutory and common laws.  (*See* Dkt. 1, ¶¶ 1, 46–121.)  On November 9, 2020, SPS moved for a pre-motion conference seeking to dismiss the original complaint.  (*See* Dkt. 15.)  On February 5, 2021, DeSimone and Snowden filed the Amended Complaint on behalf of themselves and putative classes.  (*See* Am. Compl., Dkt. 24, ¶¶ 55–110.)  On May 7, 2021, SPS filed a motion to dismiss the Amended

---

[4] Rogers was one of the original plaintiffs in this case, but the Parties stipulated to her dismissal as a plaintiff on January 14, 2021.  (*See* Dkt. 21.)

Complaint pursuant to Rule 12(b)(6).  (*See* Dkts. 36–39, 41.)  On January 4, 2022, the Court granted SPS's motion to dismiss on a limited basis and permitted DeSimone and Snowden to file a Second Amended Complaint.  (*See* Dkt. 55.)

Meanwhile, Washington filed a lawsuit against SPS in the United States District Court for the Central District of California ("Washington action") on August 24, 2020, four days after the initiation of the instant action by DeSimone and Rogers.  (FACC ¶ 22; *see also* Dkt. 87-3.) Pursuant to a stipulation endorsed by the then-presiding judge in the Washington action, SPS agreed to transfer the Washington action to this District.  (FACC ¶ 22.)  On February 10, 2022, DeSimone, Snowden, and Washington, joined by SPS, filed a consent motion to consolidate the two actions, (*see* Dkt. 58), which the Court subsequently granted on February 14, 2022, (*see* Dkt. 60; 2/14/2022 Dkt. Order).  The same day, Plaintiffs filed the Consolidated Class Action Complaint ("CCAC"), adding Washington as a plaintiff.  (*See* Dkt. 59.)

On March 3, 2022, SPS filed a letter indicating its intent to move to dismiss the CCAC for failure to state a claim.  (*See* Dkt. 61.)  The Court directed the parties to brief the proposed motion to dismiss.  (*See* 3/28/2022 Dkt. Order.)  On June 8, 2022, the motion was fully briefed.  (*See* Dkts. 69–73.)  On September 30, 2023, the Court granted SPS's motion to dismiss the CCAC on narrow grounds, but granted Plaintiffs leave to further amend their complaint ("First MTD Decision").  *See DeSimone v. Select Portfolio Servicing, Inc.*, No. 20-CV-3837 (PKC) (TAM), 2023 WL 6450236, at *9 (E.D.N.Y. Sept. 30, 2023).

On October 30, 2023, Plaintiffs filed the FACC, the operative complaint for this action. (*See* Dkt. 87.)  As before, Plaintiffs seek to join their claims by alleging a class action under Rule 23.  (*See* FACC ¶¶ 158–81.)  With respect to the putative classes, Plaintiffs identify six class groups.  (*See id.* ¶¶ 158–63.)  More specifically, Plaintiffs seek to certify the following classes

allegedly harmed by SPS's practice of collecting pay-to-pay fees: (1) a nationwide class (DeSimone, Snowden, and Washington as representatives); (2) a nationwide default subclass (DeSimone and Washington as representatives); (3) a fee-prohibiting state class (Snowden and Washington as representatives); (4) a New York class  (DeSimone as representative); (5) a Maryland class (Snowden as representative); and (6) a California class (Washington as representative).  (*Id.*)

On November 13, 2023, SPS filed a motion for a pre-motion conference on its anticipated motion to dismiss the FACC.  (*See* Dkt. 88.)  The Court allowed SPS to move forward with its anticipated motion, and set a briefing schedule.  (*See* 12/8/2023 & 12/18/2023 Dkt. Orders.)  The motion was fully briefed as of February 26, 2024.  (*See* Dkts. 95–99.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679 (citation omitted).  In addressing the sufficiency of a complaint, a court "accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [it is] not required to

credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester County*, 3 F.4th 86, 90–91 (2d Cir. 2021) (citation omitted).

## DISCUSSION

### I.      The Mortgage Agreements' Pre-Suit Notice and Cure Requirement

As a threshold matter, SPS argues that the FACC should be dismissed in its entirety because Plaintiffs did not comply with the pre-suit notice-and-cure provision in their mortgage agreements,[5] thus failing to satisfy the contractual condition precedent to commencement of an action. (*See* Def.'s Mem. Law Supp. Mot. Dismiss, Dkt. 96 (hereinafter "SPS Br."), at 3–7.) SPS contends that under the notice-and-cure provisions of Plaintiffs' mortgage agreements, they were required to notify SPS of their claims before filing this lawsuit to give SPS an opportunity to take corrective action. (*See id.*) For the reasons that follow, the Court disagrees.

### A.      Legal Standard

"When claims arise from actions taken pursuant to the contract or agreement at issue, a valid notice-and-cure provision is a precondition to the suit." *Taub v. World Fin. Network Bank*, 950 F. Supp. 2d 698, 702 (S.D.N.Y. 2013). "Normally, under New York law, a party's failure to comply with an express condition precedent to suit is fatal to the party's claim." *City of New York v. Tavern on the Green Int'l LLC*, 351 F. Supp. 3d 680, 692 (S.D.N.Y. 2018) (citing *MASTR Adjustable Rate Mortgs. Tr. 2006-OA2 v. UBS Real Estate Sec.*, No. 12-CV-7322 (PKC), 2015 WL 764665, at *7–8 (S.D.N.Y. Jan. 9, 2015)). Nevertheless, "New York common law will not require strict compliance with a contractual notice-and-cure provision if providing an opportunity to cure would be useless, or if the breach undermines the entire contractual relationship

---

[5] Although Snowden and Washington's agreements are denominated "deeds of trust," the Court refers to Plaintiffs' contracts collectively as "mortgage agreements."

such that it cannot be cured." *Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, 756 F.3d 204, 209 (2d Cir. 2014) (footnote and citations omitted); *see also Miller v. Wells Fargo Bank. N.A.*, 994 F. Supp. 2d 542, 552 n.6 (S.D.N.Y. 2014) ("[A] party need not provide notice of and an opportunity to cure a breach when doing so would be futile." (citing *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 728 (2d Cir. 1992))); *Tavern on the Green*, 351 F. Supp. 3d at 692 ("[The New York] law is clear that '[p]roviding notice and cure is not required where it would be futile.'" (quoting *Point Prods. A.G. v. Sony Music Entm't, Inc.*, No. 93-CV-4001 (NRB), 2000 WL 1006236, at *3 (S.D.N.Y. July 20, 2000))).

Furthermore, courts in this and other circuits have refused to apply contractual notice-and-cure provisions to statutory claims that exist independent of a contractual agreement between the parties, such as allegations of statutory violations or deceptive business practices, and thus have declined to dismiss such statutory claims on pre-suit notice grounds. *See, e.g.*, *Taub*, 950 F. Supp. 2d at 701–02 (holding that pre-suit notice is not a condition precedent to bringing claims under the Truth in Lending Act ("TILA"), which "have generally survived motions to dismiss—even when the contract contains a notice-and-cure provision for claims arising out of the agreement") (internal quotation marks omitted); *Gerber v. First Horizon Home Loans Corp.*, No. 5-CV-1554 (MJP), 2006 WL 581082, at *3 (W.D. Wash. Mar. 8, 2006) (distinguishing between plaintiff's breach of contract claim and the statutory claim under the Washington Consumer Protection Act involving allegations of deceptive business practices, holding that a notice-and-cure provision did not apply to the statutory claim, which "clearly exist[ed] independent of any contract between the parties," and thus dismissing the breach of contract claim for failure to comply with the notice-and-cure provision but sustaining the statutory claim); *Kim v. Shellpoint Partners, LLC*, No. 15-CV-611 (LAB) (BLM), 2016 WL 1241541 (S.D. Cal. Mar. 30, 2016), at *7–8 (holding that no notice-and-

8

cure provision applied to claims challenging mortgage servicing fees under federal and state statutes, but dismissing the breach of contract claim because it arose from the loan agreement); *St. Breux v. U.S. Bank, Nat'l Ass'n*, 919 F. Supp. 2d 1371, 1375–76 (S.D. Fla. 2013) (finding that notice-and-cure provision of a mortgage contract did not apply to plaintiff's TILA claim because the claimed TILA violation was a violation of a duty "owed by reason of" TILA, not the mortgage); *Abercrombie v. Wells Fargo Bank, N.A.*, 417 F. Supp. 2d 1006, 1007–09 (N.D. Ill. 2006) (holding that plaintiff's failure to comply with a contractual notice-and-cure provision did not entitle defendant to dismissal of plaintiff's TILA claim); *Clark v. Bank of Am., N.A.*, 561 F. Supp. 3d 542, 550–52 (D. Md. 2021) (holding that a notice-and-cure provision applied to plaintiff's breach of contract claim but not to state statutory and unjust enrichment claims because "[a] notice-and-cure provision . . . is only a precondition to claims arising from the contract itself, not from allegations of statutory violations or deceptive business practices"); *Garay v. Select Portfolio Servicing Inc.*, No. 19-CV-23323 (JLK) (JB), 2020 WL 10823745, at *3 (S.D. Fl. Aug. 7, 2020) (holding that mortgage agreement's pre-suit notice-and-cure provision did not bar plaintiff's claim under Florida Consumer Collection Practices Act ("FCCPA") because processing fee charges for mortgage payments made via telephone or online was "not a fairly direct result of the performance of contractual duties"), *R. & R. adopted*, 2020 WL 10823759 (S.D. Fl. Aug. 31, 2020).[6]

---

[6] The Court recognizes that a few out-of-circuit courts have held that contractual pre-suit notice-and-cure provisions apply to statutory claims. *See DeBoskey v. SunTrust Mortg., Inc.*, No. 14-CV-1778 (MSS) (TGW), 2017 WL 4083557, at *18 n.12 (M.D. Fla. Sept. 14, 2017) (finding that, even as to statutory claims, the failure to comply with contractual notice-and-cure provisions deprives a defendant "at the very least, of its right to potentially resolve th[e] issue prior to litigation"); *Charles v. Deutsche Bank Nat'l Tr. Co.*, No. 15-CV-21826 (KMM), 2016 WL 950968, at *2 (S.D. Fla. Mar. 14, 2016) (dismissing plaintiff's TILA claims, among others, after noting that the mortgage contract's "notice-and-cure provision . . . bars a plaintiff's claims where it applies by its terms to [the] action") (internal quotation marks omitted); *Sotomayor v. Deutsche Bank Nat'l Tr. Co.*, No. 15-CV-61972 (WPD), 2016 WL 3163074, at *2 (S.D. Fla. Feb. 5, 2016), *order clarified*, 2016 WL 3163075, at *2 (S.D. Fla. Mar. 18, 2016) (dismissing

Specifically, in the context of the FDCPA disputes regarding fees, the parties have not cited, and this Court has not identified, any cases from this Circuit addressing the application of pre-suit notice-and-cure provisions in mortgage agreements to statutory claims under the FDCPA. However, numerous courts in other circuits have exhaustively considered this precise question under the FDCPA and various state consumer protection statutes, and have held that notice-and-cure provisions that are identical or nearly-identical to the ones at issue here do not extend to claims that "exist independent of a contractual agreement between the parties," such as statutory claims. *See, e.g.*, *Richards v. NewRez LLC*, No. 20-CV-1282 (ELH), 2021 WL 1060286, at *21 (D. Md. Mar. 18, 2021) (sustaining claims under the FDCPA and the Real Estate Settlement Procedures Act despite plaintiff's failure to provide notice and an opportunity to cure to a mortgage servicer because the statutory claims "exist[ed] independent of a contractual agreement between the parties" and were not "subject to the notice-and-cure provisions that might otherwise apply"); *Schmidt v. Wells Fargo Home Mort.*, No. 11-CV-59 (JRS), 2011 WL 1597658, at *3–4 (E.D. Va. Apr. 26, 2011) (holding that a notice-and-cure provision did not bar claims under FDCPA, TILA, or Virginia Consumer Protection Act, or for common law fraud); *Foster v. Green Tree Servicing*, No. 15-CV-1878 (JDP), 2017 WL 5151354, at *3 (M.D. Fla. Nov. 3, 2017) (finding mortgage agreement notice-and-cure provision inapplicable to plaintiff's FDCPA claims because although these claims were "related to the mortgage and [defendant]'s efforts to procure mortgage

---

plaintiff's TILA claims, among others, where plaintiff failed to "comply with the notice-and-cure provisions . . . of the [] loan contract"); *Johnson v. Countrywide Home Loans, Inc.*, No. 10-CV-1018, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010) (granting defendant's motion to dismiss plaintiff's TILA claims, among others, pursuant to a notice-and-cure provision because all of plaintiff's allegations arose from actions taken pursuant to the deed of trust). However, in light of the claims brought in this action, which are based, in part, on New York, Maryland, and California statutes, the Court looks to the case law of those state courts, as recited above, and the federal courts in this Circuit.

payments," they arose from "alleged violations of consumer protection statutes[,]" not the mortgage); *Belcher v. Ocwen Loan Servicing, LLC*, No. 16-CV-690 (SDM), 2016 WL 7243100, at \*4 (M.D. Fla. Dec. 15, 2016) (finding mortgage agreement notice-and-cure provision inapplicable to claims "aris[ing] directly from alleged deceptive business practices . . . prohibited by the FDCPA and FCCPA, rather than the mortgage itself").

