UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
LISA DeSIMONE, *et al.*,

                Plaintiffs,

    - against -

SELECT PORTFOLIO SERVICING, INC.,

                Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-3837 (PKC) (TAM)

PAMELA K. CHEN, United States District Judge:

In this putative consolidated class action, Plaintiffs Lisa DeSimone ("DeSimone"), Deborah Snowden ("Snowden"), and Inez Clara Washington ("Washington") (collectively, "Plaintiffs") allege that Defendant Select Portfolio Servicing, Inc. ("SPS" or "Defendant"), the mortgage loan servicing company that serviced Plaintiffs' mortgage loans on behalf of non-party lenders, engaged in deceptive practices by charging "EZ Pay" fees or "pay-to-pay fees" (hereinafter "pay-to-pay fees") of up to $15 each time Plaintiffs sought to make mortgage payments online or by phone, in violation of the Fair Debt Collection Practices Act ("FDCPA") and various state statutory and common laws. Presently before the Court is Defendant's motion to certify this Court's September 13, 2024 Memorandum & Order (the "Order") for immediate appeal pursuant to 28 U.S.C. § 1292(b). (*See generally* Mem. & Order MTD, Dkt. 101.) For the reasons stated below, Defendant's motion is denied.[1]

---

[1] Having reviewed the submissions from the parties, the Court finds oral argument unnecessary and accordingly denies SPS's request for oral argument. (Dkt. 118.)

1

# BACKGROUND

## I. Relevant Factual Background

The Court assumes the parties' familiarity with the facts in this case and therefore recites only those facts relevant to this decision.[2] SPS is a national loan servicing company that services residential loans. (First Amended Consolidated Class Action Compl. ("FACC"), Dkt. 87, ¶¶ 14, 23.) SPS "enters into service agreements with lenders, primary servicers, note holders, and trustees pursuant to which SPS provides servicing, subservicing[,] and agency activities for loan portfolios." (*Id.* ¶ 24.) According to those agreements, SPS "act[s] as [the lenders', note holders', and trustees'] agent and . . . exercise[s] their rights and responsibilities pursuant to their approval." (*Id.*)

## II. Procedural History

In their FACC, Plaintiffs alleged eight causes of action against SPS: (1) violation of the FDCPA, 15 U.S.C. §§ 1692e(2)(A) and 1692f; (2) violation of the New York General Business Law Section 349, N.Y. Gen. Bus. Law § 349; (3) violation of the Maryland Consumer Debt Collection Act, Md. Com. Law. Code Ann. § 14-201, *et seq.*; (4) violation of the Maryland Consumer Protection Act, Md. Com. Law. Code Ann. § 13-101, *et seq.*; (5) violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788.13(e), 1788.14, 1788.17; (6) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; (7) breach of contract; and (8) breach of the covenant of good faith and fair dealing. (*See id.* ¶¶ 182–291.)

---

[2] A detailed description of the factual and procedural history of this case can be found in the Court's Memorandum & Order granting in part and denying in part SPS's motion to dismiss Plaintiffs' First Amended Consolidated Class Action Complaint ("FACC"). (*See* Mem. & Order MTD, Dkt. 101, at 2–6.)

2

In its Order granting in part and denying in part SPS's motion to dismiss, the Court first analyzed Defendant's arguments regarding Plaintiffs' compliance with the notice-and-cure provisions of their mortgage agreements. Specifically, the Court found "that (1) Washington had satisfied the pre-suit notice-and-cure provision with respect to her breach of contract claim; (2) DeSimone and Snowden were excused from complying with the notice-and-cure provision because compliance would be futile; and (3) the notice-and-cure provisions were inapplicable to Plaintiffs' federal and state statutory claims." (Mem. & Order MTD, Dkt. 101, at 11.) With respect to the merits of the Plaintiffs' claims, the Court dismissed "(1) Snowden's standalone claim under Section 13-301 of the [Maryland Consumer Protection Act]; (2) Washington's claims under Section 1788.13(e) of the Rosenthal Act as well as under the "unfair" prong of the California Unfair Competition Law; and (3) Plaintiffs' claims for breach of good faith and fair dealing." (*Id.* at 60.) The Court denied SPS's motion to dismiss on all other claims. (*Id.*)

Following the Court's Order granting in part and denying in part SPS's motion to dismiss, SPS served a motion to certify the Order for interlocutory appeal on October 22, 2024. (Dkt. 108.) Plaintiffs served their response on Defendant on November 21, 2024. (Dkt. 112.) The motion was fully briefed on December 19, 2024. (Dkts. 116–120.)

