UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
LISA DeSIMONE, *et al.*

                Plaintiffs,

    - against -

SELECT PORTFOLIO SERVICING, INC.,

                Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-3837 (PKC) (TAM)

PAMELA K. CHEN, United States District Judge:

In this putative consolidated class action, Plaintiffs Lisa DeSimone ("DeSimone"), Deborah R. Snowden ("Snowden"), and Inez Clara Washington ("Washington") (collectively, "Plaintiffs") allege that Defendant Select Portfolio Servicing, Inc. ("SPS" or "Defendant"), the mortgage loan servicing company that serviced Plaintiffs' mortgage loans on behalf of non-party lenders, engaged in deceptive practices by charging "EZ Pay" fees or "pay-to-pay fees" (hereinafter "pay-to-pay fees") of up to $15 each time Plaintiffs sought to make mortgage payments online or by phone, in violation of the Fair Debt Collection Practices Act ("FDCPA") and various state statutory and common laws.

Presently before the Court is Plaintiffs' motion to substitute John Castorina, Renee Meisenbach, and Lizabeth Asvitt-Osman (collectively, the "Proposed Plaintiffs") for Washington, who is deceased. Plaintiffs seek to amend their pleadings and join the Proposed Plaintiffs as parties to this action to preserve and litigate Washington's claims against SPS under California law. For the reasons stated below, Plaintiffs' motion is granted.

## BACKGROUND

I. **Relevant Factual Background**

The Court assumes the parties' familiarity with the facts in this case and therefore recites only those facts relevant to this decision.[1] SPS is a national loan servicing company that services residential loans. (First Amended Consolidated Class Action Compl. ("FACC"), Dkt. 87, ¶¶ 14, 23.) SPS "enters into service agreements with lenders, primary servicers, note holders, and trustees pursuant to which SPS provides servicing, subservicing[,] and agency activities for loan portfolios." (*Id.* ¶ 24.) According to those agreements, SPS "act[s] as their agent and [] exercise[s] their rights and responsibilities pursuant to their approval." (*Id.*)

Plaintiff Washington was a citizen and resident of California. (*Id.* ¶ 13.) In November 2019, SPS acquired the servicing rights to Washington's loan. (*Id.* ¶ 146.) On each of the five occasions between 2019 and 2020 when Washington made her past-due mortgage payments after the grace period over the phone, she was charged with a pay-to-pay fee in the amount of $15.00. (*Id.* ¶¶ 152–54, 156.)

II. **Procedural History**

In their FACC, Plaintiffs alleged eight causes of action against SPS: (1) violation of the FDCPA, 15 U.S.C. §§ 1692e and 1692f; (2) violation of the New York General Business Law Section 349, N.Y. Gen. Bus. Law § 349; (3) violation of the Maryland Consumer Debt Collection Act, Md. Com. Law. Code Ann. §§ 14-201, *et seq.*; (4) violation of the Maryland Consumer Protection Act, Md. Com. Law. Code Ann. §§ 13-101, *et seq.*; (5) violation of the Rosenthal Fair

---

[1] A detailed description of the factual and procedural history of this case can be found in the Court's Memorandum & Order granting in part and denying in part SPS's motion to dismiss Plaintiffs' First Amended Consolidated Class Action Complaint ("FACC"). (*See* Mem. & Order MTD, Dkt. 101, at 2–6.)

2

Debt Collection Practices Act, Cal. Civ. Code §§ 1788.13(e), 1788.14, 1788.17; (6) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; (7) breach of contract; and (8) breach of the covenant of good faith and fair dealing. (*See id.* ¶¶ 182–291.) Following SPS's motion to dismiss the FACC, the Court dismissed (1) Snowden's standalone claim under Section 13-301 of the Maryland Consumer Protection Act; (2) Washington's claims under Section 1788.13(e) of the Rosenthal Act as well as under the "unfair" prong of the California Unfair Competition Law; and (3) Plaintiffs' claims for breach of good faith and fair dealing. (Mem. & Order MTD, Dkt. 101, at 60.)[2] The Court denied SPS's motion to dismiss on all other claims. (*Id.*)