**B.     Analysis**

For the reasons stated below, the Court finds that (1) Washington has satisfied the pre-suit notice-and-cure provision with respect to her breach of contract claim; (2) DeSimone and Snowden are excused from complying with the notice-and-cure provision because compliance would be futile; and (3) the notice-and-cure provisions are inapplicable to Plaintiffs' federal and state statutory claims.  Accordingly, the FACC survives dismissal on this ground.

1.     Plaintiffs' Contractual Claims

Here, the FACC's Second Cause of Action alleges breach of contract, namely, that SPS violated Plaintiffs' individual mortgage agreements.  (See FACC ¶¶ 195–208.)  The notice-and-cure provisions in Plaintiffs' individual mortgage agreements are materially the same; they obligate both the lender and borrower to notify the other party for claims that "arise[] from the other party's actions pursuant to" the mortgage agreements, that "allege[] that the other has not fulfilled any of its obligations" under the agreement, or that "allege[] that the other party has breached any provision of, or any duty owed by reason of" the agreement before commencing legal action.  (Dkt. 87-1, at ECF 15.)  The provision also requires that the allegedly breaching party be allowed a reasonable period of time to take corrective action.  (Dkt. 87-1, at ECF 15, ¶ 20; Dkt. 87-2, at ECF 10, ¶ 20; Dkt. 87-3, at ECF 35, ¶ 20.)[7]  All notices required by the mortgage

---

[7] DeSimone's mortgage agreement in pertinent part provides as follows:

agreements must be in writing and be delivered or mailed through first-class mail.  (*See* Dkt. 87-2, at ECF 9, ¶ 15; Dkt. 87-3, at ECF 34, ¶ 15; *see also* Dkt. 87-1, at ECF 14, ¶ 15.)[8]

####    2.    SPS Is Entitled to Enforce the Notice-And-Cure Provisions of the Mortgage Agreements

As an initial matter, the Court reiterates its finding from the First MTD Decision that SPS, as the mortgage loan servicer and assignee under the mortgage agreements, is entitled to enforce the notice-and-cure provision of Plaintiffs' mortgage agreements.   *See DeSimone*,

---

Lender's and Borrower's Right to Notice of Grievance. . . . Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified . . . of the unfulfilled obligation and given a reasonable time period to take corrective action.

(Dkt. 87-1, at ECF 15, ¶ 20.)  Snowden's and Washington's deeds of trust in pertinent part provide:

Notice of Grievance. . . . Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Dkt. 87-2, at ECF 10, ¶ 20; Dkt. 87-3, at ECF 35, ¶ 20.)

[8] All three Plaintiffs' mortgage agreements provide the following:

All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. . . . Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

(*See* Dkt. 87-2, at ECF 9, ¶ 15; Dkt. 87-3, at ECF 34, ¶ 15; *see also* Dkt. 87-1, at ECF 14, ¶ 15 (substantively same).)

2023 WL 6450236, at *6 ("Courts have held that 'Notice of Grievance' provisions are applicable to assignees of mortgage agreements[,]" which, according to CCAC, SPS is in this case).  Similar to the CCAC, the FACC clearly alleges that:

> SPS enters into service agreements with lenders, primary servicers, note holders, and trustees pursuant to which SPS provides servicing, sub-servicing and agency activities for loan portfolios. In accordance with those agreements, SPS is compensated by the lenders, note holders, and trustees to act as their agent and to exercise their rights and responsibilities pursuant to their approval. *SPS either takes assignment of the servicing obligations in borrowers' loan agreements, and/or is in functional privity and near privity of contract with Plaintiffs and Class members, tasked with performing many of the obligations assumed by the lenders to Plaintiffs' and Class members' loan agreements.*

(FACC ¶ 24 (emphasis added); *see also id.* ¶ 147 ("SPS became bound as an assignee to [Washington's] Deed of Trust at the time it acquired the servicing rights.").)  *See DeSimone*, 2023 WL 6450236, at *6 (relying upon nearly identical language from mortgage agreements recited in CCAC to find notice-and-cure provision applicable to SPS).

Thus, because Plaintiffs' breach of contract claims arise from alleged violations of their mortgage agreements, the pre-suit notice-and-cure provisions in these agreements apply.  And because SPS is entitled to enforce those provisions, Plaintiffs were required to notify SPS of their breach of contract claims and allow SPS a reasonable time to cure before suing in court.  As discussed below, Washington complied; DeSimone and Snowden did not.

a.  Washington's Breach of Contract Claim

Washington has adequately pled when and how she provided SPS pre-suit notice and an opportunity to cure.  Washington alleges that she first gave notice to SPS of its alleged violations of the mortgage agreement in a May 21, 2020, letter from her attorney via first-class mail to SPS. (*See* Dkt. 87-7, Ex. G.)  In that letter, Washington informed SPS that its "practice of assessing a fee each time a borrower makes a mortgage payment online or over the phone" has not only "breached, and continues to breach, its contracts with [] Washington" because these fees "are not

expressly authorized or permitted under the terms of [] Washington's mortgage agreement," but also violated California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") and the California Unfair Competition Law ("UCL").  (*Id.* at ECF 2.)  Washington requested, *inter alia*, that SPS cure its violations by immediately discontinuing the assessment of pay-to-pay fees and "providing restitution of such fees paid to SPS" by Washington.  (*Id.*)  Importantly, Washington noted that she intended to bring a lawsuit against SPS if her demand was not resolved within 14 days.  (*Id.* at ECF 3.)

On May 28, 2020, SPS acknowledged receipt of Washington's May 21, 2020, letter and stated that it would "review [her] request and provide [her] with a written response and resolution regarding [the] matter."  (Dkt. 87-8, Ex. H, at ECF 2.)  On June 22, 2020, SPS sent a follow-up letter to Washington.  (*See* Dkt. 87-9, Ex. I.)  In the letter, SPS represented that after a full review of Washington's claims, it was declining Washington's request for restitution of the pay-to-pay fees and compensation, because it had "serviced the account in accordance with the terms of the [] Deed of Trust" between Washington and the lender.  (*Id.* at ECF 2.)  SPS also found "no merit to [Washington's] allegations" regarding violations of the deed of trust, the Rosenthal Act, and the UCL and was "confident" that SPS's servicing of the account was "compliant with all applicable state and federal regulations."  (*Id.* at ECF 2.)

On August 24, 2020—95 days after Washington's May 21, 2020, letter and 32 days after SPS's June 22, 2020, response—Washington initiated a lawsuit against SPS.  (*See* FACC ¶ 107; *see also* Dkt. 87-3.)  Accordingly, there can be no dispute that Washington provided SPS with the required notice and opportunity to cure the contract breaches and statutory violations identified in Washington's May 21, 2020, letter, and that SPS expressly chose not to do so.  Therefore,

Washington has sufficiently pled that she has complied with the pre-suit notice-and-cure provision in her deed of trust with the lender.[9]

> b. <u>DeSimone's and Snowden's Breach of Contract Claims</u>

However, the same cannot be said of DeSimone and Snowden. The FACC does not adequately allege that they provided SPS with written notice and an opportunity to cure prior to instituting this lawsuit. Although DeSimone and Snowden argue that their counsel provided pre-suit written notice to SPS's counsel of their intent to file a lawsuit based on SPS's pay-to-pay practices, (*see* FACC ¶ 114), as discussed in the Court's First MTD Decision, those letters were not sent to SPS's counsel in *this* action, but rather, to SPS's counsel in a *different* lawsuit.[10] (*See* 9/30/2023 M&O, Dkt. 86, at 15.) The Court finds that this notice does not satisfy the notice-and-cure provision of DeSimone's and Snowden's mortgage agreements. In addition, DeSimone and Snowden state that because SPS was a represented party to a class action, their counsel could not communicate directly with SPS to provide pre-suit notice of this action. (*See* FACC ¶ 115.) This argument is unavailing. As SPS has contended, DeSimone and Snowden themselves could have communicated directly with SPS to provide notice and an opportunity to cure. *See Deptula v. Rosen*, 558 F. Supp. 3d 73, 83 n.7 (S.D.N.Y. 2021) ("[W]hile it is unethical (in most situations) for an attorney acting as such to communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, . . . there is no comparable prohibition on adverse parties communicating directly with one another." (internal citation and quotation marks omitted)). DeSimone and Snowden also claim

---

[9] For the same reasons, Washington has also satisfied the notice-and-cure obligation with respect to her breach of good faith and fair dealing claim.

[10] That action is *Evans v. Select Portfolio Servicing, Inc.*, No. 18-CV-5985 (PKC) (RML), 2020 WL 5848619, (E.D.N.Y. Sept. 30, 2020), which is also pending before this Court.

that because they contacted SPS employees directly over the telephone complaining about pay-to-pay fees, they therefore satisfied the notice and cure requirement.  (*See* FACC ¶¶ 117–19.)  This argument is similarly unavailing.  "[A] telephone call is not written notice and cannot comply with" the mortgage agreements' notice requirement.  *Stovall v. SunTrust Mortg., Inc.*, No. 10-CV-2836 (RDB), 2011 WL 4402680, at *6 (D. Md. Sept. 20, 2011).  More importantly, "the telephone calls described in the [FACC] do not indicate that [DeSimone and Snowden] made any reference to potential causes of action arising from" any breach of the mortgage agreements or violation of the relevant law.  *Id.*  Although DeSimone and Snowden "certainly expressed [their] dissatisfaction" with being charged with the pay-to-pay fees, "it is far from clear whether [their] calls to [SPS employees] constitute any sort of notice contemplated" by the mortgage agreements.  *Id.*

However, DeSimone's and Snowden's failure to sufficiently plead compliance with the pre-suit notice-and-cure provisions is not fatal to their lawsuit.  Construing the pleadings in a light most favorable to them, the Court finds that DeSimone and Snowden have adequately pled futility, i.e., that "enforcing strict compliance with the [notice-and-cure] provision would be useless with respect to the alleged [breach] in this case, given that [SPS] was aware of the charges," but insisted that its pay-to-pay fees comply with the mortgage agreements and relevant statutory and common law.  *Lussoro v. Ocean Fin. Fed. Credit Union*, 456 F. Supp. 3d 474, 482 (E.D.N.Y. 2020); *see also Tavern on the Green*, 351 F. Supp. 3d at 693 (holding that providing notice and an opportunity to cure would have been futile considering defendant's insistence that the alleged violations were "in full conformity" with the contract entered between the parties); (FACC ¶¶ 114, 122–30).  Crucially, SPS's "continued [practice of charging pay-to-pay fees] even after the suit was commenced makes clear that [SPS] never would have availed itself of the opportunity to cure

provided" in the mortgage agreements.  *Tavern on the Green*, 351 F. Supp. 3d at 693; *see also Miller*, 994 F. Supp. 2d at 553 (finding that enforcing a contractual pre-trial notice provision in a breach of contract claim would be futile given defendants' failure to remove the force-placed policies even though plaintiffs had previously informed them that there was an existing error).  In fact, at least by the time the FACC was filed, SPS persisted in charging pay-to-pay fees—more than three years after the initiation of this lawsuit.  (*See* FACC ¶¶ 129–30.)  As a result, the Court is persuaded that the mortgage agreements' pre-suit notice-and-cure requirement with respect to DeSimone and Snowden is excused under the circumstances in this case as futile.[11]

### 3.   Plaintiffs' Federal and State Statutory Claims

As to Plaintiffs' statutory claims under the FDCPA and related state consumer protection statutes, SPS argues that since Plaintiffs did not provide the requisite notice and opportunity to cure, their statutory claims should also be dismissed.  (*See* SPS Br., at 5–6.)  Plaintiffs contend that they were not obligated to comply with this contractual provision because their statutory claims are "premised on violation of rights provided by statute, not SPS's breach of" their mortgage agreements.  (FACC ¶ 120.)  The Court agrees.

Here, the notice-and-cure provision in Plaintiffs' mortgage agreements states, in pertinent part, as follows:

> Notice of Grievance. . . . Neither Borrower nor Lender may commence . . . any judicial action . . . that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, *until* such Borrower or Lender has notified the other party . . . of *such alleged breach* and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

---

[11] For the same reasons, the Court finds that DeSimone's and Snowden's claims for breach of good faith and fair dealing are not barred by their failure to comply with the notice-and-cure requirement in their mortgage agreements.

(Dkt. 87-2, at ECF 10, ¶ 20; Dkt. 87-3, at ECF 35, ¶ 20 (emphasis added).)[12]   In analyzing this issue, the Court finds instructive the reasoning in *Colon v. Nationstar Mortg., LLC*, No. 15-CV-22961 (UU), 2015 WL 7422598 (S.D. Fla. Nov. 17, 2015), which involves notice-and-cure provisions identical or nearly identical to the ones in this case.   In *Colon*, the plaintiff alleged violations of the Telephone Consumer Protection Act ("TCPA"), claiming that the defendant, a mortgage loan servicer, used an automatic dialing system to call the plaintiff multiple times to collect a debt arising from a mortgage loan without express consent of the plaintiff. *Id.* at *1.   The defendant moved to dismiss the plaintiff's complaint based on the plaintiff's failure to comply with the contractual pre-suit notice-and-cure provision. *Id.*   The court denied the motion, finding that the notice-and-cure provision did not apply to the plaintiff's TCPA claims because "even if the notice-and-cure provision is connected to the mortgage[,] . . . it cannot be stretched to ensnare pre-suit conduct concerning a consumer protection statute that is not directly connected to the performance of the duties in the [m]ortgage." *Id.* at *2.