## LEGAL STANDARDS

Under 28 U.S.C. § 1292(b) ("Section 1292(b)"), a district court may certify an interlocutory appeal where it involves: (1) "a controlling question of law," (2) as to which there is "substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). All three prongs of Section 1292(b) must be met for leave to be granted. *In re Poseidon Pool & Spa Recreational, Inc.*, 443 B.R. 271, 275 (E.D.N.Y. 2010). As a general matter, interlocutory appeals are presumptively disfavored as the "rare exception" to the "basic tenet of federal law to delay

3

appellate review until a final judgment has been entered." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)); *see also* 28 U.S.C. § 1291.

Only one question of law must satisfy the requirements of Section 1292(b) for a district court to certify the entire order for appeal. *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 391–92 (2d Cir. 2008). A controlling question of law exists where a reviewing court could decide an issue "quickly and cleanly without having to study the record," and where reversal would terminate the action, or at least "materially affect the litigation's outcome." *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (first quoting *Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007); and then quoting *In re Enron Corp.*, No. 06-CV-7828 (SAS), 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007)). "A substantial ground for a difference of opinion may exist when (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *United States ex rel. Quartararo v. Cath. Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 277 (E.D.N.Y. 2021) (internal quotation marks omitted) (quoting *Pen Am. Ctr., Inc. v. Trump*, No. 18-CV-9433 (LGS), 2020 WL 5836419, at *2 (S.D.N.Y. Oct. 1, 2020)). "[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (citations omitted). "Rather, it is the duty of the district judge . . . to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute.'" *Id.* (cleaned up) (quoting *FDIC v. First Nat'l Bank of Waukesha, Wis.*, 604 F. Supp. 616, 622 (E.D. Wis. 1985) (emphasis in original). Finally, an interlocutory appeal "materially advance[s]" the litigation when it "promises to advance

4

the time for trial or shorten the time required" therefor. *Transp. Workers Union, Local 100 v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005) (citation omitted). "This factor carries particular weight, and is closely connected to the first factor." *B&R Supermarket, Inc. v. Visa Inc.*, No. 17-CV-2738 (MKB), 2025 WL 845109, at *32 (E.D.N.Y. Mar. 13, 2025) (quotation marks omitted) (quoting *Capitol Recs., LLC*, 972 F. Supp. at 551). "In evaluating this factor, courts must consider the 'institutional efficiency of both the district court and the appellate court.'" *Id.* (quoting *Sec. & Exch. Comm'n v. Coinbase, Inc.*, 761 F. Supp. 3d 702, 721 (S.D.N.Y. 2025)).

Ultimately, however, "even if the order qualifie[s] for certification under 28 U.S.C. § 1292(b), the certification decision is entirely a matter of discretion for the district court." *In re Roman Cath. Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 36 (2d Cir. 2014); *see also Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139 (E.D.N.Y. 1999) ("The legislative history, congressional design and case law indicate that district court judges retain unfettered discretion to deny certification of an order for interlocutory appeal even where the three legislative criteria of section 1292(b) appear to be met." (citations omitted)).

## DISCUSSION

Defendant asserts that there are four controlling questions of law suitable for interlocutory appeal in this case. They are: (1) "Whether an optional convenience fee that enables one-time access to alternative methods of payment is an 'amount' subject to 15 U.S.C. § 1692f(1)" ("Section 1692f(1)"); (2) "Whether SPS acts as a 'debt collector' under 15 U.S.C. § 1692a(6), [("Section 1692a(6)")], where it accepts an optional convenience fee payable to itself, at the time it is rendering a special service requested by the debtor"; (3) "Whether the phrase 'expressly authorized by the agreement creating the debt or permitted by law' requires specific, express authorization for the 'amount' being charged, either as a matter of statute or as a matter of contract"; and (4) "Whether a contractual notice-and-cure provision . . . requires pre-suit notice

5

when the party raises statutory claims that turn on allegations of a breach of contract." (Def.'s Mem., Dkt. 117, at 4.) The Court analyzes each of these questions in turn.