On October 21, 2024, Plaintiffs' counsel submitted a letter stating that "[c]ounsel recently discovered the death of Ms. Washington." (Suggestion of Death, Dkt. 107, at ECF[3] 1.) Following the suggestion of death on the record, the Court ordered Plaintiffs to move for substitution of Plaintiff Washington or otherwise notify the Court within 90 days, i.e., by January 20, 2025, pursuant to Federal Rule of Civil Procedure ("Rule") 25(a)(1). (10/22/2024 Dkt. Order.) Plaintiffs filed a motion to amend on January 17, 2025, naming the three Proposed Plaintiffs John Castorina, Renee Meisenbach, and Lizabeth Asvitt-Osman. (Pls.' Mot., Dkt. 122.) Plaintiffs also attached a Proposed Second Amended Consolidated Class Action Complaint ("SACC") as an exhibit to their motion. (SACC, Dkt. 123-1.) All three Proposed Plaintiffs are California residents and seek to bring the same claims under California law that are going forward in the case, i.e., (1) violation of

---

[2] SPS's motion to certify interlocutory appeal of the Mem. & Order MTD is currently before the Court and will be resolved simultaneously with this motion. (*See* Mot. for Cert. of Appealability, Dkt. 116.)

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788.14, 1788.17, (2) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 under the "unlawful" prong of the statute, and (3) common law breach of contract.  As was the case with Washington, each of the Proposed Plaintiffs "was a borrower mortgager to a mortgage loan for the home in which [he/she] lives" and SPS serviced the mortgage and charged each of the Proposed Plaintiffs pay-to-pay fees for requesting a payment either online or over the phone.  (SACC, Dkt. 123-1, at ¶¶ 13–15.)

Defendant submitted a memorandum in opposition to Plaintiffs' substitution motion on February 14, 2025.  (Def.'s Mem., Dkt. 127.)  Plaintiffs filed their reply, and the motion was fully briefed on March 7, 2025.  (Pls.' Reply, Dkt. 129.)

## DISCUSSION

### I. Applicability of Rule 25

As a preliminary matter, Plaintiffs notified the Court that they would seek substitution for Plaintiff Washington under Rule 25(a)(1).  (*See* Suggestion of Death, Dkt. 107, at 1.)  The Court subsequently gave Plaintiffs leave to "move for substitution or otherwise notify the Court" by January 20, 2025.  (10/22/2024 Dkt. Order.)  Plaintiffs now concede that "[n]o proper party seeks substitution for Ms. Washington under Rule 25(a)(1)" because "Ms. Washington's presumptive successor-in-interest and co-signor of the deed of trust, Mr. Steven L. Washington, Sr., has not sought to substitute in as a proper party."  (Pl.'s Mem., Dkt. 124, at 3 & n.2.)  Based on this, Defendant argues that Plaintiffs' motion for substitution is not proper because the Proposed Plaintiffs "are not proper parties under Rule 25 and the equitable tolling doctrine . . . does not permit [those] who wait[ed] out the statute of limitations to piggyback on an earlier, timely filed class action."  (Def.'s Mem., Dkt. 127, at 11 n.6 (citation omitted).)

Defendant's argument is inapposite. Plaintiffs are allowed to rely on Federal Rules of Civil Procedure other than Rule 25 to move for substitution. "Although Rule 25 provides for substitution of parties in limited circumstances, parties may be substituted under Rule 21 in the discretion of the court in situations not covered by Rule 25." *Mathis v. Bess*, 761 F. Supp. 1023, 1026 (S.D.N.Y.), *opinion modified on denial of reargument*, 763 F. Supp. 58 (S.D.N.Y. 1991) (quoting *Hackner v. Guaranty Trust Co.*, 117 F.2d 95, 98 (2d Cir. 1941), *cert. denied*, 313 U.S. 559 (1941)); *see also Goston v. Potter*, No. 08-CV-0478 (FJS) (ATB), 2010 WL 4774238, at *5 (N.D.N.Y. Sept. 21, 2010), *R&R adopted*, 2010 WL 4736261 (N.D.N.Y. Nov. 16, 2010) ("Because plaintiff in this case cannot 'substitute' the proposed new defendants in place of [existing] defendant under Rule 25, the court will interpret plaintiff's request as a motion to amend to add new parties under Rules 15(a) and 21."); *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1040–1041 (N.D. Cal. 2006) (substituting under Rule 21 by dropping deceased party and adding representative of the estate).