The court reached this conclusion based on a close reading of the notice-and-cure provision:

> The word "until" clearly marks the conditional nature of the provision and qualifies the preceding clauses by indicating that a party will give notice to the other party of "such alleged *breach*" prior to commencing an action.   In other words, the notice-and-cure provision is circumscribed to breaches of provisions, and duties owed, within the [m]ortgage itself.   [The] [d]efendant, critically, has not highlighted any

---

[12]   The notice-and-cure provision in DeSimone's mortgage agreement, which is substantially similar to the ones in Washington's and Snowden's deeds of trust, provides:

> Lender's and Borrower's Right to Notice of Grievance. . . . Neither I nor Lender may commence . . . any court action . . . that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified . . . of the unfulfilled obligation and given a reasonable time period to take corrective action.

(Dkt. 87-1, at ECF 15, ¶ 20.)

provision in the [m]ortgage that relates to the use of an automatic dialing system in collecting the underlying debt.   [The] [p]laintiff's allegations, then, exclusively relate to a violation of the TCPA and not a concomitant breach of the [m]ortgage, which forecloses any compliance with the notice-and-cure provision.

*Id.* (citations omitted).  As such, the *Colon* court held that "even if the notice-and-cure provision relates to the mortgage referenced in the [c]omplaint, [the plaintiff] was not contractually obligated to comply with such provision before initiating his TCPA claim."  *Id.*

A number of courts have reached the same conclusion with respect to claims brought under consumer protections statutes where the plaintiffs are subject to substantially similar contractual pre-suit notice and cure requirements.  *See Belcher*, 2016 WL 7243100, at *4 (holding that identical notice-and-cure provision did not bar FDCPA and FCCPA action because plaintiff "has a statutory right of action that is independent from the requirement under the mortgage agreement to give pre-suit notice"); *St. Breux*, 919 F. Supp. 2d at 1376 (holding that a notice-and-cure provision of the mortgage contract did not apply to plaintiff's TILA claim because the claimed violation is a violation of a duty owed by reason of TILA, not the mortgage and that "[i]n the absence of TILA, there would be no suit"); *Trevathan v. Select Portfolio Servicing, Inc.*, 142 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015) (holding that plaintiff's TILA claim was not subject to dismissal, "as it implicate[d] a statutory duty"); *Foster*, 2017 WL 5151354, at *2–3 (holding that a pre-trial notice provision, which required a party to give notice "of such alleged breach" before commencing an action, was inapplicable to plaintiff's FCCPA claim because the statutory claim was independent from the mortgage contract (emphasis in original)); *Lamothe v. Freedom Mortg. Corp.*, No. 18-CV-61448 (BB), 2018 WL 5631172, at *4 (S.D. Fla. Oct. 31, 2018) (holding that a notice-and-cure provision did not apply to plaintiff's claims because these claims did not "arise as a result of a breach of any provision of the mortgage or a duty owed within the mortgage itself"); *Bandele v. Wirbicki Law Grp., LLC*, No. 20-CV-4104 (JLA), 2021 WL 2105020, at *5 (N.D. Ill.

May 25, 2021) (holding that plaintiff's FDCPA claim "arose from a duty imposed by the FDCPA, not from the mortgage"); *Rodriguez v. Rushmore Loan Mgt. Servs., LLC*, No. 18-CV-1015, 2019 WL 423375 (RMD), at *4 (N.D. Ill. Feb. 4, 2019) ("The duty to refrain from communicating with a consumer who is represented by an attorney came from the FDCPA, not the mortgage.").

Turning to the instant case, SPS argues that because Plaintiffs' statutory claims "arise from SPS's actions pursuant to the mortgage agreements" or "allege that SPS has not fulfilled its obligations or duty under the mortgage agreement," the pre-suit notice-and-cure provisions of the mortgage agreements apply to Plaintiffs' statutory claims.[13]   (*See* SPS Br., at 5–6 (internal quotations marks omitted).)  The Court disagrees.  In arguing that compliance with the notice-and-cure provision is a condition precedent to bringing statutory claims, SPS, like the defendant in *Colon*, "truncates the provision by isolating the broad language 'arises from the other party's actions pursuant to this Security Instrument.'"  *Colon*, 2015 WL 7422598, at *2.  However, as the court found in *Colon*, "the provision read as a whole does not align with [SPS's] parsing," *id.*, and the notice-and-cure provision in Plaintiffs' mortgage agreements is "circumscribed to breaches of provisions, and duties owed, within the mortgage itself" and are inapplicable to Plaintiffs' statutory

---

[13] SPS also argues that "as this Court already held [in the 9/30/2023 Memorandum & Order], Plaintiffs' contention that pre-suit notice is not required to plead statutory violations is wrong. . . . This Court already rejected Plaintiffs' argument, holding that 'the "Notice of Grievance" provisions in Plaintiffs' mortgage agreements apply to lawsuits [] that arise from SPS's alleged actions pursuant to the agreements or based on alleged breaches of the agreements. . . . As this Court held, 'it would be nonsensical and self-defeating for Plaintiff[s] to argue that [SPS] is not bound by the Notice of Grievance provision in contracts they claim [SPS] has breached.'" (SPS Br., at 5–6.)  SPS's interpretation of the quoted language from the Court's Memorandum & Order is inapposite, as it misinterpreted the Court's ruling regarding the applicability of the notice-and-cure provision.  The portion that SPS excepted from the Memorandum & Order in fact discussed whether the Notice of Grievance provisions in Plaintiffs' mortgage agreements applied to SPS as a mortgage loan servicer, *not* whether those provisions applied to Plaintiffs' statutory claims.  At most, the Memorandum & Order only clarified that the Notice of Grievance provisions applied to Plaintiffs' breach of contract claims, but did not assess whether the provisions apply to Plaintiffs' statutory claims.

claims. *Colon*, 2015 WL 7422598, at *2; *see Velez v. Bank of Am., NA*, No. 18-CV-88 (MSS), 2020 WL 13596305, at *4 (M.D. Fla. Sept. 22, 2020) (finding that notice-and-cure provision at issue "require[d] a party to give notice to the other party 'of such alleged *breach*,' and an opportunity to cure that *breach*, before commencing" an action (emphasis added)).  Thus, as in *Colon* and the other federal cases cited above, Plaintiffs' claims alleging violations federal and state statutes, despite arising out of SPS's conduct in servicing the mortgage agreements, "do not arise as a result of a breach of any provision of the mortgage [agreement] or a duty owed within the mortgage" agreements themselves.  *Lamothe*, 2018 WL 5631172, at *4.  Rather, these claims "relate exclusively to violations" of consumer protection statutes, and thus arise directly outside of the duties owed within the mortgage agreements themselves.  *Id.*  (finding that mortgage agreements at issue did not "encompass[] claims based only upon violation of duties imposed by statute, because doing so would effectively insert a notice-and-cure provision that statutes . . . otherwise do not contain").  Accordingly, this Court finds that Plaintiffs were not required to provide notice and an opportunity to cure before asserting their federal and state statutory claims.

*     *     *

For these reasons, the Court finds that the notice-and-cure provision in Plaintiffs' mortgage agreements does not bar this litigation.

Having rejected SPS's preliminary arguments regarding the pre-suit notice-and-cure requirement, the Court turns to the merits of Plaintiffs' claims and addresses each claim in turn.

## II.   DeSimone's and Washington's FDCPA Claims[14]

DeSimone and Washington allege that SPS violated the FDCPA by charging pay-to-pay fees each time they made a mortgage payment online or over the phone.  (*See* FACC ¶¶ 182–194.)  SPS moves to dismiss DeSimone's and Washington's FDCPA claims, arguing that the FDCPA does not apply to pay-to-pay fees and that DeSimone and Washington have failed to adequately allege any substantive violation of the FDCPA.  (*See* SPS Br., at 7–14.)  For the reasons discussed below, the Court finds that the FDCPA applies to pay-to-pay fees and that DeSimone and Washington have adequately stated a claim under the FDCPA.

### A.   Legal Standard

"Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'"  *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013) (quoting 15 U.S.C. § 1692e).  "[T]he FDCPA creates a private right of action for debtors who have been harmed by abusive debt collection practices."  *Benzemann v. Citibank N.A.*, 806 F.3d 98, 100 (2d Cir. 2015).  The Second Circuit has held that "because the FDCPA is primarily a consumer protection statute, [courts] must construe its terms in liberal fashion [to achieve] the underlying Congressional purpose."  *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016) (internal citation and quotation marks omitted).

---

[14] As discussed *supra*, only DeSimone and Washington bring claims under the FDCPA; Snowden brings only Maryland state law claims pursuant to Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (*See* FACC, ¶¶ 231–49.)  Because the Court found in its First MTD Decision that Plaintiffs have sufficiently pled diversity jurisdiction with respect to Snowden's Maryland state law claims, the Court addresses her state law claims later pursuant to CAFA.  *See DeSimone*, 2023 WL 6450236, at *5–6.

### B.      The FDCPA Applies to Pay-to-Pay Fees

SPS first seeks dismissal of DeSimone's and Washington's FDCPA claims on the ground that the statute does not apply to the pay-to-pay fee that SPS assesses because (1) the fee is not a "debt"[15] regulated by the FDCPA and (2) SPS is not a "debt collector" within the meaning of the FDCPA with respect to the fee.  (*See* SPS Br., at 7–9.)  As discussed below, the Court finds SPS's arguments meritless.

### 1.      The Pay-to-Pay Fee is an "Amount" Under the FDCPA

SPS contends that since the FDCPA only applies to the collection of "debt," pay-to-pay fees fall outside the purview of the statute because they are not existing debt obligations owed by DeSimone and Washington, but rather "new service charges" arising out of DeSimone's and Washington's use of SPS's pay-by-phone or pay-by-web services.  (*Id.* at 7–8.)  SPS's argument that pay-to-pay fees are not "debt" under the FDCPA is a red herring.  Whether pay-to-pay fees constitute a "debt" or not is beside the point.  By its terms, Section 1692f(1) of the FDCPA prohibits "[t]he collection of *any amount (including any interest, fee, charge, or expense incidental to the principal obligation)* unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1) (emphasis added).  Therefore, the issue here is *not* whether the pay-to-pay fee is a "debt" under the FDCPA; rather, the issue is whether it is an "amount" charged in connection with SPS's collection of DeSimone's and Washington's debt payments that is "incidental" to the principal obligation.  Courts in this Circuit have expressly held that a fee similar to SPS's pay-to-pay fee qualifies as an "amount" that is "incidental" to the

---

[15] The term "debt" is defined under the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).

principal balance of the debt within the meaning of the FDCPA and thus prohibited.  *See, e.g.*, *Tuttle v. Equifax Check*, 190 F.3d 9, 11, 15 (2d Cir. 1999) (applying FDCPA to $20 service charge imposed to defray collection costs); *Schwartz v. I.C. System, Inc.*, No. 16-CV-5173 (DLI)(LB), 2018 WL 1582224, at *3 (E.D.N.Y. Mar. 30, 2018) (holding that the processing fee associated with using online debt payment method is an "amount" under FDCPA); *Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568, 582 (2015) ("Collection of this [processing] fee fits within the scope of conduct described in [Section] 1692f(1) [of FDCPA] and, by operation of that provision, would be deemed a violation of [Section] 1692f.") (granting summary judgment in part); *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 439 (E.D.N.Y. 2014) (concluding that the $5 credit card processing fee for any debt payments made over the phone is "incidental to the principal obligation" under FDCPA); *Shami v. Nat'l Enter. Sys.*, No. 9-CV-722 (RRM) (VVP), 2010 WL 3824151, at *4 (E.D.N.Y. Sept. 23, 2010) (holding that FDCPA applies to the pay-by-phone fees that were incidental to the plaintiff's purported actual debt).  As such, the Court finds that the pay-to-pay fee imposed by SPS is an "amount" that is "incidental" to DeSimone's and Snowden's principal mortgage loan obligation, and that the FDCPA therefore applies.

2.   SPS Is a "Debt Collector" Under the FDCPA

SPS's argument that it is not a "debt collector" within the ambit of the FDCPA with respect to pay-to-pay fees is equally unavailing.  The FDCPA defines "debt collector" as "any person . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Excluded from the term "debt collector" is "any person collecting or attempting to collect any debt . . . which was originated by such person."  15 U.S.C. § 1692a(6)(F)(ii).  For this exclusion to apply, there must be a "debt" that was "originated" by the person who seeks to collect or attempts to collect it.  Here, SPS asserts that it is excluded

from the term "debt collector" because it charged and retained the pay-to-pay fees for itself.  (SPS Br., at 8–9.)[16]

Putting aside the self-contradictory nature of SPS's argument, courts in this Circuit have consistently found that mortgage servicers, such as SPS, are "debt collectors" as defined in the FDCPA.  *See, e.g.*, *Quinteros*, 999 F. Supp. 2d at 435–36 (holding that a company regularly engaged in the collection of debts allegedly owed by consumers was a "debt collector" within the meaning of the FDCPA).  Indeed, SPS itself has previously conceded that it is a "debt collector" under the FDCPA.  *See, e.g.*, *Dyer v. Select Portfolio Servicing, Inc.*, 108 F. Supp. 3d 1278, 1280 (M.D. Fla. June 4, 2015) ("[SPS] must qualify as a 'debt collector,' an issue which is not disputed in the present case."); *Jones v. Select Portfolio Servicing, Inc.*, No. 18-CV-20389 (UU), 2018 WL 2316636, at *3 n.3 (S.D. Fla. May 2, 2018) ("[SPS] must also be a debt collector under the FDCPA, but [SPS] does not dispute this designation."), *overruled in part sub nom. on other grounds by Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260 (11th Cir. 2022).  Furthermore, SPS cites no authority for the proposition that it is not considered a "debt collector" under the FDCPA when it undisputedly collects mortgage debt but *also* collects fees, which it "originates," in collecting that debt.  Nor does it cite any support for defining "debt" under the FDCPA as the processing fees imposed by a debt collector, such as SPS.