I.      **Questions One and Two: The Meaning of "Amount" and "Debt Collector"**

Both the first and second questions seek to clarify the interpretation of specific words in the FDCPA—namely, the word "amount" in Section 1692f(1) and the words "debt collector" in Section 1692a(6) of the statute.

As a preliminary matter, the Court assumes without deciding that these are questions of law that could reasonably be found to be "controlling" questions in this case and therefore satisfy the first prong of Section 1292(b). This is because the Second Circuit could theoretically answer both questions of statutory interpretation without investigating the underlying record, and their answer could result in the termination of Plaintiffs' claims against Defendant under the FDCPA.[3]

The Court, however, disagrees that there is substantial ground for difference of opinion as to these questions. In its Order, this Court drew on substantial caselaw from both within and outside of this Circuit to analyze and define "amount" and "debt collector." (Mem. & Order MTD, Dkt. 101, at 23–25.) Although the Second Circuit has not ruled on these specific issues yet, that fact alone does not automatically warrant certification for interlocutory appeal.

---

[3] In that sense, the questions presented would also satisfy the third prong of Section 1292(b), i.e., of "materially advanc[ing]" this litigation. Plaintiffs object by arguing that they "have asserted claims for breach of contract and state statutory claims which are not derivative of the FDCPA claim," and so reversal on the FDCPA claims would not terminate this litigation. (Pls.' Mem., Dkt. 120, at 2, 6–7.) But this argument is inapposite. As Defendant points out, 28 U.S.C. § 1292(b) only requires that the appeal "*materially advance* the ultimate termination of the litigation." (Def.'s Reply, Dkt. 119, at 2–3(emphasis added).) Termination of the case is not required. "[R]esolution of an issue need not necessarily terminate an action in order to be 'controlling.'" *In re Air Crash off Long Island, N.Y. on July 17, 1996*, 27 F. Supp. 2d 431, 435 (S.D.N.Y. 1998) (quoting *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir.1990)).

In arguing that there is substantial ground for dispute as to whether SPS's pay-to-pay fee is an "amount" under the FDCPA, Defendant cites only to district court decisions outside of the Second Circuit as examples of courts that have not construed the FDCPA as this Court did. (*See* Def.'s Mem., Dkt. 117, at 11–12 & 12 n.3.) *See, e.g.*, *Mirabadi v. Select Portfolio Servicing, Inc.*, No. 23-CV-6809 (PSG) (SP), 2024 WL 1151673, at *6 (C.D. Cal. Feb. 13, 2024) (holding that plaintiff had not adequately alleged that SPS's pay-to-pay fee is an "amount" "incidental" to a "debt" under the FDCPA); *Estate of Campbell v. Ocwen Loan Servicing, LLC*, 467 F. Supp. 3d 1262, 1264 (S.D. Fla. 2020) (holding that a fee was not "incidental" to a "debt" under the FDCPA); *Flores v. Collection Consultants of Cal.*, No. 14-CV-0771 (DOC) (RNB), 2015 WL 4254032, at *9–10 (C.D. Cal. Mar. 20, 2015) (similar); *Bardak v. Ocwen Loan Servicing, LLC*, No. 19-CV-1111 (SCB) (TGW), 2020 WL 5104523, at *4 (M.D. Fla. Aug. 12, 2020) (similar). These decisions, however, are insufficient to establish substantial ground for dispute on this issue. District courts within this Circuit have held that "[d]isagreement among courts outside the Second Circuit does not establish a substantial ground for difference of opinion." *Ryan, Beck & Co., LLC v. Fakih*, 275 F. Supp. 2d 393, 398 (E.D.N.Y. 2003) (citing *Colon ex rel. Molina v. BIC USA, Inc.*, No. 00-CV-3666 (SAS), 2001 WL 88230, at *2 (S.D.N.Y. Feb. 1, 2001)).