None of the circumstances of this case, or the prior instructions of the Court, forbids Plaintiffs from moving to add new parties under alternative federal rules at this stage of the litigation. In fact, the federal rules under which Plaintiffs bring this motion—Rules 15, 20, and 21—emphasize the discretion of the Court in granting such motions. *See* Fed. R. Civ. P. 15(a)(2) (allowing court to give leave for amendments where "justice so requires"); Fed. R. Civ. P. 20 (allowing for "permissive" joinder of parties); Fed. R. Civ. P. 21 (allowing court to add or drop a party "at any time"). Plaintiffs are thus allowed to move for substitution of the three Proposed Plaintiffs for Washington, as they do here, under Rules 15, 20, or 21, pled in the alternative.

## II. Joinder Under Rule 15

The Court first considers Plaintiffs' arguments under Rule 15. Rule 15(a)(2) provides that "a party may amend its pleading only with . . . the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). It is, however, well settled that amendment to add new parties is governed by Rule 21, rather than Rule 15. *See Quinio v. Aala*, No. 19-CV-4686 (PKC) (SJB), 2022 WL 21125, at *5 n.2 (E.D.N.Y. Jan. 3, 2022); *see also Smith v. Manhattan Club Timeshare Ass'n, Inc.*, 944 F. Supp. 2d 244, 256 (S.D.N.Y. 2013) ("[T]he preferred method . . . [for substituting parties] is to consider such motions under [Rule 21], which specifically allows for the addition and elimination of parties."). For this reason, the Court disregards Plaintiffs' arguments under Rule 15 and analyzes the motion for substitution under Rule 21.

## III. Joinder Under Rule 21

Rule 21 permits joinder of third parties "at any time, on just terms." Fed. R. Civ. P. 21; *see also City of Syracuse v. Onondaga County*, 464 F.3d 297, 308 (2d Cir. 2006). In practice, however, the standard for deciding whether to permit joinder under Rule 21 is "the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) (citations omitted); *accord Johnson v. Bryson*, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012) ("[T]he showing necessary under Rule 21 is the same as that required under Rule 15(a)."). Rule 21 "contains no restrictions on when motions to add or drop parties must be made"; however, "the timing of the motion may influence the court's discretion in determining to grant it." *City of Syracuse*, 464 F.3d at 308 (citations omitted). "'[M]otions to amend [under Rule 21] should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party.'" *Smith v. Manhattan Club Timeshare*

6

*Ass'n, Inc.*, 944 F. Supp. 2d 244, 256 (S.D.N.Y. 2013) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir.2008)) (alteration in original). Here, Defendant argues that the Court should deny the motion to amend because of undue delay and futility. The Court considers each of Defendant's arguments in turn.

### A.    Undue Delay

Defendant puts forward two theories as to why granting Plaintiffs' motion constitutes undue delay. First, Defendant argues that "Plaintiff Washington died in October 2022" and that Plaintiffs' "failure to disclose Washington's death and to amend the complaint at the appropriate time prejudiced SPS and needlessly increased the cost of litigation." (Def.'s Mem., Dkt. 127, at 8.) Though a long delay between a party's death and the motion for substitution could be an important factor in a court's analysis, courts denying such motions have typically done so when counsel for the deceased party knew of the death but failed to timely file a suggestion of death on the record. *See, e.g.*, *Momin v. Quantierra Advisors LLC*, No. 22-1445, 2023 WL 2375765, at *2 (2d Cir. Mar. 7, 2023) (explaining that a "long delay between a party's death and the motion [to substitute] justifies the denial" in a case where the deceased's counsel knew of the passing one month after death but did not notify the court until at least seven months after death); *Marentette v. City of Canandaigua*, 799 F. App'x 48, 50 (2d Cir. 2020) (summary order) (denying a motion to substitute and dismissing when counsel knew of plaintiff's death but did not file a suggestion of death or a timely motion to substitute). In the less permissive context of Rule 25 substitutions, courts have held that "[w]hether a moving party knew or should have known that the deceased party had died prior to a suggestion of death being filed and served is irrelevant to the question of whether [a motion to substitute the deceased party] is timely." *Essani v. Earley*, No. 13-CV-3424 (JMA) (SIL), 2017 WL 3432192, at *3 (E.D.N.Y. Aug. 9, 2017) (citation omitted); *see also F.D.I.C. v.*