Accordingly, the Court finds that SPS, a mortgage servicing company, is a "debt collector" under the FDCPA.

---

[16] Though largely irrelevant to the Court's ruling on SPS's "debt" argument, it is noteworthy that, in making this argument, SPS essentially concedes that the pay-to-pay fee is in fact a "debt," which directly contradicts its earlier argument that this fee is not a "debt" under the FDCPA.  *See* Discussion *supra* Section II.B.1; (SPS Br., at 7–8).

C.     **DeSimone and Washington Have Adequately Stated a Claim Under the FDCPA**

DeSimone and Washington allege that SPS violated two specific provisions of the FDCPA: (1) Section 1692f, by collecting an amount that was not authorized by contract or permitted by law; and (2) Section 1692e, by using false and deceptive representations in the collection of a debt, i.e., by representing that it was entitled to receive pay-to-pay fees for debt payment by phone or online. (*See* FACC ¶¶ 188–94.)

1.     Section 1692f(1) of the FDCPA: Unfair or Unconscionable Means

Section 1692f of the FDCPA provides that debt collectors "may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The provision provides a non-exhaustive list of conduct that the FDCPA prohibits. *See id.* Specifically, Section 1692f(1) emphasizes the following violative conduct: "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

a.   Second Circuit's Interpretation of Section 1692f(1) of the FDCPA

Interpreting Section 1692f(1), the Second Circuit has held that under the statute, debt collectors may impose additional charges to the collection of the debt "if (i) the customer expressly agrees to the charge in the contract creating the debt or (ii) the charge is permitted by law." *Tuttle*, 190 F.3d at 13 (citing 15 U.S.C. § 1692f(1)). While the Second Circuit has not addressed the precise issue regarding pay-to-pay fees at issue in this case, "[r]elying on the language of [Section] 1692f(1) and the Staff Commentary on the [FDCPA], [the Second Circuit] laid out the circumstances under which a service charge is, or is not, permissible as follows:"

> [1.] *If state law expressly permits service charges*, a service charge may be imposed even if the contract is silent on the matter;

26

[2.] *If state law expressly prohibits service charges*, a service charge cannot be imposed even if the contract allows it; [or]

[3.] *If state law neither affirmatively permits nor expressly prohibits service charges*, a service charge can be imposed only if the customer expressly agrees to it in the contract.

*Campbell*, 98 F. Supp. 3d at 578 (quoting *Tuttle*, 190 F.3d at 13) (internal citations omitted) (emphasis in original).  Although there has not been an abundance of cases on the issue, courts in this Circuit have consistently upheld the standard set forth in *Tuttle* (the "*Tuttle* standard") in cases involving claims on the permissibility of a service charge under the FDCPA.  *See e.g.*, *Datiz v. Int'l Recovery Assocs.*, No. 15-CV-3549 (ADS) (AKT), 2016 WL 4148330, at *3–6 (E.D.N.Y. Aug. 4, 2016) (recognizing the *Tuttle* standard in a Section 1692f case involving defendant's practice of charging a processing fee of $3.00 when consumers chose to use the defendant's website to pay off their debts); *Quinteros*, 999 F. Supp. 2d at 437–39 (reciting the *Tuttle* standard when evaluating whether a $5 processing fee for debt payments made via credit card or check over the phone were permissible under the FDCPA); *Shami*, 2010 WL 3824151, at *2–4 (reciting the *Tuttle* standard when analyzing claim that transaction fees imposed for debt payments by automated phone system or internet violated Section 1692f(1)).

### b.  DeSimone's Claim

In DeSimone's case, the relevant state law is New York law, which governs her mortgage agreement.  DeSimone alleges that Part 419 of the Superintendent of the New York State Department of Financial Services' Emergency Regulations, N.Y. Comp. Codes R. & Regs. Tit. 3 § 419 ("Part 419"), which is New York's Mortgage Loan Servicer Business Conduct Rules, prohibits SPS's pay-to-pay fees.  (*See* FACC ¶¶ 87, 203.)  Therefore, DeSimone's assertion implicates the second prong of the *Tuttle* standard.

Part 419 is "a regulatory scheme applicable to certain mortgage loan servicers and other entities engaged in servicing mortgage loans[,]" *Bloom v. Nationstar Mortg. LLC*, 154 N.Y.S.3d 395 (2021) (internal quotation marks omitted), which was first promulgated by the Department of Financial Services ("DFS") in 2010.[17]  On December 18, 2019, the DFS amended the then-existing Part 419 and adopted a new version ("Final Part 419"), which took effect on June 15, 2020.[18]  Final Part 419 "restates many of the requirements contained in [Part 419] . . . and codifies certain . . . best practices that have become commonplace since Part 419 went into effect in 2010."[19]  DeSimone alleges that pay-to-pay fees are prohibited by Section 419.5(b) of Final Part 419 because they are not "reasonably related to the cost of rendering the service."[20]

---

[17] *See 3 NYCRR Part 419—Mortgage Loan Servicer Business Conduct Rules FAQs*, N.Y. DEP'T OF FIN. SERVS., https://www.dfs.ny.gov/apps_and_licensing/mortgage_companies/ mls_business_conduct_rules_faqs (last visited August 2, 2024).

[18] At the time of the amendment, the original proposed effective date of Final Part 419 was December 18, 2019, but that date was extended to June 15, 2020.  *See 3 NYCRR Part 419— Mortgage Loan Servicer Business Conduct Rules FAQs*, N.Y. DEP'T OF FIN. SERVS., https://www.dfs.ny.gov/apps_and_licensing/mortgage_companies/mls_business_conduct_rules_f aqs (last visited August 2, 2024) ("The effective date of the Final Part 419 [Regulation], as extended, is June 15, 2020.").

[19] *Id.*

[20] Section 419.5(b) of Final Part 419 states as follows:

(b) Authorized fees.  A servicer may only collect a fee if it is for a service that is actually rendered to the borrower, reasonably related to the cost of rendering that service, and it meets one of the following conditions:

(1) the fee is expressly authorized and clearly and conspicuously disclosed by the loan instruments and not prohibited by law;

(2) the fee is expressly permitted by law and not prohibited by the loan instruments; or

(3) the fee is not prohibited by law or the loan instruments and is for a specific service requested by the borrower that is assessed only after disclosure of the fee is

(FACC ¶¶ 87, 203 (quoting N.Y. Comp. Codes R. & Regs. Tit. 3 § 419.5(b).)  SPS contends that Final Part 419 "is irrelevant because it was enacted effective December 18, 2019, which was after the dates . . . DeSimone was charged the [pay-to-pay] fees."  (SPS Br., at 13.)  SPS further argues that even if Final Part 419 applies in this case, "the DFS specifically includes 'pay by phone fee[s]' in its list of 'permissible standard fees and charges' that mortgage servicers may assess as long as they are disclosed and consented to."  (*Id.*)

Here, DeSimone alleges that "[o]n six occasions in 2019 and four occasions in 2017, SPS imposed [p]ay-to-[p]ay [f]ees on [her] for requesting payments by phone."[21]  (FACC ¶ 135.)  Since the imposition of the pay-to-pay fees allegedly occurred before Final Part 419 took effect and the regulation does not appear to apply retroactively, *see Regina Metro. Co., LLC v. N.Y. State Division of Housing & Cmty. Renewal*, 154 N.E.3d 972, 991 (2020) ("[G]enerally, a statute is presumed to apply only prospectively[.]"), Final Part 419 is inapplicable to DeSimone's claim.  Nevertheless, the previously enacted version—Part 419 (specifically, Section 419.10(b))—applies to DeSimone's claim.  *See Maio v. Kralik*, 888 N.Y.S.2d 582, 588 (2009) (holding that the previous version of a statute applies because the events in the case occurred before the statute was amended); *see also* N.Y. Comp. Codes R. & Regs. Tit. 3 § 419.10(b).  Still, because Section 419.10(b) neither

---

provided to the borrower and the borrower expressly consents to pay the fee in exchange for the service.

N.Y. Comp. Codes R. & Regs. Tit. 3 § 419.5.

[21] The Court notes that DeSimone has not produced information (e.g., transaction records) showing the exact dates in 2019 when she made her mortgage payments and was charged with the pay-to-pay fees.  SPS has submitted two monthly mortgage statements, dated July 15, 2019, and September 13, 2019, respectively, that it sent to DeSimone in 2019.  (*See* Dkt. 97-3; Dkt. 97-4.)  These two statements only show three mortgage payments that DeSimone allegedly made in 2019, which were paid on June 13, 2019, July 12, 2019, and August 22, 2019.  (*See* Dkt. 97-4, at ECF 2 ("Delinquency Notice").)

permits nor prohibits pay-to-pay fees, it does not resolve the issue of whether DeSimone has properly stated an FDCPA claim.

Section 419.10(b) of Part 419 (now renumbered as Section 419.5(b) in Final Part 419) states as follows:

> (b) Authorized fees.  A servicer may only collect a fee if the fee is for services actually rendered and one of the following conditions is met:
>
> (1) the fee is expressly authorized and clearly and conspicuously disclosed by the loan instruments and not prohibited by law;
>
> (2) the fee is expressly permitted by law and not prohibited by the loan instruments; or
>
> (3) the fee is not prohibited by law or the loan instruments and is a reasonable fee for a specific service requested by the borrower that is assessed only after clear and conspicuous disclosure of the fee is provided to the borrower and the borrower expressly consents to pay the fee in exchange for the services.

N.Y. Comp. Codes R. & Regs. Tit. 3 § 419.10(b).

Nothing in this regulation affirmatively addresses the exact question of whether pay-to-pay fees are permitted or prohibited under New York law.  Stated differently, Section 419.10(b) neither expressly prohibits nor authorizes imposition of service charges by a mortgage loan servicer.  Like the *Tuttle* standard, the regulation lists three circumstances when a service fee is allowed, and all these three circumstances refer to some *other* New York law.  Thus, whether a service fee is permitted under Section 419.10(b) in turn depends on whether the fee is permitted or prohibited under *other* New York law.  Because the parties have not identified, nor has the Court found, any applicable New York law permitting or prohibiting pay-to-pay fees for purposes of Section 1692f(1) of the FDCPA, Section 419.10(b) does not resolve the issue.  *See Tuttle*, 190 F.3d at 14 (holding that a Connecticut statute which cites to another statute does not answer the question

of whether service charges are permitted by Connecticut law and, by extension, permitted by the FDCPA).

Because Section 419.10(b) does not *per se* affirmatively prohibit or permit pay-to-pay fees, Plaintiffs have not established that such fees are expressly prohibited by New York law under the second prong of the *Tuttle* standard.[22]   The Court therefore looks to the third prong of the *Tuttle* standard, which provides that "a service charge can be imposed only if the customer *expressly* agrees to it in the contract."  *Id.* at 13 (emphasis added).

DeSimone alleges that she did not expressly authorize pay-to-pay fees in her mortgage agreement.[23]  (FACC ¶¶ 64–67, 69, 189.)  SPS disagrees, pointing to two specific provisions in DeSimone's mortgage agreement—the "Loan Charges" provision and the "Governing Law" provision—that SPS argues "expressly" authorize pay-to-pay fees.  The "Loan Charges" provision in DeSimone's mortgage agreement provides the following:

> Loan Charges.  Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, *attorneys' fees, property inspection and valuation fees*.  With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee.  Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

(Dkt. 87-1, at ECF 14 (emphasis added).)

---

[22] For the same reason, SPS cannot rely on the first prong of the *Tuttle* standard, which provides that a service charge is permissible "[i]f state law expressly permits service charges, . . . even if the contract is silent on the matter."  *Campbell*, 98 F. Supp. 3d at 578 (citing *Tuttle*, 190 F.3d at 13).

[23] The Court notes that DeSimone's mortgage agreement shows that the lender is "Wilmington Finance, a division of AIG Federal Savings Bank."  (Dkt. 87-1, at ECF 3.)  The Court also notes that the FACC alleges that "SPS services Plaintiff DeSimone's mortgage loan on behalf of its lender principal, Deutsche Bank National Trust Company, as trustee for the Morgan Stanley Home Equity Loan Trust 2005-3 Mortgage Pass-Through Certificates, Series 2005-3.  While initially serviced by another loan servicer, SPS assumed servicing of DeSimone's loan in September 2014."  (FACC, ¶¶ 133–34.)

The "Governing Law" provision in DeSimone's mortgage agreement in pertinent part provides as follows:

> Law That Governs [T]his Security Instrument . . . . Applicable Law *might* allow the parties to agree by contract or it *might* be silent, but such silence does not mean that Lender and I cannot agree by contract.

(*Id.* (emphasis added).)