While Defendant is correct that there has not yet been a Second Circuit opinion on this question, the Court agrees with the consistent holdings of other district courts within this Circuit on this issue. *See, e.g.*, *Murray v. UBS Sec., LLC*, No. 12-CV-5914 (KPF), 2014 WL 1316472, at *5 (S.D.N.Y. Apr. 1, 2014) (finding no conflicting authority on the issues the party sought to appeal when the relevant cases were from outside the Second Circuit); *Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d 76, 84 (S.D.N.Y. 2022) ("Disagreement among courts in other circuits 'does not establish a substantial ground for difference of opinion.'" (citation omitted)). As

the Court explained in the Order, district courts in this Circuit have repeatedly found that the pay-to-pay fee qualifies as an "amount" under Section 1692f(1) of the FDCPA. (Mem. & Order MTD, Dkt. 101, at 23–24 (citing, *inter alia*, *Schwartz v. I.C. Sys., Inc.*, No. 16-CV-5173 (DLI) (LB), 2018 WL 1582224, at *3 (E.D.N.Y. Mar. 30, 2018)).) Defendant has thus not established a substantial ground for difference of opinion on the first question presented—i.e., whether the pay-to-pay fee is an "amount"—because Defendant does not rely on a single opinion within the Second Circuit that disagrees with this Court's Order.

Next, on the question of whether SPS is a "debt collector" under Section 1692a(6) of the FDCPA, Defendant once again primarily cites cases in Florida district courts. (Def.'s Mem., Dkt. 117, at 14–16.) Defendant's lone Second Circuit citation is to *Johnson-Gellineau v. Stiene & Associates, P.C.*, 837 F. App'x 8 (2d Cir. 2020) (summary order), for the proposition that "[i]f SPS is not acting as a 'debt collector' when it charges [pay-to-pay] fees, then the FDCPA does not apply." (Def.'s Mem., Dkt. 117, at 16.) But whether the FDCPA applies to SPS when a court has already found that it is not acting as a "debt collector" is not the relevant disputed question. Instead, the relevant question is whether courts within this Circuit disagree that SPS is a "debt collector" under the FDCPA. Here, Defendant has failed to point to any such disagreement that would warrant certification for an interlocutory appeal. *See In re Flor*, 79 F.3d at 284 ("[I]t is the duty of the district judge . . . to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." (quoting *Max Daetwyler Corp. v. Meyer*, 575 F. Supp. 280, 283 (E.D. Pa. 1983)) (emphasis in original)). Thus, Defendant has not established substantial ground for difference of opinion on the second question presented—i.e., whether SPS is a "debt collector" under Section 1692a(6) of the FDCPA.

## II. Question Three: The Meaning of "Expressly Authorized" or "Permitted by Law"

The third question presented is "[w]hether the phrases 'expressly authorized' or 'permitted by law' require affirmative, explicit authorization for the amount being charged, either as a matter of statute or as a matter of contract." (Def.'s Mem., Dkt. 117, at 4.) Plaintiffs argue that this is a mixed question of law and fact and therefore not appropriate for interlocutory appeal. (Pls.' Mem., Dkt. 120, at 6.)

It is well-settled that "mixed questions of law and fact are not appropriate for certification under § 1292(b)." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 536 (S.D.N.Y. 2014) (quoting *Freeman v. Nat'l Broad. Co.*, No. 85-CV-3302 (LBS), 1993 WL 524858, at *2 (S.D.N.Y. Dec. 15, 1993) and collecting cases). But "it is not always easy to draw the line" between questions of law or of mixed law and fact because "in order to present a distinct question of law, it may sometimes be necessary to present many facts upon which that question is based." *Warner v. New Orleans*, 167 U.S. 467, 474–75 (1897). Along these lines, though the Court's analysis of this issue in the Order involved a thorough review of the record and relevant state laws, Defendant now seeks to reframe the analysis as a pure question of law and asserts that "what it means for a fee to be 'expressly authorized by the agreement' (or, in the alternative, what it means for a fee to be 'permitted by law') . . . does not require examination of the mortgage agreements." (Def.'s Reply, Dkt. 119, at 4 (cleaned up).) The Court considers whether the interpretation of these phrases in the FDCPA present mixed questions of law and fact, or pure questions of law.