*Cromwell Crossroads Assocs., Ltd. P'ship*, 480 F. Supp. 2d 516, 527 (D. Conn. 2007) (calculating expiration of Rule 25 deadline based solely on filing date of suggestion of death and ignoring question of whether moving party had actual knowledge of death prior to the filing date in finding motion nevertheless time-barred).

Here, nothing in the record suggests that Washington's counsel knew of her death two years prior to notifying the Court. The suggestion of death filed by Plaintiffs' counsel on October 21, 2024, states that counsel had "*recently* discovered the death of Ms. Washington." (Suggestion of Death, Dkt. 107, at 1 (emphasis added).) Moreover, their brief accompanying the substitution motion states that they notified the Court of Washington's death "within days of learning of and confirming the passing." (Pl.'s Mem., Dkt. 124, at 9.) Furthermore, for months before Washington's passing in October 2022 and continuing through September 2024, the primary activity in the case was the briefing of motions to dismiss, which would not have required Washington's attorneys to confer with her during that time, thus making the attorneys' belated discovery of Washington's death more plausible. (*See* Proposed Scheduling Order, Dkt. 48 (limiting discovery while the motions to dismiss were being resolved), adopted by the Court on 7/29/2021.) For these reasons, the Court does not find that the delay between Washington's death and Plaintiffs' submission of the suggestion of death was an "undue delay" warranting dismissal of this motion.

Second, Defendant argues that the substitution of the three Proposed Plaintiffs for Washington will cause undue delay because it "requires intensive investigation of, among other items, the factual circumstances concerning [the Proposed Plaintiffs'] payment of EZ Pay fees, pre-suit notice, the status of their mortgage loans, and adequacy to represent a class." (Def.'s Mem., Dkt. 127, at 9.) In response, Plaintiffs state that the substitution "will not cause undue delay

8

because Proposed Plaintiffs' claims are identical to those of Ms. Washington which have been litigated up to this point." (Pls.' Mem., Dkt. 124, at 10.) They further argue that "the Parties are actively engaged in discovery, and the addition of Proposed Plaintiffs will require only minimal additional disclosures and productions." (*Id.; see also* Proposed Scheduling Order, Dkt. 48 (delaying depositions and other discovery until after resolution of motions to dismiss).)

The Court agrees with Plaintiffs. "[T]he burden of conducting additional discovery [as a result of adding additional parties] does not automatically constitute undue prejudice." *State Farm Mut. Auto. Ins. Co. v. CPT Medical Servs., P.C.*, 246 F.R.D. 143, 149 (E.D.N.Y. 2007); *see United States v. Continental Ill. Nat'l Bank and Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989) ("the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading"). As Plaintiffs note, discovery is still ongoing in this case and Defendant has been on notice that amendment to the FACC was forthcoming. For these reasons, the Court rejects Defendant's argument that additional discovery relating to the Proposed Plaintiffs would cause undue delay.

### B. Futility

An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6). *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002), *abrogated in part on other grounds by Knick v. Township of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019). Here, Defendant argues that the SACC would not survive a Rule 12(b)(6) motion to dismiss—and substitution would thus be futile—because (1) this Court lacks personal jurisdiction over Defendant with respect to the Proposed Plaintiffs' claims, and (2) venue is improper in this District. (Def.'s Mem., Dkt. 127, at 3–7.)