SPS contends that these two provisions "expressly" allow the parties to the mortgage agreement to enter into "extracontractual agreements" for "a service fee outside of the original writing[.]" (SPS Br., at 9–10.)  In particular, SPS relies on *Meintzinger v. Sortis Holdings, Inc.* to argue that such "extracontractual agreements" are expressly permitted.  (*See* SPS Br., at 11); No. 18-CV-2042 (BMC), 2019 WL 1471338, at *2 (E.D.N.Y. Apr. 3, 2019).

The Court finds SPS's argument unpersuasive.  First, DeSimone's mortgage agreement itself clearly does not expressly authorize SPS to assess the pay-to-pay fee at issue.  The term "express" is commonly defined as explicit, clear, direct, or firm, in contrast to implicit.  *See Levy v. Receivables Performance Mgmt., LLC*, 972 F. Supp. 2d 409, n.12 (E.D.N.Y. 2013) ("'Express' means 'explicit,' not . . . 'implicit.'" (quoting *Edeh v. Midland Credit Mgmt.*, 748 F.Supp.2d 1030, 1038 (D. Minn. 2010))); *Bahrain Ins. Co. v. M/V Trein Maersk*, No. 81-CV-2167 (MEL), 1983 WL 634, at *9 (S.D.N.Y. Oct. 5, 1983) ("[A]s an adjective, [express] is defined as 'directly, firmly and explicitly stated.'" (citing Webster's New Collegiate Dictionary (1979))).

Here, the Court finds that DeSimone's mortgage agreement only "expressly" authorizes "fees for services performed in connection with [] default," such as "attorneys' fees" and "property inspection and valuation fees."  (Dkt. 87-1, at ECF 14.)  As the D.C. Circuit found in *McFadden v. Nationstar Mortg. LLC*, "nowhere in the parties' [mortgage agreements] are [] pay-to-pay fees even mentioned, much less expressly authorized."  *McFadden*, No. 20-CV-166 (EGS) (ZMF),

32

2021 WL 3284794, at *3 (D.D.C. July 30, 2021); *id.* at *4 (observing that defendant debt collector "should have added [pay-to-pay fees] to this list of expressly permitted fees if it wanted to charge them"); *see also see Meintzinger*, 2019 WL 1471338, at *2 (finding that "the collection letter does not impose an unauthorized fee.  In fact, it doesn't impose a fee at all").

The Court also rejects SPS's argument that the "Loan Charges" and "Governing Law" provisions of the mortgage agreements "expressly" allow the parties to enter into "extracontractual agreements" for "a service fee outside of the original writing."  (SPS Br., at 9–10.)  At most, these two provisions *do not prohibit* the parties from entering into a new contract with DeSimone for the pay-to-pay fees, but they certainly *do not expressly authorize* the parties to enter into such an agreement.  On this issue, *Meintzinger* provides no support for SPS.  There, the court merely confirmed that where the collection letter itself did not mention a service fee, the FDCPA did not prevent the debt collector from "offering to enter into a new contract with the debtor" for the payment of one.  *See Meintzinger*, 2019 WL 1471338, at *2 ("Nothing in the FDCPA requires the collection company to accept payments by telephone, and thus nothing prohibits it from offering to enter into a new contract with the debtor, *i.e.*, 'for $6, I will give you the added convenience of paying by phone.'").[24]  So too here; even though DeSimone's mortgage agreement did not

---

[24] To the extent the *Meintzinger* court ultimately found that the collection company's assessment of a pay-by-phone fee did not violate the FDCPA, it does not appear that the court applied the *Tuttle* standard.  *See Meintzinger*, 2019 WL 1471338, at *3 (noting two circumstances under *Tuttle* when "additional charges may be added to the collection of the debt . . . : (1) where the underlying credit agreement permits it; or (2) where the charge is permitted by state law").  The court then concluded that because "[t]here is no provision of state law prohibiting . . . a collection company from adding a charge for the use of a pay-by-phone service, as long as the debtor knows of the charge and has the default option to avoid it by paying her bill in the usual way—by mailing in a check," the FDCPA was not violated *Meintzinger*, 2019 WL 1471338, at *3.  It came to this conclusion instead of applying the third *Tuttle* standard to determine whether "the customer expressly agree[d] to it in the contract." *Tuttle*, 190 F.3d at 13 ("If state law *expressly* permits services charges, a service charge may be imposed even if the contract is silent on the matter; . . . if the state law neither *affirmatively* permits nor expressly prohibits service charges, a

expressly authorize a pay-to-pay fee, SPS could have offered to enter into a separate one with DeSimone. However, DeSimone alleges that she did not enter into such an agreement with SPS.

In sum, the Court finds SPS's imposition of pay-to-pay fees constitutes collection of an "amount" of "fee, charge, or expense incidental to the principal obligation" that is not "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Therefore, the Court finds that DeSimone has adequately stated a claim under Section 1692f(1) of the FDCPA.

### c. <u>Washington's Claim</u>

In Washington's case, the state law is California law, which governs her deed of trust. Washington alleges that by charging pay-to-pay fees for online and phone mortgage payments, SPS violated the Rosenthal Act. The Rosenthal Act provides, in pertinent part:

> 1788.13. No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:
> . . .
> (e) The false representation that the consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, finance charges, or other charges if, in fact, such fees or charges *may not legally be added to the existing obligation*;
>
> 1788.14.[25] No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:
> . . .
> (b) Collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by

---

service charge can be imposed only if the customer expressly agrees to it in the contract." (emphasis added)). Furthermore, the *Meintzinger* court did not find, as SPS urges the Court to do here, that the parties had entered into any "extracontractual agreement" for "a service fee outside of the original writing." (SPS Br., at 9–10.) *See generally Meintzinger*, 2019 WL 1471338.

[25] Section 1788.14 was amended by Stats. 2021, Ch. 473, Sec. 1. (AB 1020) and took effect on January 1, 2022. *See* Cal. Civ. Code § 1788.14, CA. LEGIS. INFO., https://leginfo.legislature.ca.gov/faces/codes_displayText.xhtml?lawCode=CIV&division=3.&title=1.6C.&part=4.&chapter=&article=2 (last visited Aug. 2, 2024). The content of Section 1788.14(b) remains the same as the previous version.

the debt collector in the collection of the consumer debt, *except as permitted by law*.
. . .
1788.17. Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code.

Cal. Civ. Code §§ 1788.13(e); 1788.14(b); 1788.17 (emphasis added).

Washington alleges that by assessing pay-to-pay fees, SPS (1) falsely represented that mortgage debts may be increased by fees in violation of Section 1788.13(e); (2) collected (or attempted to collect) fees or charges for services rendered that were not permitted by law in violation of Section 1788.14(b); and (3) unlawfully collected fees not expressly authorized by the mortgage agreement in violation of Section 1692f(1) of the FDCPA and, by extension, Section 1788.17 of the Rosenthal Act.  (FACC ¶¶ 250–64.)

"The purpose of the Rosenthal Act is 'to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts.'"  *DiFlauro v. Bank of Am.*, No. 20-CV-5692 (DSF) (SKX), 2020 WL 10111966, at *4 (C.D. Cal. Dec. 2, 2020) (quoting Cal. Civ. Code § 1788.1).  "As California's version of the FDCPA, the Rosenthal Act 'mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations.'"  *Id.* (quoting *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012)).

Like Section 419.10(b) of New York's Part 419, Sections 1788.13(e) and 1788.14(b) of the Rosenthal Act neither affirmatively permit nor expressly prohibit pay-to-pay fees and thus whether this practice violates the Rosenthal Act will be based on some *other* California law. Indeed, courts in the Ninth Circuit have held that "whether a debt collector's [imposition of pay-to-pay fees] 'violates the [Rosenthal Act] turns on whether it violates the FDCPA,'" *DiFlauro*,

2020 WL 10111966, at *4 (quoting *Riggs*, 681 F.3d at 1100),[26] and "the Ninth Circuit has yet to determine whether [pay-to-pay fees are] permissible under the FDCPA." *Torliatt*, 2020 WL 1904596, at *2.  Again, because the parties have not identified, and the Court is not aware of, any other relevant California law or authority that either affirmatively permits or prohibits pay-to-pay fees, the viability of Plaintiff Washington's Section 1692f(1) claim also must be determined under the third prong of the *Tuttle* standard, which allows a service charge to be imposed "only if the customer expressly agrees to it in the contract." *Tuttle*, 190 F.3d at 13.

The relevant provisions in Washington's deed of trust, which are nearly identical to those in DeSimone's mortgage agreement, state as follows:

> Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's *default*, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, *attorneys' fees*, *property inspection and valuation fees*. In regard to other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

(Dkt. 87-3, at ECF 33–34 (emphasis added).)

> Governing Law[.] . . . Applicable Law *might* explicitly or implicitly allow the parties to agree by contract or it *might* be silent, but such silence shall not be construed as a prohibition against agreement by contract.

(*Id.* at ECF 34 (emphasis added).)

---

[26] *See also Martindale v. MegaStar Fin. Corp.*, No. 2:20-CV-1983 (MCE) (DMC), 2021 WL 5331464, at *3 (E.D. Cal. Nov. 16, 2021) ("By expressly incorporating the standard under the federal [FDCPA] . . . in defining liability for the same conduct under state law, the scope of both statutory schemes appears coextensive and the same analysis in assessing liability under the FDCPA also applies to the Rosenthal Act."); *Torliatt v. Ocwen Loan Servicing, LLC*, No. 19-CV-4303 (WHO), 2020 WL 1904596, at *5 (N.D. Cal. Apr. 17, 2020) ("[M]any courts have found that the convenience fees as alleged here adequately state causes of action under the Rosenthal Act where they state claims under the FDCPA.").

Like DeSimone's mortgage agreement, Washington's deed of trust only expressly authorizes "attorneys' fees" and "property inspection and valuation fees" that can be charged for services performed in connection with default; nowhere does the contract mention pay-to-pay fees. In addition, the Court finds that SPS's "extracontractual agreements" argument fails for the same reasons previously discussed with respect to DeSimone's FDCPA claim. Lacking express authorization from Washington in her underlying mortgage contract, SPS's collection of pay-to-pay fees is thus impermissible. Therefore, Washington's Section 1692f(1) claim is sufficiently pled.

2.     Section 1692e of the FDCPA: False, Deceptive, or Misleading Misrepresentations

DeSimone and Washington also allege that SPS violated Sections 1692e(2)(A) and 1692e(10) of the FDCPA. (*See* FACC ¶¶ 192–94.) The two provisions state the following:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
>
> (2) The false representation of—
>
> (A) the character, amount, or legal status of any debt; or
>
> . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. §§ 1692e(2)(A); 1692e(10).

Specifically, DeSimone and Washington contend that SPS violated Section 1692e by making the "false representation that it was entitled to collect [p]ay-to-[p]ay fees" under Section 1692f(1) from consumers who seek to pay off their debts over the phone. (FACC ¶ 193.) As to DeSimone's and Washington's Section 1692e(2) claims, because the Court has concluded that they have stated a claim under Section 1692f, *see* Discussion *supra* Section II.C.1, they have

also stated a claim under Section 1692e(2).  *See, e.g.*, *Shami*, 2010 WL 3824151, at *4 ("Because the [c]ourt has concluded that [the] [p]laintiff has stated a claim under § 1692f(1) of the FDCPA, [the] [p]laintiff has also stated a claim under § 1692e(2)."); *Quinteros*, 999 F. Supp. 2d at 439–40 ("Plaintiff's § 1692e(2) claim is contingent on her § 1692f(1) claim—if collection of a payment processing fee is unlawful under § 1692f(1), then the Processing Fee Statement is also 'false, deceptive, or misleading' under § 1692e(2), insofar as the statement implies the fee may be lawfully received."); *Thomas v. John A. Youderian Jr., LLC*, 232 F. Supp. 3d 656, 679 (D.N.J. 2017) ("I join other courts in holding that convenience or processing fee language supporting a Section 1692f(1) claim naturally supports a claim under [Section] 1692e(2)[.]"); *Acosta v. Credit Bureau of Napa Cnty.*, No. 14-CV-8198 (JRB), 2015 WL 1943244, at *4 (N.D. Ill. Apr. 29, 2015) ("If the debt collection letter violates Section 1692f(1) by representing that the processing fee is permissible, then [the] [d]efendant also would be in violation of Section 1692e.").

For similar reasons, the Court finds that DeSimone's and Washington's claims under Section 1692e(10) survive SPS's motion to dismiss.  "Courts have long held that after finding a valid claim under a more specific subsection of [Section] 1692e . . . further analysis under [Section] 1692e(10) is 'somewhat duplicative.'"  *Gervais v. Riddle & Assocs.*, 479 F. Supp. 2d 270, 276–77 (D. Conn. 2007) (quoting *Kapeluschnik v. LeSchack & Grodensky, P.C.*, No. 96-CV-2399 (ERK) (CLP), 1999 WL 33973360, at *6–9 (E.D.N.Y. Aug. 25, 1999)).  Therefore, having found that DeSimone and Washington have plausibly alleged that SPS violated Section 1692e(2) by representing that it was entitled to charge pay-to-pay fees, the Court finds that DeSimone and Washington have also adequately pled that SPS used "false representation or deceptive means" to collect a debt from them in violation of Section 1692e(10).  *See Thomas*, 232 F. Supp. 3d at 679 ("If [the defendant's] allegedly false representation of authority to collect the Convenience Fee

could be a material misrepresentation of 'the character, amount, or legal status of any debt' . . . [under Section 1692e(2),] and it appears in a debt collection letter, then surely [plaintiff] has also alleged a 'false representation . . . to collect or attempt to collect any debt . . .' in violation of Section 1692e(10).").