### A. "Expressly Authorized"

The Court does not find that determining the meaning of the phrase "expressly authorized by the agreement" in Section 1692f(1) of the FDCPA is a pure question of law. On its face, the

9

FDCPA prohibits the collection of any amount unless that amount is "expressly authorized *by the agreement.*" 15 U.S.C. § 1692f(1) (emphasis added). The statute thus necessitates an analysis of the underlying agreement at issue—in this case, the Plaintiffs' mortgage agreements. This is a textbook example of a mixed question of law and fact, requiring the application of law to the facts before the Court and a review of the record. "Where 'questions presented for interlocutory appeal . . . would require the Second Circuit to review this Court's application of the law to the facts presented by the parties,' certification is not appropriate." *Gottwald v. Jones*, No. 11-CV-1432 (CM) (FM), 2011 WL 5289471, at *2 (S.D.N.Y. Nov. 3, 2011) (quoting *Stone v. Patchett*, No. 08-CV-5171 (RPP), 2009 WL 1544650, at *2 (S.D.N.Y. June 3, 2009)).

### B.     "Permitted by Law"

Whether the meaning of the phrase "permitted by law" in Section 1692f(1) of the FDCPA presents a pure question of law is less clear-cut. Indeed, in its Order, the Court noted that the Second Circuit had previously defined this very phrase in the context of service charges by "la[ying] out the circumstances under which a service charge is, or is not, *permissible.*" (Mem. & Order MTD, Dkt. 101, at 26–27 (quoting *Campbell v. MBI Assocs., Inc.*, 98 F. Supp. 3d 568, 578 (2015) (emphasis added)).) The Court also noted that "courts in this Circuit have consistently upheld the standard set forth in *Tuttle* . . . in cases involving claims on the permissibility of a service charge under the FDCPA." (*Id.* at 27 (citing *Tuttle v. Equifax Check*, 190 F.3d 9, 11, 15 (2d Cir. 1999) and collecting cases).) The Court then applied the Circuit's legal interpretation of the phrase, as laid out in *Tuttle*, to DeSimone and Washington's claims and concluded that both Plaintiffs had adequately stated a claim under the FDCPA. (*Id.* at 27–37.)

However, even assuming that the meaning of "permitted by law" is a pure legal question, the Court does not find that the question is "controlling" because certifying the question for

10

interlocutory appeal would not materially advance the outcome of this litigation. This is especially true because Section 1692f(1) of the FDCPA allows for the Court to *alternatively* analyze whether the amount collected by Defendant is "permitted by law" or "expressly authorized by the agreement." Here, the Court has already found that the second phrase is not appropriate for interlocutory appeal, and in its Order, the Court found that DeSimone and Washington's mortgage agreements did not, in fact, expressly authorize the pay-to-pay fees. (*See id.* at 34, 37.) Thus, even if the Second Circuit were to further evaluate the first phrase "permitted by law" in the specific context of pay-to-pay fees and reverse the Court's holding as to that phrase, the ultimate conclusion on whether Plaintiffs adequately stated a claim under the FDCPA would remain unchanged; they will still have adequately stated a claim based on the "expressly authorized" prong of Section 1692f(1). A question of law "must also be 'controlling,' meaning that reversal of the district court's order 'would . . . at a minimum . . . materially affect the litigation's outcome.'" *Capitol Recs., LLC*, 972 F. Supp. 2d at 551 (quoting *In re Enron Corp.,* 2007 WL 120458, at *1). Here, even though Defendant has identified a question of law, it is not "controlling" because it would not materially impact the outcome of this case. For these reasons, the Court denies Defendant's motion to certify the third question presented for certification, i.e., "[w]hether the phrases 'expressly authorized' or 'permitted by law' require affirmative, explicit authorization for the amount being charged, either as a matter of statute or as a matter of contract." (Def.'s Mem., Dkt. 117, at 4.)