9

As a preliminary matter, Defendant previously consented to personal jurisdiction when Washington originally filed a putative class action against Defendant in the Central District of California. *Washington v. Select Portfolio Services, Inc.*, No. 21-CV-2991 (ENV) (RLM), Dkt. 19, ¶ 7 (E.D.N.Y. filed May 27, 2021) ("To the extent a response is required, SPS admits it does business in California and that the personal jurisdiction of this Court over SPS is proper."). Defendant then requested transfer of the case to this District. *Id.*, Dkt. 41, at 2 ("Defendant filed a Motion to Stay Case or, in the Alternative, to Transfer Venue, in which it asked this Court to stay or to transfer this case to the Eastern District of New York pursuant to 28 U.S.C. § 1404."). The *Washington* case was transferred to this District and consolidated with the current case. (*See* 6/17/2021 Min. Entry.) By requesting transfer of the *Washington* case, Defendants consented to personal jurisdiction and waived objections to venue in this District. *See Palmore v. Napoli Shkolnik PLLC*, No. 23-CV-1616 (ER), 2024 WL 1330003, at *11 (S.D.N.Y. Mar. 28, 2024) ("Defendants themselves request the transfer . . . and therefore consent to the exercise of personal jurisdiction in the Eastern District. . . . By requesting the transfer, Defendants also waive objections to venue in the Eastern District of New York." (citations omitted)); *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) ("Personal jurisdiction, unlike subject-matter jurisdiction, can, however, be purposely waived"); *In re Terrestar Corp.*, No. 16-CV-1421 (ER), 2017 WL 1040448, at *6 (S.D.N.Y. Mar. 16, 2017) ("[O]bjections to venue can be waived.").

Defendant now asserts that "SPS'[s] consent to personal jurisdiction in the *Washington* Action 'extends to that case alone'" and does not apply to the Proposed Plaintiffs whom Plaintiffs seek to substitute for Washington. (Def.'s Mem., Dkt. 127, at 6 (quoting *V&A Collection, LLC v. Guzzini Props. Ltd.*, 46 F.4th 127, 132 (2d Cir. 2022)).) But here, the Court is not considering

10

whether Defendant's consent can be "extend[ed]" to another lawsuit. The *Washington* case is no longer a standalone action; it was consolidated with the *DeSimone* case "for all purposes" over two years ago. (2/14/2022 Dkt. Order.) Washington's death does nothing to change the consolidated nature of this case, nor does it undo Defendant's consent to personal jurisdiction over the *Washington* case when it was consolidated with this action in this District. Defendant's reliance on *V&A Collection*, which involved two separate lawsuits—one in federal court and one in state court—is thus inapposite. *V&A Collection,* 46 F.4th at 132–33.

Plaintiffs further argue, and the Court agrees, that Defendant's prior consent to personal jurisdiction as to Washington also applied to the three Proposed Plaintiffs as putative class members. This is because Defendant's consent to personal jurisdiction in *Washington*, a putative class action, extended to all claims brought by unnamed class members of the putative class for which Washington was the named representative. *See In re Actos Antitrust Litig.*, No. 13-CV-9244 (RA) (SDA), 2024 WL 4251891, at *14–15 (S.D.N.Y. Aug. 9, 2024), *R&R adopted*, 2024 WL 4345568 (S.D.N.Y. Sept. 30, 2024) (discussing the Supreme Court case *Bristol-Myers Squibb v. Superior Court of California*, 582 U.S. 255 (2017), and holding that defendant's consent to personal jurisdiction with respect to named plaintiff of a putative class action "includes claims by putative class members" and "amounts to an express consent to personal jurisdiction with respect to all class members"). "When an action is filed as a putative class action, defendants are on notice as to the extent and nature of the claims." *Beach v. Citigroup Alternative Invs. LLC*, No. 12-CV-7717 (PKC), 2014 WL 904650, at *20 (S.D.N.Y. Mar. 7, 2014). Here, Plaintiffs assert that the Proposed Plaintiffs are putative "class members of the nationwide and California classes." (Pl.'s Reply, Dkt. 129, at 4.) By consenting to personal jurisdiction as to Washington's claims brought "on behalf of all similarly situated putative class members," (FACC, Dkt. 87, ¶ 10),

11

Defendant thus also consented to personal jurisdiction as to the same claims brought by Proposed Plaintiffs.