SPS asserts that DeSimone's and Washington's claims under Section 1692e fail because they have not pled specific representations that SPS allegedly made to them, as "many of the communications about [pay-to-pay fees] are alleged to have taken place orally, over numerous telephone calls," and "there is no detail provided in the FACC of when, how, and to whom that representation was made." (SPS Br., at 14.) SPS's argument is unavailing. Independent of the alleged phone communications about SPS's purported entitlement to pay-to-pay fees, it is reasonable to infer from the FACC that the same misrepresentation was communicated through the monthly mortgage statements that SPS sent to DeSimone and Washington. *See supra* note 2. In other words, since the monthly mortgage statements contained a representation implying that pay-to-pay fees are permissible, such statements can independently form the basis of a plausible Section 1692e claim. *See, e.g.*, *Shami*, 2010 WL 3824151, at *4 (holding that the collection letters which represented that the transaction fees were permissible violated Section 1692e); *Campbell*, 98 F. Supp. 3d at 572 (granting the plaintiffs' summary judgment on their Section 1692e claim where the collection letter stated, "[t]here will be a $5.00 processing fee for all credit cards"); *Quinteros*, 999 F.Supp.2d at 436 (concluding that the plaintiffs stated a Section 1692e claim where the debt collection letter stated, "[t]here will be a $5.00 processing fee for all credit cards or checks over the phone"). Therefore, "[c]onsidering the consumer protection goals underscoring the FDCPA, the liberal construction afforded the statute, and drawing all inferences in Plaintiff's

favor," *Shami*, 2010 WL 3824151, at *5, the Court concludes that DeSimone and Washington have met their pleading burden for their Section 1692e claims.

## III.   DeSimone's New York General Business Law § 349 Claim

DeSimone asserts that SPS violated Section 349 of the New York General Business Law ("NYGBL") by representing that it was entitled to charge pay-to-pay fees for online and phone mortgage payments.   (*See* FACC ¶¶ 220–30.)   Section 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] state . . . ."   N.Y. Gen. Bus. Law § 349.   "Deceptive acts are defined objectively [] as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." *Campbell*, 98 F. Supp. 3d at 586 (quoting *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (internal quotation marks omitted)).   "Deceptive practices are 'acts which are dishonest or misleading in a material respect.'"   *Id.*   "However, a deceptive practice need not reach the level of common-law fraud to be actionable under [S]ection 349."   *Id.* (internal quotation marks omitted). To establish a claim under Section 349 of the NYGBL, a party must show: "(1) that the defendant's conduct is 'consumer-oriented'; (2) that the defendant is engaged in a 'deceptive act or practice'; and (3) that the plaintiff was injured by this practice."   *Wilson v. Nw. Mut. Ins. Co.*, 625 F .3d 54, 64 (2d Cir. 2010) (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank*, *N.A.*, 647 N.E.2d 741, 744–45 (N.Y. 1995)).

Here, SPS's only contention as to DeSimone's Section 349 claim under the NYGBL is that the FACC is devoid of "any particular deceptive statements or actions made or taken by SPS" and "refer[s] only to the 'acts, practices, misrepresentations[,] and omissions alleged herein.'"   (SPS Br., at 19.)   SPS's argument fails.   The FACC on its face asserts that the deceptive statement or action challenged is SPS's representation that it was permitted to impose pay-to-pay fees.   (*See* FACC ¶¶ 225–26 ("SPS's conduct is deceptive because it is likely to mislead consumers and the

public by making them believe, falsely, that SPS was permitted to impose and collect [p]ay-to-[p]ay [f]ees.  SPS's representations were materially false and misleading and likely to deceive the consuming public because SPS knew, or reasonably should have known, and failed to disclose, that it was not permitted to impose or collect [p]ay-to-[p]ay [f]ees.").)   At this stage of the litigation, the Court—reading the FACC in the light most favorable to DeSimone—concludes that DeSimone has sufficiently stated a claim under Section 349 of the NYGBL.

## IV.   Snowden's Maryland Consumer Debt Collection Act Claim

SPS next moves to dismiss Snowden's claims alleging violations of Sections 14-202(11) and 14-202(8) of the Maryland Consumer Debt Collection Act ("MCDCA").  For the reasons stated below, the Court denies SPS's motion to dismiss Snowden's claims under the MCDCA.

### A.   Snowden's Claim Under Section 14-202(11) of the MCDCA

Section 14-202(11) of the MCDCA provides that a "collector" may not "engage in any conduct that violates [Sections] 804 through 812 of the federal [FDCPA] . . . [i]n collecting or attempting to collect an alleged debt."  Md. Code Ann., Com. Law § 14-202(11).  "Maryland thus incorporates the substantive provisions of the . . . FDCPA," including Section 1692f(1) which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  *Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 372–73 (4th Cir. 2022) (citing 15 U.S.C § 1692f(1)) (internal quotations omitted).

 The Fourth Circuit's decision in *Alexander v. Carrington Mortg. Servs., LLC* is directly on point.  *See* 23 F.4th 370 (4th Cir. 2022).  In *Alexander*, consumers brought a putative class action against a mortgage servicer for alleged violations of the MCDCA for its practice of charging a $5 convenience fee to borrowers who paid their monthly mortgage payments online or by phone.  *Id.* at 372.  Like Snowden, the *Alexander* plaintiffs alleged that the mortgage servicer violated

Section 14-202(11) of the MCDCA.  *Id.*; *see also* Md. Code Ann., Com. Law § 14-202(11).  After finding that the mortgage servicer was a "collector" under the broader definition of the MCDCA,[27] that the convenience fee qualified as an "amount" under the FDCPA, and that the fee was not expressly authorized by the agreement creating the debt or permitted by FDCPA, the Fourth Circuit held that the same type of pay-to-pay fees at issue here violated Section 14-202(11) of the MCDCA based on its violation of the FDCPA.  *See Alexander*, 23 F.4th at 379.

Applying the Fourth Circuit's analysis in *Alexander* to the instant case, the Court finds that Snowden has adequately stated a claim under Section 14-202(11).  Here, SPS does not dispute that it is a "collector" within the meaning of the MCDCA, and the Court has already found that the pay-to-pay fee qualifies as an "amount" under Section 1692f(1) of the FDCPA.  *See* Discussion *supra* Section II.B.1.  While the defendant in *Alexander* conceded that the agreements creating the

---

[27] Under the MCDCA, "collector" is defined as "a person collecting or attempting to collect an alleged debt arising out of a consumer transaction."  Md. Code Ann., Com. Law § 14-201(b).  As the Fourth Circuit further explained in *Alexander*:

> While the FDCPA's definition of "debt collector" includes a requirement that the debt be in default, the MCDCA's definition has no similar limitation.  The MCDCA's broader definition . . . is not displaced by the federal definition.  Indeed, the Maryland legislature was intentional on this front: it incorporated only the FDCPA's "substantive provisions" (sections 804 through 812).  It did not incorporate section 803, which includes the FDCPA's narrower definition of "debt collector."  Nor did it incorporate, for example, the FDCPA's remedial structure as to affirmative defenses, the statute of limitations, or civil remedies.  The end result, as Maryland district courts have recognized, is that "the MCDCA applies more broadly than the FDCPA."  And the FDCPA itself specifies that state laws affording greater protection to consumers are not inconsistent with its own safeguards.

*Alexander*, 23 F.4th at 375–76 (internal citations omitted).  Here, even though SPS does not dispute its status as a "collector" under the MCDCA, (*see* SPS Br., at 20 n.30 ("SPS does not argue it is not a 'collector' under the MCDCA.")), it obviously satisfies the "collector" standard under the broader definition of the MCDCA.  In addition, Snowden alleges in the FACC that when SPS collected pay-to-pay fees, it "was acting as a 'collector' and represented itself as such in standard written form communications."  (FACC, ¶ 141.)

debt did not expressly authorize the convenience fees, *see Alexander*, 23 F.4th at 377, here, SPS contends that there was express authorization for pay-to-pay fees in Snowden's deed of trust, (*see* SPS Br., at 15–17).  For the same reasons discussed with respect to DeSimone's and Washington's mortgage agreements, *see* Discussion *supra* Sections II.C.1.b & c, the Court finds no express authorization to impose pay-to-pay fees exists in Snowden's mortgage agreement.  As explained, for an authorization to be express, it has to be explicit and clear.  *See Sears, Roebuck & Co. v. Gussin*, 714 A.2d 188, 193 (1998) (noting that "express" is defined as "clear," "definite," "explicit," "direct," "not dubious or ambiguous," or "directly and distinctly stated or expressed rather than implied or left to inference" in dictionaries).  Like DeSimone's and Washington's mortgage agreements, nowhere in Snowden's deed of trust[28] are pay-to-pay fees mentioned.  Once again, the contract at most does not prohibit SPS from entering into a new separate contract with Snowden for a service fee; it certainly does not expressly authorize such fee.

Therefore, the Court finds that Snowden has plausibly alleged a violation under Section 14-202(11) of the MCDCA.

---

[28] Snowden's deed of trust provides, in relevant parts, as follows:

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's *default*, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, *attorneys' fees, property inspection and valuation fees*. In regard to other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.
. . .

16. Governing Law[.] . . . Applicable Law *might* explicitly or implicitly allow the parties to agree by contract or it *might* be silent, but such silence should not be construed as a prohibition against agreement by contract.

(Dkt. 87-2, at ECF 8–9 (emphasis added).)

**B.**     **Snowden's Claim Under Section 14-202(8) of the MCDCA**

SPS next challenges Snowden's claim under Section 14-202(8) of the MCDCA.  (*See* SPS Br., at 19–20.)  Section 14-202(8) provides that a "collector" may not "claim, attempt, or threaten to enforce a right with knowledge that the right does not exist."  Md. Code Ann., Com. Law § 14-202(8).  "[T]o state a claim under Section 14-202(8) of the MCDCA, Plaintiffs must establish two elements: (1) that [d]efendants did not possess the right to collect the amount of debt sought; and (2) that [d]efendants attempted to collect the debt knowing that they lacked the right to do so." *Smith v. Oliveri & Assocs., LLC*, No. 20-CV-2598 (GLR), 2022 WL 596805, at *8 (D. Md. Feb. 28, 2022) (internal quotation marks omitted).  SPS contends that Snowden's claim cannot prevail because she cannot show (1) that SPS did not have a right to charge pay-to-pay fees and (2) that SPS knew it did not have a right to charge the fee.  (SPS Br., at 19.)

Here, given that pay-to-pay fees are prohibited under Section 14-202(11), Snowden satisfies the first element.  *See Alexander*, 23 F.4th at 379 (finding that defendant violated Section 14-202(11) and accordingly vacating district court's dismissal of plaintiff's Section 14-202(8) claim).  Regarding the second element of scienter, Snowden alleges that SPS knew it had no right to collect pay-to-pay fees.  (FACC ¶ 235.)  Knowledge under Section 14-202(8) of the MCDCA requires "proof that a debt collector claimed, attempted, or threatened to enforce the non-existent right with actual knowledge or with reckless disregard as to the falsity of the existence of the right."  *Sullivan v. YES Energy Mgmt., Inc.*, No. 22-CV-418 (GJH), 2022 WL 4777791, at *7 (D. Md. Sept. 30, 2022) (citing *Chavis* v. *Blibaum & Assocs., P.A.*, 264 A.3d 1254, 1271 (2021)). "[C]ourts have determined that the knowledge requirement under [S]ection 14-202(8) does not immunize debt collectors from liability for mistakes of law.  Whether a defendant acted recklessly in its mistake of law 'is a question of fact' that will 'depend on all the facts the parties enter in evidence.  The discovery process provides the opportunity to draw a distinction between a non-

reckless mistake as to a claimed right on the one hand, and reckless disregard of the nonexistence of a claimed right on the other." *Id.* (internal citations omitted). "Thus, while [Snowden] provides relatively thin allegations with regard to [SPS's] knowledge," the Court finds that the question regarding SPS's knowledge "should be borne out in discovery," and, at this stage, Snowden's assertions as to her Section 14-202(8) claim are sufficient to proceed. *Id.* at *8.

## V.    Snowden's Maryland Consumer Protection Act Claim

SPS also moves to dismiss Snowden's claim under the Maryland Consumer Protection Act ("MCPA"). (*See* FACC ¶¶ 239–49; SPS Br., at 20–21); *see also* Md. Com. Law. Code Ann. §§ 13-301; 13-301(14)(iii). The MCPA prohibits "unfair or deceptive trade practices." Md. Com. Law. Code Ann. § 13-301. In particular, "[o]ne set of practices expressly designated as 'unfair or deceptive trade practices' is any violation of a provision of" the MCDCA. *Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 369 (D. Md. 2010) (quoting Md. Com. Law. Code Ann. § 13–301(14)(iii)); *see also Hawkins v. Kilberg*, 165 F. Supp. 3d 386, 390 (D. Md. 2016) (noting that "a violation of the MCDCA is a per se violation of the MCPA"). Accordingly, because Snowden's MCDCA claim survives SPS's motion to dismiss, *see* Discussion *supra* Section IV, so does her MCPA claim. *See Alexander*, 23 F.4th at 379 ("[B]ecause we hold that [the defendant] has violated the MCDCA . . . , plaintiffs' derivative MCPA claim can also proceed[.]").