### III.    Question Four: Notice-and-Cure Provisions

Lastly, the fourth question presented is "[w]hether a contractual notice-and-cure provision requires pre-suit notice when a party raises statutory claims that turn on allegations of a breach of contract." (Def.'s Mem., Dkt. 117, at 4.) While Defendant concedes that contractual questions

11

are usually not appropriate for interlocutory appeal, it nevertheless argues that "contractual questions can be controlling if they concern the ability to bring a suit in the first place—as is the case with pre-suit notice provisions." (Def.'s Reply, Dkt. 119, at 5.)

The Court disagrees. As Defendant has already acknowledged, questions of contract interpretation are not suitable questions of law for interlocutory appeal. *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 426 F. Supp. 2d 125, 128 (S.D.N.Y. 2005) (citing, *inter alia*, *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000) (Posner, J.) (stating that "the question of the meaning of a contract, though technically a question of law when there is no other evidence but the written contract itself, is not what the framers of section 1292(b) had in mind")); *see also Doe Fund, Inc. v. Berkley Ins. Co.*, No. 22-CV-9852 (JGLC), 2024 WL 4732771, at *1 (S.D.N.Y. Oct. 11, 2024) (collecting cases). Defendant's citation, (Def.'s Mem., Dkt. 117, at 22), to a single case departing from this principle, *Gerber Sci. Int'l, Inc. v. Satisloh AG*, No. 07-CV-1382 (PCD), 2009 WL 10689138, at *1 (D. Conn. Sept. 25, 2009), is unpersuasive. In *Gerber*, the court conducted a brief analysis of whether the question of law at issue was "controlling," but otherwise failed to acknowledge the general presumption against certifying questions of contract interpretation for interlocutory appeal.

Moreover, the Court agrees with Plaintiff that this question is not "controlling" because in its Order, the Court has already found that a pre-suit notice would have been futile for Plaintiffs DeSimone and Snowden and thus was not required.[4] (Mem. & Order MTD, Dkt. 101, at 17.) In response, Defendant argues that the question is still appropriate for interlocutory appeal because

---

[4] The Court also found that that pre-suit notice provision was satisfied as to Plaintiff Washington. (Mem. & Order MTD, Dkt. 101, at 11.)

the Second Circuit could apply a different law for determining whether the contractual notice-and-cure provisions were futile:

> While this Court applied what appears to be New York law, there is no reason, for example, why New York law should apply to Snowden, a Maryland resident, especially where Maryland may not recognize New York's futility exception. Or, for that matter, there is no reason why New York contract law on compliance and futility should have any bearing on whether SPS' notice-and-cure provision bars a *federal* FDCPA claim without notice.

(Def.'s Mem., Dkt. 117, at 24–25 (internal citations omitted).)

But Defendant is not seeking certification as to whether Plaintiffs DeSimone and Snowden adequately pled futility. Instead, Defendant seeks appeal on "[w]hether a contractual notice-and-cure provision requires pre-suit notice when the party raises statutory claims that turn on allegations of a breach of contract." (*Id.* at 4.) In its Order, the Court conducted this analysis and concluded that SPS was "entitled to enforce the notice-and-cure provisions of Plaintiffs' mortgage agreements" and that "Plaintiffs were required to notify SPS of their breach of contract claims." (Mem. & Order MTD, Dkt. 101, at 12–13.) But then, analyzing the facts underlying Plaintiffs DeSimone and Snowden's claims in particular, the Court held that though they had not adequately pled compliance with the pre-suit notice-and-cure provision, they nevertheless had pled futility. (*Id.* at 16.) Since Defendant has not sought certification for interlocutory appeal on whether a futility exception applies to a pre-suit notice requirement or which state's law should be applied with respect to the applicability of the futility exception, Defendant's argument for certification on this ground is simply inapt. In any case, even if Defendant had sought appeal on such a question, the reviewing court would likely have to take into account the underlying facts of the case in determining the right legal standards to use. This would, once again, make it a mixed question of law and fact, and as explained *supra*, such questions are not appropriate for interlocutory appeal. *In re Facebook*, 986 F. Supp. 2d at 536.

13

## CONCLUSION

For the reasons explained above, Defendant's motion to certify this Court's September 13, 2024 Memorandum & Order resolving Defendant's motion to dismiss for immediate appeal pursuant to 28 U.S.C. § 1292(b) is denied in its entirety.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: May 30, 2025
       Brooklyn, New York