"Substitution of unnamed class members for named plaintiffs who fall out of the case because of settlement or other reasons that would deprive them of standing if present at the outset of litigation is a common and normally an unexceptionable . . . feature of class action litigation . . . in the federal courts." *Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 222 (2d Cir. 2018) (quoting *Phillips v. Ford Motor Co.*, 435 F.3d 785, 787 (7th Cir. 2006)). This is exactly the situation here. Though Washington no longer has an individual stake in this litigation, this Court "maintains its jurisdiction at least long enough to determine whether the represented parties maintain an interest and whether a substitution could avoid mootness." *Id.* at 225. In other words, there continues to be "an alternative to dismissal" in this case "[s]o long as a proposed substitution does not 'come[] long after the claims of the named plaintiff[ ] were dismissed' and does not alter the substance of the action." *Id.* at 225 (quoting *Phillips*, 435 F.3d at 787)). This applies even where, as here, a class has not yet been certified: "[W]here the class is not certified until after the claims of the individual class representatives have become moot, certification may be deemed to relate back to the filing of the complaint in order to avoid mooting the entire controversy." *Robidoux v. Celani*, 987 F.2d 931, 939 (2d Cir. 1993).

The Court thus considers whether Proposed Plaintiffs' claims "relate back" to the FACC. Under Rule 15, "an amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); *see Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016)

12

(explaining that the "liberal standard" under which courts assess Rule 15 is the "same standard of liberality" afforded motions under Rule 21)). The FACC defines the California Class as:

> All persons (1) with a residential mortgage loan securing a property in California, (2) serviced or subserviced by SPS, (3) with mortgage or deed of trust incorporating standard uniform covenants from Fannie Mae/Freddie Mac, FHA or similar government-backed model mortgages, (4) and who paid an "EZ Pay Fee" or any other fee to SPS for making a loan payment by telephone, an IVR, or the internet, during the applicable statutes of limitations through the date a class is certified, (5) in connection with a payment made after the due date.

(FACC, Dkt. 87, ¶ 163.) Here, the Proposed Plaintiffs bring the same claims as Washington, namely, (1) violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788.14, 1788.17, (2) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, under the "unlawful" prong of the statute, and (3) common law breach of contract. (*See generally* SACC, Dkt. 123-1.) Each of the three Proposed Plaintiffs is a California resident whose home is subject to a mortgage loan that is secured by a deed of trust[4] and was serviced by SPS. (*Id.* ¶¶ 13–15.) Each Proposed Plaintiff was charged "Pay-to-Pay Fees" [or "EZ Pay" fees] by SPS for requesting payments over the telephone or online. (*Id.*) Based on the description of the California class and the allegations in the SACC, it is clear that the proposed amendment in this case would "assert[] a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

In response, Defendant puts forward two arguments. First, Defendant argues that the relation-back doctrine does not apply when "no class has been certified and equitable tolling does not apply." (Def.'s Mem., Dkt. 127, at 14 n.9 (quoting *Azim v. Vance*, 530 F. App'x 44, 46 (2d

---

[4] The Proposed Plaintiffs' deeds of trust incorporate standard language from FHA model mortgages or from Fannie Mae model mortgages. (SACC, Dkt. 123-1, ¶¶ 139, 144, 149.)

Cir. 2013) (summary order)).) Defendant's argument is unavailing. In *Azim v. Vance*, the Second Circuit dismissed a case for lack of subject matter jurisdiction where it found that all of the named plaintiffs' claims had become moot. *Azim*, 530 F. App'x at 46. Unlike here, however, *Azim* involved no previously unnamed members of the putative class who were ready to substitute for the dismissed plaintiffs, and the Court did not specifically discuss how the relation-back doctrine would apply in this situation. *Id.*