"However, to the extent that [Snowden] asserts a standalone violation of the MCPA for unfair and deceptive trade practices in the collection of consumer debts, the Court will examine the issue separately." *Sullivan*, 2022 WL 4777791, at *8. To state a standalone claim under the MCPA, a plaintiff must allege "'(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury.'" *Alexander*, 23 F.4th at 380 (quoting *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012)).

Here, while Snowden alleges that SPS failed to disclose that the fees "had no reasonable relationship to" and that the fee "was far in excess of" the actual cost for the services SPS rendered and that she was "charged [pay-to-pay fees] amounts ranging from $5.00 to $15.00 that were not permitted by [her] mortgage agreement[] . . . and were in violation of the MCDCA," (FACC ¶¶ 247, 249), she has not sufficiently alleged that she relied on SPS's unfair or deceptive practice or misrepresentation.  "Consumers must prove that they relied on the misrepresentation in question to prevail on a damages action under the MCPA."  *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 532 (D. Md. 2011) (citing *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 235 (2000)).  "A consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice."  *Id.*  Because Snowden has provided merely a "threadbare recital[] of the elements of a cause of action" rather than "a plausible claim for relief[,]"  *Alexander*, 23 F.4th at 380 (quoting *Iqbal*, 556 U.S. at 678, 679), the Court dismisses Snowden's standalone claim under the MCPA.

## VI.   Washington's Rosenthal Act Claim

Washington alleges three separate violations under the Rosenthal Act.  The Court addresses each violation in turn.

### A.   Washington's Claim Under Section 1788.17 of the Rosenthal Act

Washington alleges a violation of Section 1788.17 based on the violation of Section 1692f(1) of the FDCPA.  (*See* FACC ¶ 262.)  Under Section 1788.17, a violation of the FDCPA is a violation of the Rosenthal Act.  *See* Cal. Civ. Code § 1788.17 ("Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code."); *see also Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012) ("The [Rosenthal Act] mimics or incorporates by

reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations."). SPS moves to dismiss Washington's Section 1788.17 claim because there was no FDCPA violation. (SPS Br., at 22.)

The Court notes that "[w]hile the Ninth Circuit has yet to determine whether an optional [pay-to-pay] fee is permissible under the FDCPA, the majority of district courts in the Ninth Circuit have held that similar fees violate the FDCPA," at least as a matter of pleading, and accordingly, violate the Rosenthal Act. *Torliatt*, 2020 WL 1904596, at *2 (quoting *Simmet v. Collection Consultants of Cal.*, No. 16-CV-2273 (BRO), 2016 WL 11002359, at *5 (C.D. Cal. July 7, 2016)). *Compare Lembeck v. Arvest Cent. Mortg. Co.*, 498 F. Supp. 3d 1134, 1137 (N.D. Cal. 2020) ("Any separate contract to pay an incidental fee is prohibited unless 'permitted by law'—that is, by some state or federal statute or regulation. Because no such law exists, the contract and the [pay-to-pay] fee remain unlawful."), *and Simmet v. Collection Consultants of Cal.*, No. 16-CV-2273 (BRO), 2016 WL 11002359, at *5 (C.D. Cal. July 7, 2016) (rejecting arguments that convenience fees do not violate the FDCPA because they were optional, considered a separate agreement, and were not connected with the debt), *and Lindblom v. Santander Consumer USA, Inc.*, No. 15-CV-990 (LJO) (BAM), 2016 WL 2841495, at *7 (joining the "overwhelming majority of courts" and determining that fees assessed for debt payments made online or via telephone violated Section 1692f(1) of the FDCPA), *and Wittman v. CB1, Inc.*, No. 15-CV-105 (BLG) (SPW) (CSO), 2016 WL 1411348, at *5 (D. Mont. Apr. 8, 2016), *R. & R. adopted*, No. 15-CV-105 (BLG) (BMM), 2016 WL 3093427 (D. Mont. June 1, 2016) (following "the majority of courts" and holding that a "transaction fee imposed for using a certain payment method" was impermissible under Section 1692f(1) of the FDCPA), *with Thomas-Lawson v. Carrington Mortg. Servs., LLC*, No. 20-CV-7301 (ODW), 2021 WL 1253578, at *3–6 (C.D. Cal. Apr. 5, 2021) (concluding that plaintiff failed to state a cognizable

legal theory that defendant's pay-to-pay fees were unlawful), *and Mariscal v. Flagstar Bank*, No. 19-CV-2023 (DMG) (SHK), 2021 WL 4260879, at *6 (C.D. Cal. Sept. 9, 2021) ("Because [d]efendant is permitted by law to charge the pay-to-pay fee, the fee does not violate FDCPA [S]ection 1692f."), *and Flores v. Collection Consultants of Cal.*, No. 14-CV-771 (DOC) (RNB), 2015 WL 4254032, at *10 (C.D. Cal. Mar. 20, 2015) (holding that defendant did not violate Section 1692f of the FDCPA by imposing a $5 transaction fee because the charge was not "incidental" to the principal obligation).

The Court, noting an apparent split in district court authority within the Ninth Circuit, finds the majority position within the Ninth Circuit persuasive and applies the reasoning adopted by those courts, which is consistent with the Court's analysis of the *Tuttle* standard as applied to New York law. Here, "whether [pay-to-pay fees] are permissible within the meaning of the FDCPA turns on California law" because, as discussed earlier, *see* Discussion *supra* Section II.C.1.c, Plaintiff Washington did not expressly agree to pay-to-pay fees in her deed of trust. *Lindblom*, 2016 WL 2841495, at *6; *see also Riding v. Cach LLC*, 992 F. Supp. 2d 987, 997–98 (C.D. Cal. 2014) ("Under § 1692f(1), where parties have not expressly agreed on charges to be collected with respect to a debt, state law determines whether additional charges are permitted."). SPS has not pointed to any California law that permits pay-to-pay fees. Therefore, the Court finds that Washington has plausibly stated a claim under Section 1692f(1) of the FDCPA, and accordingly, Section 1788.17 of the Rosenthal Act.

### B.   Washington's Claim Under Section 1788.14(b) of the Rosenthal Act

For similar reasons, SPS's motion to dismiss is denied as to Washington's claim for violation of the Rosenthal Act based on Section 1788.14(b) of the California Civil Code. (*See* FACC ¶¶ 256–57.) Section 1788.14(b) prohibits "[c]ollecting . . . any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection

of the consumer debt, except as permitted by law." Cal. Civ. Code § 1788.14(b). SPS seeks dismissal of this claim because Washington has not demonstrated that pay-to-pay fees are not permitted by California law. (SPS Br., at 22.) Because SPS's pay-to-pay fees are charges for providing online and phone-based collection services, and are not expressly authorized by California law, Washington's Rosenthal Act claim based on Section 1788.14(b) is sufficiently pled.

### C.    Washington's Claim Under Section 1788.13(e) of the Rosenthal Act

Finally, SPS's motion to dismiss is granted as to Washington's claim under Section 1788.13(e). (*See* FACC ¶¶ 253–54; SPS Br., at 22 n.35.) That provision prohibits a debt collector from collecting or attempting to collect a consumer debt by making "a false representation that the consumer debt may be increased by the addition of . . . service fees, finance charges, or other charges if, in fact, such fees or charges may not legally be added to the existing obligation." Cal. Civ. Code § 1788.13(e). SPS does not challenge whether there is a false representation made; it instead contends that the pay-to-pay fees "were not added to the existing mortgage debt. Instead, they were separate charges incurred and paid at the same time the [online or phone payment] services were requested and rendered." (SPS Br., at 22 n.35.)

The Court agrees with SPS. Washington has not provided sufficient facts to show that SPS represented that the charge of pay-to-pay fees could "increase" her underlying debt. *Lembeck*, 498 F. Supp. 3d at 1137. Instead, Washington only alleges, in conclusory fashion, that "[b]y assessing [p]ay-to-[p]ay [f]ees, SPS represented that the mortgage loan debts of [] Washington . . . may be increased by the addition of the [p]ay-to-[p]ay [f]ees, even though [p]ay-to-[p]ay [f]ees may not be legally added to the existing obligation." (FACC ¶ 254.) "In other words, there is no suggestion that if [Washington] somehow used the [online or phone payment services] without actually paying the [pay-to-pay] fee, that fee would be added to the amount of the principal loan such that [she]

would pay interest on the fee going forward." *Lembeck*, 498 F. Supp. 3d at 1137. *But see Bagdasaryan v. Bayview Loan Servicing, LLC*, No. 14-CV-6691 (SJO) (VBK), 2015 WL 13665037, at *13 (C.D. Cal. Oct. 19, 2015) (determining that alleged act of charging fees as a means of increasing plaintiffs' debt was sufficient to sustain a Section 1788.13(e) claim). In fact, as SPS asserts, pay-to-pay fees were charged separately from Washington's monthly mortgage payments, although the charges were incurred and paid at the same time. (SPS Br., at 22 n.35.) Therefore, the Court finds that Washington has failed to state a claim pursuant to Section 1788.13(e).

## VII.   Washington's California Unfair Competition Law Claim

Washington alleges that SPS violated the UCL, which bars "unlawful, or unfair, or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL—['unlawful,' 'unfair' and 'fraudulent,']—is a separate and distinct theory of liability." *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 869 (E.D.N.Y. 2018); *Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959, 986 (E.D. Cal. 2018). Specifically, Washington alleges that pay-to-pay fees offend the "unlawful" and "unfair" prongs of the UCL. (*See* FACC ¶¶ 267–91.) SPS seeks dismissal of Washington's UCL claim in its entirety. (*See* SPS Br., at 22–23.)

"An action brought under the 'unlawful' prong of the UCL 'borrows' violations of other laws when committed pursuant to business activity." *DiFlauro*, 2020 WL 10111966, at *6. Washington maintains that SPS violated the "unlawful" prong by charging pay-to-pay fees that are impermissible under the FDCPA and the Rosenthal Act. (FACC ¶¶ 268–80.) SPS counters that Washington has failed to plausibly allege the underlying unlawful actions. (*See* SPS Br., at 22–23.) As the Court has determined that Washington has sufficiently stated a claim under the FDCPA and the Rosenthal Act, *see* Discussion *supra* Sections II.C.1.c; VI.A & B, SPS's argument

necessarily fails with respect to Washington's UCL claim under the "unlawful" prong of the statute.

However, the Court finds that Washington's claim under the "unfair" prong of the UCL does not survive dismissal. "The unfair prong of the UCL prohibits a business practice that violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104 (N.D. Cal. 2017) (citations omitted). To prove a claim under the "unfair" prong, a plaintiff "must show that members of the public are likely to be deceived by the practice." *Copart*, 339 F. Supp. 3d at 988 (quoting *Prata v. Superior Ct.*, 91 Cal. App. 4th 1128 (2001)). Here, while Washington alleges that the pay-to-pay fee is "well above the actual cost of providing phone payment services," which provides "no countervailing benefits to consumers or competition," (FACC ¶ 284), she has not sufficiently shown that SPS's collection of such fees reaches the level of an "immoral, unethical, oppressive or unscrupulous" practice that implicates "established public policy," *Copart*, 339 F. Supp. 3d at 988. To the extent that pay-to-pay fees are not reasonably related to the actual costs incurred by SPS to process mortgage payments, Washington provides insufficient facts to support such an allegation. Accordingly, the Court grants SPS's motion to dismiss Washington's UCL "unfair" prong claim.

## VIII.   Plaintiffs' Breach of Contract Claims

Plaintiffs allege that SPS's imposition of pay-to-pay fees constitutes a breach of their respective mortgage agreements because the agreements do not authorize or permit such fees and because the fees do not comply with applicable federal and state law. (FACC ¶¶ 195–208.) SPS moves to dismiss these claims on the grounds that (1) pay-to-pay fees are not prohibited by the mortgage agreements; (2) such fees are the subjects of separate, extra-contractual agreements

entered into at the time of payment; and (3) Plaintiffs voluntarily agreed to pay the fees.  (SPS Br., at 15–17.)  As set forth below, the Court disagrees with SPS on each of these points.

A.   **Violations of Applicable Law in the Mortgage Agreements**

First, SPS contends that pay-to-pay fees are not prohibited by Plaintiffs' mortgage agreements.  DeSimone's mortgage agreement, in a section titled "Loan Charges," states as follows: "Lender may not charge fees that are prohibited . . . by Applicable Law."  (Dkt. 87-1, at ECF 14.)  "Applicable Law" is defined in the agreement as, *inter alia*, "[a]ll controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders . . . as well as all applicable final, non-appealable, judicial opinions[.]"  (*Id.* at ECF 4.)  Likewise, the "Loan Charges" sections of Snowden's and Washington's deeds of trust provide in relevant part: "Lender may not charge fees that are expressly prohibited . . . by Applicable Law."  (Dkt. 87-2, at ECF 8; Dkt. 87-3, at ECF 33.)  "Applicable Law" is defined in those agreements similarly to DeSimone's agreement, and includes "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders . . . as well as all applicable final, non-appealable judicial opinions."  (Dkt. 87-2, at ECF 2; Dkt. 87-3, at ECF 25.)