Second, Defendant argues that the Proposed Plaintiffs' failure to provide SPS with pre-suit notice "at the same time as Washington"—i.e., in May 2020—"frustrates the intent" of the notice requirement and disallows the use of the relation-back doctrine. (Def.'s Mem., Dkt. 127, at 14 n.9 (quoting *Hargrove v. Legacy Healthcare, Inc.*, 80 Cal. App. 5th 782, 792 (2022)).) But the *Hargrove* case is distinguishable. In *Hargrove*, the California Appellate Division found that the relation-back doctrine cannot apply where the proposed substitute plaintiff did not fall within the definition of the relevant statute and was therefore statutorily unable to comply with any pre-suit filing requirements. *Hargrove*, 80 Cal. App. 5th at 827 ("[Proposed plaintiff] does not qualify as an "aggrieved employee" for the purposes of [plaintiff's] 2016 [Private Attorneys General Act] claims and, therefore, is unable to comply with the prefiling notice for [those] claims. To allow her to rely on the relation-back doctrine would provide administrative compliance that does not exist.") In contrast, the three Proposed Plaintiffs in this case are eligible to bring their claims under the same causes of action as in the *Washington* complaint and did in fact provide pre-suit notices to SPS on December 30, 2024, (SACC, Dkt. 123-1, ¶¶ 142, 147, 152), before filing a motion to file an amended complaint substituting themselves for Washington about a month later. For these reasons, Proposed Plaintiffs' claims properly relate back to the FACC and the Proposed Plaintiffs may substitute for Washington. Defendant, having consented to personal jurisdiction and venue

14

as to unnamed class members of the putative California class, have thus also consented to personal jurisdiction and venue as to the Proposed Plaintiffs.[5]

Lastly, equity and fairness concerns counsel in favor of the Proposed Plaintiffs' joinder as parties to this action. Without substitution, there would be no named plaintiff left in the action who would be able to represent the putative California class. (*See* Pl.'s Mem., Dkt. 124, at 9 ("[S]ubstitution of Proposed Plaintiffs by amendment and/or joinder is not futile. It is necessary to vindicate the rights of the California class.").) This would likely result in the California putative class being dismissed from the case altogether. And though the Proposed Plaintiffs might still be able to file suit against Defendant in federal court in California, they would likely face significant hurdles in that forum, including a possible statute of limitations defense from Defendant.[6]

Importantly, the prospect of Defendant achieving the effective dismissal of the putative California class only arises because Plaintiff Washington has died, an unfortunate circumstance that should not perversely or unfairly benefit Defendant, especially where there are other class members ready and willing to take Plaintiff Washington's place. "A district court determining whether a case has become moot maintains jurisdiction to determine whether a substitute plaintiff would avoid that result." *Klein*, 906 F.3d at 218.

---

[5] To the extent that Defendant now seeks to argue that this Court lacks personal jurisdiction not only as to the Proposed Plaintiffs but also as to the California putative class *generally*, that argument has been waived. Defendant failed to raise it in its first two motions to dismiss in this case, including one motion to dismiss that was filed after the *Washington* case with the putative California class was consolidated with this case. (*See generally* Mem. L. Supp. Mot. Dismiss, Dkt. 70.)

[6] For example, the Proposed Plaintiffs' FDCPA claims are likely time barred because there is no instance of a pay-to-pay fee being collected within one year of today. (*See* SACC, Dkt. 123-1, at ¶¶ 14–15.)

For the reasons explained above, the Court holds that Defendant has consented to personal jurisdiction as to the Proposed Plaintiffs' claims. For the same reasons, Defendant has also consented to venue. *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996) (finding that consent to personal jurisdiction in the relevant district also entailed consent to venue there). Defendant's arguments that allowing Proposed Plaintiffs to join the action pursuant to Rule 21 would be futile is thus rejected.

## CONCLUSION

For the reasons explained above, Plaintiffs' motion to amend the FACC to add the three Proposed Plaintiffs—John Castorina, Renee Meisenbach, and Lizabeth Asvitt-Osman—as substitutes for deceased Plaintiff Washington is granted. Since the Court has found that substitution is proper under Rule 21, it need not analyze whether Plaintiffs may also substitute under Rule 20. Leave is granted for Plaintiff to amend the FACC within 20 days of this Order i.e., June 19, 2025.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: May 30, 2025
       Brooklyn, New York