Here, the applicable laws that Plaintiffs allege prohibit pay-to-pay fees are the FDCPA and the relevant state law.  As the Court has determined that violations under the FDCPA are viable in this action as to DeSimone and Washington, *see* Discussion *supra* Section II.C.; under New York law as to DeSimone, *see* Discussion *supra* Section III; under Maryland law as to Snowden, *see* Discussion *supra* Sections IV & V; and under California state law as to Washington, *see* Discussion *supra* Sections VI & VII, Plaintiffs necessarily have stated plausible breach of contract claims.  *See McFadden*, 2021 WL 3284794, at *7 (finding that plaintiff stated a claim for breach of contract based on violations of the applicable law in the contract).

**B.     Extracontractual Agreements on Pay-to-Pay Fees**

SPS also argues that the parties entered into subsequent, separate written contracts regarding pay-to-pay fees at the time Plaintiffs made their mortgage payments.  (SPS Br., at 16–17.)  However, "this argument merely begs the question of whether that contract is permitted by law."  *Lembeck*, 498 F. Supp. 3d at 1137.  As the Court has already found that "because [SPS] imposes a fee incidental to the underlying debt in violation of [Section] 1692f(1)," Plaintiffs have sufficiently alleged claims that pay-to-pay fees are not permitted by law.  *Id.*; *see also* Discussion *supra* Section II.B.1.  Plaintiffs thus have sufficiently alleged that the imposition of pay-to-pay fees was not pursuant to a separate contract between Plaintiffs and SPS.  As the court explains in *Lembeck*:

> [T]he point of [Section 1692f(1)] is to prohibit certain kinds of contracts, just as minimum wage laws, child labor laws, and antitrust laws prohibit other kinds of contracts.  If mortgage servicers wish to charge a fee incidental to the principal obligation, that fee must be "expressly authorized" by the underlying mortgage agreement.  Any separate contract to pay an incidental fee is prohibited unless "permitted by law"—that is, by some state or federal statute or regulation.

498 F. Supp. 3d at 1137; *see also id.* (holding that because "no such law exists, the contract and the [pay-to-pay] fee remain unlawful").  Therefore, SPS's argument regarding the existence of contracts separate from Plaintiffs' mortgage agreements that authorize the imposition of pay-to-pay fees fails.

**C.     Voluntary Payment Doctrine**

Lastly, SPS contends that Plaintiffs' breach of contract claims should be dismissed because Plaintiffs "requested that SPS provide them with the service of making a payment by telephone or online" and "acknowledge[d] that they knew [a pay-to-pay] fee charge would be imposed for that service."  (SPS Br., at 17.)  Essentially, SPS's argument is based on the voluntary payment doctrine, a common law doctrine that bars recovery of payments when voluntarily paid out by a

party.  *See, e.g.*, *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 790 N.E.2d 1155, 1156 (2003) ("[The voluntary payment] doctrine bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law[.]"); *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012) ("The voluntary payment doctrine . . . bars the recovery of money that was voluntarily paid with knowledge of the facts."); *Brutus 630, LLC v. Town of Bel Air*, 139 A.3d 957, 959–60 (2016) (noting that the "voluntary payment doctrine" prohibits recovery of a payment made unless a common law exception or statutory provision applies that allows for the refund).

However, it would be inappropriate for the Court to find that the voluntary payment doctrine bars Plaintiffs' breach of contract claims at this stage of the proceedings, because the application of that doctrine requires a finding that Plaintiffs "voluntarily" paid the pay-to-pay fees with "full knowledge of the facts."  "To the extent the voluntary payment doctrine applies to this case at all, it is at best a fact-dependent affirmative defense to the merits of [Plaintiffs'] allegations."  *Baxter v. AmeriHome Mortg. Co.*, 617 F. Supp. 3d 346, 354 (D. Md. 2022); *see also Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 106 (S.D.N.Y. 2022) (observing that the voluntary payment doctrine is "an affirmative defense, the application of which may be inappropriate at the motion to dismiss stage" (internal quotation marks omitted)); *Langston v. Gateway Mortg. Grp. LLC*, No. 20-CV-1902 (VAP) (KK), 2021 WL 234358, at *4 n.4 (C.D. Cal. Jan. 15, 2021) (noting that the voluntary payment doctrine is an affirmative defense that "may not be raised on a motion to dismiss where the defense is not apparent as a matter of law on the face of the complaint").

Regardless, courts have regularly rejected arguments based on voluntarism in cases involving pay-to-pay fees and have held that the voluntary nature of such fees does not preclude

application of the FDCPA.  *See, e.g.*, *Quinteros*, 999 F. Supp. 2d at 438 (holding that the processing fee in exchange for voluntarily utilizing a particular method of payment made over the phone violated the FDCPA); *Torliatt*, 2020 WL 1904596, at *2 (holding that the optional nature of convenience fees did not preclude application of the FDCPA); *Lindblom*, 2016 WL 2841495, at *3 (concluding that plaintiff plausibly alleged that defendant's collection of "optional, voluntarily paid debt collection fees" violated Section 1692f(1) of the FDCPA). *But see Meintzinger*, 2019 WL 1471338, at *3 (holding that collection company can add a charge "for the use of a pay-by-phone service, as long as the debtor knows of the charge and has the default option to avoid it by paying her bill in the usual way—by mailing in a check").

*     *     *

Accordingly, the Court denies SPS's motion to dismiss Plaintiffs' breach of contract claims.

## IX.   Plaintiffs' Breach of Good Faith and Fair Dealing Claims

Each of the Plaintiffs advances a claim of breach of good faith and fair dealing, asserting that SPS abused its discretion by imposing improper pay-to-pay fees.  (*See* FACC ¶¶ 209–19.) SPS challenges Plaintiffs' claims, arguing that (1) Snowden's claim must be dismissed because Maryland law does not recognize a separate cause of action for breach of good faith and fair dealing; (2) DeSimone and Washington fail to make allegations that are different from those underlying their breach of contract claims; and (3) Plaintiffs fail to identify the discretion that was supposedly granted to SPS that it allegedly abused.  (*See* SPS Br., at 18.)  The Court finds that Plaintiffs' claims for breach of good faith and fair dealing do not survive dismissal.

First, "[w]hile Maryland law does impose upon contracting parties an implied duty of good faith and fair dealing," *CapitalSource Fin. LLC v. Pittsfield Weaving Co., Inc.*, 571 F. Supp. 2d 668, 673 (D. Md. 2006), it "does not recognize a separate cause of action for breach of the

55

implied covenant of good faith and fair dealing; the allegations making up such a claim should be pursued under a plaintiff's breach of contract claim." *Magnetti v. Univ. of Md.*, 909 A.2d 1101, 1105 n.3 (2006). As such, Snowden's breach of good faith and fair dealing claim under Maryland law is dismissed.

In addition, the Court finds DeSimone's and Washington's claims for breach of good faith and fair dealing under New York and California law, respectively, duplicative. "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim is also pled based on the same facts." *Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 223 (S.D.N.Y. 2010), *aff'd*, 453 Fed. Appx. 108 (2d Cir. 2012) (summary order). A claim for a breach of good faith and fair dealing survives a motion to dismiss "only if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022) (applying New York law). "Pleading both is problematic when a party seeks to raise duplicative causes of action . . . and seek separate damages on both claims." *Scheuer v. U.S. Liability Ins. Co.*, No. 22-CV-9474 (NSR), 2023 WL 4275114, at *2 (S.D.N.Y. June 27, 2023); *see also Deutsche Bank Nat. Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 869 (2d Cir. 2015) (holding that "because the facts underlying both [breach of contract and breach of the implied covenant] claims are identical and the [plaintiff] seeks identical remedies, the claim for breach of the implied covenant was properly dismissed as duplicative"). Similarly, under California law, "although the California Supreme Court has held that a plaintiff may bring both a breach of contract claim and a claim for breach of the implied covenant of good faith and fair dealing, the [court] has made clear that when both causes of action cite the same underlying breach,

the implied covenant cause of action will be superfluous with the contract cause of action." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014); *see also Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1242–43 (E.D. Cal. 2018) (noting that California courts have dismissed breach of implied covenant claims as "redundant" and "superfluous" where they "do[] not contain any conduct that is different or separate from the conduct alleged under the [breach of contract] cause of action"); *Beluca Ventures LLC v. Einride Aktiebolag*, No. 21-CV-6992 (WHO), 2023 WL 2456716, at *8 (N.D. Cal. Mar. 10, 2023) (dismissing claim for breach of the implied duty of good faith and fair dealing as superfluous because it was based on the same facts as the breach of contract claim and sought the same remedy).

Here, the Court finds that DeSimone's and Washington's breach of good faith and fair dealing claims cannot survive because the factual basis and relief sought for their claims for breach of good faith and fair dealing are the same as for their breach of contract claims.  (*Compare* FACC ¶¶ 195–208, *with id.* ¶¶ 209–19.)  Accordingly, DeSimone's and Washington's claims for breach of good faith and fair dealing are duplicative and thus dismissed.[29]

## X.   SPS's Motion to Strike Class Allegations

SPS seeks to strike the class allegations on two grounds.  (SPS Br., at 23–25.)  First, SPS contends that because Plaintiffs' mortgage agreements contain pre-suit notice-to-cure provisions, individualized issues predominate as to each putative class member's compliance with such provisions in their mortgage agreements.  (*Id.*)  Second, SPS moves to strike the "fee-prohibiting

---

[29] Because the Court has already found that Snowden does not have a valid claim for breach of good faith and fair dealing under Maryland law and that DeSimone's and Washington's claims are duplicative, it will not address whether Plaintiffs have sufficiently pled that SPS abused its discretion by imposing pay-to-pay fees.

state class,"[30] i.e., a class comprised of individuals in states that expressly prohibit pay-to-pay fees, alleged by Snowden and Washington.  (*See id.* at 25.)  SPS asserts that neither of them has standing to represent putative class members whose claims are governed by debt collection statutes of states other than Maryland and California.  (*See id.*)  The Court disagrees.

Under Rule 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" *sua sponte* or "on motion made by a party."  Fed. R. Civ. P. 12(f).  However, "[m]otions to strike under Rule 12(f) are rarely successful."  *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 52 (E.D.N.Y. 2017) (quoting *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015)).  "This is particularly true for motions to strike class allegations, which are generally viewed with disfavor and infrequently granted, because they require[] a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification[.]"  *Nunez v. Exec. Le Soleil New York LLC.*, No. 22-CV-4262 (KPF), 2023 WL 3319613, at *5 (S.D.N.Y. May 9, 2023) (internal citations and quotation marks omitted).  As a result, "district courts in this Circuit have frequently found that a determination of whether

---

[30] In the FACC, the "fee-prohibiting state class" is defined as follows:

All persons (1) with a residential mortgage loan securing a property in the United States, (2) serviced or subserviced by SPS, (3) with mortgage or deed of trust agreements incorporating uniform covenants from Fannie Mae/Freddie Mac, FHA or similar government-backed model mortgages, (4) who reside in [a] Fee Prohibiting State (5) who paid [a pay-to-pay fee] or any other fee to SPS for making a loan payment by telephone, an [Interactive Voice Response system], or the internet, during the applicable statutes of limitations through the date a class is certified.

(FACC, ¶ 160.)

Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination." *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012). "Put differently, motions to strike class allegations are often denied as premature." *Reynolds*, 136 F. Supp. 3d at 511; *see also Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) ("Generally speaking, . . . motions [to strike class allegations] are deemed procedurally premature.").

The Court therefore declines to strike Plaintiffs' class allegations without a full factual record regarding class certification. *Reynolds*, 136 F. Supp. 3d at 515 (considering "the hesitancy of courts in [this Circuit] to strike class allegations before a class certification motion is filed, the Court will therefore not strike [plaintiffs'] class allegations prior to" having a full factual record regarding class certification). In particular, with regard to SPS's motion to strike the "fee-prohibiting state class," SPS frames the question at issue as one concerning standing—whether Snowden and Washington have standing to bring a class action on behalf of unnamed, yet-to-be-identified class members from other states under those states' debt collection laws. But that is not how the Second Circuit views the issue. "[A]s long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3), . . . *not a question of 'adjudicatory competence' under Article III*[.]" *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 93 (2d Cir. 2018) (emphasis added) (citation omitted). Therefore, because SPS's objection to Snowden and Washington representing a class with members subject to laws other than Maryland and California addresses Rule 23(b)(3)'s predominance requirement, not Article III standing, it is the type of issue that should be "litigated and decided in the context of a motion for class certification." *Chen-Oster*,

59

877 F. Supp. 2d at 117; *see also Gordon v. Hain Celestial Grp., Inc.*, No. 16-CV-6526 (KBF), 2017 WL 213815, at *9 (S.D.N.Y. Jan. 18, 2017) (denying motion to strike class allegations premised on the argument that "plaintiff's common law claims . . . vary materially from state to state" (internal quotation marks omitted)).

Therefore, SPS's motion to strike class allegations is denied as premature.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part SPS's motion to dismiss.  The following claims are dismissed: (1) Snowden's standalone claim under Section 13-301 of the MCPA; (2) Washington's claims under Section 1788.13(e) of the Rosenthal Act as well as under the "unfair" prong of the UCL; and (3) Plaintiffs' claims for breach of good faith and fair dealing.  The remaining claims shall proceed. SPS's motion to strike class allegations is also denied as premature.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 13, 2024
        Brooklyn, New York

60